# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| *ex rel.,* | : | |
| | : | |
| JAMES DOGHRAMJI; SHEREE COOK; | : | CASE NO. 3:11-cv-0442 (Sharp, J.) |
| and RACHEL BRYANT, | : | |
| | : | |
| Relators, | : | |
| v. | : | |
| | : | |
| COMMUNITY HEALTH SYSTEMS, INC. | : | |
| *et al.* | : | |
| Defendants. | : | |
| | : | |

## DECLARATION OF TRACI L. BUSCHNER

Traci L. Buschner, being of full age, having been duly sworn according to law, upon oath, declares:

1. I am Senior Counsel at the law firm of Grant & Eisenhofer P.A. ("G&E") and I am counsel for Relators Dr. James Doghramji, Sheree Cook, and Rachel Bryant ("Relators" or "Doghramji Relators") in this action. They are also currently represented by the law firms of Barrett Johnston Martin & Garrison, LLC ("BJMG") in Nashville, Tennessee and Cohen, Milstein, Sellers and Toll ("CMST") of Washington, D.C.

2. Attached hereto are true and correct copies of the following exhibits:

Exhibit A: Biographical Information for Grant & Eisenhofer P.A., including Reuben Guttman, Traci Buschner and other attorneys

Exhibit B: Resume of Dr. Caroline Poplin

Exhibit C: Time Records for Grant & Eisenhofer P.A.

Exhibit D:     National Law Journal's Billing Survey, Vol. 36, No. 20 (January 13, 2014)

Exhibit E:     July 24, 2014 Intervention Notice by the United States of America

Exhibit F:     Press Release from the U.S. Department of Justice dated August 4, 2014

Exhibit G:     Press Release from the U.S. Attorneys' Office for the Middle District of
Tennessee dated August 5, 2014

3.     In or about April 2011, Reuben Guttman and I were contacted by the law firm of
James & Hoffman (Relators' prior counsel) about jointly representing the Relators in the case
due to our demonstrated experience and success in False Claims Act ("FCA") litigation,
including FCA cases involving nationwide healthcare claims. Relators' allegations concerned,
*inter alia*, unlawful emergency room admission practices at hospitals nationwide owned or
operated by Defendant Community Health Systems, Inc. ("CHS"). After investigating Relators'
allegations, the firms agreed to jointly represent the individual relators Doghramji, Cook and
Bryant with CMST (a firm that also has a demonstrated track record in nationwide FCA cases)
and BJMG, which would serve as local counsel in Nashville where CHS's headquarters is
located.

4.     On or about May 9, 2011, the firms served a Relators' Disclosure, outlining our
clients' claims, on the U.S. Attorneys' Office for the Middle District of Tennessee. On May 10,
2011, we filed a lawsuit under seal alleging, *inter alia*, violations of the False Claims Act against
CHS and approximately 74 hospitals owned by CHS (hereafter collectively "CHS") in the
United States District Court for the Middle District of Tennessee.

5.     I understand that prior to the service of the Relators' Disclosure and Complaint in
the Middle District of Tennessee, lawyers at James & Hoffman had met with attorneys at the

2

Department of Justice and the U.S. Attorney's Office for the Eastern District of Pennsylvania in or about February and April 2011 regarding the case.

6.      In accordance with statutory mandates, the disclosure prepared by attorneys for the Relators and served on the Government, May 9, 2011, was detailed and extensive. This disclosure statement identified physicians and former CHS employees who could be potential witnesses in the Government's investigation. As part of the disclosure, we also provided critical documents from the individual Relators and a robust statistical analysis evidencing a nationwide scheme to bill Medicare for medically unnecessary admissions. Attached to the disclosure, were key documents supporting Relators' claims and a road map for the Government to investigate the case.

7.      After the lawsuit was filed, the law firms and the Relators met multiple times with lawyers and other representatives from the United States Department of Justice ("DOJ") and the United States Attorney's Office for the Middle District of Tennessee ("USA's Office") (collectively the "Government"). Relators, which then also included the Service Employees International Union ("SEIU"), were able to provide statistical evidence of medically unnecessary admissions for 74 hospitals and eye witness testimony for three hospitals (*i.e,* Dyersburg Regional Medical Center and Heritage Medical Center (both in Tennessee) and Chestnut Hill (in Pennsylvania)).

8.      Thereafter, the Government provided us with copies of complaints in six other FCA cases (filed in other jurisdictions) that were ultimately all settled, along with the instant case, on August 14, 2014 in this Court. Prior to the disclosure of the other six complaints, Relators were not aware of the other cases because they were still "under seal" in multiple federal courts.

9.     In or about the fall of 2011, the Government requested that counsel for the

Doghramji Relators actively participate in its investigation, which was led by the U.S. Attorney's

Office in Nashville, on an on-going basis. In response to the Government's specific requests,

counsel for the Doghramji Relators performed the following work over the years preceding the

settlement:

- Organized and analyzed thousands of documents produced, pursuant to Civil Investigative Demands ("CIDs"), to the Government by CHS;

- Drafted letters and memoranda analyzing relevant documents;

- Created lists of potential witnesses;

- Drafted a detailed memorandum comparing CHS's Blue Book (CHS's admission criteria) to Interqual (industry-recognized admission criteria);

- Compared CHS's treatment of observation stays to its use of inpatient admission.

- Conducted legal and factual research on a number of topics including, but not limited to: (1) bonuses/incentives offered to individuals for increasing admissions; (2) CHS's acquisition strategy; (3) CHS's transition from the Blue Book to Interqual; (4) CHS's financial stability; and (5) CHS's acquisition of Triad Healthcare;

- Drafted detailed outlines for the Government's use in questioning several key witnesses, including Dr. Lynn Simon; and

- Drafted CID requests to assist the investigation.

10.     Counsel for the relators in the other six actions also provided similar support to

the Government. The Government lawyers mapped out the investigation and assigned work to

all relators' counsel in an organized manner so that work was not duplicated by the firms

involved. All relators' counsel for the seven actions, including counsel for the Doghramji

4

Relators, participated in bi-monthly calls with the Government to discuss the case, strategy, discovery and other tasks incident to the investigation. The investigation, though led by the Government, was a collaborative effort among the counsel for the seven actions. The vast majority of the work done by G&E, CMST and BJMG in the Doghramji case was done at the direction of the Government and in support of its investigation of a nationwide case against Defendants. Though the Government sometimes gave assignments to certain of the relators' counsel based upon allegations of their specific complaints, the majority of the assignments were made without regard to the individual complaint. The statistical analysis in the Doghramji complaint, for example, guided the audit conducted by the Government incident to its investigation of CHS. Thus, some of the work in selecting criteria for the audit was directed to the lawyers in this case.

11.     In addition, counsel for the Doghramji Relators consulted with their non-testifying medical expert, Dr. Caroline Poplin, on behalf of the Government. *See* Resume of Dr. Caroline Poplin, attached hereto as Exhibit B. Dr. Poplin, who is a physician and previously served as legal counsel for the U.S. Food and Drug Administration, aided the Government's understanding and investigation, including:

- Assisting with the selection of data for the Government's audit of CHS;

- Meeting with the Government on a number of occasions to provide expert medical analysis and opinions;

- Assisting with the formulation of questions and an outline for the Government's deposition of CHS's Dr. Lynn Simon, who had critical knowledge about CHS's decision to use certain hospital admission criteria, including the Blue Book, which lay at the core of the case;

- Analyzing CHS's Blue Book and the medical necessity standard; and

- Participating in drafting the initial and Amended Complaint in the Doghramji case.

5

12.     Dr. Poplin also advised Government investigators that the over admission of patients to the hospital, especially those over 65, placed patients at risk of contracting hospital infections. In so doing, Dr. Poplin underscored an important policy issue in this case—the health and safety impact of CHS's scheme to overbill the Government for unnecessary services.

13.     The Amended Complaint was drafted and filed in or about August 2013, and was provided to CHS (in a redacted format) pursuant to this Court's November 28, 2011 Order allowing a "partial lift" of the seal. [Doc. 34]. I understand that CHS was provided with copies of all seven complaints in or about late August 2013. Prior to this time, in the spring of 2013, CHS and the Government had entered into discussions to resolve the case. Counsel for the Doghramji Relators were tasked by the Government with performing legal research and analysis pertaining to certain defenses that CHS raised during its discussions with the Government.

14.     The Government and all of the relators' counsel, including counsel for the Doghramji Relators, were in frequent contact over the course of the investigation and subsequent settlement of the claims against CHS. In the spring of 2014, the Government notified all of the relators' counsel of a "handshake" deal between CHS and the Government.

15.     Before the settlement papers were finalized, the Government urged relators in all seven cases to reach a deal to share in the bounty resulting from the Government's settlement with CHS. In early May 2014, the relators' counsel in all seven cases engaged the services of two private mediators, which included a former federal judge, and held an in-person mediation to resolve the share issue. After substantial negotiations, the relators from all cases agreed what each party's share should be. The Doghramji Relators were awarded 14% of the bounty, demonstrating that they provided significant value to the case. As part of the deal, the relators agreed that the relator in the *Plantz* case, filed in federal court in Chicago, should receive the

6

bounty from the Government and then distribute the proceeds pursuant to the relator share agreement. The decision to assign the money to *Plantz* was arbitrary, as the terms of the agreement set forth a share for each of the seven cases regardless of which relator was paid by the Government. The Government was told to pay *Plantz* as part of the relator share deal.

16.     About this time, Government lawyers told counsel in all seven cases that they should submit their fees and costs to CHS pursuant to CHS's request. On or about June 6, 2014, the Doghramji Relators' counsel submitted their fees and costs to Defendants' Counsel. Upon information and belief, all counsel on the other six cases also provided their fees and costs to Defendants' Counsel.

17.     The Government awarded a bounty of 19% of the total recovery, demonstrating that it believed all relators contributed substantially to the case.

18.     On July 24, 2014, the Government intervened in the Doghramji case. [Doc. 72]. The Government also intervened in the other six cases in their respective federal courts. On or about August 4, 2014, the Government filed its Settlement with this Court [Doc. 75], which was approved on August 14, 2014. [Doc. 77]. The Settlement expressly resolves all seven cases. *Id.* The Doghramji Relators, like the relators in the other six cases, agreed to dismiss their claims, including claims that were not intervened upon by the Government, against the Defendants and signed the settlement as well. *Id.* at ¶ 3, p. 7. In exchange for the relators' dismissals, Defendants agreed not to bring any actions against Relators or their counsel related to claims resolved by the Settlement. *Id.* at ¶ 8, p.10. As part of the Settlement, Defendants agreed to enter a Corporate Integrity Agreement ("CIA") or Consent Decree with the U.S. Department of Health and Human Services, which sets forth certain injunctive relief. *Id.* at ¶ 4, p.7-8.

19.     In the settlement, Relators expressly reserved their right to seek their statutory

fees and costs pursuant to 31 U.S.C. § 3730(d), the fee-shifting provision of the federal False

Claims Act. *Id*. at ¶ 8, p.10. Defendants, similarly, reserved its right to object and oppose those

fees pursuant to 31 U.S.C. § 3730(d). *Id*. at ¶ 8, p. 10. Nothing in the Settlement expressly

reserved the right of CHS to claim that any party to the agreement did not have standing to bring

claims or that this Court lacked subject matter jurisdiction over the Settlement or the cases that

were settled by it.

20.     In or about late August 2014, Realtors' Counsel had discussions with Defendants'

Counsel regarding the settlement of the fee issue, but Defendants made no offer to settle. To my

knowledge, Defendants have only settled with the *Plantz* relator whose case was filed in federal

court in Chicago.

21.     The billing rates reflected in the billing summaries for G&E are the current,

customary rates charged by the firm for the individual attorneys and staff included therein. G&E

represented Relators at an hourly rates ranging from $850.00 to $140.00. Combined, the lawyers

and professional staff at G&E performed work at an average hourly rate of $495.00 per hour.

These rates are in line with those of other firms in the Washington, D.C. area which engage in

nationwide complex litigation. *See* National Law Journal's Billing Survey, Vol. 36, No. 20

(January 13, 2014), attached hereto as Exhibit D.

22.     Exhibit C to this Declaration is a complete copy of G&E's billing records for this

litigation, which has been reduced to exclude fees and costs relating to mediation and resolution

of the allocation of the bounty between the seven cases *and* certain fees associated with the

federal Settlement and this fee petition. Specifically, there are no time entries by G&E after May

2, 2014. The exclusion of these fees and costs represents a significant savings to Defendants

8

who benefitted from the resolution of very substantial claims arising from violations of Medicare regulations and the False Claims Act. By this declaration, I attest to the accuracy and completeness of such records. Exhibit C encompasses the total attorneys' fees and expenses incurred by the plaintiffs during the course of this litigation, but not those associated with filing the Fee Petition or the ensuing litigation. G&E has not included those fees at this time because CHS has filed an opposed Motion to Stay the determination of our fees and has proposed protracted litigation on the issue, wherein CHS will attempt to transfer a handful of cases in other federal courts to this jurisdiction. For that reason, G&E reserves the right to provide the Court with the final fees and costs after adjudication of these issues.

     23.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

     Dated: September 29, 2014

Traci L. Buschner

# EXHIBIT A

# GRANT & EISENHOFER P.A.
# FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with over 70 attorneys that concentrates on federal securities and corporate governance litigation and other complex class litigation. G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The Firm was named to the National Law Journal's Plaintiffs' Hot List for the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York, Chicago, and Washington, D.C., G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the Firm's partners have gained national reputations in securities and corporate litigation. In fact, G&E was the first law firm in the country to argue the provisions of the Private Securities Litigation Reform Act ("PSLRA") allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The Firm has gone on to build a national and international reputation as a leader in securities litigation. In both class action and "opt out" cases, G&E has attracted widespread recognition for protecting investors' rights and recovering damages for investors. The Firm has recovered over $12.5 billion dollars for shareholders in the last five years, and has repeatedly been named one of the nation's "Top Ten Plaintiff's Firms" by the National Law Journal. In recent years RiskMetrics Group has twice recognized G&E for winning the highest average investor recovery in securities class actions of any law firm in the U.S.

G&E has served as lead counsel in many of the largest securities class action recoveries in U.S. history, including:

> $3.2 billion settlement from Tyco International Ltd. and related defendants
> $922 million from United Healthcare
> $450 million Pan-European settlement from Royal Dutch Shell
> $448 million settlement in Global Crossing Ltd. securities litigation
> $422 million recovery for investors in the stock and bonds of Refco
> $420 million settlement for shareholders of Digex
> $400 million recovery from Marsh & McLennan
> $325 million from Delphi Corp.
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $276 million judgment & settlement for Safety-Kleen stock and bond investors

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group ("UHG"). This was among the first – and most egregious – examples of options backdating. As previously stated, G&E's case against UHG produced a settlement of $922 million.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest cash payment in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as the board's decision to reject a competing proposal from a different suitor. Through the litigation, Caremark's board was forced to renegotiate the terms of the merger agreement with CVS. The settlement ensured statutory rights of Caremark shareholders, providing an additional $3.19 billion in cash consideration.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor

activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding "proxy access" before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make "proxy access" mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

*In re Refco Inc. Securities Litigation* – G&E represented Pacific Investment Management Company LLC ("PIMCO") as co-lead plaintiff in a securities class action alleging that certain officers and directors of Refco Inc., as well as other defendants including the company's auditor, its private equity sponsor, and the underwriters of Refco's securities, violated the federal securities laws in connection with investors' purchases of Refco stock and bonds. Recoveries for the class exceeded $400 million, including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E partners Jay Eisenhofer and Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in "fighting for institutional investors" in courts and other forums across the country and throughout the world.

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $922 million UnitedHealth Group settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, Amalgamated Bank, APG Asset Management, California Public Employees Retirement System, California State Teachers Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, John Hancock, Louisiana State Employees Retirement System, New York City Retirement Funds, Inc., and Service Employees International Union.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator and he has been named by Lawdragon to its annual list of the top 500 lawyers in America each year since 2006. He is also recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. *The National Law Journal* has selected Grant & Eisenhofer as one of the top plaintiffs' law firms in the country for the last ten years in the annual "Plaintiffs' Hot List," earning the firm a place in *The National Law Journal*'s "Plaintiffs' Hot List Hall Of Fame" in 2008. The firm has been selected as a "Most Feared Plaintiffs Firm" by Law360 and "one of the most high-profile shareholder and whistleblower advocates in the country, securing record-high cash settlements." *U.S. News & World Report* has also repeatedly named Grant & Eisenhofer to its list of "Best Law Firms" in the fields of Securities Litigation, Commercial Litigation, and Corporate Law.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in *AFSCME Employees Pension Plan v. American International Group, Inc.*" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practising Law Institute*, July, 2006; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura:

Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004. Mr. Eisenhofer has also authored a number of articles on illiquid and rouge hedge funds, including "Time for Hedge Funds to Become Accountable to Fiduciary Investors," *Pensions & Investments*, April 30, 2012; and "Hedge Funds of the Living Dead," *New York Times Dealbook*, June 4, 2012.

Mr. Eisenhofer serves as a member of the NYU Law School Advisory Board for the Center on Civil Justice, and as co-chair for the Securities Litigation Committee of the American Association for Justice. He is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

## Stuart M. Grant

Stuart M. Grant, co-founder and managing director of Grant & Eisenhofer P.A., is internationally recognized for his extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant was the first attorney to argue the provisions of the PSLRA allowing an institutional investor to be appointed as sole lead plaintiff and has served as lead counsel in six of the seven largest settlements in the history of Delaware Chancery Court.

Among his many accolades, Mr. Grant is consistently ranked in Band 1 of *Chambers USA* as a leading litigator for his work in Delaware Chancery and securities, regulatory and corporate governance litigation. In the 2010 edition, it is noted that Mr. Grant *"covers the full spectrum of personality, and is able to be everything to everyone in a very successful way."* Mr. Grant, who has also been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale-Hubbell, and is recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers.

Mr. Grant has successfully argued on behalf of institutional investors in many groundbreaking corporate governance cases including:

*In re Del Monte Foods Company Shareholders Litigation,* which resulted in an unprecedented and immediate change in lending policy practices among major investment banks regarding the way the banks approach financing transactions in which they represent the seller;

*In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware;

*Teachers' Retirement System of Louisiana v. Aidinoff, et al. and American International Group, Inc.,* the largest derivative shareholder litigation settlement in the history of Delaware Chancery Court;

*UniSuper Ltd., et al. v. News Corporation, et al.*, a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter;

*In re Tyson Foods, Inc.*, which resulted in historic rulings from the Delaware Court of Chancery clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans;

*Teachers' Retirement Systems of Louisiana v. Richard M. Scrushy, et. al.*, which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements;

*In re Cablevision Systems Corp. Options Backdating Litigation* and *In re Electronics for Imaging, Inc. Shareholder Litigation*, both of which held directors and officers of their respective companies accountable for improperly granting backdated options and, most importantly, required the individual defendants to reach into their own pockets to cover a significant portion of the settlement.

Included among Mr. Grant's more notable securities class action representations are: *Gluck, et al. v. Cellstar,* the first allowing an institutional investor to be appointed as lead plaintiff in a securities class action under the Private Securities Litigation Reform Act (PSLRA) and widely considered the landmark on the standards applicable to lead plaintiff/lead counsel practice under the PSLRA; *In re Refco Inc. Securities Litigation,* which resulted in a recovery exceeding $400 million; *In re Safety-Kleen Securities Corporation Bondholders Litigation,* which, after a six-week securities class action jury trial, resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million and settlements with the remaining defendants for $84 million; and *In re Parmalat Securities Litigation,* which resulted in a settlement of approximately $100 million in what the SEC described as "one of the largest and most brazen financial frauds in history."

Mr. Grant serves as Vice-Chairperson of the Delaware Judicial Nominating Commission, as a member of the Board of Trustees for the University of Delaware, and on the Advisory Board for the Weinberg Center for Corporate Governance at the University of Delaware. Mr. Grant was an Adjunct Professor of Law at the Widener University School of Law from 1994-2009, where he taught securities litigation, and is a past trustee of the Delaware Art Museum.

Mr. Grant has authored a number of articles which have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. His articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act"; "*Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation: Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual

PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant was graduated in 1982 *cum laude* from Brandeis University with a B.A. in economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the U.S. District Court for the Southern District of New York. Mr. Grant was an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94), and a partner in the Wilmington office of Blank Rome Comisky & McCauley from 1994 until forming Grant & Eisenhofer P.A. in 1997.

## Jeff A. Almeida

Jeff Almeida is a director at Grant & Eisenhofer practicing in the areas of corporate, securities and complex commercial litigation. Mr. Almeida has represented domestic and foreign institutional investors in prominent securities fraud actions including, *In re Qwest Communications International Securities Litigation; In re Alstom SA Securities Litigation; In re Refco Inc. Securities Litigation; In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation; In re Pfizer Inc. Securities Litigation;* and *In re Global Cash Access Holdings Securities Litigation.* Mr. Almeida has also been actively engaged in derivative and class litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc.,* which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Police Employees Retirement System v. Crawford* (*"Caremark"*), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation,* where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech. In recent years, Mr. Almeida has also represented prominent hedge fund clients in complex commercial litigation involving claims of short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, and insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

## Michael J. Barry

Michael Barry is a director at Grant & Eisenhofer. His practice focuses on corporate governance and securities litigation. He also advises clients on SEC matters. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

Mr. Barry has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which opened the door for shareholders to introduce proposals restricting the ability of boards to enact poison pills; and *CA, Inc. v. AFSCME*, an historic 2008 decision of the Supreme Court of Delaware regarding the authority of shareholders to adopt corporate bylaws. Mr. Barry's case work also includes, among others, *In re Global Crossing Ltd. Securities Litigation*, which resulted in a $448 million settlement; a well-publicized derivative litigation action challenging the terms of the Caremark Rx, Inc. and CVS merger that resulted in a $3.2 billion settlement; and litigation between the Chicago Board of Trade and the Chicago Mercantile Exchange, which produced a $485 million settlement. Each of these cases resulted in substantial reforms to the terms of merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to serving as a frequent guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz Berger & Grossmann (BLBG), where he had litigated complex securities and discrimination class actions for twenty two years.

Mr. Berger's previous experience includes trying two 10b-5 securities class actions to jury verdicts, which were among very few such cases ever tried. He also served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million).

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-

American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger currently serves on the Board of Visitors of Columbia University Law School. Previously, Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003. He also now serves on the Board of GO Project, a not-for profit organization that provides academic support for New York City public school students and he is also on the Board of Grace Church School in New York. He also served on the Board of in Motion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years.

Mr. Berger is a 1976 graduate from Haverford College, and graduated in 1979 from Columbia University School of Law.

### Cynthia A. Calder

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation. More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives. The action was concluded for a settlement of $115 million – the largest such settlement in the history of the Delaware Court of Chancery. Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the UnitedHealth Group derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system. Ms. Calder also recently prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3; "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Charles T. Caliendo**

Charles Caliendo is a director at Grant & Eisenhofer. He represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining Grant & Eisenhofer, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The Investment Protection Bureau: An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

**Nathan A. Cook**

Nathan Cook is a director at Grant & Eisenhofer, focusing on corporate governance, class action and derivative litigation.

Previously, Mr. Cook worked as an associate at the law firm of Abrams & Bayliss LLP (formerly Abrams & Laster LLP) in Wilmington, Delaware. He has obtained substantial experience litigating before the Delaware Court of Chancery and the Delaware Supreme Court and providing corporate advisory services on a variety of matters relating to Delaware law. Mr. Cook also participated in a successful, highly-expedited arbitration involving complex transactional issues.

Mr. Cook co-authored *Frequently Asked Questions, Answers and More Questions about the Business Strategy Immunity*, 856 PLI/Lit 503 (2011), and The Delaware Supreme Court Weighs in on Fiduciary Duties to Creditors, Insights (June 2007).

Mr. Cook is a member of the Richard S. Rodney Inn of Court, the American Bar Association (Business Law Section), the Delaware State Bar Association, and the New York State Bar Association.

Mr. Cook received his J.D. from the University of Virginia in 2005, where he served on the Editorial Board for the Virginia Environmental Law Journal. Following graduation from law

school, Mr. Cook served as a law clerk to the Honorable John W. Noble of the Delaware Court of Chancery. Mr. Cook received a B.A., with distinction, from the University of Virginia in 2002, where he majored in economics and history and was a Jefferson Scholar and an Echols Scholar.

## Robert G. Eisler

Robert Eisler is a director in Grant and Eisenhofer's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases in recent years. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler has served as lead or co-lead counsel in the largest antitrust cases litigated, including, *In re Buspirone Antitrust Litigation*, (which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, *In re Flat Glass Antitrust Litigation*, *In re Municipal Derivatives Antitrust Litigation*, and *In re Chocolate Confectionary Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Linerboard Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, and *In re Publication Paper Antitrust Litigation*.

Mr. Eisler also has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

Mr. Eisler graduated from LaSalle University in 1986, and in 1989 from Villanova University School of Law.

## M. Elizabeth Graham

Elizabeth ("Beth") Graham is a director at Grant & Eisenhofer, leading the firm's complex pharmaceutical and device litigation practice. Since 1989, she has dedicated her practice to complex mass tort and class action litigation.

Ms. Graham's expertise spans the practice areas of mass tort, consumer fraud, product liability, environmental, and employment. She has served as Lead Class Counsel in multi-million dollar cases, has acted as a member of various Plaintiffs' Executive Committees in complex actions, and has prior experience as national defense coordination counsel in product liability litigation.

Notably, Ms. Graham has served as lead counsel in high profile class actions such as *Borman Automotive v. American Honda Motor Corp.* (MDL No. 1069), which resulted in a $435 million settlement; and litigation against Chrysler based on its Minivan Doorlatch failures and ABS brake defects. Ms. Graham served on the Plaintiffs' Steering Committee and represented dozens of victims in the *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation* (MDL No. 1410). She has also represented over one hundred families injured by environmental

contaminants, including radon, arsenic and rocket fuel, resulting in confidential settlements in excess of $25 million. Ms. Graham also has vast experience as a consultant to other mass tort firms that seek her advice in structuring their cases.

Currently, Ms. Graham serves on the Plaintiffs' Steering Committee in the Stryker Hip litigation, and is actively representing injured victims in cases against major pharmaceutical companies and medical device manufacturers.

Prior to her representation of injured individuals and victims of consumer fraud, Ms. Graham worked for large product liability defense firms as national defense counsel in cases such as *In re Silicone Breast Implant Litigation*.

Before joining G&E, Ms. Graham was a partner at several San Francisco area law firms, as well as the President and Co-Founder of RG2 Claims Administration, LLC and a partner at Heffler Claims Group.

## Reuben A. Guttman

Reuben Guttman is a director at Grant & Eisenhofer. His practice involves complex litigation and class actions. He has represented clients in claims brought under the Federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the Worker Adjustment and Retraining Notification Act (WARN), Racketeer Influenced and Corrupt Organizations Act (RICO) and various employment discrimination, labor and environmental statutes. He has also tried and/or litigated claims involving fraud, breach of fiduciary duty, antitrust, business interference and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million was recovered from the oil industry. He also represented one of the six main whistleblowers in litigation resulting in the government's September 2009, $2.3 billion settlement with Pfizer Pharmaceutical. Cases brought by Mr. Guttman under the False Claims Act on behalf of a European whistleblower resulted in a $13 million settlement with a Department of Defense contractor. He is currently lead counsel in three pending False Claims Act cases where the United States Department of Justice has intervened on the side of his whistleblower clients.

Mr. Guttman served as lead counsel in a series of cases resulting in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Cases brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in congressional oversight and changes in procurement practices, and dread disease compensation legislation, affecting the nation's nuclear weapons complex and its workforce. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and/or editor of numerous articles, book chapters, and technical publications and his commentary has appeared in *Market Watch, American Lawyer Media, AOL Government,* and *Accounting Today.* His article, *Pharmaceutical Regulation in the United States; A Confluence of Influences,* was published in Chinese by the *Peking University Public Interest Law Journal,* Vol 1, Page 187 (2010). He is co-author of *Gonzalez v. Hewitt, SEC v. HG Pharmaceutical,* and *U.S. ex Rel Rodriguez v. Hughes* which are case files published by the Emory University Law School Center for Advocacy and Dispute Resolution (2010) and used to train law students and practicing attorneys. He has appeared on *ABC Nightly News,* CNN, Bloomberg News, and has been quoted in major publications including *The Wall Street Journal, The New York Times, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News* and national wire services including the Associated Press, Reuters and Bloomberg.

In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School graduating in 1985 and his Bachelor's Degree from the University of Rochester in 1981. He is a Senior Fellow and Adjunct Professor at the Emory University School of Law Center for Advocacy and Dispute Resolution and has been a Team Leader for Emory Law School's Kessler-Eidson Trial Techniques Program. As part of a U.S. State Department program in conjunction with the Center for Advocacy and Dispute Resolution, he has been one of five visiting professors at Universidad Panamericana in Mexico City training Mexican Judges and practitioners on oral advocacy and trial practice. He is a contributing editor of a soon to be published text book on trial practice for Mexican practitioners.

Mr. Guttman is a faculty member of the National Institute of Trial Advocacy. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Beijing. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws. He is a Co-Founder of Voices for Corporate Responsibility, www.voicesforcorporateresponsibility.com, and founder of www.whistleblowerlaws.com and www.thecorporateinsider.com.

### Geoffrey C. Jarvis

Geoffrey Jarvis, a director at Grant & Eisenhofer, focuses on securities litigation for institutional investors. He had a major role in *Oxford Health Plans Securities Litigation* and *DaimlerChrysler Securities Litigation,* both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial. At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions, and has also played a lead role in class actions against Tyco, Alstom and Sprint.

Mr. Jarvis received a B.A. in 1980 from Cornell University, where he was elected to Phi Beta Kappa. He graduated *cum laude* from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the U.S. Court of Appeals for the Third Circuit.

Mr. Jarvis authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, and co-authored with Jay W. Eisenhofer and James R. Banko, "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004.

### John C. Kairis

John Kairis is a director at Grant & Eisenhofer, where he represents institutional investors in class action litigation, individual "opt-out" securities litigation, and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. He has been a leader of G&E teams that have achieved some of the largest recoveries in securities class action history, and played major roles in the *Tyco*, *Parmalat*, *Marsh & McLennan*, *Hollinger International* and *Dollar General* securities class actions, and opt-out actions in *AOL Time Warner* and *Telxon Corporation*. Among his Delaware Chancery Court litigation experience is a landmark case against HealthSouth, involving a books and records trial under Section 220 of the Delaware General Corporations Law, to obtain certain documents that the corporation refused to produce, which led to a settlement implementing corporate governance improvements, such as HealthSouth's agreement to replace its conflicted directors with independent directors approved by a committee which included the institutional investor plaintiff.

Mr. Kairis has also been instrumental in prosecuting consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch & Lomb, and is currently prosecuting off-label marketing cases brought under the federal False Claims Act and various state counterpart false claims acts. Mr. Kairis currently represents the lead plaintiffs and the class in a securities fraud suit against Merck & Co. and certain of its officers and directors relating to the defendants' alleged suppression of test results of Merck's cholesterol medication Vytorin, the lead plaintiffs in a securities class action against Apollo Group and certain of its officers and directors relating to the defendants' participation in a fraudulent accounting scheme, and the lead plaintiffs in various breach of fiduciary duty cases pending in the Delaware Chancery Court.

Mr. Kairis has authored articles including "Shareholder Proposals For Reimbursement Of Expenses Incurred In Proxy Contests: Recent Guidance From The Delaware Supreme Court," *PLI*, What All Business Lawyers Must Know About Delaware Law Developments 2009 (New

York, NY May 21, 2009) (co-authored with Stuart Grant); "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006; and was the principle writer of an *amicus brief* to the United States Supreme Court on behalf of various public pension funds in the *Merck* case involving the standard for finding that a plaintiff is on "inquiry notice" of potential claims such that the limitations period for pleading securities fraud has commenced.

Mr. Kairis is a 1984 graduate of the University of Notre Dame and a 1987 graduate of the Ohio State University Moritz College of Law, where he was Articles Editor of the *Ohio State Law Journal* and recipient of the American Jurisprudence and John E. Fallon Memorial Awards for scholastic excellence. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc., the Cornerstone West Development Corporation, and the board of the Westover Hills Civic Association. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

### Adam J. Levitt

Adam J. Levitt is a director at Grant & Eisenhofer P.A. and leads the Firm's Consumer Practice Group. He specializes in complex commercial litigation, class action, and mass tort litigation in the areas of consumer protection, antitrust, securities, technology, and agricultural law. Mr. Levitt served as co-lead counsel in two of the largest agricultural and biotechnology class actions in recent years, recovering more than $1 billion in damages for the plaintiffs: *In re Genetically Modified Rice Litigation*, in which Mr. Levitt has obtained settlements exceeding $900 million on behalf of long-grain rice producers and others who suffered losses resulting from contamination of the U.S. rice supply with unapproved, genetically modified seeds; and *In re StarLink Corn Products Liability Litigation*, where he recovered $110 million on behalf of farmers who sustained market losses on their corn crops arising from contamination of the U.S. corn supply with genetically-modified StarLink corn.

Mr. Levitt is "AV" rated by Martindale Hubbell. He has been recognized in *Illinois Super Lawyers* for the past several years, acknowledged by Lawdragon as one of the leading lawyers in America, and has been named "Litigator of the Week" by *American Lawyer Magazine*.

With one of the country's leading consumer litigation practices, Mr. Levitt has successfully served as counsel in numerous class and complex litigation cases at both the state and federal courts, on the trial and appellate court levels. His current cases include several notable consumer actions: *In re Honey Transshipping Litigation; In re Porsche Cars North America Inc., Plastic Coolant Tubes Product Liability Litigation*; *In re Stryker Rejuvenate and ABG II Hip Implant* Litigation; *Belville v. Ford Motor Company*; *In Re: Dial Complete Marketing and Sales Litigation*; and *In re Wesson Oil Marketing and Sales Practices Litigation*.

Mr. Levitt serves as President of the Class Action Trial Lawyers, a division of the National Trial Lawyers, of which he is an Executive Committee Member. Since 2005, Mr. Levitt has served as an elected member of the American Law Institute and a member of the American Association for Justice. Mr. Levitt sits on the Board of Advisors for the Chicago chapter of the American Constitution Society for Law and Policy. In 2013, he became an Advisory Board Member of the

Institute for Consumer Antitrust Studies. Mr. Levitt is also a peer reviewer of articles submitted to AAJ's *Trial* magazine.

Mr. Levitt has authored numerous articles on class action litigation and consumer protection; his most recent publications include: "Fees Obliterate Managed Futures Fund Profits," *Financial Advisor*; "Calculating Damages in Securities Class Actions," *TRIAL*, Vol. 49, No. 6.; "The Role and Function of Corporate Representatives at Trial," *The Trial Lawyer*, Vol. II, No. IV; "Multidistrict Litigation Practice: The Function and Shifting Focus of the JPML in Class Action and Other 'Bet the Company' Litigation," chapter from *Straight from the Top: Case Studies in the World of Litigation*; "Sticky Situations in Mass Tort Settlements," *TRIAL*, Vol. 48, No. 11; "CAFA and Federalized Ambiguity: The Case for Discretion in the Unpredictable Class Action," 120 *Yale Law Journal Online* 231; and "Taming the Metadata Beast," *New York Law Journal*.

In addition to his writings, Mr. Levitt is a frequent speaker on topics of consumer protection, multidistrict litigation, biotechnology, corporate governance, securities litigation, and Internet privacy. Mr. Levitt has also testified before the Illinois Supreme Court Rules Committee on class action practice and related issues. In addition to chairing Law Seminars International's "Litigating Class Actions" annual conference in Chicago, Mr. Levitt's recent speaking engagements include:

- "Recent Developments in Class Action Settlement Jurisprudence," American Association for Justice, 2013 Annual Convention;
- 'Manifestation of Defect That Causes Actual Injury in Economic Defect Related Class Actions," 2013 National Consumer Class Action Litigation & Management Conference;
- "Disaster Averted, Mass Tort Resolved – Settling Mass Tort Disaster Cases," American Bar Association, Section of Litigation Annual Conference;
- "Current Trends in Consumer Litigation," Grant & Eisenhofer Consumer Litigation Breakfast Briefing;
- "Consumer Class Actions in a Post-Concepcion World," The Shifting Landscape of Class Litigation;
- "Deposing the Corporate Machine: How to Win Against the Best-Schooled Corporate Executive," Trial Skills Retreat: Empowering Witnesses Conference by 360 Advocacy Institute;
- "Fighting the Class Action Battle: What Every Lawyer Needs to Know About Filing the Class Certification Motion," Trial Lawyers Summit;
- "The JPML's 1404/1407 Shift and the End of Reflexive Transfer," Aggregate Litigation After Class Actions Conference of Law Seminars International;
- "Trial Lawyers and Class Actions: Protecting Consumers and Elevating Your Practice," Trial Lawyers Summit;
- "Lead Plaintiff 'Pickoffs', Offers of Judgment, Moving to Dismiss Class Allegations, and Other Early Attacks on the Class Process," Litigating Class Actions Conference of Law Seminars International;
- "MERS Litigation: Justice for Illinois Counties," Illinois Association of County Clerks & Recorders – Annual Conference
- "Class Actions in Medical Device and Pharmaceutical Litigation," HarrisMartin TVM/Actos Litigation Conference

Mr. Levitt graduated *magna cum laude* from Columbia University in 1990 and received his J.D. from Northwestern University School of Law in 1993.

## Megan D. McIntyre

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial, and she played a lead role in *In re Refco Inc. Securities Litigation*, which culminated in recoveries exceeding $400 million. Ms. McIntyre was also a member of the litigation teams that represented the plaintiffs in two cases whose settlements rank among the largest in the history of the Delaware Court of Chancery: *In re El Paso Corp. Shareholder Litigation*, which settled for $110 million, and *American International Group, Inc. Consolidated Derivative Litigation*, which settled for $90 million.

In addition to her work on behalf of investor plaintiffs in class and derivative litigation, Ms. McIntyre has represented institutional investors who have opted out of federal securities class actions to pursue separate actions, resulting in recoveries that exceeded what they would have received as class members. Ms. McIntyre has also successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions, and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and on September 13, 2012 she was featured as "Litigator of the Week" in *The AmLaw Litigation Daily* for her work in the *In re El Paso Corp. Shareholder Litigation*.

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law.

## Gordon Z. Novod

Gordon Z. Novod is a director at Grant & Eisenhofer P.A., focusing his practice on corporate restructuring and creditors' rights. He has more than twelve years of experience representing *ad hoc* and official committees, distressed investors, lenders, indenture trustees, trade creditors, and other parties in some of the most complex landmark restructurings.

Mr. Novod's industry experience spans the automotive, chemical, construction, energy, entertainment, gaming, manufacturing, media, and retail sectors. He has negotiated, drafted, and litigated all aspects of Chapter 11 plans of reorganization, valuation, and plan confirmation proceedings, contested debtor-in-possession financing and cash collateral use, the pursuit of fraudulent conveyance actions, and other matters involving bankruptcy motion and litigation practice. He also has extensive experience reviewing, advising clients on, and litigating with respect to corporate and credit documents, including indentures, credit agreements, inter-creditor

agreements, security agreements, and other lending documents concerning corporate debt and complex capital structures.

Mr. Novod prides himself on providing high quality advocacy to clients, keeping their business objectives in mind, thereby enabling him to build lasting relationships. He is also able to grasp complex legal and business issues in order to craft and implement innovative, yet practical solutions to maximize value for clients.

On numerous occasions, Mr. Novod has been acknowledged for his work as a restructuring attorney. In 2011, Law360 called him one of the "Rising Stars" in restructuring and "one of the five bankruptcy attorneys under 40 to watch." He was also named a finalist in the M&A Advisor's "40 under 40." The following year, he was recognized as a "Winner of the 2012 40 Under 40 East M&A Advisor Recognition Awards" and New York Super Lawyers – Bankruptcy, "Rising Stars." In 2013 and 2014, he was selected to New York Metro Super Lawyers in Bankruptcy. In addition, he serves on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

Prior to joining G&E, Mr. Novod was a partner in the bankruptcy & corporate restructuring group at Brown Rudnick in New York. He also formerly practiced in the corporate restructuring and bankruptcy group at Kramer Levin Naftalis & Frankel LLP.

Mr. Novod's prominent engagements include:

- Tribune Company (indenture trustee)
- Central European Distribution Corporation (ad hoc committee of convertible noteholders)
- Lyondell Chemical Company (creditors' committee)
- Herbst Gaming, Inc. (creditors' committee)
- Lehman Brothers (ad hoc consortium of claimholders of Lehman Brothers Special Financing, Inc.)
- Green Valley Ranch Gaming, LLC (ad hoc committee of second lien lenders)
- Palm Harbor Homes, Inc. (indenture trustee)
- Equisearch Services, Inc. (trade creditor)
- General Motors Corporation (n/k/a Motors Liquidation Company) (creditors' committee)
- Charter Communications, Inc. (ad hoc first lien lenders)
- Midway Games, Inc. (secured lender)
- Bethlehem Steel Corp. (creditors' committee)
- WCI Steel, Inc. (ad hoc noteholders' committee and indenture trustee)
- Delphi Corp. (trade creditor and member of the creditors' committee)
- Grace Industries, Inc. (creditors' committee)
- Wave Wireless Corp. (secured lender)
- Diomed, Inc. (licensor and chairman of the creditors' committee)
- TransCare Corp. (creditors' committee)
- Buffets Holdings, Inc. (ad hoc noteholders' committee)
- ASARCO LLC (majority bondholders)
- Bridgeport Holdings, Inc. (Micro Warehouse, Inc.) (debtors)
- WestPoint Stevens, Inc. (second lien agent)

Mr. Novod has lectured on indenture analysis and fraudulent conveyance litigation.

**Linda P. Nussbaum**

Linda Nussbaum is a director at Grant & Eisenhofer and leads the antitrust practice. Ms. Nussbaum is nationally recognized for her representation of class and individual plaintiffs in antitrust and pharmaceutical litigation. Her experience prior to Grant & Eisenhofer was as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars: *In re Microcrystalline Cellulose Antitrust Litigation; Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co., et al. (Taxol Antitrust Litigation); North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co. (Platinol Antitrust Litigation); In re Children's Ibuprofen Oral Suspension Antitrust Litigation; In re Relafen Antitrust Litigation; In re Plastics Additives Antitrust Litigation; In re Remeron Antitrust Litigation; Meijer, et al. v. Warner Chilcott Holdings Company, III, Ltd., et al. (Ovcon Antitrust Litigation);* and *In re Lorazepam & Clorazepate Antitrust Litigation.*

Recently resolved direct purchaser class cases in which Ms. Nussbaum served as lead counsel include: *In re Puerto Rican Cabotage Antitrust Litigation; In re DDAVP Direct Purchaser Antitrust Litigation; Meijer Inc. & Meijer Distribution, Inc. v. Abbott Laboratories (Norvir); Meijer, Inc., et al. v. AstraZeneca Pharmaceuticals LP, et al. (Toprol), Rochester Drug Co-Operative, et al. v. Braintree Laboratories, Inc.,* and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company, et al. (Doryx).*

Current cases in which Ms. Nussbaum serves as lead counsel include *Duncan Galvanizing Corporation v. The London Metal Exchange, Ltd, et al.; In re Photochromic Lens Antitrust Litigation; Adriana M. Castro, M.D. v. Sanofi Pasteur Inc.; In re Aluminum Warehousing Antitrust Litigation and In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation. In* addition, she serves on the steering and/or executive committees in *In re Lithium-Ion Batteries Antitrust Litigation; In re MF Global Holdings LTD Investment Litigation; In re Lidoderm Antitrust Litigation; In re Aggrenox Antitrust Litigation and In re Pool Product Distribution Market Antitrust Litigation.* Ms. Nussbaum also represents large corporate entities in individual antitrust actions including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation; and CVS Pharmacy v. American Express Travel Related Services, et al.*

Ms. Nussbaum was selected "Litigator of the Week" by the *AmLaw Litigation Daily* on April 2, 2010 for her role in the trial of *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer.* She was named as a finalist for Public Justice Foundation's 2011 Trial Lawyer of the Year award.

Ms. Nussbaum has lectured extensively about various aspects of antitrust law. Most recently, on November 5, 2012, she participated in a panel for The American Bar Association on FDA Citizen Petitions and Noerr Immunity. Her recent publications include: "The Fifth Annual Future of Antitrust Enforcement Conference" presented at the American Antitrust Institute's Fifth Annual Symposium on December 7, 2011; "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and "The Hatch-

Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," presented at a panel on "Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry" at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009. Her article "Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future" was recently published in the *Rutgers Law Journal*.

**James J. Sabella**

James Sabella is a director at Grant & Eisenhofer. He has over thirty-five years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and underwriters. He has also handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Mr. Sabella has represented the lead plaintiffs in numerous major cases that have resulted in large recoveries, including the General Motors securities litigation, where the settlement was in excess of $300 million, and the Refco securities litigation, where the recovery was in excess of $400 million. He also represented the lead plaintiffs in the Parmalat securities litigation, which resulted in landmark opinions establishing that the international firms that coordinate the audit services that audit firms conduct in various countries can be held liable for the conduct of such local audit firms.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

**Mary S. Thomas**

Mary Thomas is a director at Grant & Eisenhofer. She spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas has successfully represented institutional investors in class action securities and shareholder derivative litigation. Notably, Ms. Thomas represented the lead plaintiffs in the Marsh & McLennan securities litigation, which resulted in a $400 million settlement. Representative of Ms. Thomas' experience in Delaware Chancery Court is her successful representation of investors in the ACS shareholders litigation.

Ms. Thomas served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate. She co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005) and was one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook.*

Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.

## Michael E. Criden

Michael E. Criden is of counsel at Grant & Eisenhofer. He is an experienced trial lawyer who devotes a substantial amount of his practice to antitrust securities and consumer fraud class action litigation, securities and broker misconduct litigation and complex commercial litigation.

Mr. Criden is nationally recognized in the field of securities arbitration. On behalf of approximately three thousand individual investors in various limited partnerships, Mr. Criden recovered over $100 million from major brokerage firms such as Dean Witter, Prudential, Paine Webber and Merrill Lynch. Mr. Criden also has considerable experience in securities and other class actions involving consumer fraud and antitrust matters. See, e.g., *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995). In addition, Mr. Criden was co-lead counsel in *Shea v. New York Life Insurance Co.*, No. 96-0746-Civ-Nesbitt (S.D. Fla.), wherein investors in limited partnerships received a full refund of their investment, nearly $200 million.

In October 2003, Mr. Criden's firm, as Lead Counsel in *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co. and American Bioscience*, No. 1:01CV01295 (D.D.C.), an antitrust class action, recovered $15,000,000 in a settlement for a class of third-party payors. In February 2004, Mr. Criden's firm, as Lead Counsel, recovered $9,708,000 in *Johnson v. National Western Life Insurance Co.*, No. 01-032012-CP (Mich. Cir. Ct.), a consumer-fraud class action wherein it was alleged that National Western was selling inferior annuity products to the elderly. In recent years, Mr. Criden has been instrumental in recovering additional millions of dollars in several antitrust and consumer fraud cases. See, e.g., *In re Buspirone Antitrust Litig.*, (S.D.N.Y.) ($90,000,000); *Ivax v. Aztec Peroxides*, No. 02-0593 ($24,000,000); *Best v. Wilmington Trust Co.*, No. 99-889-Civ-Jordan (S.D. Fla.) ($3,225,000); and *Gregersen v. One Int'l Assocs Limited Partnership*, C.A. No. 17274 (Del. Ch.) ($2,000,000). Mr. Criden's firm also was Lead Counsel for Third-Party Payors in *In re Remeron Antitrust End-Payor Antitrust Litigation*, responsible for allocating a $36 million settlement fund with several State Attorneys General who represented consumers and state agencies.

Currently, Mr. Criden, as a member of the Plaintiffs' Steering Committee, is litigating *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663 (D.N.J.); see also *In re: DDAVP Indirect Purchaser Litig.*, No. 05-2237 (CLB) (S.D.N.Y.) (Co-Lead Counsel); *In re Puerto Rican Cabotage Antitrust Litig.* (Steering Committee).

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer. He has represented institutional investors and consumers in securities and consumer class actions worldwide. In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement. The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation. His lectures include: the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago. After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies. He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

**William A.K. Titelman**

William Titelman is of counsel at Grant & Eisenhofer. His practice focuses on plaintiff securities litigation, representing public pension funds, union and Taft-Hartley funds. Prior to joining Grant & Eisenhofer, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm.

He has been actively involved in government, law and public policy throughout his career. Mr. Titelman is involved in *In re Fannie Mae Securities Litigation*, *In re Royal Dutch/Shell Transport Securities Litigation*, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, *In re Cigna Corp. Securities Litigation*, and *In re HealthSouth Stockholder Litigation*. He organized and served as counsel for Amici Curiae states and public pension funds in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, both before the United States Supreme Court, and *In re Dynex Capital Securities Litigation*, No. 06-2902-cv, before the Second Circuit. The briefs in these three cases were filed on behalf of eight states and five public pension funds concerning critical issues of investor protection and securities litigation.

Mr. Titelman began his career in the early 1970's serving in several key positions in Pennsylvania state government, including Director of Motor Vehicles and Special Assistant to the Governor for Government Management. After graduating from The Dickinson School of Law in 1980, Mr. Titelman led the Pennsylvania Trial Lawyers Association for nearly a decade in its efforts to protect and expand individual rights, including shareholder rights, and drafted key provisions of Pennsylvania's automobile insurance and consumer safety laws. Subsequently, he became a partner at a leading Pennsylvania law firm, where he served on the firm's Board of Directors and chaired both its Harrisburg office and its Administrative Law and Government Affairs Practice Group. One of his major clients was the Pennsylvania Public School Employees' Retirement System (PSERS).

In 1988, Mr. Titelman led the successful enactment of a new Pennsylvania Business Corporation Law. From 1989 to 1990, he led a national campaign organizing major public pension funds and other institutional investors, shareholder rights activists, former SEC Commissioners, leading economists and deans of business and law schools to oppose and successfully amend Pennsylvania Senate Bill 1310.

*The Wall Street Journal* described this legislation as the most onerous anti-shareholder, management-protection bill ever proposed in the United States. Mr. Titelman served as General Counsel to both the Pennsylvania Public School Building and Higher Educational Facilities Authorities. He went to serve on as Executive Vice President of Managed Care and Public Affairs at Rite Aid Corporation, where he suffered substantial losses as a victim of one of the nation's largest securities frauds. He subsequently brought and settled an individual action for securities fraud against Rite Aid.

Mr. Titelman is a graduate of the Washington & Jefferson College and The Dickinson School of Law.

## Thomas V. Ayala

Thomas V. Ayala is senior counsel at Grant & Eisenhofer, focusing on complex pharmaceutical and medical device litigation. Mr. Ayala has handled all phases of personal injury litigation from commencement through trial and appeals. He has also assembled and worked with numerous interdisciplinary teams of medical and scientific expert witnesses to support clients' legal claims, and he has served as first-chair cross-examiner of adversarial experts and other witnesses in product liability litigation. Mr. Ayala is actively representing injured victims in cases against major pharmaceutical companies, medical device manufacturers, and manufacturers in other industries.

Prior to his representation of injured individuals and victims of consumer fraud, Mr. Ayala worked for an international firm serving as national counsel in numerous mass tort proceedings, including pharmaceutical, medical device, environmental exposure, and other complex personal injury proceedings, including multidistrict litigation proceedings.

Immediately following law school, Mr. Ayala was a law clerk to Judge Eduardo C. Robreno of the U.S. District Court for the Eastern District of Pennsylvania, where he assisted the judge in presiding over seven jury trials and was actively involved in the administration of matters arising under federal and state law.

Mr. Ayala earned his J.D., *summa cum laude*, from Villanova University School of Law in 2004, where he served as editor-in-chief of the *Villanova Law Review* and was named to the Order of the Coif. While at Villanova, Mr. Ayala served as an intern to the late Judge Charles R. Weiner. From 2010-2014, he has been listed as a Rising Star in the *Super Lawyers* and *Philadelphia* magazines.

## Peter A. Barile III

Pete Barile is senior counsel at Grant & Eisenhofer. He has more than a decade of experience litigating federal multidistrict antitrust class actions and other complex matters from both sides of the "v.," providing him insight into how the other sides work, benefitting clients he represents, whether plaintiff classes, opt-outs, individual competitors, or defendants. In addition to his work in federal district courts, Mr. Barile has substantial experience before the Judicial Panel on Multidistrict Litigation, and with federal appeals, including cases before the United States Supreme Court. Prior to joining Grant & Eisenhofer, Mr. Barile practiced in New York and Washington, with law firms renowned for their leading antitrust practices.

Among his current matters are: *In re Aluminum Warehousing Antitrust Litigation* (J.P.M.L.); *In re Cotton Commodities Litigation* (S.D.N.Y.); *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.); *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.); *In re High Tech Employees Antitrust Litigation* (N.D. Cal.); *In re LIBOR-Related Financial Instruments Antitrust Litigation* (S.D.N.Y.); *In re Menactra Antitrust Litigation* (D.N.J.); *In re Neurontin Sales & Marketing Practices Litigation* (D. Mass.); *In re Nexium Antitrust Litigation* (D. Mass.); *In re Photochromic Lenses Antitrust Litigation* (M.D. Fla.); *In re Skelaxin Antitrust Litigation* (E.D. Tenn.); *In re WTI Crude Oil Commodities Litigation* (S.D.N.Y.).

Mr. Barile's reported cases include: *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) (lead counsel for *amicus curiae* Consumer Federation of America in landmark antitrust case on resale price fixing); *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) (represented *amicus curiae* in appeal concerning the Foreign Trade Antitrust Improvements Act (FTAIA)); *Metallgesellschaft AG v. Sumitomo Corp. of America*, 325 F.3d 836 (7th Cir. 2003) (represented opt-out plaintiffs in a leading case on the FTAIA concerning international commodities trading); *In re Online DVD Rental Antitrust Litigation*, 2010 U.S. Dist. LEXIS 138558 (2010) (obtained certification of 40 million member class of subscribers to Netflix against Netflix and Wal-Mart); *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 593 F. Supp. 2d 29, *aff'd*, 602 F.3d 444, *cert. denied*, 131 S. Ct. 822 (2010) (obtained dismissal, affirmance, and denial of *certiorari* in an indirect purchaser price fixing class action against major national railroads); *In re LTL Shipping Services Antitrust Litigation*, 2009 U.S. Dist. LEXIS 14276 (N.D. Ga. 2009) (obtained dismissal of price fixing class action brought against major trucking companies); *In re Southeastern Milk Antitrust Litigation*, 555 F. Supp. 2d 934 (2008) (defeated motion to dismiss price fixing and monopolization claims brought on behalf of classes of dairy farmers); *In re Medical Residents Antitrust Litigation*, 339 F. Supp. 2d 26 (D.D.C. 2004), *aff'd*, 2006 U.S. App. LEXIS 14079 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 1156 (2007) (obtained dismissal of price fixing class action alleging conspiracy in the hiring and compensation of medical residents); *Omnicare, Inc. v. United Health Group, Inc.*, 524 F. Supp. 2d 1031 (N.D. Ill. 2007) (prosecuted precedent-setting private action for pre-merger gun jumping conspiracy under Section 1 of the Sherman Act).

Mr. Barile's *pro bono* work includes: *Giles v. State of California* 554 U.S. 353 (2008), in which he served as lead counsel in the U.S. Supreme Court for *amicus curiae* Battered Women's Justice Project, in a case concerning the scope of the Confrontation Clause of the United States Constitution.

Mr. Barile has published numerous articles and served as a panelist or speaker on antitrust issues. His work has been cited by the Federal Trade Commission and the Antitrust Modernization Commission, as well as leading academics and practitioners. He has authored or co-authored the following: *Milton Handler, Dean of Antitrust*, in Yale Biographical Dictionary of American Law (2010); *Pattern Exception to Sham Litigation*, Antitrust Exemptions & Immunities Update (2009); *Private Right of Action for Pre-Merger Gun Jumping Recognized*, Antitrust Litigator (2008); *Supreme Court Confirms Viability of Predatory Bidding Claims*, Business Law Today (2007); *Antitrust Damages Resulting from Meritorious Patent Litigation*, Antitrust Exemptions & Immunities Update (2007); *Antitrust's New Big Brother, Business Law Today* (2006); *Antitrust in Wartime*, Antitrust (2003); *Health Care Providers and a Market Participation Exception to State Action Immunity*, Antitrust Report (2000); *The Microsoft Case*, Connecticut Law Review (Symposium Editor) (1999). He has contributed to the following books and treatises: Indirect Purchaser Antitrust Litigation Handbook (forthcoming, 2014); Antitrust Law Developments (Seventh) (2012); Annual Review(s) of Antitrust Developments (2008-11); Antitrust & Trade Associations (2009); Antitrust & International Intellectual Property Licensing (2008); Antitrust Law Developments (Sixth) (2007); Annual Review(s) of Antitrust Developments (2005-06); Unfair Trade Practices (2003). His speaking engagements include: Panelist, ABA, Sham Litigation: Claiming and Defeating Antitrust Immunity (2011); Panelist, ABA, Fundamentals of Antitrust Exemptions & Immunities (2010); Moderator, ABA, Now the Feds Can Wiretap Suspected Antitrust Offenders (2006); Introduction, The Microsoft Case, Connecticut Law Review Symposium (1999).

Mr. Barile is active in the antitrust bar, having held a number of leadership posts in the ABA and other bar associations. He currently serves on the Advisory Board of the Loyola Institute for Consumer Antitrust Studies. He is a member of the Competition Editorial Advisory Board of *Law360*, a leading legal publication. Mr. Barile graduated from the University of Connecticut in 1991 with a bachelor of arts in English, and received his J.D. from the University of Connecticut School of Law in 1999, *magna cum laude*.

**Traci L. Buschner**

Traci Buschner is senior counsel at Grant & Eisenhofer. A former state prosecutor, Ms. Buschner has spent over 15 years representing plaintiffs in complex litigation ranging from class actions to government contract fraud. She has been involved in multi-million dollar recoveries on behalf of workers asserting claims under numerous federal statutes and has handled some of the largest successful False Claims actions, bringing billions of dollars to the United States Government. In the following, Ms. Buschner represented:

> The lead whistleblower, Meredith McCoyd, in a False Claims Act case against Abbott Laboratories, resulting in a settlement of over $1.5 billion in 2012. The case involved Abbott's illegal efforts to promote an anti-seizure medication, Depakote, through off-label marketing, misbranding and paying physicians to write prescriptions. The settlement was one of the largest recoveries by the United States government under the False Claims Act against a pharmaceutical company.

> The lead whistleblowers in a False Claims Act case against Wyeth Pharmaceuticals, a subsidiary of Pfizer, resulting in a $257.4 million settlement in 2013. The settlement agreement outlined the company's efforts – for over a decade – to unlawfully market a powerful immunosuppressant drug Rapamune, used to treat patients who have undergone kidney transplants.

> A former sales manager in a False Claims Act case against Amgen, Inc., culminating in a settlement of $24.9 in 2013. The settlement agreement charged that Amgen paid kickbacks, in the guise of rebates, to long term care pharmacies in exchange for switching nursing home patients from a competitor drug to Aranesp and encouraged pharmacists to recommend the drug for uses outside the drug's FDA label.

> A nursing professional and former Sales Manager in a False Claims Act case resulting in a $1.04 billion settlement against GlaxoSmithKline ("GSK") in 2012. Ms. Graydon was one of the relators who alleged that GSK made false and misleading statements about Advair's safety and efficacy, thus enabling false or fraudulent claims to Medicare, Medicaid, and other reimbursement programs.

> One of the six main whistleblowers in a False Claims Act litigation against Pfizer, Inc., which in 2009 resulted in the Government's recovery of $2.3 billion.

Prior to joining Grant & Eisenhofer, she was an attorney with the Washington, DC office of one of the nation's largest personal injury and labor firms and also practiced with an Austin, Texas firm where she represented victims of asbestos exposure.

Ms. Buschner has represented some of the nation's largest labor unions and their members. On behalf of the Oil, Chemical & Atomic Workers International Union (OCAW), AFL-CIO, Ms. Buschner was actively involved in environmental litigation which led to Secretary of Energy, William Richardson, canceling a project to recycle radioactive nickel at the Oak Ridge, Tennessee K-25 Nuclear Weapons Complex. The documentation of her efforts to expose faulty government contracting at Department of Energy Nuclear weapons sites was published in The Environmental Forum, Volume 17, No. 6, November/December 2000.

Ms. Buschner has co-authored two articles with colleague Reuben A. Guttman: "Patients suffer from Drug Industry's Chronic Greed," Wall Street Journal MarketWatch (August 7, 2013) and "Taking the Next Step in Pharma Fraud," American Constitution Society Blog (May 8, 2012). Ms. Buschner was recognized, by *Washingtonian Magazine*, as a top Whistleblower Lawyer. Her work on the Abbott False Claims Act case at Grant & Eisenhofer was featured in *The National Law Journal,* "Plaintiff's Hot List" (2011-2012).

Ms. Buschner currently serves on American Association for Justice's (AAJ) Membership Committee. She is a member of AAJ's Qui Tam section, a member of the Trial Lawyers Association of Metropolitan Washington, D.C. (TLA-DC), the American Constitution Society (ACS), and the National Employment Lawyer's Association (NELA).

She has also served as a faculty member (2011 and 2012) for Emory University Law School's Trial Techniques Program. Ms. Buschner graduated from Miami University in 1990, and received her J.D. from the University of Louisville in 1995.

**Deborah A. Elman**

Deborah Elman is a senior counsel at Grant & Eisenhofer. Ms. Elman focuses on securities fraud and derivative cases at Grant & Eisenhofer. Prior to joining Grant & Eisenhofer as an associate, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at a leading New York law firm.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce* and received the Horowitz Graduate Student Paper Prize, the National Association of Women Lawyers Law Student Achievement Award and the School of Law Community Service Award. She received a Masters of Public Health degree in 1997 from Columbia University, where she graduated *cum laude* with a Bachelor of Arts degree in 1995.

**David T. Fischer**

David Fischer is senior counsel at Grant & Eisenhofer. He has spent over a decade representing plaintiffs and defendants in complex litigation and antitrust litigation. Mr. Fischer's complex litigation practice has involved federal and state civil, criminal and administrative fraud

investigations and litigation. He has been involved in numerous cases involving multi-million dollar recoveries in False Claim Act actions.

Mr. Fischer represented the lead whistleblowers in *qui tam* action under the False Claims Act alleging fraud by a Merck-Medco, national pharmacy benefit management company ("PBM")a related to services performed for federal health plans. The Government intervened in the case, which was litigated aggressively for several years, and which was settled for approximately $185 million just prior to summary judgment/trial.

Mr. Fischer is also an experienced antitrust litigation attorney, has been counsel in two antitrust trials and has defended companies facing Federal Trade Commission (FTC) merger investigations. In 2005, he helped obtain a multi-million jury verdict on behalf of Health Care Service Corporation (HCSC) in the first indirect-purchaser antitrust case to proceed to trial (Federal Court, District of Columbia). That lawsuit stemmed from a generic pharmaceutical company's anticompetitive conduct in the markets for lorazepam (generic equivalent of Ativan®) and clorazepate (generic equivalent of Tranxene®). After HCSC opted out of an underlying class settlement, and after several additional years of litigation, the case was tried to verdict in a month-long jury trial. Following verdict, the damages award for Plaintiffs was trebled and enhanced by the Court to nearly $80 million.

Mr. Fischer has published numerous articles and served as a panelist or speaker on False Claims Act and antitrust issues. His speaking engagements include: "Reimbursement and False Claims Act Fundamentals," ABA Health Law Section (May 19, 2011, February 7, 2013); "In-House Counsel Update," ABA Section of Antitrust Law Corporate Counseling Committee (June 2, 2011); "False Claims Act Changes and Challenges," Department of Energy Contractor Attorneys' Association's (DOECAA) Spring Conference (May 13, 2010); "The Government's Crackdown on Clinical Research Misconduct," Drug Information Association's Liability Risks in Clinical Trials Program (February 25, 2010); and "Substantive and Procedural Motions," District of Columbia Bar Association CLE Program Pre-Trial Skills Series (October 22, 2009, October 29, 2010, October 20, 2011, November 29, 2012, and November 13, 2013). He has authored or co-authored the following: *Digital evidence searches in competition investigations: Best Practices for effective fundamental rights*, 4-2009 Concurrences, November 2009; *Dr. Miles: Will The Supreme Court Find a Cure?*, The Antitrust Source, February 2007; and *Cardizem CD®, K-Dur®, Plavix® and OxyContin®: Have We Entered the Endgame of Antitrust Uncertainty Towards Pharmaceutical Patent Litigation Settlements?*, Health Lawyers Weekly, December 15, 2006.

Mr. Fischer is active in the health care and antitrust bars, having held a number of leadership posts in the ABA. He is currently the vice chair of the ABA Section of Health Law's Healthcare Litigation and Risk Management Interest Group. He was also on the Planning Committee for, and a speaker at, the ABA's False Claims Act and Qui Tam Trial Institute (June 5-7, 2013).

Mr. Fischer's *pro bono* work has included representing disabled veterans and individuals in neglect and guardianship cases.

Mr. Fischer graduated from Miami University in 1996 with a Bachelor of Arts in English Literature and Political Science, and received his J.D. from the Georgetown University Law Center in 1999. Prior to joining Grant & Eisenhofer, Mr. Fischer worked in Washington D.C. for Shook, Hardy & Bacon where he frequently litigated health care *qui tam* cases.

## Christine M. Mackintosh

Christine Mackintosh is a senior counsel at Grant & Eisenhofer, practicing in the areas of corporate and securities litigation. She has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery and in securities fraud class actions in federal courts throughout the country.

Ms. Mackintosh has played significant roles in several landmark actions challenging mergers and acquisitions in the Delaware Court of Chancery, including *In re Del Monte Foods Company Shareholder Litigation*, which resulted in an $89.4 million recovery for the class, and *In re El Paso Corporation Shareholder Litigation*, which resulted in a $110 million recovery for the class. Ms. Mackintosh also played a significant role in *American International Group, Inc. Consolidated Derivative Litigation*, which resulted in a $90 million recovery, one of the largest recoveries in a shareholder derivative action in the history of the Delaware Court of Chancery.

Ms. Mackintosh has also played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors, including *In re Refco Securities Litigation* (exceeding $400 million) and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* ($215 million), and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits, including representation of investors who opted out of *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*. Outside of the United States, Ms. Mackintosh was a member of the team that secured the historic $450 million pan-European settlement in the *Royal Dutch Shell* case and is currently representing numerous institutional investors in litigation against Royal Bank of Scotland in the United Kingdom. Ms. Mackintosh currently serves as co-lead counsel in *In re JP Morgan Chase & Co. Securities Litigation*.

Prior to joining Grant & Eisenhofer, Ms. Mackintosh practiced in the Philadelphia office of an international law firm, where she practiced in the areas of commercial, securities, and insurance recovery litigation.

A *magna cum laude* graduate of St. Joseph's University, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series*. "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

## Amy Miller

Amy Miller is senior counsel at Grant & Eisenhofer. Ms. Miller focuses on merger & acquisitions, corporate governance litigation, and derivative cases at Grant & Eisenhofer.

Ms. Miller represents shareholders seeking accountability from corporate management on issues ranging from breach of fiduciary to corporate waste. While litigating these actions, she has secured significant monetary recoveries and corporate governance reforms in cases including *In*

*re News Corporation Shareholder Derivative Litigation, In re El Paso Corporation Shareholder Litigation,* and *In re ACS Shareholder Litigation.*

Prior to joining Grant & Eisenhofer, Ms. Miller worked at two prominent New York law firms. Ms. Miller also held an externship for the Honorable George B. Daniels, United States District Judge, in the United States District Court for the Southern District of New York, participating in all aspects of federal trial court practice.

Ms. Miller graduated *summa cum laude* in 2001 from New York Law School, where she was a Member & Articles Editor for the *New York Law School Law Review.* She graduated *magna cum laude* in 1995 with a Bachelor of Arts degree in psychology.

**Brenda F. Szydlo**

Brenda Szydlo is senior counsel at Grant & Eisenhofer. Ms. Szydlo has more than 25 years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities litigation, accountants' liability, and consumer protection litigation.

Ms. Szydlo has represented institutional and individual investors in class and private actions that have resulted in significant recoveries, such as *In re Refco Securities Litigation*, where the recovery was in excess of $400 million. She also represented a number of institutional and individual investors who opted out of *In re Bank of America Corp. Securities, Derivative & ERISA Litigation.* Ms. Szydlo also played an important role in obtaining a preliminary injunction in *In re Del Monte Foods Co. Shareholder Litigation*, a Delaware Chancery Court action in which shareholders challenged a merger transaction.

Prior to joining Grant & Eisenhofer, Ms. Szydlo served as counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and general commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

**Diane Zilka**

Diane Zilka is senior counsel at Grant & Eisenhofer. For over a decade, Ms. Zilka has been in the forefront of the Firm's successful prosecution of securities fraud and corporate governance cases. As a member of numerous trial teams, Ms. Zilka has played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors and public pension plans. Representative cases include: *Safety Kleen Bondholder Litig.*, more than $276 million in judgments and settlements; *In Re Merck & Co. Vytorin/Zetia Sec. Litig.*, $215 million for investors—among the largest for a securities fraud case without a government finding of corporate wrongdoing; *In Re News Corp. S'holder Litig.*, $139 million recovered for the company—one of the largest cash recoveries in the history of derivative shareholder litigation— and which resulted in significant corporate governance reforms; *Parmalat Securities Litig.*—the

European "Enron" resulting in $110 million recovery; *TRSL v. AIG*, $115 million recovered for the company; *In Re Appraisal of Metromedia Int'l Group, Inc.*, a $188 million judgment in what was only the second appraisal action of preferred shares in the history of Delaware Chancery Court. In the corporate governance arena, Ms. Zilka's cases have addressed such cutting-edge issues as the propriety of "proxy puts" and of "Don't Ask, Don't Waive" standstill provisions, the use of derivative securities in "poison pills," and the conflicted role of Wall Street banks as financial advisors to target corporations and as lenders to buyers, which, in *Del Monte Corp. S'holder Litig.*, resulted in a preliminary injunction of a $5.3 billion leveraged buyout and an $89.4 settlement for the shareholders. Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully prosecuted "books and records" actions.

Ms. Zilka co-authored "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007), cited by the United States Supreme Court in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010). Ms. Zilka has lectured on federal class action litigation practice as well as on Delaware corporate law.

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a prominent New York City law firm and a member of its Investor Protection practice group. Ms. Zilka has served as General Chair of the annual Combined Campaign For Justice which provides critical funding for Delaware's three legal services agencies. She is a member of the Board of The Print Center of Philadelphia and of the Board of Panetiere Partners, two non-profit organizations.

Ms. Zilka graduated from the State University of New York at Binghamton in 1982, and received her J.D. from Fordham University School of Law in 1985.

**Edmund S. Aronowitz**

Edmund Aronowitz is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation. Prior to joining G&E, Mr. Aronowitz was a class action litigation associate in the Chicago office of a national law firm, and practiced complex commercial litigation as an associate in the New York office of a large global firm.

Mr. Aronowitz graduated from Cornell University (B.A. with honors, History, 2002) and Cornell Law School (J.D. with honors, 2005) where he was a Managing Editor of the Cornell Journal of Law and Public Policy and a Bench Editor on the Moot Court Board. Following law school, Mr. Aronowitz served as a law clerk to the Hon. Robert L. Hinkle of the United States District Court for the Northern District of Florida. Mr. Aronowitz has been recognized in the *Illinois Super Lawyers* Rising Stars list for 2013 and 2014.

Mr. Aronowitz is admitted to practice law in New York and Illinois and before the United States District Courts for the Southern District of New York and Northern District of Illinois.

**Justin S. Brooks**

Justin Brooks is an associate at Grant & Eisenhofer focusing his practice on whistleblower claims brought under the False Claims Act and other federal and state statutes, securities litigation, and shareholder derivative litigation on behalf of institutional investor clients as well as complex commercial litigation, class action, and mass tort litigation in the areas of consumer protection, technology, and agricultural law.

Prior to joining Grant & Eisenhofer, Mr. Brooks' practice focused primarily on complex commercial, mass torts, bankruptcy, and employment litigation. He also served as a law clerk to the Honorable Suzanne B. Conlon of the U.S. District Court for the Northern District of Illinois. During the summer of 2006, he served as an intern to Judge John. E. Sprizzo of the U.S. District Court for the Southern District of New York as well as the Honorable Arlen Specter of the U.S. Senate.

Mr. Brooks co-authored an article detailing the nuances of class and collective action settlements entitled *Navigating Developing Challenges in Approval of Class and Collective Action Settlements*. The article is published in the American Bar Association's Journal of Labor & Employment Law. He received various honors and awards for his academic achievements and served as an editor for the *Michigan Telecommunications and Technology Law Review*.

Mr. Brooks graduated in 2005 with a B.A. in psychology from Emory University, where he was a member of Phi Beta Kappa. He received his J.D., *cum laude*, from the University of Michigan Law School in 2008. Mr. Brooks is admitted to practice in New York, New Jersey, and Pennsylvania and in a number of federal district courts.

Mr. Brooks co-authored an article detailing the nuances of class and collective action settlements entitled *Navigating Developing Challenges in Approval of Class and Collective Action Settlements*. The article is published in the American Bar Association's Journal of Labor & Employment Law. He received various honors and awards for his academic achievements and served as an editor for the *Michigan Telecommunications and Technology Law Review*.

Mr. Brooks graduated in 2005 with a B.A. in psychology from Emory University, where he was a member of Phi Beta Kappa. He received his J.D., *cum laude*, from the University of Michigan Law School in 2008. Mr. Brooks is admitted to practice in New York, New Jersey, and Pennsylvania and in a number of federal district courts.

**Bradley J. Demuth**

Brad Demuth is an associate at Grant & Eisenhofer, where he focuses his practice on complex antitrust litigation matters. Prior to joining G&E, Mr. Demuth worked as an antitrust associate at two of the leading and most well regarded defense firms in the world.

Mr. Demuth's antitrust litigation casework includes contributions in the following matters: *Progressive Casualty Ins. Co. v. Visa, Inc. (re Interchange Fees), In re American Express Anti-Steering Rules Antitrust Litig., In re Crude Oil Commodity Futures Litig., In re Aluminum Warehousing Antitrust Litig., In re Androgel Antitrust Litig., In re Aggrenox Antitrust Litig., In re Lidoderm Antitrust Litig., In re Nexium (Esomeprazole) Antitrust Litig., In re MF Global*

*Holdings Ltd. Invest. Litig, In re Flonase Antitrust Litigation, Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co. (re Doryx), Skelaxin (Metaxalone) Antitrust Litigation, Castro v. Sanofi Pasteur, Inc. (re Menactra), In re Photochromic Lens Antitrust Litigation, Madison Square Garden, L.P. v. NHL, In re Tricor Antitrust Litigation, Sullivan v. De Beers, W.B. David v. De Beers*, and *Compuware v. IBM*

Mr. Demuth received his J.D. degree from American University Washington College of Law in 1999. Following law school, Mr. Demuth served as a law clerk to the United States Court of Appeals for the Second Circuit.

## Bernard C. Devieux

Bernard Devieux is an associate at Grant & Eisenhofer, focusing on corporate governance and securities litigation on behalf of institutional investors. He is also part of a team handling residential mortgage-backed securities litigation in federal and state courts on behalf of several of the firm's clients.

Mr. Devieux received his J.D. and M.B.A. from Villanova in 2011. During law school, he worked as a summer associate for a nationally-recognized law firm in Philadelphia, PA, and interned with the Chief Mediator of the United States Court of Appeals for the Third Circuit's Appellate Mediation Program. He also interned in the general counsel's office of a Philadelphia-based software and technology company, where he assisted in handling general corporate law matters. During his third year of law school, Mr. Devieux was a member of Villanova's Civil Justice Clinic, where he represented low-income clients in child custody disputes and in administrative proceedings before the Social Security Administration. He is a 2008 graduate of the University of Delaware, with a B.S. in Finance.

Mr. Devieux volunteers as a mentor with Big Brothers Big Sisters of Delaware, and is a member of the Delaware State Bar Association.

## Kimberly A. Evans

Kimberly Evans is an associate at Grant & Eisenhofer, focusing her practice on corporate governance and complex securities litigation on behalf of institutional investor clients.

Prior to joining Grant & Eisenhofer, Ms. Evans worked as an associate at a well-known Philadelphia-based law firm, where she gained extensive experience in the practice areas of securities, antitrust, and consumer protection class action litigation. She also previously worked as a Paralegal in the Juvenile Division of the Philadelphia District Attorney's Office.

Ms. Evans is a member of the American Bar Association and has volunteered with the Wills For Heroes Program, an organization that provides free wills and advanced directives to police officers, firefighters and other first responders. She also volunteers her time with local animal rescue groups in the greater-Philadelphia area.

Ms. Evans earned her J.D. from Temple University in 2007 and received a bachelor's degree in Chemistry and Criminal Justice from La Salle University in 2003.

## Robert D. Gerson

Robert Gerson is an associate at Grant & Eisenhofer, representing institutional investors and other plaintiffs in complex litigations including securities class actions and derivative suits.

Mr. Gerson has litigated numerous cases involving the financial crisis, including more than fifteen actions arising out of wrongdoing related to the issuance of residential mortgage-backed securities ("RMBS") and other complex financial products.

Robert was a member of the team in *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, which achieved an $85 million recovery for investors arising out of allegations that Medtronic promoted the Infuse bone graft for dangerous "off-label" uses.

Mr. Gerson is a graduate of New York Law School, where he was a member of the Moot Court Association and the University of Maryland, where he received a B.A. in government and politics.

## David M. Haendler

David Haendler is an associate at Grant & Eisenhofer, practicing primarily in the areas of securities and derivative litigation. He has represented institutional investors in complex cases throughout the country, at both the trial court and appellate levels.

Mr. Haendler played a significant role in a number of securities fraud actions brought by one of the world's largest pension funds regarding its purchases of residential mortgage-backed securities. Mr. Haendler has also represented investors in class actions brought under the federal securities laws. He currently represents plaintiffs in cases including *In re JP Morgan Chase & Co. Securities Litigation*, *In re Pfizer Securities Litigation*, *In re New Oriental Education & Technology Group Securities Litigation*, and *In re Miller Energy Securities Litigation*.

Mr. Haendler represents corporations and their shareholders in derivative cases before the Delaware Court of Chancery and elsewhere. He represents plaintiffs in *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*, a case challenging the federal government's management of Fannie Mae and Freddie Mac in conservatorship, and *In re Kinder Morgan Energy Partners, L.P. Derivative Litigation*, a case involving the accounting practices of one of the country's leading energy master limited partnerships.

Mr. Haendler has written two novels, *The Shattergrave Knights* and *World Full of Outrage*, and was assistant legal counsel for *Resurrect Dead: The Mystery of the Toynbee Tiles*, a Sundance award-winning documentary.

## Jonathan M. Kass

Jonathan Kass is an associate at Grant & Eisenhofer, focusing on commercial litigation and complex civil litigation issues concerning corporate governance and securities matters.

Before joining Grant & Eisenhofer, Mr. Kass worked for White & Case LLP handling securities fraud and corporate governance disputes for Fortune 100 corporations and hedge funds. He also ran internal investigations concerning FCPA violations on behalf of foreign sovereigns, including representing the Republic of Iraq in connection with the Oil-for-Food Program.

Mr. Kass is a *summa cum laude* graduate of Fordham University School of Law where he was awarded the Order of the Coif. He received his B.A. in government with a concentration in American institutions and public policy from Cornell University, achieving Distinction in all subjects.

## Michael T. Manuel

Michael Manuel is an associate at Grant & Eisenhofer, focusing on securities and corporate governance litigation. Mr. Manuel has experience in a variety of complex commercial cases, including matters involving contract disputes, securities, commercial litigation, corporate governance, mass torts and products liability cases.

Mr. Manuel graduated *cum laude* from Harvard Law School in 2002 and received a Bachelor's degree in mathematics from Duke University in 1999.

## Kyle J. McGee

Kyle McGee is an associate in the Delaware office focusing on complex securities and commercial litigation on behalf of institutional investors, consumers, and advocacy organizations.

Mr. McGee was heavily involved in *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.), a major securities fraud action against pharmaceutical industry titan Merck & Co., Inc. The case was prosecuted jointly with a related action, *In re Schering-Plough Corp. ENHANCE Securities Litigation* (D.N.J.), and resulted in a $688 million recovery. This represents the largest securities class action recovery against a pharmaceutical company to date, and ranks among the top securities settlements with any issuer.

Mr. McGee also successfully represented shareholders in *In re New Oriental Education & Technology Group Securities Litigation* (S.D.N.Y.), in which Chinese education company New Oriental was alleged to have engaged in false and misleading financial reporting and unlawful accounting practices. The case settled for $4.5 million, a substantial recovery for investors trading the company's American depositary shares on U.S. exchanges.

Mr. McGee has also successfully represented shareholders in corporate governance matters, including an action against retailer Aaron's, Inc. in Georgia state court and an action against XTO Energy, Inc. in Texas state court. Both actions resulted in substantial informational disclosures to shareholders, while the Aaron's, Inc. case resulted in important governance modifications concerning the company's board of directors.

Mr. McGee is currently part of the teams prosecuting federal securities claims against American International Group, Inc. for misrepresentations and omissions concerning the insurer's exposure to risk relating to speculative derivative instruments; Merck & Co., Inc. for misrepresentations

and omissions concerning the safety of its blockbuster VIOXX drug; JP Morgan Chase & Co. for misrepresentations and omissions concerning its high-risk proprietary trading (the "London Whale" case); and Miller Energy Resources for misrepresentations and omissions concerning its financial reporting.

Mr. McGee is also currently part of teams prosecuting federal and state consumer protection claims against Ford Motor Company for misrepresentations and omissions concerning the safety and reliability of its MyFord Touch (and MyLincoln Touch) in-car units; Google Inc. for misrepresentations and omissions concerning its 2012 overhaul of its privacy practices, especially with respect to Android users; Avon Products, Inc. and L'Oreal USA, Inc. for misrepresentations and omissions concerning their marketing of "cosmeceutical" products; and CitiMortgage, Inc. for its alleged violations of federal communications and privacy laws.

Mr. McGee earned a postgraduate research degree from the University of Edinburgh in Scotland and a J.D. from Villanova University in 2009, both with honors. Mr. McGee studied the history and philosophy of law at Edinburgh and was honored as a Dean's Merit scholar at Villanova Law. In 2005, he graduated from the University of Scranton with a B.A. in philosophy as well as media technologies.

## Caitlin M. Moyna

Caitlin M. Moyna is an associate at Grant & Eisenhofer where her practice includes litigating securities fraud and shareholder derivative claims on behalf of institutional investors. Ms. Moyna has over 9 years of broad complex commercial litigation experience.

Prior to joining Grant & Eisenhofer, Ms. Moyna was a litigation associate at Cravath, Swaine & Moore LLP and Ropes and Gray, LLP, and most recently, was an associate at boutique litigation firm specializing in representing plaintiffs in securities fraud and shareholder rights' actions.

Ms. Moyna is a *cum laude* graduate of Northwestern University School of Law where she was elected to the Order of the Coif. While at Northwestern, Ms. Moyna was on the Articles Board of the *Journal of Criminal Law and Criminology*, and she served as the legal writing tutor to the class of first year law students. Ms. Moyna received her bachelor's degree from Dartmouth College.

## Rebecca Musarra

Rebecca Musarra is an associate at Grant & Eisenhofer, where she focuses her practice on corporate governance and complex securities litigation on behalf of institutional investors. Prior to joining G&E, Ms. Musarra worked as an appellate law clerk to the Chief Justice of the Supreme Court of the Virgin Islands in St. Thomas, Virgin Islands.

During law school, Ms. Musarra was a member of the American University Law Review and served for two years in an impact litigation clinic. She was awarded a full-tuition scholarship, was elected to the Order of the Coif, and graduated *summa cum laude*.

Ms. Musarra received her J.D. degree from American University Washington College of Law in 2009 and obtained a B.A. in international relations from the College of William and Mary in

2003. Between college and law school, Ms. Musarra served as a Peace Corps Volunteer in Chad, Central Africa.

## Catherine Ó Súilleabháin

Catherine (Kate) Ó Súilleabháin is an associate at Grant & Eisenhofer, where her primary area of practice is consumer class action litigation. Prior to joining G&E, Ms. Ó Súilleabháin was an associate in the Chicago office of a large global law firm, where she practiced international commercial litigation and advised clients on product and medical-device regulation and recall. She has spoken on such topics as attorney-client privilege in international litigation and FDA regulation of medical devices.

Ms. Ó Súilleabháin represented an Albanian family in a successful asylum hearing and was recognized by Illinois Legal Aid Online as an Attorney of the Month (May 2009) for her work on the case.

Ms. Ó Súilleabháin was the first recipient of the Davies-Jackson Scholarship to St. John's College, the University of Cambridge. She graduated from the University of Cambridge (B.A. and M.A., English, 1992 and 1998, respectively), Loyola University of Chicago (B.A., English, 1990) and Georgetown University Law Center (J.D., 2007), where she was a Law Fellow and a member of the Barrister's Council.

Ms. Ó Súilleabháin is currently on the Executive Committee of the Alliance for Women of the Chicago Bar Association.

## Raymond Schuenemann

Raymond Schuenemann III is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation.

Upon graduating from law school, Mr. Schuenemann was an associate at Capozzi & Associates, P.C. in Harrisburg, PA where he worked on matters related to employment, real estate, tax, and healthcare law. Prior to his legal career, Mr. Schuenemann was an investment accountant in the mutual fund industry where he provided accounting services for numerous bond and equity funds. Mr. Schuenemann was also employed as an internal auditor in both the finance and banking industries.

Mr. Schuenemann is active in his community and has spent many years as a volunteer pro-bono attorney at Mid Penn Legal Services where he defended low-income clients from debt collection actions. Additionally, Mr. Schuenemann spent four years as the Chairman of the Board of the Reading Area Water Authority and currently serves as an Executive Board Member of the Reading Redevelopment Corporation.

Mr. Schuenemann received his J.D. from Widener University School of Law in 2005 and is a 1999 graduate of West Chester University where he earned a B.S. in Finance.

**Susan R. Schwaiger**

Susan Schwaiger is an associate at Grant & Eisenhofer. She practices in the area of antitrust, with experience in a wide variety of industries, and other areas of complex civil litigation.

Prior to joining Grant & Eisenhofer, Ms. Schwaiger was of counsel to several leading New York-based antitrust firms representing plaintiffs in class and individual actions. She has authored *The Submission of Written Instructions and Statutory Language to New York Criminal Juries*.

Ms. Schwaiger has played significant roles in a number of major antitrust cases including In re Microcrystalline Cellulose Antitrust Litigation; In re Plastics Additives Antitrust Litigation; and In re Lorazepam & Clorazepate Antitrust Litigation. In addition, she has represented large corporate entities in individual actions in In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation; In re Chocolate Confectionary Antitrust Litigation; and CVS Pharmacy v. American Express Travel Related Services, et al. Ms. Schwaiger's experience also includes representation of Shannon Faulkner and Nancy Mellette in their successful litigation against The Citadel military academy in Charleston, South Carolina, where Shannon Faulkner became the first female cadet admitted to the all-male academy in August 1995.

Ms. Schwaiger graduated *cum laude* from Brooklyn Law School in 1992 with a J.D. She obtained her M.A. from the University of Kentucky and a B.S. from the University of Tennessee.

**Elizabeth H. Shofner**

Elizabeth Shofner is an associate at Grant & Eisenhofer focusing on complex civil litigation, including false claims litigation, consumer fraud, and corporate governance matters.

Prior to joining Grant & Eisenhofer, Ms. Shofner was a litigator at Patterson Belknap Webb & Tyler LLP, where she focused on complex commercial litigation, including Medicaid and consumer fraud and mortgage-backed securities litigation. She also has experience in intellectual property and appellate work. She served for several years as a law clerk to the Hon. John M. Walker, Jr., of the Second Circuit Court of Appeals, during which time she was involved in hundreds of federal appeals involving all areas of law.

Ms. Shofner co-authored the New York section of *The 2012 50-State Survey of Privacy Law* (Media Law Resource Center; 2012), co-edited the *Task Force Report on Gender, Race, and Ethnic Bias in the Second Circuit* (1998), and co-authored the article *Similarity Ratings And Confusability Of Lipread Consonants Compared With Similarity Ratings Of Auditory And Orthographic Stimuli* (American Journal of Psychology; 1991).

Ms. Shofner received her J.D. *magna cum laude* from New York University School of Law, where she was elected to the Order of the Coif and served as an articles editor for the *New York University Law Review*. She also received an M.A. in cognitive psychology from Hunter College. She holds an undergraduate degree in English literature and psychology from Washington University in St. Louis and is a member of the New York City Bar Association.

**John Tangren**

John Tangren is an associate at Grant & Eisenhofer, where his primary area of practice is consumer class action litigation. Prior to joining G&E, Mr. Tangren was a class action litigation associate in the Chicago office of a national law firm, and practiced complex commercial litigation as an associate in the Chicago office of a large global firm.

Mr. Tangren has spoken on issues relating to class action litigation and electronic discovery. Mr. Tangren's recent speaking engagements include "The Use of Absent Class Member Discovery on Issues of Class Certification" at the 2013 National Consumer Class Action Litigation & Management Conference and "ESI for Beginners" at the 2013 Seventh Circuit Conference of the National Employment Lawyers Association.

Mr. Tangren graduated from the University of Chicago (A.B., Philosophy and Music, 2000) and the University of Chicago Law School with honors (J.D. 2003) where he was Executive Editor of the University of Chicago Legal Forum. He was selected to The National Trial Lawyers Top 40 Under 40 in 2012 and by Super Lawyers magazine as an Illinois "Rising Star" for 2011, 2013 and 2014.

**Justin K. Victor**

Justin Victor is an associate at Grant & Eisenhofer, who focuses on the False Claims Act, Dodd-Frank Wall Street Reform and Consumer Protection Act, securities litigation, and shareholder derivative litigation on behalf of institutional investor clients.

Mr. Victor co-authored an overview on the False Claims Act for a National Employment Lawyers Association's webinar entitled *Using New Developments in Whistleblower Laws to Your Client's Advantage.* The overview was also used at the Tennessee Bar Associations' seminar: *Perspectives on Recent Trends in Healthcare Fraud and Abuse Litigation.*
Mr. Victor authored *Invalidating Inequitable Arbitration Clauses: Concepcion Eight Months Later, Where Are We Now?,* published in the American Association of Justice's Business Tort Newsletter Vol. 19, No. 2, Winter 2012, and is co-author of *SEC v. HG Pharmaceuticals,* a case file used to train students and attorneys, published by Emory University School of Law's Center for Advocacy and Dispute Resolution (Spring 2011).

On July 10, 2012, the Practising Law Institute published two articles co-authored by Mr. Victor in its *Internal Investigations Guide: How to Protect Your Client or Companies in the Global Post Dodd-Frank World* including *Blowing the Whistle from Abroad: A Guide to the U.S. False Claims Act and Guide to the U.S. Dodd-Frank Wall Street Reform and Consumer Protection Act.* Mr. Victor was appointed as an Adjunct Professor of Law for the Fall 2012 semester at Rutgers School of Law-Camden. Mr. Victor teaches trial advocacy through a course that emphasizes both trial technique and professional responsibility.

Mr. Victor received his J.D. from Emory University School of Law in 2010, where he was awarded the inaugural William C. O'Kelley Scholarship, where he graduated Order of the Barristers. He graduated from the University of Michigan with a B.A. in Political Science in 2007.

## Jennifer A. Williams

Jennifer Williams, an associate at Grant & Eisenhofer, focuses on False Claims Act, antitrust, and corporate governance litigation.

Ms. Williams is the co-author of "Controlling Government Contractors: Can the False Claims Act be More Effective?," 14 Sedona Conf. J. 1 (2013). She also co-authored "Collecting Evidence in Financial Fraud Cases: Insider Trading," materials used, and translated into Mandarin, as a part of a training program sponsored by Emory University School of Law for prosecutors in the Shanghai, China prosecutors office.

Ms. Williams received her J.D., with honors, and Master's in Theological Studies from Emory University School of Law and Emory University Candler School of Theology, respectively, where she was awarded the Herman Dooyeweerd Prize in Law and Religion and selected for the Order of Emory Advocates.

During law school, Ms. Williams interned with the Georgia Resource Center, the Georgia Innocence Project, the DeKalb County Public Defenders Office, and the Equal Employment Opportunity Commission – Atlanta Regional Office.

In 2006, she received a B.A. *magna cum laude* from Centre College in Danville, Kentucky, graduating Phi Beta Kappa. Ms. Williams was a Fulbright Grantee/ETA to South Korea in 2006.

## Marc D. Weinberg

Prior to joining G&E in 2006, Marc Weinberg gained a fourteen-year track record with two of the nation's leading securities litigation firms. He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992 after graduating from Pennsylvania State University. He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

## Joshua E. Alpert

Joshua Alpert is a staff attorney at Grant & Eisenhofer, focusing on a wide range of securities litigation matters including complex antitrust litigation and bankruptcy. Mr. Alpert is a 2005 graduate of Brooklyn Law School, and a 1999 graduate of the State University of New York at Stony Brook where he received his bachelor in political science.

Prior to joining Grant & Eisenhofer, Mr. Alpert's experience was in antitrust, securities and derivative class action cases. He is a former member of the Association of Certified Anti-Money Laundering Specialists and was a certified anti-money laundering specialist.

## Simona L. Bonifacic

Simona Bonifacic is a staff attorney at Grant & Eisenhofer, where her focus is on securities litigation. Ms. Bonifacic graduated in 1998 from Syracuse University College of Law. She is also a 1998 *magna cum laude* graduate of Maxwell School of Citizenship and Public Affairs

where she obtained her M.A. in international relations. She further received a bachelor degree in 1994 from East Stroudsburg University in political science and philosophy.

Prior to joining Grant & Eisenhofer, Ms. Bonifacic worked as a legal consultant on multi-district court class actions, securities litigation, bankruptcy, immigration, commercial real estate, intellectual property, and contracts. She also has experience as an analyst in the banking sector. She is fluent in Romanian.

**Leanne P. Brown-Pasquarello**

Leanne Brown-Pasquarello is a staff attorney at Grant & Eisenhofer and has experience in complex class action securities litigation on behalf of institutional investors. Representative cases include *In re Pfizer Inc. Securities Litigation*, and *In re Refco Inc. Securities Litigation.*

Prior to joining Grant & Eisenhofer, her focus was on securities litigation, mass torts products liability pharmaceutical litigation, and nursing home litigation.

Ms. Brown-Pasquarello has co-authored numerous publications, including "Ex-Files: Ex-Corporate Employees May Be Contacted *Ex Parte* by the Plaintiff's Attorney: The Florida Supreme Court's Ruling in *H.R.A. Management, Inc. v. Schwartz,*" published in the *Trial Advocacy Quarterly (1997).* She also co-authored Jonathan L. Alpert's *Florida Handbooks and Forms (1996).*

Ms. Brown-Pasquarello received her law degree from Widener University School of Law in 1993 and in 1990 she received her B.A. in political science from University of Delaware where she was a member of the *Phi Sigma Pi* National Honor Society and *Pi Sigma Alpha* National Political Science Honor Society.

**Tracy L. Campbell**

Tracy Campbell is a staff attorney at Grant & Eisenhofer, who focuses on complex securities fraud litigation in class action cases. She received her law degree from the University of Houston Law Center in 2003, where she completed an externship at the Methodist Health Care System. Before joining Grant & Eisenhofer, Ms. Campbell focused her practice on the area of health law. Upon graduating from law school, she worked at a mid-sized firm in Houston where she concentrated primarily on asbestos litigation. Subsequently, she worked for a small transactional health law firm in San Antonio, Texas.

Ms. Campbell received her B.S. in Business Administration with a Concentration in International Business Management from Goldey-Beacom College in 1997, where she graduated *magna cum laude*. Prior to entering law school, Ms. Campbell gained business experience as an analyst at JP Morgan. Upon relocating to Texas, she continued to pursue a career in the financial industry while obtaining her law degree. Ms. Campbell is a member of the Delaware Bar Association.

## James P.A. Cavanaugh

James Cavanaugh is a staff attorney at Grant & Eisenhofer. His primary focus is on high profile securities fraud litigation and class actions. He has additional experience in products liability class actions and litigating toxic tort, patent infringement, bankruptcy, and asbestos related cases. Prior to joining Grant & Eisenhofer, he was sole practitioner of a law practice with an emphasis on litigation, including workers' compensation, employment, civil rights and personal injury. Representative accomplishments include establishing case law precedent in *Dr. John Doe v. TRIS Mental Health Services* permitting the disabled, for the first time, to proceed anonymously in the New Jersey Superior Courts.

Mr. Cavanaugh was appointed to a specialized task force by the Chief Justice of the New Jersey Supreme Court to examine discrimination in the legal profession and in the courts and adopt recommendations. Mr. Cavanaugh also represented an *amicus curiae* institutional nonprofit corporation opposing discriminatory policies in *James Dale v. Boy Scouts of America* case.

He is a graduate of George Washington University National Law Center where he earned his law degree, and Fordham University where he graduated, with honors, with a B.A. in history.

## Alice Y. Cho

Alice Cho is a staff attorney at Grant & Eisenhofer, where her focus is on securities fraud class actions. She graduated from Brooklyn Law School in 2004 after receiving a B.A. from the University at Albany.

During law school, Ms. Cho interned as a law clerk for the Honorable Frederic Block, U.S. District Court, Eastern District of New York. She also worked with the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

Ms. Cho currently serves as Executive Vice President of the Korean American Lawyers Association of Greater New York (KALAGNY).

## Kerry A. Dustin

Kerry Dustin is a staff attorney at Grant & Eisenhofer, focusing on corporate securities litigation. Ms. Dustin received her law degree from Syracuse University College of Law where she was a member of the Community Law Development Clinic and Corporate Law Society. She received her B.S. in business administration with a marketing concentration from LeMoyne College in 2000.

Prior to joining Grant & Eisenhofer, Ms. Dustin focused her practice on intellectual property and patent and employment law. Ms. Dustin served as a law clerk for Onondaga County Resource Recovery Agency (OCRRA). She also did an internship at the Ontario County Attorney's Office where she was involved in drafting labor contracts and research.

## Cheron D. Everett

Cheron Everett focuses on securities and class action litigation as a staff attorney at Grant & Eisenhofer. Ms. Everett is a 2007 graduate of the Widener University School of Law and a 2001 *magna cum laude* graduate from Temple University with a degree in journalism and public relations. She was a recipient of the Chadwick Memorial Scholarship and a Fred G. Dibona Moot Court participant.

Prior to joining Grant & Eisenhofer, Ms. Everett's focus was on pharmaceutical and securities litigation as well as workmen's compensation.

## R. Alexander Gartman

Alexander Gartman concentrates on securities litigation as a staff attorney at Grant & Eisenhofer. He graduated *cum laude* from Temple University School of Law in 2005. He served on the Student Bar Association Budget Committee, and the Curriculum Committee, working with faculty to revise first year curriculum.

Mr. Gartman received a B.B.A. in Finance in 1998 from The College of William and Mary, where he double majored in Economics.

## Lisa K. Grumbine

Lisa Grumbine is a staff attorney at Grant & Eisenhofer, focusing on a wide range of securities litigation matters as well as employee benefits with emphasis on defined contribution plans. Ms. Grumbine is a 1997 graduate of Temple School of Law, and a 1990 *cum laude* graduate of University of Delaware where she received her bachelor in consumer economics.

Prior to joining Grant & Eisenhofer, her focus was on pharmaceutical products liability cases, pension and profit sharing plans, ERISA, and banking. She is an ABA National Employee Benefit Trust School graduate.

## C. Kirby Happer

Kirby Happer is a staff attorney at Grant & Eisenhofer.

## Lawrence P. Kempner

Lawrence Kempner is a staff attorney at Grant & Eisenhofer, focusing on complex securities, regulatory and corporate governance cases. Prior to joining Grant & Eisenhofer, Mr. Kempner was engaged in private practice with a concentration in civil litigation.

Mr. Kempner graduated from Lehigh University in 1988 with a B.S. in marketing. He received his J.D. from the George Washington University National Law Center in 1991.

## Edward M. Lilly

Edward Lilly focuses on securities fraud and class action litigation as a staff attorney at Grant & Eisenhofer. He has additional experience in pharmaceutical intellectual property litigation, product liability litigation, and derivative class actions.

Mr. Lilly graduated in 1996 from Cornell Law School and served as editor for the *LII Bulletin-NY* and *Cornell Journal of Law & Public Policy*. He received his M.S. in social psychology in 1993 from Purdue University and graduated *magna cum laude* from DePauw University with a B.A. in economics.

Mr. Lilly served as a clerk for the Honorable Thomas J. McAvoy of the U.S. District Court in Binghamton, New York.

## Michael A. Morris

Michael Morris is a staff attorney at Grant & Eisenhofer. He received his law degree from the University of Bridgeport Law School in 1980, and has been a member of the Connecticut Bar since 1980.

He was employed by the City of New Haven as Special Assistant Corporation Counsel where he represented and provided legal counsel for several city departments. He subsequently established his own law practice in New Haven which he maintained until 2000.

Mr. Morris served as Counsel to the Board of Directors for the Greater New Haven Transit District which involved federal and state legal matters in transportation, government contract and grant development, and presenting testimony to the Connecticut State Legislature.

Mr. Morris earned his M.B.A. from the University of Bridgeport. He also helped organize and became the first president of the University of Bridgeport Law School Alumni Association.

## Kevin M. Nadolny

Kevin Nadolny is a staff attorney at Grant & Eisenhofer. Mr. Nadolny has focused his career in securities litigation, antitrust, and mass tort cases, with a particular focus on e-discovery issues since 2004.

Mr. Nadolny is currently a member of the team litigating In re Pfizer Securities Litigation before the Honorable Judge Laura Swain in the Southern District of New York. The team recently turned in a win in the Daubert Hearing clearing the way for a potential landmark settlement.

Mr. Nadolny has participated in assessing derivative actions in various state and federal courts including those arising out of instances of improper stock option backdating.

He is a 1998 graduate of the University of Minnesota, and a 2002 J.D. graduate of Temple Law. In 2003 he was granted an LL.M. degree in Transnational Law from Temple Law.

**Joseph P. Nearey**

Joseph Nearey focuses on complex securities litigation as a staff attorney at Grant & Eisenhofer. He received his law degree in 2001 from Temple University School of Law, where he was a member of the Temple International and Comparative Law Journal. He attended the Temple University School of Law Semester in Japan and interned at a prominent Tokyo firm. He served as a summer intern for the Honorable James R. Cavanaugh of the Superior Court of Pennsylvania.

Mr. Nearey graduated *cum laude* from Hamilton College in 1997 with dual B.A degrees in English Literature and Government.

**Jonathan D. Park**

Jonathan Park is a staff attorney at Grant & Eisenhofer, where he focuses on securities litigation. Mr. Park graduated in 2013 from Fordham University School of Law, where he served as the Jessup International Law Competition Editor for the Fordham Moot Court Board and as a Crowley Scholar in International Human Rights.

Prior to joining the firm, he interned with a refugee law project in Cairo, Egypt. Mr. Park received a B.A. in 2006 from Vassar College, where he majored in Africana Studies.

**Kimberly B. Schwarz**

Kimberly Schwarz is a staff attorney at Grant & Eisenhofer. She earned her law degree from Rutgers School of Law in 2010. She graduated with high honors from Rutgers University School of Business in 2002 where she received her B.S. in Business Management.

**Katie L. Sierakowski**

Katie Sierakowski is a staff attorney who focuses on class action and securities litigation cases at Grant & Eisenhofer.

Ms. Sierakowski is a 1999 graduate of the University of Pittsburgh with a degree in political science and a 2002 graduate of Widener University School of Law. She was a law clerk in the Pennsylvania Office of Attorney General Bureau of Consumer Protection and was promoted in 2003 to the position of deputy attorney general. Before joining Grant & Eisenhofer, Ms. Sierakowski focused her practice on the area of antitrust, federal/state wage and hour litigation and gaming law.

**Shannon T. Somma**

Shannon Somma is a staff attorney at Grant & Eisenhofer. Her focus is on securities fraud and class action litigation. She has additional experience in intellectual property, pharmaceutical, and environmental litigation.

Ms. Somma graduated in 1999 from the University of Delaware with a B.A. degree in psychology, and thereafter received her J.D. degree from Widener University School of Law in 2005.

**Aaron W. Stewart**

Aaron Stewart is a staff attorney at Grant & Eisenhofer, concentrating on complex federal securities litigation and litigation in the Delaware Court of Chancery.

Prior to joining G&E, Mr. Stewart worked for a large Delaware law firm and focused his practice on a wide range of transactional matters, including mergers and acquisitions, structured financings, corporate governance, and corporate finance, and provided advice on a variety of fiduciary duty issues. Mr. Stewart also served as legal counsel to the Delaware House of Representatives.

Mr. Stewart received his J.D. from William & Mary Law School in 2008, where he was Senior Articles Editor for the *William & Mary Bill of Rights Journal*, and his B.S. in economics from the University of Utah in 2005, where he graduated *cum laude*.

**Vivek Upadhya**

Vivek Upadhya is a staff attorney at Grant & Eisenhofer, focusing on securities fraud and false claims act cases.

Mr. Upadhya received his J.D. from Emory University School of Law, where he served as a managing editor for the *Emory Law Journal*. He received his B.A. in law and political science from the University of Utrecht in the Netherlands, and was born and raised in India.

## Selected Institutional Client Representations

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country. Some of our cases include:

**(A)   In Securities Fraud Litigation:**

**(1)   Cellstar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in <u>Gluck v. CellStar Corp.</u>, 976 F.Supp. 542 (N.D.Tex. 1997). The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, <u>In re Cendant Corp. Litig.</u>, 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing <u>CellStar</u>.) After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well. With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation. Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)   DaimlerChrysler**

Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals." Shortly before trial, the defendants agree to a $300 million cash settlement, among the largest securities class action settlements since the enactment of the PSLRA. <u>In re DaimlerChrysler Securities Litigation</u>, D. Del., C.A. No. 00-0993.

**(3)   Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into <u>In re Oxford Health Plans, Inc., Securities Litig.</u>, S.D.N.Y., MDL Docket No. 1222 (CLB). The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel. G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to

dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)). The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(4)    Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results. Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General. In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(5)    Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama. That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results. Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case. (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)). SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

**(6)    Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc. The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations. G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL"). After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment

pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al., N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al., Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)     Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California. G&E was approved as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, inter alia, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. In re Total Renal Care Securities Litigation, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)     Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. In re Safety-Kleen Corp. Bondholders Litig., D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of $192 million.

**(9)     Styling Technology Corporation**

G&E represented funds managed by Franklin Advisers, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court

of California. The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)**    **Tyco**

G&E served as co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski and other former executives and directors of Tyco, and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)**    **Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd. In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472. In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million. In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman). In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E recovered $448 million for investors in Global Crossing.

**(12)**    **Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern

District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm. Following mediation, G&E negotiated a settlement of all claims. Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al., N.D. Ohio, Case No. 5:02CV1105.

**(13) Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al., E.D. Mich., C.A. No. 02-71778.

**(14) Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. Franklin High Income Trust, et al. v. APP Global Ltd., et al., N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement.

**(15) Alstom**

Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. A settlement in the amount of $6.95 million is awaiting Court approval. In re Alstom SA Sec. Litig., S.D.N.Y. 03-cv-6595.

**(16) Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history." Settlements exceeding $90 million were reached. In re Parmalat Sec. Litig., S.D.N.Y. 04-MDL-1653.

**(17) Marsh & McLennan**

G&E was co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. After five years of litigation, G&E achieved a $400 million settlement on behalf of the

class. In re Marsh & McLennan Companies, Inc. Sec. Litig., S.D.N.Y. 04-cv-8144.

**(18)** **Hollinger International**

G&E was co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets. G&E negotiated a settlement with Hollinger in the amount of $37.5 million. Hollinger International Securities Litigation, N.D. Ill. 04-C-0834.

**(19)** **General Motors**

G&E served as co-lead counsel in a securities class action against GM, arising from alleged false statements in GM's financial reports. After about two and a half years of litigation, a settlement was reached with GM for $277 million, with GM's auditor, Deloitte & Touche contributing an additional $26 million. The combined $303 million settlement ranked among the largest shareholder recoveries of 2008. In re General Motors Corp. Sec. Litig., E.D. Mich., MDL No. 1749.

**(20)** **Delphi**

Delphi is an automotive company that was spun off of General Motors. The company failed as a stand-alone entity, but concealed its failure from investors. G&E's client, one of the largest pension funds in the world, served as a lead plaintiff, and G&E served as co-lead counsel in this securities class action, which produced settlements totaling $325 million from Delphi, its auditor and its director and officers liability insurer. In re Delphi Corporation Securities Derivative & ERISA Litigation, E.D. Mich., MDL No. 1725.

**(21)** **Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO. G&E served as a co-lead counsel and G&E's client, PIMCO, was a co-lead plaintiff. The case resulted in recoveries totaling $422 million for investors in Refco's stock and bonds (including $140 million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor). In re Refco, Inc. Securities Litigation, S.D.N.Y., No. 05 Civ. 8626.

**(22)** **Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for

breach of fiduciary duty in the consolidation of two separate tracking stocks. In December 2007, a $57.5 million settlement was approved. <u>In re Sprint Corporation Shareholder Litigation</u>, D. Kan., No. 04 CV 01714.

**(B)    In Derivative and Other Corporate Litigation:**

**(1)    <u>Digex</u>**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. <u>In re Digex, Inc. Shareholders Litigation</u>, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000). The case settled soon thereafter.

**(2)    <u>UnitedHealth Group</u>**

G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group. This was among the first – and most egregious – examples of options backdating. G&E's case produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction. <u>In re UnitedHealth Group Inc. Shareholder Derivative Litig.</u>, C.A. No. 06-cv-1216 (D. Minn.)

**(3)    <u>AIG</u>**

In the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. <u>Teachers' Retirement System of Louisiana v. Greenberg, et al.</u>, C. A. No. 20106-VCS (Del. Ch.).

**(4)**    <u>Genentech</u>

When Swiss healthcare company Roche offered to buy out biotech leader Genentech Inc. for $43.7 billion, or $89 per share, G&E filed a derivative claim on behalf of institutional investors opposed to the buyout. With the pressure of the pending litigation, G&E was able to reach a settlement that provided for Roche to pay $95 per share, representing an increase of approximately $3 billion for minority shareholders. <u>In re Genentech, Inc. Shareholders Litig.</u>, C.A. No. 3911-VCS (Del. Ch.).

**(5)**    <u>Willamette</u>

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. <u>Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al.</u>, No. 0201-0085 (Ore. Cir. Ct.).

**(6)**    <u>Medco Research</u>

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. <u>State of Wisconsin Investment Board v. Bartlett, et al.</u>, C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

**(7)**    <u>Occidental Petroleum</u>

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives. Filed in California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key

committees so as to meet the tests of independence under those principles. <u>Teachers' Retirement System of Louisiana v. Irani et al.</u>, No. BC1850009 (Cal. Super.).

**(8)    <u>Staples, Inc.</u>**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998. G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders. Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures. <u>In re Staples, Inc. Shareholders Litigation</u>, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(9)    <u>SFX/Clear Channel Merger</u>**

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel. While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders. The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger. G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger. This was more than half the damages alleged in the Complaint. <u>Franklin Advisers, Inc., et al. v. Sillerman, et al.</u>, C.A. No. 17878 (Del. Ch.).

**(10)    <u>Lone Star Steakhouse & Saloon</u>**

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors. The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs. Before filing the suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law. The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs. In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy. Lone Star further acknowledged that the lawsuit was one of the significant factors

considered in its adoption of certain corporate governance reforms. <u>California Public Employees' Retirement System v. Coulter, et al.</u>, C.A. No. 19191 (Del. Ch.).

**(11)** <u>**Siebel**</u>

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues. <u>Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.</u>, C. A. No. 425796 (Cal. Super.).

**(12)** <u>**HealthSouth Corporation**</u>

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, <u>inter alia</u>, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth. <u>Teachers' Retirement System of Louisiana v. Scrushy</u>, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(13)** **NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor. On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor. In re New York Stock Exchange/Archipelago Merger Litig., No. 601646/05 (Sup. Ct. N.Y. Co.)

**(14)** **Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor. Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal. Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al., C.A. No. 2635-N (Del. Ch.).

**(15)** **AIG**

In the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. Teachers' Retirement System of Louisiana v. Greenberg, et al., C. A. No. 20106-VCS (Del. Ch.).

**(16)  Del Monte Foods**

G&E served as lead counsel in shareholder litigation in which the Firm obtained an $89.4 million settlement against Del Monte Foods Co. and Barclays Capital. On February 14, 2011, the Delaware Chancery Court issued a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids. As a result of plaintiff's efforts, the Board was forced to conduct a further shopping process for the company. Moreover, the opinion issued in connection with the injunction has resulted in a complete change on Wall Street regarding investment banker conflicts of interests and company retention of investment bankers in such circumstances. In re Del Monte Shareholder Litigation, C.A. No. 6027-VCL (Del. Ch).

**(C)  In Securities Class Action Opt-Out Litigation**

**(1)  AOL Time Warner, Inc.**

G&E filed an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners. The case challenged certain transactions entered by the company to improperly boost AOL Time Warner's financials. G&E was able to recover for its clients more than 6 times the amount that they would have received in the class case.

**(2)  BankAmerica Corp.**

G&E filed an individual action seeking to recover damages caused by the defendants' failure to disclose material information in connection with the September 30, 1998 merger of NationsBank Corporation and BankAmerica Corporation. G&E was preparing the case for trial when it achieved a settlement whereby the firm's client received more than 5 times what it would have received in the related class action. Those proceeds were also received approximately one year earlier than the proceeds from the class action settlement.

**(3)  Bristol-Myers Squibb**

G&E filed an opt-out action against Bristol-Myers Squibb, certain of its officers and directors, its auditor, and Imclone, Inc., alleging that Bristol-Myers had falsified billions of dollars of revenue as part of a scheme of earnings management. While the federal class action was dismissed and eventually settled for only 3 cents on the dollar, G&E's action resulted in a total settlement representing approximately 10 times what the firm's clients likely would have received from the class action.

### (4)    Qwest Communications

G&E filed an individual action against Qwest, its accountant (Arthur Anderson LLP), Solomon Smith Barney, and current and former officers and directors of those companies. The case alleged that Qwest used "swap deals" to book fake revenue and defraud investors. G&E was able to recover for its clients more than 10 times what they would have recovered had they remained members of the class.

### (5)    WorldCom

G&E filed an opt-out action against former senior officers and directors of WorldCom, including former CEO Bernard Ebbers, and Arthur Andersen LLP (WorldCom's former auditor), among others. The case stemmed from the widely-publicized WorldCom securities fraud scandal that involved false and misleading statements made by the defendants concerning WorldCom's financials, prospects and business operations. G&E recovered for its clients more than 6 times what they would have received from the class action.

## (D)    Consumer Class Action Litigation

***In re Porsche Cars North America, Inc. Plastic Coolant Tubes Products Liability Litigation***
**Court/Case No: U.S. District Court for the Southern District of Ohio, 11-2233**
**Resolution/Status: $45 Million Settlement**

**Summary:** As co-lead counsel, G&E represented a nationwide class of owners and lessees of 2003-2006 Porsche Cayenne model vehicles with plastic coolant pipes that degrade and fracture. G&E attorneys successfully defeated Porsche Cars North America's ("PCNA") motion to dismiss and conducted extensive discovery of PCNA's German parent company, Porsche AG, much of which was in German. After two years of discovery and litigation, the parties reached a settlement valued at $45 million, under which Porsche would provide reimbursement for a significant portion of the cost of repair or replacement of the plastic coolant pipes.

# EXHIBIT B

# CAROLINE POPLIN MD JD FACP

6113 Wynnwood Road
Bethesda, MD 20816
301-229-6938
poplin@aya.yale.edu

## Education

| | |
|---|---|
| 1969 | Bryn Mawr College B.A. - *magna cum laude* |
| 1975 | Yale Law School J.D. |
| 1991 | University of Rochester School of Medicine and Dentistry M.D. |
| 1994 | Georgetown University Hospital: Internal Medicine Internship/Residency |

## Employment

**2009-present** Consultant to law firms on medical, legal and environmental matters, volunteer physician at Arlington Free Clinic

**2009-2011** Consultant to Social Security Administration, reviewed disability applications

**2008-2009** Visiting Fellow, Center for American Progress

**2007-2008** Visiting Scholar, Georgetown University Law Center

**1995-2007** National Naval Medical Center: 2002-2007 Staff Internist, GS-15
Ft. Dewitt Army Hospital: 1995-2002 Staff Internist GS-14
Consultant to the Department of Legal Medicine, Armed Forces Institute of Pathology
Assistant Professor of Medicine, Uniformed Services University of the Health Sciences

**1986-1994** Post-baccalaureate, medical school, residency

**1980-1986** U.S. Environmental Protection Agency: Senior Attorney
Worked on regulations implementing lead-in-gasoline, carbon monoxide, and TSP Clean Air Act standards, Clean Water Act litigation against U.S. Steel, Bethlehem Steel, General Motors, Chrysler and City of Cincinnati

**1978-1980** Mayer, Brown and Platt (Chicago, Illinois): Associate Attorney
Corporate and banking matters

**1975-1978** U.S. Food and Drug Administration: Attorney
Litigated red dye No. 2, cyclamates cases; represented FDA on Interagency Recombinant DNA Committee

## Publications (Sole Author)

"Obesity in America: There's no Free Lunch," McClatchy, [op-ed], [Posted May 25, 2012], published in the Milwaukee Journal Sentinel among others.

"Health Law: Be Careful What You Wish for," McClatchy, [op-ed], [Posted April 11, 2012], published in the Sacramento Bee among others.

"Premium Support in Medicare: A Terrible Idea," McClatchy, [op-ed], [Posted January 13, 2012], published in the Cleveland Plain Dealer among others.

"Medicare: You Get What You Pay for," Health Affairs blog, [Posted August 26, 2011].

"The End of Internal Medicine as We Know it," Health Affairs blog, [Posted January 14, 2011].

Letter to the Editor ("The Uproar Over Goldman Sachs"), The New York Times, (April 20, 2010), reprinted Congressional Record 156:56, (April 20, 2010), p. H673-676.

Letter to the Editor (Response to Economic View: "Managed Care: Get Used to It"), The New York Times, (March 14, 2010).

Letter to the Editor (Response to editorial "Mandates and Affordability"), The New York Times, (November 7, 2009).

"Medicare as Solution," [op-ed], The Baltimore Sun, (March 12, 2009), reprinted chicagotribune.com (May 4, 2009).

"No Direction Home: A Primary Care Physician Inspects the Patient-Centered Medical Home," Health Affairs blog, (March 24, 2009).

Letter to the Editor (Response to Gottlieb S. "What's at Stake in the Medicare Showdown"), The Wall Street Journal, (July 3, 2008).

"Health Insurance and Health Care are Not the Same" [op-ed], The Philadelphia Inquirer, (February 25, 2008)

"Democratic Health Care Reform: Will It Work This Time?" Society, Springer-Science Press. (November/December 2008).

"Democratic Health Care Reform: The Triumph of Hope over Experience?" [op-ed], The Miami Herald, (November 22, 2007).

Letter to the Editor (Response to Groopman J. "Mental Malpractice"), The New York Times, p. A22 (July 11, 2007).

Letter to the Editor (Response to Bodenheimer T. "Primary care—will it survive?"), New England Journal of Medicine, Vol. 355, No. 24, p. 2597 (December 14, 2006).

Letter to the Editor (Response to Weinberger S, Duffy FD, Cassel CK "Practice makes perfect" (or does it?), Annals of Internal Medicine, Vol. 142, No. 142, p. 302 (February 15, 2005) (e-edition).

Letter to the Editor (Response to Fincher RE "Attracting students to primary care"), New England Journal of Medicine, Vol. 353, No. 1, pp. 93-94 (January 6, 2005).

"Reinventing Internal Medicine," Society, Transaction Press, Rutgers University, (July/August 2004).

Letter to the Editor (Response to Lanie C. The annual physical examination: needless ritual or necessary routine), Annals of Internal Medicine, Vol. 137, No. 9, p. 77 (November 5, 2002).

Letter to the Editor (Response to "Dr. Levine's Dilemma"), The New York Times Magazine, p. 6 (May 22, 2002).

Letter to the Editor (Response to Sox, HC, "Independent Primary Care Practice by Nurse Practitioners," JAMA Vol. 283, No. 19, p. 2523 (May 17, 2000).

"Productivity in Primary Care: Work Smarter, Not Harder," Archives of Internal Medicine." Vol. 169, No. 9, pp. 1231-1233 (May 8, 2000), cited in Crossing the Quality Chasm, National Academy Press, (Washington, D.C. 2001).

"Medical Decisionmaking, Legal Decisions, and Managed Care," Legal Medicine (Armed Forces Institute of Pathology (1998), reprinted in Journal of Nursing Risk Management AFIP (1998).

"Everyone into the Pool! Medicare in the Twenty First Century," Journal for Health and Social Policy, The Haworth Press (Spring, 1997).

Comment: "The Physician as Manager," Journal of Policy Analysis and Management, Vol 6, No. 2 pp. 298-310. Wiley Interscience. Published online: December 7, 1998.

"Mismanaged Care," The Wilson Quarterly (summer, 1996), reprinted in American Government, A Public Policy Reader edit. Stowitts. Kendall/Hunt Publishing Co. (1998).

Book Review: "Competing Solutions: American Health Care Proposals and International Experience," by Joseph White (Brookings Institute). Society Transaction Press, Rutgers University (November 1996)

"Health Care Reform Redux: The Piper's Tune," Society. Transaction Press, Rutgers University (November 1995), reprinted in Why Medicine Fails, Transaction Press, Rutgers (October 1996)

"Fair Employment in a Depressed Economy: The Layoff Problem," UCLA Law Review, (December 1975) quoted in Franks v. Bowman Transportation Company, 424 U.S. 747 (1976), footnote 28.

**Professional Memberships and Licenses**

Board-certified in Internal Medicine (1994), recertified (2004)
Medical Licenses: Maryland, Virginia
District of Columbia Bar
Fellow, American College of Physicians
Member, Policy Committee, D.C.Chapter, American College of Physicians
Member, American Medical Association

**Prizes and Awards**

Award for Outstanding Customer Service NNMC March 2007
Performance Award, Family Health Center at Fort Belvoir, 1996
Rochester Academy of Medicine Award
Award for Outstanding Performance, EPA 1985

**Hospital Committees**

| | |
|---|---|
| 2006 to present | NIH Institute of Neurology IRB |
| 2005 to 2007 | National Naval Medical Center Patient Safety Working Group (Risk Management Committee) |
| 1995-2002 | Risk Management Committee, Dewitt Army Hospital |
| 1995-2000 | Pharmacy and Therapeutics Committee (alternate) |

# EXHIBIT C



**G&E** Grant & Eisenhofer P.A.

1747 Pennsylvania Avenue, N.W., Suite 875   Washington, DC 20006   Tel: 202·386·9500   Fax: 202·386·9505

123 Justison Street
Wilmington, DE 19801
Tel: 302·622·7000
Fax: 302·622·7100

485 Lexington Avenue
New York, NY 10017
Tel: 646·722·8500
Fax: 646·722·8501

30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Tel: 312·214·0000
Fax: 312·214·0001

WRITER'S DIRECT DIAL NUMBER
202-386-9500

06/06/14
Account No. 16960
Page 1

**Community Health Systems, Inc.**

Fees

|  |  |  | Hours |
|---|---|---|---|
| 04/04/11 | RG | Research | 2.00 |
| 04/04/11 | CP | Document review, email to R. Guttman | 2.50 |
| 04/05/11 | CP | Preparation for teleconference; email to R. Guttman | 2.00 |
| 04/08/11 | CP | Meeting at James and Hoffman with SEIU representatives; teleconference with Relator Dr. Doghramji | 4.30 |
| 04/08/11 | RG | Research | 2.00 |
| 04/08/11 | TB | Conference call with R Guttman, SEIU counsel and Dr. Doghramji regarding [Redacted] | 1.00 |
| 04/09/11 | RG | Research facts; emails to client and co-counsel | 3.00 |
| 04/09/11 | CP | Email to R. Guttman | 0.80 |
| 04/10/11 | CP | Emails; discussion of case with R. Guttman and T. Buschner | 0.50 |
| 04/10/11 | TB | Conference with R. Guttman and C. Poplin regarding case, conference call on Friday with Dr. Doghramji, [Redacted] | 1.00 |
| 04/10/11 | RG | Research facts; emails to client and co-counsel | 3.00 |
| 04/11/11 | RG | Research | 2.00 |
| 04/11/11 | CP | Teleconference with R. Guttman and SEIU | 1.00 |
| 04/12/11 | RG | Research | 2.00 |
| 04/13/11 | RG | Research | 2.00 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 04/13/11 | RG | Research | 2.00 |
| 04/15/11 | RG | Research | 2.00 |
| 04/15/11 | RG | Research | 2.00 |
| 04/15/11 | CP | Discussion with R. Guttman | 0.50 |
| 04/18/11 | RG | Research | 2.00 |
| 04/19/11 | RG | Research | 1.00 |
| 04/25/11 | RG | Research; conference call | 2.50 |
| 04/29/11 | RG | Review and edit disclosure | 3.00 |
| 04/29/11 | CP | Teleconference | 0.30 |
| 05/01/11 | CP | Review draft complaint; meeting with David Dean, Emilie Kraft | 12.00 |
| 05/02/11 | CP | Drafting for complaint; teleconference | 7.00 |
| 05/02/11 | SR | Analyzed financial data of Community Health Systems, Inc. | 7.50 |
| 05/03/11 | SR | Research financial paragraphs for the CHS complaint; research re corporate structure of CHS; draft section of complaint | 11.10 |
| 05/03/11 | CP | Drafting, review, emails | 7.00 |
| 05/04/11 | CP | Review revised complaint | 1.00 |
| 05/04/11 | SR | Researched and drafted a list of the CEOs of the 74 CHS hospital defendants; drafted section of complaint re practices | 7.30 |
| 05/05/11 | SR | Research CHS acquisitions from 2007-2010 | 1.50 |
| 05/05/11 | RG | Review drafts and conference with George Barrett and David Garrison; emails with C. Poplin | 3.00 |
| 05/06/11 | RG | Review and edit complaint; call with David Dean | 3.50 |
| 05/08/11 | RG | Edit complaint; emails to co-counsel | 5.00 |
| 05/09/11 | RG | Review complaint; conference with co-counsel; emails with co-counsel | 3.00 |

**Community Health Systems, Inc.**

|            |      |                                                                                                                                                  | Hours |
|------------|------|--------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 05/09/11   | SR   | Red-line edit of CHS complaint for co-counsel                                                                                                     | 6.50  |
| 05/10/11   | RG   | Emails with co-counsel re: strategy                                                                                                               | 1.50  |
| 05/11/11   | TB   | Review complaint from R. Guttman                                                                                                                  | 1.00  |
| 05/11/11   | SR   | Researched CHS hospital malpractice lawsuits, defensive medicine and increasing inpatient admissions                                              | 7.50  |
| 05/12/11   | RG   | Calls with Sheree Cook; Doghramji, co-counsel                                                                                                     | 1.50  |
| 05/13/11   | RG   | Calls with clients                                                                                                                                | 2.00  |
| 05/13/11   | TB   | Conference calls with Sheree Cook and Dr. Doghramji and all lawyers representing Relators re: [Redacted]                                          | 2.00  |
| 05/13/11   | SR   | CHS conference calls with Relators Sheree Cook & Dr. Doghramji                                                                                    | 1.50  |
| 05/23/11   | CAN  | Manage matter opening                                                                                                                             | 0.50  |
| 05/23/11   | REW  | Correspondence re matter opening and check requests                                                                                               | 0.60  |
| 05/25/11   | DH   | Draft client memo re: Community Health Systems                                                                                                    | 0.80  |
| 05/26/11   | PA   | Sent Certificates of Good Standing to Local Counsel                                                                                               | 0.50  |
| 05/26/11   | RG   | Emails and calls re: damages                                                                                                                      | 1.00  |
| 05/26/11   | TB   | Review motions for pro hac vice; emails to P. Alderson re: same; email to David Garrison re: same; review emails from R. Guttman and others on CHS case re: amending complaint to add [Redacted] | 0.50  |
| 05/27/11   | TB   | Review and respond to emails re: pro hac vice motions from P. Alderson and David Garrison                                                         | 0.30  |
| 05/29/11   | RG   | Re-read complaint                                                                                                                                 | 2.00  |
| 05/30/11   | RG   | Review complaint                                                                                                                                  | 1.00  |
| 05/31/11   | RG   | Meetings with co-counsel; conference calls                                                                                                        | 3.00  |
| 05/31/11   | REW  | Order new Certificates of Good Standing; discuss PHV filing with T. Buschner and G. McIntosh; prepare PHVs to file                                | 1.00  |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 05/31/11 | TB | Conference call with R. Guttman, lawyers on case re: issues related to the investigation; conference with C. Poplin re: CHS issues | 1.00 |
| 05/31/11 | CP | Meeting with R. Guttman, David Garrison | 1.00 |
| 06/01/11 | SR | CHS research - finding top 5 states in terms of beds and hospitals - created Excel sheet detailing raw data and computations | 3.00 |
| 06/02/11 | RG | Research | 1.00 |
| 06/07/11 | RG | Research; conference with David Garrison | 1.00 |
| 06/07/11 | CP | Reviewing materials | 1.00 |
| 06/08/11 | CP | Review Complaint | 2.00 |
| 06/09/11 | RG | Review complaint; conference call with C. Poplin | 1.00 |
| 06/10/11 | RG | Review complaint; meet with clients; conference with Dr. Poplin and T. Buschner | 5.50 |
| 06/10/11 | CP | Meeting with R. Guttman, David Dean, statisticians | 5.00 |
| 06/20/11 | SH | Reviewed correspondence, attorney-client work product, docket, complaint, relator's disclosure statement | 1.00 |
| 06/20/11 | RG | Prepare for conference call; conference call with DOJ | 2.00 |
| 06/20/11 | REW | Correspond with T. Buschner re case status | 0.20 |
| 06/21/11 | RG | Email to co-counsel; conference with Dr. Poplin | 1.00 |
| 06/23/11 | RG | Conference call with team | 1.00 |
| 06/23/11 | TB | Conference call with plaintiff's counsel on data issues | 1.00 |
| 06/23/11 | SR | CHS conference call | 1.00 |
| 06/23/11 | CP | Teleconference | 1.00 |
| 06/24/11 | TB | Conference call with George Barrett, R. Guttman and David Garrison re: first to file issues | 1.00 |
| 06/24/11 | RG | Research; emails to David Dean | 1.00 |

**Community Health Systems, Inc.**

|            |     |                                                                                                                                                                    | Hours |
|------------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 06/27/11   | RG  | Research                                                                                                                                                            | 1.00  |
| 06/27/11   | SR  | CHS Nursing home ties research                                                                                                                                     | 0.50  |
| 06/30/11   | TB  | Prepare for meeting with Dr. Doghramji; review and respond to emails from R. Guttman and David Dean re: same                                                        | 2.00  |
| 07/01/11   | TB  | Review complaint for meeting with Relator Doghramji; meeting with David Dean, Emilie Kraft, Dr. Poplin and Dr. Doghramji to prepare for [Redacted]; conference with R. Guttman re: same | 6.00  |
| 07/05/11   | RG  | Witness preparation                                                                                                                                                | 8.00  |
| 07/06/11   | RG  | Client preparation meetings                                                                                                                                        | 8.00  |
| 07/06/11   | TB  | Conference call with Relators' Counsel re: [Redacted] and upcoming meeting of Relators with AUSA in Tennessee                                                       | 1.00  |
| 07/07/11   | RG  | Research                                                                                                                                                            | 2.00  |
| 07/07/11   | CP  | Call with R. Guttman [Redacted]                                                                                                                                    | 0.30  |
| 07/11/11   | SR  | CHS conference call to discuss subsidiary list, financials, etc. and send emails to David Garrison regarding same                                                   | 1.50  |
| 07/14/11   | RG  | Conference call with co-counsel                                                                                                                                    | 1.00  |
| 07/20/11   | RG  | Research                                                                                                                                                            | 3.00  |
| 07/22/11   | RG  | Emails with co-counsel re: deal                                                                                                                                    | 1.00  |
| 08/03/11   | TB  | Review and respond to emails from R. Whitman re: seal and activity report                                                                                          | 0.30  |
| 08/03/11   | RG  | Research                                                                                                                                                            | 1.00  |
| 08/18/11   | TB  | Meeting with George Barrett and David Garrison in Nashville re: case review and respond to emails re: [Redacted]                                                    | 1.00  |
| 08/19/11   | TB  | Review and respond to emails from R. Guttman re: document review for CHS and resource issues; review and respond to emails re: conference call with SEIU's statisticians | 0.50  |
| 08/24/11   | RG  | Document review and teleconference with co-counsel                                                                                                                 | 1.50  |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 08/30/11 | RG | Emails with co-counsel | 5.00 |
| 08/31/11 | RG | Conference; research | 1.00 |
| 09/06/11 | TB | Conference call with relators counsel for all CHS cases re: status of investigation in each case and [Redacted] | 1.50 |
| 09/08/11 | ON | Read SEIU complaint | 1.50 |
| 09/09/11 | ON | Read SEIU complaint | 4.50 |
| 09/16/11 | TC | Reeview complaint and researched relevant sections of the law at issue in the case | 1.80 |
| 09/20/11 | RG | Research | 2.00 |
| 09/22/11 | TB | Conference call with O. Nwaeze and T. Campbell re: document review; email to CHS team re: instructions for document review and set up on iConnect | 0.50 |
| 09/22/11 | TC | Met with O. Nwaeze to discuss document review system; began reviewing document in iConnect; spoke with TB regarding system training and beginning document review | 2.30 |
| 09/23/11 | TC | Conference call with co-counsel to discuss [Redacted]; logged into iConnect and began reviewing documents | 7.20 |
| 09/23/11 | TB | Conference call with AUSA and co-counsel re: [Redacted]; conference with T. Campbell and O. Nwaeze re: same and document review; conference with R. Guttman re: document review issues | 2.50 |
| 09/23/11 | RG | Conference with DOJ, co-counsel, T. Buschner and S. Roopani; research | 3.00 |
| 09/23/11 | ON | Conference call with SEIU attorneys and R. Guttman, T. Buschner, and T. Campbell | 0.70 |
| 09/23/11 | SR | Highlighting 3rd party doctors & contractors in CHS complaint & researching CMS Rack Audit requirements for our phone call with DOJ | 2.80 |
| 09/23/11 | SR | Call with CHS Team—R. Guttman, T. Buschner, outside counsel and AUSA | 0.70 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 09/26/11 | SR | CHS call to discuss statistics, etc. with R. Guttman, Dr. Poplin, SEIU and Co-Counsel | 1.00 |
| 09/26/11 | SR | Create CHS document request re 3rd party vendors and draft memorandum for J. D. Thomas regarding [Redacted] | 4.80 |
| 09/26/11 | ON | Conference call regarding SEIU document review | 0.50 |
| 09/26/11 | ON | Call with T. Campbell and T. Buschner regarding SEIU complaint and document review | 0.50 |
| 09/26/11 | TB | Conference call with J. D. Thomas, David Young, T. Campbell and O. Nwaeze re [Redacted]; post- call with David Young re assignments; conference call with J. D. Thomas re [Redacted] | 2.00 |
| 09/26/11 | REW | Discuss related complaints with T. Buschner | 0.20 |
| 09/26/11 | TC | Continued reviewing documents in database and researching relevant terminology; attended conference call with co- counsel and representatives from the Department of Justice [Redacted]; spoke with O. Nwaeze regarding the same | 8.70 |
| 09/27/11 | TC | Spoke with database system administrator to discuss system functionality to assist with document review; completed video system training and participated in Webinar to understand system capabilities to facilitate document review; began reviewing documents related to CHS custodian Cothern | 7.40 |
| 09/27/11 | TB | Participate in I-connect training with DOJ document vendor, O. Nwaeze and T. Campbell | 1.00 |
| 09/27/11 | ON | Conference call for iConnect document review platform training. | 1.20 |
| 09/27/11 | SR | Made changes to document request memo for [Redacted] | 1.30 |
| 09/27/11 | CP | Meeting with R. Guttman; conference call with David Dean et al.; document review | 3.00 |
| 09/28/11 | SR | Sending CHS document request memo to J. D. Thomas at the DOJ | 0.30 |
| 09/28/11 | ON | SEIU document review | 1.40 |

**Community Health Systems, Inc.**

|  |  |  | <u>Hours</u> |
|---|---|---|---|
| 09/28/11 | TB | Review and respond to emails re missed call with DOJ [Redacted]; conference call with David Garrison [Redacted]; meeting with C. Poplin and R. Guttman re [Redacted]; emails from T. Campbell re questions for Michele Lee, etc. | 1.50 |
| 09/28/11 | TC | Continued reviewing previously coded documents in database to determine how the various coding folders function; began reviewing and coding documents related to the initial custodian assigned to G&E | 7.40 |
| 09/29/11 | ON | Document review | 4.60 |
| 09/29/11 | CP | Review of CHS documents; Tenet complaint | 1.00 |
| 09/30/11 | CP | Conference call with David Dean, Assistant United States Attorney, etc.; preparation | 2.00 |
| 09/30/11 | SR | CHS conference call | 0.80 |
| 09/30/11 | TB | Review and respond to emails from David Garrison and David Dean re document review; email to David Young re same; conference call with David Garrison re document review manpower, etc., attend conference call with DOJ re [Redacted] | 2.00 |
| 09/30/11 | RG | Call with J. D. Thomas, co-counsel; conference with T. Buschner | 2.50 |
| 10/03/11 | RG | Conferences and review | 0.50 |
| 10/03/11 | TB | Draft and send email to O. Nwaeze on document review status and deadlines; review and respond to email from David Young re: dividing up document review between G&E and Cohen, Milstein | 0.50 |
| 10/04/11 | TB | Conference call with SEIU counsel re: David Garrison's conference with J. D. Thomas (AUSA); redacting complaint; potential amending of complaint and other issues re: investigation and CIDs | 1.00 |
| 10/04/11 | RG | Call with co-counsel; conference with T. Buschner | 1.20 |
| 10/04/11 | ON | Document review | 5.00 |
| 10/05/11 | ON | Document review | 0.50 |

**Community Health Systems, Inc.**

|          |     |                                                                                                                                                                                      | Hours |
|----------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 10/05/11 | CP  | Review of complaint; email to R. Guttman                                                                                                                                              | 3.00  |
| 10/05/11 | RG  | Conferences and review                                                                                                                                                               | 0.50  |
| 10/05/11 | TB  | Review email from Michele Lee on instructions for document review; review and respond to email re: same from T. Campbell                                                            | 0.20  |
| 10/05/11 | TC  | Analyzed and evaluated documents related to custodian D. Cothern; reviewed documents recently coded to ensure a complete understanding of the document classification categories     | 8.70  |
| 10/06/11 | TC  | Continued the review and analysis of documents produced by the AVP of Quality and Resource Management; discussed the review, specific documents and system functionality with ON; began review of related complaints | 8.30  |
| 10/06/11 | TB  | Conference call with SEIU counsel re: [Redacted]; redacting complaint; potential amending of complaint and other issues re: investigation and CIDs                                   | 1.00  |
| 10/06/11 | RG  | Research; teleconference with other relators' counsel; teleconference with co-counsel                                                                                               | 2.00  |
| 10/06/11 | ON  | Document review                                                                                                                                                                      | 5.00  |
| 10/07/11 | ON  | Document review                                                                                                                                                                      | 4.00  |
| 10/07/11 | ON  | Research [Redacted]                                                                                                                                                                  | 1.20  |
| 10/07/11 | RG  | Teleconference with co-counsel; meeting with staff attorneys                                                                                                                        | 1.00  |
| 10/07/11 | TC  | Reviewed and analyzed documents in iConnect; evaluated documents for relevance and assigned documents to appropriate topic folders                                                  | 5.40  |
| 10/10/11 | TC  | Reviewed and analyzed documents from custodian DC; evaluated the same for relevance for possible use during motion practice, depositions and trial; discussed specific documents with TB and communicated with the DOJ regarding the same | 7.10  |
| 10/10/11 | RG  | Conference with T. Buschner, file review                                                                                                                                            | 0.50  |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 10/10/11 | TB | Review and respond to email from T. Campbell re: patients records in document review; review and respond to emails about rescheduling conference call with SEIU counsel | 0.30 |
| 10/11/11 | RG | Conference and review | 0.50 |
| 10/11/11 | TC | Reviewed electronic evidence and evaluated for relevance to the key issues of the case; identified documents for use during motion practice, depositions and possibly trial | 8.50 |
| 10/11/11 | ON | Document review | 1.20 |
| 10/12/11 | ON | Conference call with co-counsel | 0.70 |
| 10/12/11 | SR | CHS conference call to discuss status of case, document review and research re relators | 0.50 |
| 10/12/11 | TC | Utilized document database, iConnect to review and analyze evidence related to quality and resource management; identified and logged documents key to the issues of the case | 8.50 |
| 10/13/11 | RG | Conferences and review | 0.50 |
| 10/13/11 | TB | Conference call with counsel for SEIU et al. re: outstanding issues; conference with O. Nwaeze re: creating chart of cases and getting out hot documents | 2.00 |
| 10/13/11 | ON | Document review | 3.00 |
| 10/14/11 | ON | Document review | 5.20 |
| 10/14/11 | RG | Conference and review | 0.50 |
| 10/14/11 | TC | Resumed review of documents related to D.C.; identified evidence supportive of the issues of our case and categorized documents for review during motion practice and/or trial | 8.80 |
| 10/17/11 | TC | Ran search in iConnect to identify documents not yet reviewed; analyzed evidence and identified documents relevant to issues of interest; categorized documents accordingly; reviewed documents recently coded as hot | 9.00 |
| 10/17/11 | RG | Conferences and review | 0.50 |

**Community Health Systems, Inc.**

|            |       |                                                                                                                                                                                        | Hours |
|------------|-------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 10/17/11   | ON    | Read CHS complaints and draft a comparison chart                                                                                                                                       | 1.80  |
| 10/18/11   | ON    | Read CHS complaints and draft comparison chart                                                                                                                                         | 8.00  |
| 10/18/11   | RG    | Conferences and review                                                                                                                                                                 | 0.50  |
| 10/18/11   | TB    | Begin reviewing Complaints of other Relators; conference call with our litigation team re partial unsealing of complaint, hot documents and other issues                                | 2.00  |
| 10/18/11   | TC    | Reviewed and analyzed documents in database; identified key documents and foldered for review by senior counsel during motion practice and trial                                        | 8.50  |
| 10/19/11   | TC    | Evaluated evidence in iConnect to determine relevance and appropriate issue coding for use during deposition preparation as well as later case needs                                    | 8.90  |
| 10/19/11   | REW   | Assist in gathering hot documents                                                                                                                                                      | 0.80  |
| 10/19/11   | RG    | File review                                                                                                                                                                            | 1.50  |
| 10/19/11   | TB    | Continue reviewing other Relator's Complaints; review spreadsheet re: cases from O. Nwaeze                                                                                              | 1.50  |
| 10/19/11   | ON    | Document review                                                                                                                                                                        | 3.90  |
| 10/20/11   | TB    | Review letter from O. Nwaeze to counsel re: hot documents and make final edits; respond to emails re: document review status and getting additional ranges to review                    | 0.50  |
| 10/20/11   | RG    | File review                                                                                                                                                                            | 1.00  |
| 10/20/11   | TC    | Crafted search terms to identify documents not previously reviewed; executed search and analyzed evidence; reviewed communication from co-counsel regarding key documents; identified documents in database; spoke with O. Nwaeze regarding current review; updated senior counsel regarding outstanding issues | 8.10  |
| 10/21/11   | TC    | Finished reviewing the custodial documents of Cothern; spoke with O. Nwaeze regarding the same; began reviewing the hot documents for the next custodian                                | 1.40  |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 10/21/11 | TB | Review and respond to emails re: status of case and hot documents; review documents | 0.50 |
| 10/21/11 | RG | Conferences and review | 0.50 |
| 10/21/11 | ON | Document review | 4.00 |
| 10/22/11 | TC | Reviewed documents previously coded for custodian Miserocchi to ensure cohesive review with co-counsel; began reviewing custodian's documents | 0.80 |
| 10/23/11 | TC | Reviewed documents and analyzed evidence in database iConnect related to ProMed system; reviewed summary reports for various hospitals within CHS | 2.70 |
| 10/24/11 | TC | Continued reviewing evidence focusing on the ProMed system in various entities within the CHS system; categorized documents into relevant issues | 1.90 |
| 10/24/11 | RG | Meeting with co-counsel; review emails | 1.00 |
| 10/24/11 | ON | Document review | 1.70 |
| 10/26/11 | RG | Conferences and review | 0.50 |
| 10/27/11 | TC | Continued reviewing documents related to ProMed; categorized evidence regarding the same | 0.70 |
| 10/28/11 | TC | Reviewed documents marked as hot by co-counsel; evaluated evidence for relevance for later review by senior counsel | 1.10 |
| 10/29/11 | TC | Reviewed documents in the iConnect system; evaluated evidence and categorized for later use during trial or deposition preparation | 1.80 |
| 10/29/11 | ON | Document review | 1.00 |
| 10/31/11 | TC | Continued reviewing and analyzing evidence related to custodian Michael Miserocchi; categorized documents for ease of search and review during discovery and pretrial preparation | 4.50 |
| 11/01/11 | TC | Executed search in iConnect to identify remaining documents assigned to G&E for review in connection with custodian MM; |  |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| | | analyzed documents and evaluated evidence for relevance to the key issues in the case; tagged documents for ease of recall later in the case | 10.10 |
| 11/01/11 | ON | Document review | 2.30 |
| 11/02/11 | ON | Document review | 0.50 |
| 11/02/11 | TC | Reviewed evidence related to custodian Miserocchi; analyzed and evaluated documents regarding the same; categorized documents using issue tags for later query in preparation for deposition, motion practice and trial | 10.70 |
| 11/03/11 | TC | Evaluated evidence in iConnect related to ProMed reporting; categorized documents in accordance with the Department of Justice criteria; conference call with T. Buschner and O. Nwaeze to discuss status of review and current findings; discussed specific coding with O. Nwaeze | 7.10 |
| 11/03/11 | TB | Conference call with T. Campbell and O. Nwaeze re: status of document review; participate in Department of Justice/Relator's Counsel call re: [Redacted]; review and respond to emails re: same from David Garrison and David Young | 1.50 |
| 11/03/11 | ON | Document review | 1.90 |
| 11/03/11 | ON | Call with T. Buschner and T. Campbell regarding CHS document review | 0.20 |
| 11/04/11 | ON | Document review | 2.70 |
| 11/04/11 | TC | Executed search to determine MM custodial documents assigned for review that remained to be reviewed; analyzed documents and evaluated for relevance | 1.90 |
| 11/05/11 | TC | Reviewed additional documents in iConnect and evaluated for relevance; added documents to appropriate tags for later recall; researched various medical terminology to better assess relevance | 4.30 |
| 11/06/11 | TC | Continued reviewing documents related to custodian Miserocchi; categorized documents according to key issues of the case | 3.30 |
| 11/06/11 | ON | Document review | 2.00 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 11/07/11 | ON | Document review | 5.10 |
| 11/07/11 | TC | Continued reviewing documents related to custodian Miserocchi; assigned documents to relevant case issues and reviewed and analyzed for relevance | 4.10 |
| 11/07/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/08/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/08/11 | TC | Completed review of initial set of documents for custodian Michael Miserocchi; discussed the same with O. Nwaeze; utilized database to query hot documents; updated Michael Miserocchi hot doc spreadsheet | 4.40 |
| 11/08/11 | ON | Document review | 3.00 |
| 11/09/11 | ON | Document review | 3.60 |
| 11/09/11 | CP | Telephone calls with R. Guttman, T. Buschner | 1.00 |
| 11/09/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/09/11 | TB | Conference call with C. Poplin re: call on Thursday, November 10th; conference with R. Guttman and David Garrison re: same | 1.00 |
| 11/10/11 | TB | Pre-call with counsel for SEIU and C. Poplin re: [Redacted]; conference call with AUSA re: [Redacted] | 2.00 |
| 11/10/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/10/11 | CP | Preparation for conference call; two conference calls | 4.50 |
| 11/10/11 | ON | Document review | 4.30 |
| 11/10/11 | ON | Conference call with all SEIU counsel and Dr. Poplin | 1.50 |
| 11/11/11 | ON | Document review | 1.50 |
| 11/11/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/14/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/15/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 11/15/11 | TB | Dinner meeting with David Garrison and R. Guttman re: status of case/investigation | 2.00 |
| 11/16/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/16/11 | ON | Document review | 1.50 |
| 11/17/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/17/11 | TB | Review email from Jan Soifer | 0.30 |
| 11/18/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/18/11 | ON | Document review | 4.00 |
| 11/18/11 | CP | Review of statistics analysis memorandum; email | 1.50 |
| 11/21/11 | CP | Further review of statistics analysis; response to David Young comment | 1.00 |
| 11/21/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/22/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/22/11 | CP | Preparation of revisions for memorandum; emails | 3.00 |
| 11/23/11 | CP | Emails, telephone calls with R. Guttman re conference call with DOJ; statistical analysis | 1.00 |
| 11/23/11 | ON | Document review | 4.00 |
| 11/23/11 | RG | Conference with Dr. Poplin, O. Nwaeze, T. Buschner, co- counsel | 0.50 |
| 11/23/11 | TB | Conference call with SEIU Relator's Counsel and AUSA's office re: [Redacted] | 1.00 |
| 11/24/11 | CP | Review of DOJ analysis; internet research | 1.00 |
| 11/25/11 | CP | Review of DOJ analysis; internet research | 1.00 |
| 11/28/11 | CP | Analysis; email to R. Guttman | 1.00 |
| 11/28/11 | ON | Document review | 3.00 |
| 11/29/11 | ON | Document review | 0.50 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 12/02/11 | ON | Document review | 0.20 |
| 12/02/11 | SR | CHS conference call | 0.50 |
| 12/02/11 | CP | Conference calls with David Dean, DOJ | 1.50 |
| 12/02/11 | RG | Conference with co-counsel; conference with T. Buschner | 2.00 |
| 12/05/11 | TC | Reviewed document identified during recent review and drafted brief summary for TB | 0.50 |
| 12/05/11 | TB | Review and respond to email from R. Wittman re: seal; email to D. Garrison re: same; emails to reviewers re: status, review document from T. Campbell | 0.50 |
| 12/05/11 | ON | Document review | 6.70 |
| 12/06/11 | ON | Document review and email to T. Buschner summarizing hot documents | 5.20 |
| 12/07/11 | ON | Document review | 3.00 |
| 12/08/11 | ON | Document review | 3.00 |
| 12/09/11 | ON | Conference call with all SEIU attorneys | 1.00 |
| 12/09/11 | ON | Document review | 1.00 |
| 12/09/11 | SR | CHS conference call discussing status of case, etc. | 1.00 |
| 12/09/11 | TB | Prepare for conference call by reviewing memorandum and documents from O. Nwaeze; conference call with Relator's Counsel on various topics, including [Redacted] | 1.50 |
| 12/09/11 | RG | Conference call with co-counsel | 1.00 |
| 12/12/11 | TC | Began reviewing documents coded hot during the past several weeks | 2.30 |
| 12/12/11 | ON | Document review | 3.70 |
| 12/13/11 | TB | Review email from David Young re: conference call with Michele Lee; review and respond to other emails from attorneys for SEIU Relators re: same; send around grid for attorney time as requested by David Dean; work with C. Chung on same | 0.50 |

**Community Health Systems, Inc.**

|            |     |                                                                                                                                              | Hours |
|------------|-----|----------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 12/14/11   | TC  | Continued reviewing recently coded hot documents in the LAWeb system                                                                          | 0.30  |
| 12/14/11   | ON  | Draft memo summarizing hot documents found in document review                                                                                 | 4.10  |
| 12/14/11   | ON  | Document review                                                                                                                               | 1.00  |
| 12/16/11   | TC  | Reviewed documents coded hot in the last few weeks; discussed current review with O. Nwaeze; began reviewing materials for Michael Miserocchi | 4.00  |
| 12/19/11   | ON  | Document review                                                                                                                               | 2.80  |
| 12/21/11   | ON  | Document review                                                                                                                               | 3.00  |
| 01/03/12   | TC  | Analyzed documents for relevance and categorized evidence on point for the issues of the case for later review during trial preparation and pre-trial practice | 3.90  |
| 01/03/12   | TB  | Status update conference with R. Guttman                                                                                                      | 0.20  |
| 01/04/12   | TC  | Reviewed and analyzed evidence from custodian Michael Miserocchi; evaluated documents for relevance; identified section of documents not reviewed for co-counsel | 9.00  |
| 01/05/12   | ON  | Download 'hot documents' from the review of Michael Miserocchi's files                                                                        | 0.50  |
| 01/06/12   | TC  | Reviewed and analyzed documents related to custodian Michael Miserocchi; categorized evidence according to key issues of the case and for possible later use during trial, depositions and motion practice | 8.90  |
| 01/07/12   | TC  | Continued reviewing documents and evaluating for relevance as well as key case categories                                                     | 2.60  |
| 01/09/12   | TC  | Reviewed and coded documents relating to [Redacted]                                                                                           | 2.80  |
| 01/09/12   | ON  | Draft letter to Michele Lee and email to T. Buschner for feedback; email Michele Lee regarding [Redacted]                                      | 1.50  |
| 01/10/12   | ON  | Create CDs containing 'hot documents' and research memorandum and mail to Michele Lee and co-counsels                                          | 2.80  |

Community Health Systems, Inc.

|            |     |                                                                                                                                                                                                                                                                            | Hours |
| ---------- | --- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ----- |
| 01/10/12   | TC  | Evaluated and analyzed documents in LAWeb related to VP of Operations Support at ProMed; associated documents with relevant categories for later use by senior counsel; recorded hot documents                                                                                | 9.30  |
| 01/10/12   | TB  | Review and edit O. Nwaeze's letter to M. Lee regarding [Redacted]                                                                                                                                                                                                            | 1.00  |
| 01/11/12   | TC  | Evaluated documents from the custodial files of Michael Miserocchi; documents pertaining to the ProMed system and implementation at CHS hospitals; identified evidence for key issues in the case                                                                              | 8.00  |
| 01/12/12   | TC  | Reviewed various documents from production files of the VP of operations support; categorized documents for ease of use later during motion practice, depositions and/or trial                                                                                                | 8.00  |
| 01/13/12   | TC  | Analyzed and evaluated evidence related to ProMed implementation at various facilities, including training, system requirements, physician and staff resistance or acceptance and various related issues                                                                       | 6.10  |
| 01/14/12   | TC  | Continued reviewing from the custodial files of Michael Miserocchi and categorizing relevant e-mail and other documents for possible use by senior counsel                                                                                                                    | 2.20  |
| 01/16/12   | TC  | Reviewed documents in LAWeb and evaluated for relevance; identified evidence supporting the key issues of the case and logged for quick reference; categorized documents according to pre-defined grouping for possible later use during depositions, motion practice and/or trial | 9.40  |
| 01/16/12   | RG  | Call with co-counsel                                                                                                                                                                                                                                                        | 0.50  |
| 01/16/12   | ON  | Document review                                                                                                                                                                                                                                                             | 2.80  |
| 01/17/12   | TC  | Evaluated and analyzed evidence related to ProMed issues and implementation at various facilities; categorized documents for review by senior counsel                                                                                                                         | 4.50  |
| 01/18/12   | TC  | Reviewed documents marked as hot during recent review and forwarded copies to senior counsel in preparation for call today with co-counsel; spoke with T. Buschner and O. Nwaeze regarding today's call                                                                        | 0.60  |

**Community Health Systems, Inc.**

<u>Hours</u>

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| 01/18/12 | TB | Conference call with all Relators Counsel and Department of Justice regarding [Redacted]; pre-call conference with T. Campbell and O. Nwaeze; email to SEIU counsel regarding [Redacted]; conference with T. Campbell regarding status of review and her other work assignments; email to R. Guttman regarding T. Campbell being pulled for another project | 2.00 |
| 01/18/12 | ON | Conference call with Michele Lee and co-counsel | 0.30 |
| 01/19/12 | ON | Document review | 1.20 |
| 01/19/12 | TB | Email to D. Garrison regarding [Redacted] and call on various issues to set up; review and respond to email from David Garrison regarding providing J. D. Thomas with [Redacted] | 0.50 |
| 01/23/12 | TB | Review motions and proposed Orders with A. Bauer from Department of Justice [Redacted] | 0.30 |
| 01/23/12 | ON | Document review | 1.30 |
| 01/24/12 | AB | Receipt and review of [Redacted]; profile same and send originals via UPS to DE for central filing | 0.50 |
| 01/24/12 | TB | Review Order [Redacted] | 1.00 |
| 01/25/12 | TB | Conference call with Relator's Counsel regarding [Redacted]; conference with O. Nwaeze regarding same | 1.50 |
| 01/25/12 | ON | Conference call with David Garrison, J. D. Thomas of the US Attorney's Office, and David Young | 1.00 |
| 01/27/12 | TB | Review and respond to email from David Garrison regarding conference with J. D. Thomas; review email from David Dean to Michele Lee regarding meeting request; conference with R. Guttman regarding meeting in Nashville | 0.40 |
| 01/27/12 | AB | Calculate attorneys' fees; put into an excel spreadsheet; conversation with T. Buschner re same | 0.50 |
| 01/30/12 | ON | Conference call to discuss timeline assignment | 0.70 |
| 01/31/12 | CP | Review complaint | 0.30 |

Community Health Systems, Inc.

|            |     |                                                                                                                                                                                             | Hours |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 01/31/12   | TB  | Review emails from David Garrison re: call with J. D. Thomas and Dr. Poplin; set up call with Dr. Poplin                                                                                     | 0.30  |
| 02/01/12   | ON  | Create timeline of relevant documents regarding observational stays                                                                                                                         | 2.80  |
| 02/02/12   | ON  | Create timeline of relevant documents regarding observational stays                                                                                                                         | 4.40  |
| 02/03/12   | ON  | Create timeline of relevant documents regarding observational stays                                                                                                                         | 3.10  |
| 02/03/12   | ON  | Research then draft memo for R. Guttman regarding the use of statistics to establish False Claims Act violations                                                                             | 4.00  |
| 02/03/12   | AB  | Print documents for R. Guttman to review over the weekend and assemble in 3-ring binders which were sent by O. Nwaeze                                                                        | 2.00  |
| 02/03/12   | CP  | Preparation, conference call with AUSA, follow-up call with T. Buschner                                                                                                                      | 2.00  |
| 02/03/12   | TB  | Conference call with J.D. Thomas, D. Garrison, R. Guttman and C. Poplin regarding [Redacted]                                                                                                 | 2.00  |
| 02/06/12   | CP  | Review of Interqual, Blue Book criteria                                                                                                                                                      | 2.50  |
| 02/06/12   | AB  | Prepare documents for R. Guttman and C. Poplin to take to meeting in Nashville, TN                                                                                                           | 0.50  |
| 02/06/12   | ON  | Create timeline of relevant documents regarding observational stays                                                                                                                         | 5.30  |
| 02/06/12   | ON  | Conference call with Reuben Guttman, T. Buschner, and C. Poplin to discuss the CHS matter and create a list of questions; draft e-mail to Reuben Guttman summarizing the conference call     | 2.20  |
| 02/07/12   | ON  | Travel to Nashville with R. Guttman and C. Poplin to meet with David Garrison, George Barrett, and Assistant U.S. Attorney, J. D. Thomas                                                     | 15.00 |
| 02/07/12   | CP  | Review of Blue Book; meeting with David Garrison, AUSA; meeting with George Barrett                                                                                                          | 6.50  |
| 02/07/12   | TB  | Conference with R. Guttman regarding outcome of meeting with J. D. Thomas and others                                                                                                         | 0.30  |
| 02/07/12   | RG  | Travel to Nashville                                                                                                                                                                          | 2.00  |

## Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 02/07/12 | RG | Meetings (2) with George Barrett and David Garrison; meeting with DOJ | 10.00 |
| 02/08/12 | RG | Return travel from Nashville | 2.00 |
| 02/08/12 | CP | Meeting with R. Guttman | 1.00 |
| 02/08/12 | AB | Work with R. Guttman on a memorandum [Redacted] | 2.00 |
| 02/08/12 | ON | Create timeline of relevant documents regarding observational stays | 2.70 |
| 02/08/12 | ON | Edit Reuben Guttman's memorandum [Redacted] | 1.00 |
| 02/09/12 | ON | Research [Redacted] | 0.50 |
| 02/09/12 | CP | Review R. Guttman's memorandum, research, compose email | 1.00 |
| 02/09/12 | TB | Review emails from R. Guttman and David Garrison regarding Michele Lee's departure from Department of Justice, and future handling of case/potential issues; review email from Michele Lee regarding [Redacted] | 0.30 |
| 02/10/12 | TB | Review and revise [Redacted] | 0.30 |
| 02/10/12 | AB | Create chart of fees in case; conversation with T. Buschner re same | 1.00 |
| 02/16/12 | TB | Review memorandum from David Young and O. Nwaeze regarding timeline of admissions/observations; review and respond to emails from David Young regarding same | 0.50 |
| 02/17/12 | TB | Conference call with all of SEIU Relators' counsel regarding [Redacted]; review [Redacted] with R. Guttman for transmission to Relators' Counsel | 2.00 |
| 02/17/12 | CP | Conference call with David Dean, other counsel | 0.80 |
| 02/17/12 | ON | Conference call with R. Guttman, T. Buschner, David Garrison, David Young, George Barrett, and Caroline Poplin | 0.60 |
| 02/22/12 | TB | Review and respond to emails from Department of Justice lawyer recently assigned to case regarding deposition outlines | 0.10 |
| 02/23/12 | TB | Review recent pleadings filed by Department of Justice in case | 0.10 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 02/23/12 | CP | Memorandum to David Garrison | 1.50 |
| 02/24/12 | TB | Review memorandum from C. Poplin regarding [Redacted]; conference call with C. Poplin regarding same | 0.50 |
| 03/01/12 | TB | Review substantive emails re: evidence from David Dean to J.D. Thomas etc. | 0.50 |
| 03/16/12 | SH | Telephone conversation with A. Bauer relative to the status of case | 0.30 |
| 03/26/12 | RG | Evaluate new cases; travel to New York | 6.00 |
| 03/26/12 | RG | Conference call with co-counsel and T. Buschner | 2.00 |
| 03/27/12 | TB | Review email from O. Nwaeze to David Young regarding document review and depositions | 0.30 |
| 03/28/12 | RG | Conference with T. Buschner | 0.50 |
| 03/30/12 | SH | Prepared case calendar; emailed with T. Buschner; profiled approved case calendar | 0.30 |
| 04/05/12 | TB | Conference call with all SEIU counsel and Melissa Handrigan re: [Redacted]; review and respond to emails from R. Guttman and David Garrison re: meeting with J. D. Thomas and [Redacted] | 0.70 |
| 04/17/12 | ON | Document review | 4.00 |
| 04/18/12 | TB | Review and respond to emails re: [Redacted] and document review issues | 0.50 |
| 04/23/12 | ON | Document review | 2.50 |
| 04/24/12 | ON | Document review | 2.00 |
| 04/27/12 | ON | Document Review | 8.00 |
| 04/30/12 | ON | Document Review | 1.00 |
| 05/01/12 | TB | Review and respond to emails from Melissa Handrigan re: [Redacted] | 0.20 |
| 05/14/12 | TB | Review meeting agenda from Melissa Handrigan; conference with O. Nwaeze re: meeting and document review | 0.50 |

Community Health Systems, Inc.

| Date | | Description | Hours |
|------|-----|-------------|-------|
| 05/15/12 | TB | Conference call with David Garrison re: next steps; [Redacted] meeting at DOJ on June 4th | 0.50 |
| 05/22/12 | TB | Conference with R. Guttman and David Garrison re: [Redacted] case issues, and amending complaint | 1.00 |
| 05/24/12 | TB | Travel back to DC | 1.50 |
| 05/25/12 | ON | Document review | 4.00 |
| 05/30/12 | ON | Document review | 5.70 |
| 05/31/12 | RG | Conference call with co-counsel | 0.50 |
| 06/01/12 | TB | Conference call with D. Young and O. Nwaeze re meeting with DOJ on Monday, June 4th, including preparation | 0.30 |
| 06/01/12 | ON | Document review; conference call with T. Buschner and David Young of Cohen Milstein | 3.70 |
| 06/01/12 | CP | Review materials; conference call | 1.00 |
| 06/03/12 | ON | Research malpractice lawsuits involving CHS and CHS affiliated hospitals | 5.00 |
| 06/04/12 | ON | Draft document highlighting [Redacted]; travel to and from DC for meet with DOJ and other relators counsel | 14.00 |
| 06/04/12 | CP | Meetings with R. Guttman, T. Buschner, DOJ, George Barrett | 9.50 |
| 06/04/12 | AB | Assemble documents for R. Guttman and T. Buschner for their meeting with DOJ | 2.00 |
| 06/04/12 | TB | Prepare for meeting with DOJ and other relators' counsel; meeting at DOJ; dinner meeting with R. Guttman, C. Poplin, David Garrison and George Barrett | 11.00 |
| 06/04/12 | RG | Meeting with CMST and George Barrett and David Garrison; meeting with DOJ; meeting with Jan Soifer, George Barrett and co-counsel | 7.00 |
| 06/06/12 | SH | Prepared case calendar; emails with T. Buschner | 0.20 |
| 06/08/12 | ON | Document review | 3.50 |
| 06/13/12 | ON | Document review | 1.50 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 06/14/12 | ON | Document review | 1.00 |
| 06/17/12 | ON | Document review | 3.00 |
| 06/18/12 | ON | Research what constraints if any JCAHO places on corporate generated hospital admissions standards including requirements for the qualification of the drafters | 2.00 |
| 06/26/12 | ON | Collect documents that have been marked as hot to be sent to the DOJ; email to David Young of Cohen Milstein | 1.80 |
| 06/28/12 | SH | Emailed T. Buschner relative to case calendar | 0.10 |
| 07/05/12 | SH | Reviewed and profiled email with case calendar approval from T. Buschner | 0.10 |
| 07/06/12 | SH | Reviewed profiled correspondence concerning binders containing documents from co-counsel; telephone conversation with O. Nwaeze relative to index and access to DOJ's website; review documents profiled in interwoven | 0.70 |
| 07/06/12 | EL | Research, review court filings, supporting documents re CHS per new case assignments | 3.50 |
| 07/11/12 | ON | Read amended complaint; compile suggestions for adding to the amended complaint; review books published by JCAHO on hospital accreditation to find support for argument that the CHS blue book does not meet JCAHO standards | 8.50 |
| 07/12/12 | ON | Research to substantiate argument that the CHS blue book did not satisfy JCAHO standards | 2.00 |
| 07/16/12 | ON | Conclude research to substantiate claims that CHS blue book did not comply with JCAHO standards; document review | 8.00 |
| 07/16/12 | TB | Draft email to all our Relator's counsel re [Redacted]; draft email to J. D. Thomas re [Redacted] | 0.40 |
| 07/17/12 | SH | Telephone conversation with A. Bauer re documents from co-counsel and relator; drafted and prepared email to T. Buschner re [Redacted]; reviewed email from T. Buschner re [Redacted] | 0.40 |
| 07/18/12 | SH | Emails with T. Buschner relative [Redacted] | 0.10 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 07/18/12 | TB | Review and respond to email from J. D. Thomas re [Redacted] | 0.20 |
| 07/20/12 | TB | Conference call with our Relator's Counsel re [Redacted]; email to R. Guttman re same | 0.50 |
| 07/20/12 | ON | Document review; participate in conference call | 4.40 |
| 07/21/12 | ON | Draft memo to RAG and TLB re: blue book's failure to comply with JCAHO standards | 2.00 |
| 07/22/12 | ON | Complete memo and draft email to RAG and TLB explaining changes to amended complaint and potential allegations that should be added | 0.80 |
| 07/23/12 | TB | Review emails re amended complaint and proposed changes from O. Nwaeze and R. Guttman | 0.50 |
| 07/25/12 | SH | Reviewed [Redacted]; updated Compulaw calendar | 0.30 |
| 07/26/12 | ON | Conference call with T. Buschner, DOJ and liasing attorneys | 1.10 |
| 07/26/12 | TB | Lengthy conference call with DOJ and all Relator's counsel [Redacted]; draft and respond to emails from O. Nwaeze re notes of call | 1.50 |
| 07/27/12 | TB | Delegate document review; emails to Melissa Handrigan, O. Nwaeze re same | 0.50 |
| 07/27/12 | TB | Review complaint and related complaints; review correspondence in the case re: issues for document review; conference with attorneys re: case issues | 5.00 |
| 07/27/12 | TB | Review complaint and related complaints; review correspondence in the case re: issues for document review; conference with attorneys re: case issues | 2.00 |
| 07/30/12 | TB | Review complaint and related complaints; review memos and hot documents | 6.00 |
| 07/30/12 | SH | Reviewed status of case | 0.10 |
| 07/30/12 | JS | Review complaints and hot documents | 4.10 |

Community Health Systems, Inc.

| Date | | Description | Hours |
|------|------|-------------|-------|
| 07/31/12 | JS | Review consolidated complaints; review hot documents; review Inpatient observation memo and materials | 7.60 |
| 07/31/12 | ON | Draft emails to update J. Sugarman, T. Bromberg, and T. Campbell on CHS document review; scan and profile memos from Cohen Milstein | 0.50 |
| 07/31/12 | TB | Review draft Amended Complaint and Related Complaints; review memos regarding hot documents; review hot documents | 8.00 |
| 07/31/12 | TC | Reviewed case materials and hot documents to get back up to speed on issues; worked with iConnect to reactivate my account | 2.70 |
| 07/31/12 | TB | Draft email to all working on CHS document review re review of complaints and summaries provided to DOJ and instructions to O. Nwaeze re leadership role in document review | 0.50 |
| 08/01/12 | TC | Met with O. Nwaeze to discuss focus of the case and reviewed custodial documents of Schweinhart that have been identified as hot | 1.30 |
| 08/01/12 | TB | Review attorneys' and co-counsel correspondence re: witnesses for DOJ interview; review memoranda regarding hot documents; review hot documents sent to DOJ | 8.50 |
| 08/01/12 | JS | Review summary memos on CHS production; Review "hot docs" summaries | 2.50 |
| 08/02/12 | JS | Review "Hot Doc" and list of potential witnesses and sources of information | 3.20 |
| 08/02/12 | SH | Prepared case calendar; emails with Traci Buschner relative to case calendar | 0.20 |
| 08/02/12 | TB | Review Disclosure Statement and witness list; conference call with Dr. Doghramji, T. Buschner and others; review memoranda regarding hot documents; review hot documents sent to DOJ | 7.00 |
| 08/02/12 | TC | Reviewed hot documents identified during the recent review; continued reviewing binders of key documents prepared by co-counsel and presented to the DOJ | 1.90 |
| 08/03/12 | TC | Began reviewing documents for custodian Barbara Paul; evaluated evidence for relevance; attended conference call with | |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| | | Dr. Doghramji [Redacted]; ran several searches and reviewed documents related to [Redacted] | 3.90 |
| 08/03/12 | TB | Conference call with Dr. Doghramji, O. Nwaeze and other G&E team re [Redacted] | 1.00 |
| 08/03/12 | SH | Meetings with O. Nwaeze relative to hot documents; meetings with T. Bromberg relative to client documents; emails with T. Bromberg; conducted extensive research on Interwoven to identify client documents, cds, etc. with co-counsel; worked with P. Kaiser to identify correspondence sent to co-counsel and cds sent to copy center; reviewed multiple emails from P. Kaiser | 3.20 |
| 08/03/12 | JS | Review emails from hospitals directors regarding admission policies for emergency rooms; conference call with relator | 4.10 |
| 08/03/12 | ON | Create chart of witnesses recommended by relator; participate in conference call; call with D. Garrison to discuss joint letter to DOJ listing witnesses that we would recommend for interviews | 1.20 |
| 08/05/12 | TB | Review correspondence re: government clearance to access documents' database; review memoranda and hot documents | 1.00 |
| 08/06/12 | TC | Reviewed documents in database produced from custodian Dr. Barbara Paul's files; evaluated documents for relevance | 5.90 |
| 08/06/12 | ON | Review CHS's SEC filings and make edits to the amended complaint | 5.90 |
| 08/06/12 | JS | Review hot documents and potential additional witnesses list | 4.20 |
| 08/07/12 | JS | Review documents produced by CHS; iConnect training | 7.80 |
| 08/07/12 | ON | Complete edits to CHS amended complaint; email draft to R. Guttman and T. Buschner; document review | 5.90 |
| 08/07/12 | TC | Met with TB to discuss analysis of documents in iConnect and other issues in the case including documents previously identified as hot and various custodians; continued reviewing and analyzing evidence | 9.00 |
| 08/07/12 | TB | Training on the Government's database for evaluation of documents; analyze documents | 2.00 |

**Community Health Systems, Inc.**

<u>Hours</u>

| Date | Initials | Description | Hours |
|---|---|---|---|
| 08/08/12 | TB | Review attorneys' and co-counsel correspondence re: conference call; analyze hot documents sent to the DOJ | 4.50 |
| 08/08/12 | TC | Formulated search terms and executed queries to identify documents for Barbara Paul; reviewed and analyzed documentary evidence; [Redacted] | 9.20 |
| 08/08/12 | TB | Conference call with O. Nwaeze re status of Dr. Doghramji's [Redacted] for DOJ; call on Wednesday; and prepare for call with DOJ and leading document review | 0.40 |
| 08/08/12 | ON | Document review | 5.10 |
| 08/09/12 | ON | Conference call with team and DOJ; call with T. Buschner to discuss supplementing witness list; email relator to schedule call to discuss [Redacted]; document review | 2.70 |
| 08/09/12 | TB | Lengthy conference call with DOJ and all Relator's Counsel re [Redacted]; conference with O. Nwaeze re follow up with DOJ and David Garrison's office on our suggestions for witness lists, questions etc. | 2.50 |
| 08/09/12 | TC | Reviewed materials sent by O. Nwaeze, attended conference call with DOJ [Redacted]; reviewed and analyzed documents in iConnect | 8.60 |
| 08/09/12 | TB | Prepare for a conference call with AUSA and co-counsel; conference call with AUSA and co-counsel; analyze documents | 5.00 |
| 08/10/12 | TC | Continued evaluating documents from Dr. Paul to determine relevance to the key issues in the case, focusing particularly on increased admissions and other methods of illegally inflating the Medicare payment | 9.20 |
| 08/10/12 | ON | Document review | 2.70 |
| 08/13/12 | ON | Call with Relator Doghramji [Redacted] | 0.60 |
| 08/13/12 | JS | Review documents produced by CHS | 9.20 |
| 08/13/12 | TC | Continued reviewing and analyzing evidence related to Dr. Paul, specifically her involvement with ProMed and any activity suggesting a push by CHS to increase admissions; reviewed documents related to test mapping and various physician's responses to the proposed ProMed standard testing | 8.40 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 08/14/12 | TC | Analyzed and evaluated evidence to determine relevance to key issues in the case including increasing admissions and ordering tests that were not medically necessary to increase income from Medicare | 9.00 |
| 08/14/12 | TB | Analyze documents | 6.00 |
| 08/14/12 | JS | Review documents produced by CHS | 5.40 |
| 08/15/12 | JS | Review edits to complaint | 0.50 |
| 08/15/12 | ON | Edit sections of CHS Amended Complaint | 1.00 |
| 08/15/12 | TC | Identified key documents for senior counsel review in preparation for motion practice, witness interviews and possibly for trial; analyzed many documents related to Physician Leadership Group meetings at various CHS facilities | 8.80 |
| 08/16/12 | TC | Crafted search to identify custodial documents related to SVP and Chief Medical Officer; reviewed and analyzed evidence to determine relevance to fraud; reviewed numerous documents related to ProMed complaint test mapping and the process used to determine standard tests | 9.30 |
| 08/16/12 | JS | Review amended complaint and review documents produced by CHS | 3.50 |
| 08/17/12 | JS | Review documents produced by CHS | 8.90 |
| 08/17/12 | ON | Email to T. Buschner summarizing documents found in document review; meeting with J. Sugarman and T. Campbell to discuss document review and organizing binder for DOJ; conduct document review | 6.00 |
| 08/17/12 | TC | Searched documents from custodian Barbara Paul, evaluated for relevance; met with O. Nwaeze and J. Sugarman to discuss hot documents identified to date and status of review | 9.30 |
| 08/17/12 | TB | Check on status of review; review emails re hot documents | 0.50 |
| 08/19/12 | TC | Reviewed and analyzed documents relevant to site visits at various CHS hospitals to determine relevance to key issues | 5.20 |
| 08/19/12 | RG | Edit complaint | 3.00 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 08/19/12 | ON | Research regarding Medicare Administrative Contractors; JCAHO policies on admissions; conduct document review | 3.20 |
| 08/20/12 | CP | Review of amended complaint | 2.00 |
| 08/20/12 | TC | Reviewed documentary evidence produced by defendants to determine relevance to issues, focusing on ProMed complaint test mapping, admissions policies and procedures, the use of observation vs. admission status as it relates to reimbursement, blue book and qualcheck at various CHS facilities | 12.10 |
| 08/20/12 | TB | Review hot documents from team; review update emails; conference with O. Nwaeze on status | 1.00 |
| 08/20/12 | JS | Review documents produced by CHS | 2.00 |
| 08/21/12 | JS | Review documents produced by CHS | 3.20 |
| 08/21/12 | TC | Crafted search terms to identify evidence supportive of fraud within CHS, including admitting patients unnecessarily and ordering standard tests to increase income rather than for the good of the patient; categorized documents accordingly for later review | 11.20 |
| 08/21/12 | RG | Edit complaint | 1.00 |
| 08/21/12 | CP | Meeting with R. Guttman and T. Buschner | 0.40 |
| 08/22/12 | ON | Review witness list; begin drafting questions | 0.20 |
| 08/22/12 | TC | Evaluated evidence related to SVP and Chief Medical Officer focusing mainly on reimbursements denials at various CHS facilities, and other issues | 8.00 |
| 08/22/12 | JS | Review documents produced by CHS | 3.90 |
| 08/23/12 | JS | Review documents produced by CHS | 5.00 |
| 08/23/12 | TC | Attended conference call with the DOJ and co-counsel to [Redacted]; coded documents for relevance to key issues in the case | 9.30 |
| 08/23/12 | ON | Draft questions for witnesses; call with DOJ to [Redacted]; document review | 10.40 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 08/24/12 | ON | Document review; draft summary of hot documents found by review team | 3.60 |
| 08/24/12 | TC | Reviewed recently loaded custodial documents for Barbara Paul; evaluated evidence for relevance; prepared weekly summary and forwarded to O. Nwaeze | 8.40 |
| 08/24/12 | TB | Update from reviewers on progress; review hot documents and proposed letter to DOJ on witness interviews in Pennsylvania | 2.00 |
| 08/27/12 | JS | Review documents produced by CHS | 6.00 |
| 08/28/12 | JS | Review documents produced by CHS | 1.10 |
| 08/28/12 | TC | Reviewed documents in database related to Barbara Paul; evaluated for relevance to key issues in the case | 7.10 |
| 08/29/12 | TC | Reviewed numerous documents focusing on physician advisory board meetings, reimbursement denials and denial task force minutes to determine if there is any evidence of fraudulent activity on behalf of CHS and/or its affiliates | 8.60 |
| 08/30/12 | TC | Analyzed and evaluated evidence regarding CHS activities and communications with member hospitals; reviewed test mapping documents | 8.80 |
| 08/30/12 | JS | Review documents produced by CHS; review "hot" docs summaries | 1.20 |
| 08/31/12 | JS | Review documents produced by CHS | 1.40 |
| 08/31/12 | TC | Reviewed documents in database recently marked as critical to the case; prepared summary of BP finding and forwarded to O. Nwaeze; began preparing index of hot Barbara Paul documents for the Department of Justice | 8.40 |
| 08/31/12 | ON | Document Review; email to T. Buschner summarizing "hot" documents found; email to Melissa Handrigan of the DOJ requesting additional documents to review | 6.80 |
| 09/04/12 | TC | Reviewed and analyzed documents in database including recent upload; evaluated documents for relevance to key issues | 9.10 |
| 09/04/12 | ON | Emails to relators Sheree Cook and Rachel Bryant; draft letter to DOJ re: [Redacted] | 4.50 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 09/04/12 | JS | Review documents produced by Defendants to aid in government investigation | 5.70 |
| 09/05/12 | JS | Review documents produced by Defendants to aid in government investigation | 7.70 |
| 09/05/12 | TC | Reviewed documents marked hot in iConnect to determine current evidence identified regarding key issues; finalized Barbara Paul hot docs listing for production to the DOJ | 8.60 |
| 09/06/12 | TC | Attended teleconference with co-counsel and representatives from the Department of Justice to discuss [Redacted]; reviewed notes from O. Nwaeze regarding same | 1.30 |
| 09/06/12 | JS | Draft interview questions for witnesses at CHS hospitals; review documents produced by Defendants to aid in government investigation | 7.00 |
| 09/06/12 | ON | Call with the DOJ re: [Redacted]; edit draft of questions for witnesses recommended by relator Doghramji | 5.20 |
| 09/07/12 | ON | Edit and complete draft of letters to DOJ re: document review binders and witness list and questions; download hot documents for binder for DOJ | 8.00 |
| 09/07/12 | SH | Reviewed emails, memos, correspondence, etc. re hot documents; multiple emails, phone calls, and meetings with V. Beal relative to hot documents index | 0.70 |
| 09/07/12 | JS | Review documents produced by Defendants to aid in government investigation; Draft interview questions for hospital witnesses | 3.20 |
| 09/07/12 | VB | Assisted S. Haggerty with hot documents and disclosure statement project | 4.40 |
| 09/09/12 | CP | Review, edit amended complaint | 4.50 |
| 09/10/12 | CP | Call, email to O. Nwaeze, review of blue book, delivery of complaint downtown | 0.80 |
| 09/10/12 | SH | Meetings with V. Beal re: document productions; emails with O. Nwaeze re: reference to July 13, 2012 document production log and status of amended complaint | 0.30 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 09/10/12 | ON | Download hot documents for binders for DOJ; edit amended complaint | 8.40 |
| 09/10/12 | VB | Continued to work on hot documents and disclosure statement project | 3.70 |
| 09/10/12 | TC | Sent status update to senior counsel, T. Buschner | 0.20 |
| 09/11/12 | TB | Review correspondence re: document evaluation; review summaries of documents selected for Government's review; review summary of the DOJ conference calls | 3.00 |
| 09/11/12 | VB | Continued to work on hot documents and disclosure statement project; began working on memorandum to S. Haggerty regarding same; discussed my review of documents with O. Nwaeze | 3.90 |
| 09/11/12 | ON | Complete download of hot documents; create and organize binders; complete drafts of letters to DOJ; create index | 8.10 |
| 09/11/12 | CP | Review of blue book, email to O. Nwaeze | 1.80 |
| 09/11/12 | JAW | Edited letter to Melissa Handrigan written by O. Nwaeze | 0.80 |
| 09/12/12 | VB | Read letter, binders and CD from O. Nwaeze to Melissa Handrigan regarding [Redacted] | 1.20 |
| 09/13/12 | VB | Completed work on hot documents and disclosure statement project; completed memorandum to S. Haggerty and discussed case regarding same, sent recent binders that were sent to the Government to S. Haggerty for her review | 1.80 |
| 09/13/12 | ON | Emails and calls with relators Sheree Cook and Rachel Bryant | 0.60 |
| 09/13/12 | SH | Reviewed and discussed with V. Beal status of CHS documents produced to government | 0.40 |
| 09/14/12 | SH | Coordinated copying of binders with copy center | 0.40 |
| 09/14/12 | ON | Amend complaint to reflect Dr. Poplin's suggestions | 1.50 |
| 09/17/12 | ON | Edits to amended complaint | 3.80 |
| 09/17/12 | CP | Edit amended complaint | 3.00 |

**Community Health Systems, Inc.**

|            |     |                                                                                                                                                                                                                                                                                                                                                   | Hours |
|------------|-----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 09/18/12   | ON  | Document review                                                                                                                                                                                                                                                                                                                                   | 1.00  |
| 09/18/12   | JS  | Review hot documents from Bosshart custodian file                                                                                                                                                                                                                                                                                                 | 1.00  |
| 09/18/12   | TB  | Conference call with O. Nwaeze re document review progress and hot documents; DOJ call, and progress with updating witness lists of clients; draft substantive email to George Stemerman re addition to case, document review; and case overview; conference with O. Nwaeze re adding Stemerman and assignment of documents to team; review email from C. Poplin re additions to amended complaint | 1.50  |
| 09/18/12   | TC  | Spoke with ON regarding newly uploaded Michael Miserocchi documents; prepared review folders for team                                                                                                                                                                                                                                             | 0.60  |
| 09/19/12   | TB  | Status call with O. Nwaeze on complaint, document review and DOJ conference call scheduled for October 20th                                                                                                                                                                                                                                        | 1.00  |
| 09/19/12   | ON  | Sent emails to CHS team re: new batches of documents to review; divide the documents and assign to team; conduct document review                                                                                                                                                                                                                  | 5.20  |
| 09/19/12   | CP  | Call with O. Nwaeze re amended complaint and Dr. Doghramji                                                                                                                                                                                                                                                                                         | 0.50  |
| 09/20/12   | ON  | Call with Dr. Poplin re: amended complaint edits                                                                                                                                                                                                                                                                                                  | 0.30  |
| 09/21/12   | ON  | Document review; call with relator; email relator re[Redacted]; mail complaint to relator                                                                                                                                                                                                                                                         | 1.10  |
| 09/22/12   | ON  | Document review                                                                                                                                                                                                                                                                                                                                   | 3.10  |
| 09/24/12   | ON  | Document review                                                                                                                                                                                                                                                                                                                                   | 4.50  |
| 09/24/12   | GS  | Case prep/background/set-up                                                                                                                                                                                                                                                                                                                       | 8.00  |
| 09/24/12   | TB  | Conference with O. Nwaeze on status of projects/amended complaint/calls to Dr. Doghramji; conference with Dr. Poplin re same                                                                                                                                                                                                                       | 1.00  |
| 09/24/12   | TB  | Review correspondence re: document evaluation                                                                                                                                                                                                                                                                                                     | 0.50  |
| 09/25/12   | GS  | Case prep/background/set-up                                                                                                                                                                                                                                                                                                                       | 8.00  |
| 09/25/12   | ON  | Document review                                                                                                                                                                                                                                                                                                                                   | 2.00  |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 09/26/12 | ON | Document review | 1.10 |
| 09/26/12 | GS | Case prep/background/set-up | 8.00 |
| 09/26/12 | TC | Began reviewing recently uploaded Michael Miserocchi documents in iConnect | 3.80 |
| 09/27/12 | GS | Case prep/background/set-up | 8.00 |
| 09/27/12 | ON | Discuss progress of CHS case with team | 0.30 |
| 09/27/12 | CP | Meeting with R. Guttman, T. Buschner, O. Nwaeze | 0.80 |
| 09/28/12 | ON | Document review | 1.80 |
| 09/28/12 | TC | Reviewed Michael Miserocchi hot documents; continued evaluating evidence in database and reviewing for relevance | 4.20 |
| 10/01/12 | TC | Reviewed and analyzed documents in iConnect; categorized for later use during depositions, motion practice and/or trial | 8.10 |
| 10/01/12 | JS | Review documents from Defendants' production | 8.20 |
| 10/01/12 | ON | Emails to relator re: [Redacted]; document review | 2.30 |
| 10/02/12 | ON | Document review | 3.30 |
| 10/02/12 | JS | Review documents from Defendants' production for use in witness interviews | 8.00 |
| 10/02/12 | TC | Continued reviewing the custodial documents of Michael Miserocchi and analyzing to determine relevance to the key issues of the case | 9.10 |
| 10/03/12 | TC | Evaluated and analyzed documents pertaining to qualcheck and reviewed other CHS facility documents | 7.30 |
| 10/03/12 | JS | Review documents from Defendants' production for use in witness interviews | 9.10 |
| 10/03/12 | VB | Read e-mail from C. Nevers regarding new case; sent e-mail to S. Haggerty for an update and to send any documents for my review ; communication with S. Haggerty and began reviewing binders and documents; read e-mails from S. Haggerty regarding same | 2.30 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 10/03/12 | SH | Met with O. Nwaeze re: binders and case status; met with V. Beal re: case status; emails with V. Beal re: follow-up to conversation | 0.60 |
| 10/04/12 | JS | Review documents from Defendants' production for use in witness interviews | 3.90 |
| 10/04/12 | TB | Conference with O. Nwaeze on document review, DOJ update, review issues and helping George Stemerman get on board for document review | 1.00 |
| 10/04/12 | TC | Spoke with TB regarding database and bi-weekly call with the DOJ; reviewed evidence to determine relevance to critical issues of fraud. | 8.20 |
| 10/04/12 | RG | Emails with T. Buschner | 0.50 |
| 10/05/12 | TB | Conference call with the DOJ re: witnesses interviews | 1.00 |
| 10/05/12 | TC | Attended conference call with co-counsel and members of the Department of Justice; reviewed Michel Miserocchi custodial documents in the database | 9.80 |
| 10/05/12 | TB | Call with DOJ [Redacted]; work with O. Nwaeze on updates to DOJ and obtain status on document review and complaint; conference with R. Guttman re same; conference with George Stemerman re document review, case, and assignments | 3.00 |
| 10/05/12 | JS | Review documents from Defendants' production for use in witness interviews | 8.70 |
| 10/05/12 | VB | Reviewed CDs received from S. Haggerty | 0.80 |
| 10/05/12 | GS | CHS False Claim case background and research | 8.00 |
| 10/05/12 | ON | Call with DOJ and liaison attorneys [Redacted]; call with George Stemerman to discuss document review assignment and case in general; document review | 5.00 |
| 10/08/12 | JS | Review documents from Defendants' production for use in witness interviews | 6.90 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 10/08/12 | JS | Review documents from Defendants' production for use in witness interviews | 6.00 |
| 10/09/12 | TC | Evaluated documents in database for evidence of fraud; categorized evidence for later use by senior counsel | 9.40 |
| 10/09/12 | TB | Review correspondence re: hot documents; review memorandum re: Miserocchi hot documents | 0.50 |
| 10/10/12 | TC | Reviewed and analyzed evidence related to custodian Michael Miserocchi focusing mainly on qualcheck implementation and review in various CHS hospitals | 4.90 |
| 10/10/12 | JS | Review documents from Defendants' production for use in witness interviews | 5.00 |
| 10/10/12 | TB | Check on status of document review with reviewers; conference call with O. Nwaeze regarding same and tasks to be completed for Department of Justice | 1.00 |
| 10/10/12 | ON | Call with relator re: his completed edits to amended complaint; document review | 3.40 |
| 10/11/12 | ON | Document review | 2.90 |
| 10/11/12 | JS | Review documents from Defendants' production for use in witness interviews | 2.80 |
| 10/11/12 | TC | Analyzed and evaluated evidence in iConnect to determine relevance to our issues; flagged key documents for later use by senior counsel | 8.90 |
| 10/12/12 | TC | Continued analysis of new production of Miserocchi custodial documents | 8.40 |
| 10/12/12 | JS | Review documents from Defendants' production for use in witness interviews | 9.40 |
| 10/13/12 | ON | Document review | 3.00 |
| 10/15/12 | ON | Document review | 8.40 |
| 10/15/12 | JS | Review documents from Defendants' production for use in witness interviews | 5.20 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 10/15/12 | TC | Continued reviewing documents in database related to recent production of Miserocchi custodial documents; reviewed and evaluated for relevance | 8.90 |
| 10/16/12 | TC | Utilized iConnect to identify evidence supportive of our issues, flagged critical documents for senior counsel review | 9.40 |
| 10/16/12 | JS | Review documents from Defendants' production for use in witness interviews | 7.00 |
| 10/17/12 | JS | Review documents from Defendants' production for use in witness interviews | 6.30 |
| 10/17/12 | TB | Review and respond to emails from David Young regarding review of Weatherford documents for Department of Justice [Redacted]; conference call with O. Nwaeze regarding same; review document log from Melissa Handrigan | 1.00 |
| 10/17/12 | TC | Completed review of documents in batch 002 related to qual check at various CHS facilities; spoke with O. Nwaeze regarding research assignment to assist the Department of Justice | 8.10 |
| 10/18/12 | TC | Formulated search criteria pertaining to physicians at CHS hospital in Texas; executed search and reviewed results to identify potential list of witnesses per request from O. Nwaeze | 9.10 |
| 10/18/12 | RG | Conference with T. Buschner | 0.50 |
| 10/18/12 | TB | Department of Justice conference call with all Relator's lawyers regarding [Redacted] | 1.00 |
| 10/18/12 | JS | Review documents from Defendants' production for use in witness interviews | 4.10 |
| 10/18/12 | ON | Document review | 1.70 |
| 10/19/12 | ON | Document review | 6.30 |
| 10/19/12 | JS | Review documents from Defendants' production for use in witness interviews | 4.80 |
| 10/19/12 | TC | Utilized iConnect to execute search terms related to Weatherford Hospital, upcoming interview site for the Department of Justice | 8.00 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 10/20/12 | TC | Continued reviewing documents in database to identify potential doctors and nurses for future DOJ interviews | 4.30 |
| 10/22/12 | TC | Crafted and executed searches in database, reviewed results, pulling documents relevant to upcoming witness interviews for senior counsel | 9.00 |
| 10/22/12 | JS | Review documents produced by Defendant for use in interviews of witnesses | 3.10 |
| 10/22/12 | ON | Document review | 10.30 |
| 10/23/12 | JS | Review documents produced by Defendant for use in interviews of witnesses | 1.00 |
| 10/23/12 | TC | Reviewed and evaluated documents in iConnect related to CHS facility in Texas to assist interviewers, flagged relevant documents | 9.00 |
| 10/24/12 | TC | Formulated search strings, executed searches reviewed and analyzed results; updated spreadsheet regarding the same | 8.70 |
| 10/24/12 | ON | Document review; gather list of potential witnesses from Weatherford | 3.90 |
| 10/25/12 | ON | Document review; call with T. Buschner and T. Campbell; emails to Melissa Handrigan of the DOJ re: [Redacted] | 5.40 |
| 10/25/12 | TC | Reviewed documents related to Weatherford Regional Medical Center; discussed the same with TB & O. Nwaeze; compiled information about potential witnesses | 7.40 |
| 10/25/12 | RG | Email from O. Nwaeze | 1.00 |
| 10/25/12 | TB | Conference call with O. Nwaeze and T. Campbell regarding review of Weatherford documents, index production, information needed from Department of Justice [Redacted], instructions on writing letter to Department of Justice; review hot documents and index | 2.00 |
| 10/26/12 | TB | Review emails from Melissa Handrigan regarding [Redacted]; email to O. Nwaeze and T. Campbell regarding same and proposed letter to Department of Justice/AUSA | 0.50 |

**Community Health Systems, Inc.**

<u>Hours</u>

| Date | Init. | Description | Hours |
|------|-------|-------------|-------|
| 10/26/12 | ON | Document review; gather witnesses from Weatherford Regional Hospital | 3.00 |
| 10/27/12 | ON | Document review | 1.50 |
| 10/29/12 | ON | Document review | 3.00 |
| 10/29/12 | TC | Reviewed documents in database and evaluated for relevance; prepared information for Department of Justice for use in upcoming interviews and for potential future litigation | 8.10 |
| 10/30/12 | TC | Prepared letter and documents to send to DOJ for review in preparation for interviews at CHS facility in Texas; reviewed documents in database | 8.20 |
| 10/30/12 | TB | Review and edit Amended Complaint | 7.00 |
| 10/30/12 | ON | Document review | 2.00 |
| 10/31/12 | ON | Edit letter to Melissa Handrigan and J. D. Thomas; create CD containing witness list and relevant documents; mail letters and CDs; email copies to co-counsel | 2.00 |
| 10/31/12 | TB | Conference call with O. Nwaeze regarding letter to Department of Justice [Redacted]; review and edit letter to Department of Justice regarding [Redacted]; review and edit spreadsheet regarding [Redacted]; conference call with David Garrison and Scott Tift regarding; Amended Complaint status, document review status etc. | 4.00 |
| 10/31/12 | TC | Evaluated and analyzed additional production of Dr. Barbara Paul's custodial documents, coded for relevance and critical issues | 8.30 |
| 11/01/12 | TC | Evaluated documents in the database, identified evidence supportive of the issues in the case, categorized evidence for later review by senior counsel, use in interviews/depositions or for trial or motion practice | 8.70 |
| 11/01/12 | TC | Document review | 5.10 |
| 11/02/12 | ON | Document review; call with DOJ and co-counsel to discuss interviews conducted by Government; type notes from call; call with T. Buschner, R. Guttman and co-counsel to discuss case | 7.70 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 11/02/12 | TC | Continued review and analysis of remaining documents from the custodial files of Dr. Paul; attended conference call with co-counsel and members of the Department of Justice to discuss [Redacted] | 5.50 |
| 11/02/12 | VB | Prepared monthly calendar and sent to attorney for review and signature; prepared case status to send to C. Nevers | 0.10 |
| 11/02/12 | TB | Call with Department Of Justice; conference call regarding evidence with Tennessee Relator's counsel and set plan to follow up with USA's office | 2.00 |
| 11/03/12 | TC | Reviewed and analyzed documentary evidence related to CHS facilities produced from the custodial records of Barbara Paul and Andi Boshart | 2.40 |
| 11/05/12 | TC | Evaluated evidence in iConnect; categorized evidence relevant to the key issues for later use by the DOJ in witness interviews and/or during trial and motion practice | 7.10 |
| 11/06/12 | TC | Reviewed recently uploaded documents in database for custodian L. Simon; evaluated the same for relevance | 6.60 |
| 11/06/12 | RG | Document review | 1.00 |
| 11/06/12 | ON | Document review | 1.00 |
| 11/07/12 | ON | Document review | 3.40 |
| 11/07/12 | TC | Continued with the review of custodian LS documents, completed all but one large collection of handwritten notes; evaluated documents for relevance and categorized the same | 9.30 |
| 11/08/12 | TC | Reviewed and analyzed documents in the iConnect database for relevance to issues concerning pressure to increase admissions | 9.20 |
| 11/08/12 | ON | Document review | 8.40 |
| 11/09/12 | ON | Document review | 3.50 |
| 11/12/12 | TC | Reviewed documents in iConnect related to various CHS facility site visits; e-mail communications between hospitals and CHS; results of the risk management survey and other related documents | 8.50 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 11/13/12 | TC | Reviewed recently added document production related to Assistant Vice President of Quality and Resource Management at CHS; flagged hot documents identified | 8.60 |
| 11/13/12 | ON | Document review | 1.10 |
| 11/14/12 | ON | Document review | 4.10 |
| 11/14/12 | TC | Reviewed documents forwarded by O. Nwaeze and recently coded hot documents; continued review and analysis of Cothern custodial review | 6.60 |
| 11/15/12 | TC | Evaluated and analyzed documents including some related to compliance, physician advisory board meetings, and CNO communications; categorized the same for later review by senior counsel | 9.20 |
| 11/15/12 | TB | Conference with O. Nwaeze regarding document review and preparation for meeting USA's office; review hot documents, [Redacted] O. Nwaeze; review and respond to emails regarding same; review and respond to emails from D. Garrison regarding meeting with USA's office at end of month | 1.00 |
| 11/15/12 | ON | Document review | 4.20 |
| 11/16/12 | ON | Document review | 6.30 |
| 11/16/12 | TB | Continue to work on plans for meeting in Nashville with USA; begin to prepare documents etc. | 1.00 |
| 11/16/12 | TC | Reviewed and analyzed documents in database including e-mail and presentations both at the corporate level and at individual hospitals; coded for relevance to key issues | 9.20 |
| 11/18/12 | ON | Document review | 1.30 |
| 11/19/12 | ON | Document review | 3.80 |
| 11/19/12 | TC | Reviewed and coded documents for relevance and key issues for later use by senior counsel during witness interviews and/or trial preparations | 7.60 |
| 11/19/12 | TB | Prepare for meeting with USA Martin in Nashville | 2.00 |

**Community Health Systems, Inc.**

|            |     |                                                                                                                                                                                                                                            | Hours |
|------------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 11/20/12   | TC  | Evaluated documents in database concerning corporate compliance; reviews of various CHS facilities; and other corporate communications                                                                                                      | 8.50  |
| 11/20/12   | RG  | Document review                                                                                                                                                                                                                             | 2.00  |
| 11/20/12   | ON  | Document review                                                                                                                                                                                                                             | 6.90  |
| 11/21/12   | ON  | Create chart of the documents that best support our claims against CHS; download these documents from iConnect system; create binders of documents and memos; mail binders to R. Guttman and T. Buschner                                    | 6.80  |
| 11/21/12   | TC  | Continued reviewing the additional Cothern custodial documents in iConnect; categorized relevant documents according to key issue                                                                                                           | 4.90  |
| 11/21/12   | TB  | Prepare for meeting in Nashville with USA Martin; conference with R. Guttman and A. Bauer regarding document needs; conference with O. Nwaeze regarding preparing binders of relevant and hot documents                                      | 6.00  |
| 11/23/12   | RG  | Research and review documents                                                                                                                                                                                                             | 4.00  |
| 11/24/12   | RG  | Calls, emails and work on case                                                                                                                                                                                                            | 4.00  |
| 11/25/12   | RG  | Calls, emails and work on case                                                                                                                                                                                                            | 4.00  |
| 11/25/12   | AB  | Work with R. Guttman on agenda for meeting with DOJ in Tennessee                                                                                                                                                                          | 3.50  |
| 11/25/12   | ON  | Find more info about J. Zebrowitz, ProMed and executive bonus structures                                                                                                                                                                    | 2.00  |
| 11/26/12   | ON  | Finalize agenda for meeting with US attorney for the middle district of TN; complete research re: Dr. Zebrowitz, ProMed and its implementation nationwide and the bonus structure for CHS's key leadership; travel to TN; meet with R. Guttman, T. Buschner and co-counsel to discuss case and meeting with the U.S. attorney | 11.60 |
| 11/26/12   | RG  | Prepare for meeting with David Garrison and George Barrett; travel to Nashville                                                                                                                                                            | 2.50  |
| 11/26/12   | RG  | Meeting with USA Jerry Martin; continued preparation for meeting with David Garrison and George Barrett                                                                                                                                    | 5.50  |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 11/26/12 | TB | Prepare for meeting with USA's office on Tuesday | 2.00 |
| 11/26/12 | TB | Prepare for meeting with USA's office on Tuesday; travel to Nashville; pre-meeting with R. Guttman and David Garrison to prepare for meeting with USA | 5.00 |
| 11/27/12 | TB | Prepare for meeting with USA; meeting with USA Jerry Martin, J. D. Thomas, Mark Wildasin; David Garrison, Caroline Poplin, R. Guttman and O. Nwaeze regarding [Redacted]; travel back to DC | 10.00 |
| 11/27/12 | RG | Meeting with U.S. Attorney's Office; return travel to DC | 8.00 |
| 11/27/12 | TC | Reviewed and foldered according to issue/facility documents from the custodial file of DC for later use by senior counsel and the Department of Justice staff | 8.50 |
| 11/27/12 | ON | Meet with Jerry Martin, J. D. Thomas, and Mark Wildasin of the US attorney office to discuss case; meet with R. Guttman, T. Buschner and co-counsel to re-cap meeting with US attorney; travel back to PA | 12.00 |
| 11/27/12 | CP | Meeting with U.S. Attorney (via telephone) | 2.50 |
| 11/28/12 | ON | Draft memo summarizing meetings in TN; conference call with G. Stone and R. Guttman to discuss research | 3.20 |
| 11/28/12 | TC | Evaluated and analyzed evidence related to CHS corporate communications with various facilities, including site visit summaries and ER analysis | 8.70 |
| 11/28/12 | TB | Review first draft of memorandum from O. Nwaeze to Relator's Counsel regarding meeting at USA's office; conference call with O. Nwaeze regarding same | 1.00 |
| 11/29/12 | TC | Continued evaluating communications from CHS corporate, including various violations within facility emergency departments, attended conference call with co-counsel and members of the Department of Justice to discuss [Redacted] | 8.40 |
| 11/29/12 | ON | Find documents explaining L. Simon's decision to employ, Interqual rather than blue book; conference call with DOJ; document review | 7.70 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 11/29/12 | JS | Review summaries of interviews of doctors and nurses at CHS facilities conducted by the government | 1.50 |
| 11/30/12 | ON | Document review; research the bonus/incentives offered to CHS senior management | 7.30 |
| 11/30/12 | TC | Completed review of Cothern custodial documents; began reviewing remaining custodial production of Andi Bosshart | 8.90 |
| 11/30/12 | TB | Review notes from DOJ conference calls re: [Redacted] | 1.50 |
| 11/30/12 | TB | Review and edit memorandum from O. Nwaeze to Relator's Counsel regarding meeting with USA's office; review documents and notes from meeting; conference call with C. Poplin regarding meeting and next steps and assignments from USA's office; review emails and articles from C. Poplin regarding harm from over-admissions | 3.00 |
| 12/01/12 | CP | Research on elderly morbidity/mortality in hospitals; review of reports of HMA case | 1.50 |
| 12/03/12 | ON | Review document production for evidence of bonus/incentive plans for CHS senior management | 8.80 |
| 12/03/12 | VB | Prepared calendar and sent to T. Buschner for her review | 0.10 |
| 12/03/12 | TC | Analyzed evidence in iConnect relevant to custodian Andi Bossart; tagged relevant documents to key issue folders for review and use by senior counsel and investigators at the Department of Justice | 7.90 |
| 12/04/12 | TC | Continued evaluation of remaining Bosshart evidence in database; foldered documents by issue for quick reference and research | 8.60 |
| 12/04/12 | ON | Review document production for info re: CHS's acquisition strategy | 3.10 |
| 12/05/12 | ON | Review document production for info re: CHS's acquisition strategy | 6.80 |
| 12/05/12 | TC | Reviewed and categorized additional custodial documents from Andi Bosshart | 6.30 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 12/06/12 | TC | Evaluating and analyzing evidence related to CHS corporate custodians for review and use during witness interviews, trial and motion practice; began reading related complaint forwarded by senior counsel | 8.10 |
| 12/06/12 | ON | Review document production for info re: CHS's acquisition strategy | 9.10 |
| 12/07/12 | ON | Review document production for info re: CHS's acquisition strategy | 4.60 |
| 12/07/12 | TC | Continued reviewing remaining documents for our custodians; reviewed production log sent by the Department of Justice | 5.60 |
| 12/10/12 | TC | Continued researching acquisition of Triad hospital per request from O. Nwaeze; reviewed and analyzed documents regarding the same | 8.90 |
| 12/10/12 | TB | Review email from J. D. Thomas [Redacted] | 0.30 |
| 12/10/12 | ON | Document review; begin research assignment emailed by assistant U.S. attorney in Nashville, J. D. Thomas | 6.90 |
| 12/11/12 | ON | Research assignment from AUSA, J. D. Thomas | 2.10 |
| 12/11/12 | TC | Evaluated and analyzed documents in database relating to integration of new acquisition hospitals in to the CHS group | 4.50 |
| 12/12/12 | TC | Continued researching Triad integration to determine if CHS planned to increase ED admissions at the hospitals | 1.00 |
| 12/12/12 | ON | Research assignment from AUSA, J. D. Thomas | 1.50 |
| 12/13/12 | ON | Research assignment for AUSA, J. D. Thomas | 8.00 |
| 12/14/12 | ON | Document review; research assignment for AUSA, J. D. Thomas | 6.70 |
| 12/17/12 | ON | Document review | 5.10 |
| 12/18/12 | ON | Document review | 6.10 |
| 12/18/12 | TC | Crafted and executed searches to identify documents related to the integration of Triad; reviewed evidence to identify | |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
|  |  | projections for increased ED admissions and the push for installation of ProMed in the newly acquired facilities | 11.60 |
| 12/18/12 | CAN | Case and calendar review with V. Beal | 0.10 |
| 12/19/12 | TC | Completed research on acquisition and transition of Triad into CHS, compiled results and forwarded e-mail regarding the same to O. Nwaeze | 4.60 |
| 12/19/12 | ON | Document review | 5.40 |
| 12/20/12 | ON | Document review; draft letter to assistant U.S. attorney J. D. Thomas; email to R. Guttman and T. Buschner for review | 7.60 |
| 12/20/12 | TB | Initial review of update [Redacted] from O. Nwaeze to J. D. Thomas; conference with O. Nwaeze regarding same | 1.00 |
| 01/02/13 | TB | Review summary information from O. Nwaeze for production to government; call to O. Nwaeze regarding same | 1.00 |
| 01/03/13 | VB | Reviewed docket and interwoven; prepared monthly calendar for attorney's review | 0.20 |
| 01/03/13 | ON | Document review | 1.00 |
| 01/04/13 | JS | Review documents produced by Defendants related to implementation of ProMed and BlueBook policies at CHS hospitals | 3.80 |
| 01/06/13 | ON | Document review; edit draft of letter to AUSA J. D. Thomas | 4.30 |
| 01/07/13 | ON | Complete draft of letter to AUSA J. D. Thomas; compile binder; send copies of letter and binders to J. D. Thomas, Melissa Handrigan and liasing counsel | 0.70 |
| 01/07/13 | JS | Review communications sent to/by Andi Bosshart, VP Compliance | 8.60 |
| 01/07/13 | TB | Review summary information on hot documents from reviewers and O. Nwaeze | 1.00 |
| 01/08/13 | JS | Review documents sent to/by Andi Bosshart, VP Compliance | 8.50 |
| 01/09/13 | ON | Document review | 0.80 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 01/10/13 | ON | Conference call with DOJ to discuss [Redacted] | 0.40 |
| 01/10/13 | JS | Review documents sent to/by Andi Bosshart, VP Compliance; Draft "Hot Docs" index | 8.00 |
| 01/10/13 | TB | Call with Department of Justice (bi-weekly) update [Redacted]; review notes from O. Nwaeze regarding call | 1.00 |
| 01/10/13 | TC | Attended conference call with co-counsel and members of the Department of Justice | 0.50 |
| 01/11/13 | JS | Review Andi Bosshart, VP Compliance, custodial documents; draft hot docs index | 6.20 |
| 01/14/13 | JS | Review custodial files of Andi Bosshart, VP Compliance | 2.70 |
| 01/14/13 | ON | Document review | 1.50 |
| 01/15/13 | JS | Review custodial file of Andi Bosshart, VP Compliance | 6.80 |
| 01/17/13 | ON | Document review | 2.00 |
| 01/17/13 | TB | Call with O. Nwaeze re document review and projects for J. D. Thomas; review email re [Redacted] from J. D. Thomas | 0.50 |
| 01/18/13 | TB | Work with O. Nwaeze on setting goals to complete document review and other items for J. D. Thomas; conference call with G. Stone regarding financial analysis for J.D. Thomas | 1.50 |
| 01/18/13 | VB | Read T. Buschner's e-mail and Order [Redacted]; profiled, alerted the team and updated Compulaw regarding same; reviewed documents | 0.80 |
| 01/18/13 | ON | Document review | 4.50 |
| 01/18/13 | JS | Review custodial file of D. Medley, CFO | 6.00 |
| 01/19/13 | JS | Review custodial file of D. Medley, CFO | 5.00 |
| 01/19/13 | ON | Document review | 4.00 |
| 01/20/13 | ON | Document review | 4.00 |
| 01/20/13 | JS | Review custodial file of D. Medley, CFO | 5.20 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 01/22/13 | ON | Meet with G. Stone to discuss research into CHS's finances | 0.20 |
| 01/22/13 | VB | Read incoming document regarding Government's [Redacted] | 0.20 |
| 01/22/13 | TB | Review and respond to emails from Melissa Handrigan regarding [Redacted]; conference call with O. Nwaeze regarding same and progress on items for M.D. Tennessee | 0.30 |
| 01/24/13 | TB | Conference with O. Nwaeze re status of document review for DOJ; emailing items to M. Organ for summary; and project for J. D. Thomas on CHS's financial health | 0.30 |
| 01/25/13 | TB | Conference with O. Nwaeze and G. Stone re financial analysis; email to J. D. Thomas re: [Redacted]; conference with R. Guttman re same; review documents from G. Stone | 1.50 |
| 01/25/13 | ON | Calls with T. Buschner and G. Stone to discuss research into CHS's finances | 0.50 |
| 01/25/13 | GS | Financial research and memo related to capital structure of company | 3.00 |
| 01/28/13 | GS | Financial research and memo related to capital structure of company | 7.00 |
| 01/28/13 | ON | Compile memos and document review charts for co-counsel; call with G. Stone; call with T. Buschner and R. Guttman re CHS's financial analysis and to discuss CIDs; meeting with G. Stone re CHS financial analysis; draft letter to AUSA J. D. Thomas, Melissa Handrigan (DOJ) and co-counsel regarding [Redacted] | 1.90 |
| 01/28/13 | TB | Travel to DE | 0.40 |
| 01/28/13 | TB | Conference with O. Nwaeze re G. Stone analysis; conference with O. Nwaeze and R. Guttman re issues to be researched by G. Stone; return travel to DC | 0.60 |
| 01/28/13 | TB | Attended meeting with Robert Sherlock to discuss issues [Redacted] | 1.00 |
| 01/29/13 | TB | Review and edit letter from O. Nwaeze to J. D. Thomas re [Redacted] | 0.50 |
| 01/29/13 | GS | Financial research and memo related to capital structure of company | 2.50 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 01/30/13 | GS | Financial research and memo related to capital structure of company | 1.50 |
| 02/07/13 | RG | Conference call with T. Buschner, Melissa Handrigan and O. Nwaeze re [Redacted] | 0.50 |
| 02/08/13 | TB | Review amended complaint | 1.00 |
| 02/08/13 | ON | Draft civil investigative demand for CHS lenders | 3.20 |
| 02/13/13 | TB | Review complaint and recent summaries of evidence provided to Government on CID documents | 5.00 |
| 02/14/13 | TC | Reviewed recent case communications and documents in database; met with O. Nwaeze to discuss research project; began crafting search terms, executing searches and reviewing results to assist O. Nwaeze with project for counsel at the Department of Justice | 8.70 |
| 02/15/13 | TC | Continued researching issues concerning bonus payments and incentives to determine any tie to admissions or revenue generating | 8.10 |
| 02/15/13 | TB | Conference call with O. Nwaeze re email from J. D. Thomas and next steps | 1.00 |
| 02/15/13 | ON | Research re: CHS's acquisition strategy | 6.10 |
| 02/19/13 | TC | Reviewed documents in database focusing on connection between admission rates and compensation; identified various incentive plans and goals | 8.40 |
| 02/20/13 | TC | Assisted O. Nwaeze with research issue identified during meeting with co-counsel and the Department of Justice in Nashville; reviewed evidence in database concerning incentives to managers and employees | 8.30 |
| 02/21/13 | TC | Crafted search terms and reviewed results to identify documents responsive to research assignment per request from O. Nwaeze | 6.10 |
| 02/22/13 | TC | Reviewed and analyzed documents in database related to incentives to increase admissions at all levels, from individual physicians up through hospital CEOs and from CHS corporate | 8.30 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 02/25/13 | TC | Utilized document repository to attempt to identify e-mail detailing admission goals for specific hospitals tied to special compensation; reviewed evidence in database related to communications from CHS to hospital CEOs and other upper management | 8.10 |
| 02/26/13 | TC | Researched Community Health Systems' use of financial rewards to influence admissions through the emergency room of their various holdings; reviewed documents in iConnect regarding the same | 8.20 |
| 02/26/13 | TB | Meeting with O. Nwaeze on various DOJ tasks and amending complaint; return travel to DC | 1.50 |
| 02/26/13 | TB | Travel to DE for meeting | 0.50 |
| 02/27/13 | TC | Reviewed and evaluated documents in database related to research issues to assist ON; flagged key documents for review and researched issues identified | 9.30 |
| 02/27/13 | ON | Complete review of documents for evidence of CHS's hospital acquisition strategy | 5.00 |
| 02/28/13 | TC | Formulated search terms, executed searches and reviewed results to identify documents relevant to key case issues regarding the pressure to increase admissions | 8.30 |
| 03/01/13 | TC | Reviewed documents in database focusing on issues identified during meeting in Tennessee with the United States Attorney for the Middle District of Tennessee and two Assistant United States Attorneys, flagged key documents for senior counsel | 8.30 |
| 03/04/13 | TC | Reviewed materials to identify possible players in early acquisition decisions; reviewed related to acquisitions including due diligence research; flagged all hot documents | 8.30 |
| 03/04/13 | TB | Review and respond to emails from David Garrison re securities cases | 0.30 |
| 03/04/13 | ON | Complete draft of CIDs | 2.40 |
| 03/05/13 | ON | Research [Redacted] | 2.40 |
| 03/05/13 | TC | Continued researching issues identified during meeting with the U.S. Attorney to provide senior counsel with a better |  |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
|  |  | understanding of the evidence supporting our claims against Community Health Systems; crafted terms and executed searches regarding the same | 8.00 |
| 03/06/13 | TC | Continued reviewing evidence provided by CHS to pinpoint essential documentary evidence linked to false claims; particularly focusing on ways upper management pushed increased admission rates and how increased rates were rewarded at all levels | 8.10 |
| 03/06/13 | TB | Review and respond to emails from J. D. Thomas re [Redacted] | 0.30 |
| 03/06/13 | ON | Letter to AUSA J. D. Thomas regarding [Redacted]; email to T. Campbell discussing research and future disclosures to the DOJ | 2.00 |
| 03/07/13 | ON | Proofread and edit amended complaint | 1.10 |
| 03/07/13 | TC | Evaluated evidence regarding acquisitions and bonuses; pulled information on the acquisition and development team at CHS; reviewed materials forwarded by O. Nwaeze; continued analysis of documents in database | 8.20 |
| 03/08/13 | TC | Pulled public filings for CHS and reviewed all relevant discussions of compensation and incentives; prepared search terms and researched compensation committee in the database to identify bonus metrics | 8.10 |
| 03/08/13 | ON | Proofread and edit amended complaint and completed draft and redline to T. Buschner | 7.60 |
| 03/10/13 | TC | Reviewed hot documents identified during research assignment and began preparing summary memo for senior counsel; conducted follow up research identified | 3.60 |
| 03/11/13 | TC | Attended conference call with T.B., J. Sugarman, O. Nwaeze and Assistant United States Attorney, J. D. Thomas to discuss [Redacted]; finalized research for letter to J. D. Thomas; prepared documents for review | 6.50 |
| 03/11/13 | TB | Call with David Garrison, O. Nwaeze, T. Campbell and J. D. Thomas re [Redacted] | 1.50 |
| 03/11/13 | ON | Call with team, co-counsel and AUSA JD Thomas | 0.50 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 03/11/13 | JS | Call with Department of Justice | 0.60 |
| 03/12/13 | JS | Review summary of call with DOJ and case strategy plan | 0.40 |
| 03/12/13 | ON | Organize notes from call with AUSA JD Thomas; draft memo re: call | 1.30 |
| 03/12/13 | CP | Email to R. Guttman | 0.30 |
| 03/12/13 | TB | Review and approve memorandum from O. Nwaeze on document review and conference call with J. D. Thomas for distribution | 0.30 |
| 03/12/13 | TC | Finalized memo regarding compensation practices at CHS, pulled copies of documents cited into a binder and forwarded to O. Nwaeze for review; crafted searches regarding acquisitions and began reviewing identified documents | 8.10 |
| 03/13/13 | TC | Reviewed and evaluated documents in database to identify additional materials supportive of our arguments regarding false Medicare claims | 8.40 |
| 03/14/13 | TC | Executed searches in database, reviewed documents and flagged key materials for senior counsel review | 8.10 |
| 03/14/13 | TB | Conference with R. Guttman re status of tasks for Government and document review | 0.20 |
| 03/14/13 | ON | Redraft letter to J. D. Thomas re: [Redacted]; make binder containing research; email letter to T. Buschner | 6.00 |
| 03/15/13 | ON | Complete binder containing research for AUSA J. D. Thomas | 0.50 |
| 03/15/13 | TC | Analyzed evidence related to new acquisitions to attempt to identify documents pertaining to acquisition strategy and/or analysis of potential ER admissions increases | 4.30 |
| 03/18/13 | TC | Ran searches in database related to issues identified by the Attorney General's office; evaluated results and categorized key documents for later use by senior attorneys | 8.10 |
| 03/19/13 | TC | Performed searches and quick review of previously produced Gateway regional documents; reviewed notes from last week's call with J. D. Thomas; attended meeting with senior counsel; reviewed documents in database | 8.20 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 03/20/13 | TC | Evaluated document production from Gateway Medical Center and categorized evidence for later review by senior counsel and Department of Justice Attorneys | 8.50 |
| 03/21/13 | TC | Continued reviewing evidence in database focusing on methods of increasing admissions through the emergency department | 8.30 |
| 03/21/13 | RG | Review case status with T. Buschner | 0.50 |
| 03/21/13 | TB | Call with DOJ re [Redacted]; conferences with David Garrison and R. Guttman re same; call to O. Nwaeze re same and outstanding projects for J. D. Thomas, update to J. Eisenhofer and R. Guttman | 1.50 |
| 03/21/13 | ON | Participate in conference call | 0.70 |
| 03/21/13 | CP | Conference call; follow-up email to T. Buschner; research | 1.50 |
| 03/22/13 | TC | Reviewed evidence produced by CHS facilities, categorized and flagged key documents for later use during motion practice, depositions and/or trial | 8.30 |
| 03/25/13 | TC | Reviewed documents in iConnect including executive team meeting minutes and weekly reports discussing physician stats and other goals; categorized documents accordingly | 8.10 |
| 03/26/13 | TC | Analyzed evidence in database regarding practices and daily activity at Community Health Systems facility to identify suspect admission drivers; coded documents to various issue folders for quick access and review | 8.30 |
| 03/27/13 | TC | Continued reviewing production of documents from Gateway Medical Center, flagged evidence relevant to our issues for senior counsel | 8.20 |
| 03/28/13 | TC | Evaluated evidence, categorized for key issues and researched weekly dashboard meetings to determine potential relevance and relation to daily flash meetings | 8.20 |
| 03/29/13 | TC | Evaluated evidence produced by CHS in Clarksville, Tennessee; examined several admission orders and related documents to identify evidence of benchmarks, increased admissions via ProMed and other activities to increase inappropriate ER admissions | 9.60 |

**Community Health Systems, Inc.**

|  |  |  | **Hours** |
|---|---|---|---|
| 04/01/13 | TC | Reviewed and evaluated documents in database; categorized same according to key case issues | 8.30 |
| 04/01/13 | VB | Prepared monthly calendar and sent to attorney for review | 0.10 |
| 04/02/13 | TC | Executed searches to identify facility specific documents; evaluated evidence for relevance to our case | 8.10 |
| 04/03/13 | TC | Evaluated and analyzed documents in iConnect including admission orders, meetings, emails and various documents concerning observation status | 8.10 |
| 04/04/13 | TC | Analyzed documents produced by GRMC to identify evidence of false claims via admission drivers unrelated to necessary patient care | 7.60 |
| 04/08/13 | TC | Continued reviewing documents produced by Gateway, categorized relevant documents accordingly | 6.20 |
| 04/08/13 | ON | Document review | 1.50 |
| 04/09/13 | TC | Analyzed evidence in iConnect to identify evidence relevant to case issues; categorized documents accordingly for quick reference and accessibility during trial, deposition, and/or motion practice | 8.30 |
| 04/10/13 | TC | Continued reviewing Community Health Systems facility production per request from Assistant US Attorney, J. D. Thomas and senior counsel to gather evidence supportive of our Relators' claims | 8.00 |
| 04/11/13 | TC | Evaluated and analyzed documentary evidence in database to identify case critical communications | 4.50 |
| 04/11/13 | ON | Document review | 2.00 |
| 04/12/13 | ON | Document review | 5.90 |
| 04/12/13 | TC | Continued reviewing the production from Gateway Medical Center, including various documents tracking the use of Medicare observations and encouraging increased use of inpatient status for these cases | 3.70 |

Community Health Systems, Inc.

|            |    |                                                                                                                                                                                       | Hours |
|------------|----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 04/13/13   | TC | Reviewed Gateway document production in database; profiled and catalogued significant documents for senior counsel review                                                              | 6.90  |
| 04/15/13   | TC | Evaluated evidence produced by individual CHS facilities; categorized key documents supportive to case issues for senior counsel review                                                | 8.50  |
| 04/16/13   | TC | Continued with review of documentary evidence in database; tagged documents to critical issue folders for ease of reference during later use in motion practice and/or at trial        | 5.00  |
| 04/16/13   | ON | Document review                                                                                                                                                                        | 5.50  |
| 04/17/13   | TC | Evaluating documentary evidence to identify supporting documents to prove the elements of fraud and false claims by CHS's push to increase ER admissions regardless of medical necessity | 7.30  |
| 04/18/13   | TC | Evaluated evidence in database related to hospital practices and tracking of Medicare observations; indexed key documents                                                              | 8.30  |
| 04/18/13   | TB | Review submissions to AUSA from O. Nwaeze; review and respond to emails regarding moving meeting with Department of Justice                                                             | 0.80  |
| 04/18/13   | ON | Document review                                                                                                                                                                        | 6.30  |
| 04/19/13   | ON | Document review                                                                                                                                                                        | 8.10  |
| 04/19/13   | TC | Executed search and reviewed resulting documents; identified supportive evidence and flagged for possible later use                                                                    | 5.40  |
| 04/20/13   | TC | Analyzed and evaluated hospital production to identify documents evidencing false claims and fraud, specifically within the practices of the emergency departments                     | 3.30  |
| 04/22/13   | TC | Continued review and analysis of CHS facility production including review of various presentations and e-mail communications to identify false admission drivers and pressure on physicians to admit patients by upper management and corporate office | 8.60  |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 04/23/13 | TC | Executed search and analyzed results to identify evidence of false claims including the use of ProMed and bluebook to drive up admissions | 8.50 |
| 04/24/1 | TC | Analyzed and evaluated hospital production, identified evidence related to key case concepts and logged hot document | 6.60 |
| 04/24/13 | ON | Document review | 1.00 |
| 04/25/13 | TC | Reviewed document production and identified evidence relevant to false Medicare claims and related issues | 4.90 |
| 04/25/13 | TB | Department of Justice call in on [Redacted]; email update to R. Guttman and J. Eisenhofer | 1.00 |
| 04/25/13 | VB | Reviewed documents in interwoven for updates | 1.20 |
| 04/26/13 | TC | Continued evaluating document production per request from senior counsel and Assistant Attorney General; flagged key documents per instructions | 8.10 |
| 04/26/13 | ON | Document review | 5.20 |
| 04/29/13 | TC | Reviewed documents in database including executive committee meeting minutes, standing orders and various presentations; evaluated the same for relevance; categorized accordingly. | 10.10 |
| 04/29/13 | VB | Reviewed files and prepared monthly calendar | 0.10 |
| 04/30/13 | VB | Emailed monthly calendar to T. Buschner for her review and approval | 0.10 |
| 04/30/13 | TC | Continued evaluation of hospital production; identified documents relevant to increased admissions; logged critical communications to spreadsheet for senior attorney review | 8.00 |
| 04/30/13 | ON | Document review | 1.80 |
| 05/01/13 | ON | Document review | 4.00 |
| 05/01/13 | TC | Continued evaluation of documentary evidence produced to identify support of healthcare fraud including artificially inflating ER admissions without medical necessity | 9.50 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 05/01/13 | VB | Prepared case status for May 2013 | 0.10 |
| 05/02/13 | TC | Reviewed and evaluated documents produced by individual Community Health facility; tagged relevant documents to issue folders | 8.00 |
| 05/06/13 | TC | Analyzed documents in iConnect; flagged and indexed documents relevant to the case issues; reviewed various observations tracking documents to identify push to lower the number of observations and convert them to admissions to increase revenue | 8.20 |
| 05/07/13 | TC | Continued review of hospital documents including executive minutes, communications from CHS corporate as well as internal communications, ProMed reports and various tracking reports to identify evidence of illegal practices | 7.30 |
| 05/08/13 | TC | Performed analysis of CHS facility production; categorized key documents identified for review by senior counsel during motion practice, depositions, and/or trial | 9.40 |
| 05/09/13 | TC | Continued reviewing documents related to CHS facilities; including e-mail, presentations and requests for reimbursement | 7.10 |
| 05/09/13 | ON | Document review | 2.00 |
| 05/10/13 | ON | Document review | 0.30 |
| 05/10/13 | TC | Analyzed and evaluated evidence related to hospital practices, admissions and meeting benchmarks; flagged relevant documents for senior counsel | 8.20 |
| 05/13/13 | TC | Evaluated documents in database including internal e-mail communications, policies and procedures and annual strategic business plans; coded relevant documents for easy use during later phases of the matter | 5.10 |
| 05/13/13 | ON | Document review | 7.50 |
| 05/14/13 | ON | Document review | 2.00 |
| 05/14/13 | TC | Reviewed materials in database and pdfs to finish out batch review and identify key documents for senior counsel | 3.50 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 05/15/13 | TC | Continued document review and summary of materials for senior attorneys | 3.40 |
| 05/15/13 | ON | Document review | 3.10 |
| 05/17/13 | TC | Finalized hot docs spreadsheet and materials from recent review and handed off to O. Nwaeze to finish review | 2.60 |
| 05/23/13 | TB | Call with DOJ re: [Redacted]; post-call with O. Nwaeze re: updating J. Eisenhofer and R. Guttman | 1.00 |
| 05/23/13 | ON | CHS conference call with licensing attorneys; call with T. Buschner | 1.20 |
| 05/23/13 | CP | Conference call with DOJ | 1.00 |
| 05/29/13 | ON | Draft memo summarizing call with DOJ; document review | 6.40 |
| 05/29/13 | TB | Edit update memorandum from O. Nwaeze | 0.50 |
| 05/30/13 | ON | Document review | 2.40 |
| 05/31/13 | ON | Document Review | 7.60 |
| 06/03/13 | VB | Reviewed files and prepared monthly calendar | 0.10 |
| 06/04/13 | ON | Document review | 2.40 |
| 06/05/13 | ON | Document review | 6.10 |
| 06/06/13 | ON | Document review | 6.20 |
| 06/12/13 | ON | Document review | 2.20 |
| 06/13/13 | ON | Document review; call with DOJ and liaison attorney | 4.60 |
| 06/13/13 | CP | Conference call with DOJ; email to R. Guttman, T. Buschner and O. Nwaeze | 0.50 |
| 06/13/13 | TB | Conference call with O. Nwaeze re bi-weekly call with DOJ (covering); review notes from O. Nwaeze re same | 0.40 |
| 06/15/13 | CP | Email to R. Guttman and T. Buschner | 0.50 |
| 06/19/13 | DF | Confer with Melissa Handrigan, R. Guttman, T. Buschner and O. Nwaeze re [Redacted] | 0.50 |

**Community Health Systems, Inc.**

|  |  |  | Hours |
|---|---|---|---|
| 06/19/13 | AB | Research and retrieve cases in Westlaw for R. Guttman, T. Buschner, D. Fischer and O. Nwaeze to review for their conference call; save legal research in Interwoven | 2.50 |
| 06/19/13 | ON | Review cases for call with DOJ; call with R. Guttman, T. Buschner, D. Fischer and DOJ; document review | 2.50 |
| 06/19/13 | TB | Call with R. Guttman, O. Nwaeze, D. Fischer, David Garrison and Melissa Handrigan re [Redacted] | 1.50 |
| 06/20/13 | ON | Document review; read/analyze cases cited by CHS | 8.20 |
| 06/21/13 | ON | Review and analyze cases cited by CHS | 4.00 |
| 06/25/13 | ON | Review and analyze cases cited by CHS | 5.70 |
| 06/26/13 | ON | Review and analyze cases cited by CHS | 3.90 |
| 06/27/13 | ON | Review and analyze cases cited by CHS | 2.00 |
| 06/28/13 | ON | Complete review/analysis of cases cited by CHS; research for memorandum | 7.00 |
| 06/29/13 | ON | Research for memo responding to CHS's arguments | 1.50 |
| 06/30/13 | ON | Research for memo responding to CHS's arguments | 2.00 |
| 07/01/13 | ON | Research for and draft memo responding to CHS arguments made in May 22 presentation | 6.30 |
| 07/02/13 | ON | Research for and draft memo responding to arguments made by CHS in its May 22 presentation | 6.10 |
| 07/03/13 | ON | Draft memo responding to arguments made by CHS in May 22 presentation | 6.70 |
| 07/03/13 | TB | Review email from Melissa Handrigan re [Redacted]; conference with O. Nwaeze re Simon deposition outline | 1.00 |
| 07/03/13 | VB | Read forward email from T. Buschner from the Government re [Redacted], updated Compulaw re same, reviewed Interwoven documents for updates | 0.50 |
| 07/05/13 | ON | Research for memo responding to arguments made by CHS in May 22 presentation | 3.00 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 07/08/13 | ON | Research for and draft memorandum responding to CHS arguments in May 22 presentation | 5.30 |
| 07/09/13 | ON | Draft deposition outline for Lynn Simon | 6.60 |
| 07/10/13 | ON | Deposition outline for Lynn Simon | 10.80 |
| 07/11/13 | ON | Edits to memo in response to arguments made in CHS's May 22 presentation | 1.00 |
| 07/11/13 | TB | Review and edit deposition outline from O. Nwaeze | 2.00 |
| 07/16/13 | TB | Call with O. Nwaeze on changes and additions to Lynn Simon outline | 2.00 |
| 07/16/13 | ON | Emails to Dr. Poplin and Melissa Handrigan re: [Redacted]; call with T. Buschner to discuss outline | 1.60 |
| 07/17/13 | ON | Edits/redraft of Lynn Simon deposition outline | 12.10 |
| 07/17/13 | AB | Prepare documents for Dr. Poplin to review for O. Nwaeze | 0.50 |
| 07/17/13 | CP | Review materials for Simon deposition, compose questions, email to R. Guttman, T. Buschner, O. Nwaeze | 2.50 |
| 07/17/13 | TB | Continue to work on edits and additions to Lynn Simon deposition outline | 4.00 |
| 07/18/13 | TB | Continue to edit and make additions to Lynn Simon deposition outline; review documents found on internet re Lynn Simon; conference calls with O. Nwaeze re same and finding additional information and making edits to outline | 8.00 |
| 07/18/13 | CP | Emails with R. Guttman, T. Buschner, O. Nwaeze | 0.30 |
| 07/18/13 | AB | Research regarding Dr. Lynn Simon for T. Buschner and O. Nwaeze | 1.00 |
| 07/18/13 | ON | Complete redraft of Lynn Simon deposition outline; email to T. Buschner | 3.80 |
| 07/19/13 | ON | Complete additional edits to Lynn Simon deposition outline; proofread, create pdf of exhibits and additional documents and email to Melissa Handrigan and AUSA J. D. Thomas | 5.20 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 07/19/13 | AB | Organize documents to send to Dr. Poplin for review for T. Buschner | 0.30 |
| 07/19/13 | TB | Finalize deposition outline for Lynn Simon; calls with O. Nwaeze re same, documents, exhibits; conference with Dr. Poplin re various issues for deposition outline | 6.00 |
| 07/22/13 | TB | Review and respond to emails from J. D. Thomas on [Redacted]; conference call with O. Nwaeze re same | 0.50 |
| 07/22/13 | VB | Read alert re [Redacted] | 0.10 |
| 07/22/13 | AB | Profile documents filed with the Court in CHS and send to T. Leavey for central files; prepare documents to send to Dr. Poplin for review including the BlueBook | 0.50 |
| 07/22/13 | ON | Compile binders for deposition of Lynn Simon, send binders to AUSA J. D. Thomas and Melissa Handrigan at main justice | 0.70 |
| 07/23/13 | VB | Read email from T. Buschner and Order [Redacted]; read follow-up email re same | 0.10 |
| 07/24/13 | TB | Work with A. Bauer to get studies for J. D. Thomas authored by Lynn Simon for deposition; conference with Caroline Poplin re same and issues related to Blue Book for J. D. Thomas; call with O. Nwaeze re same | 2.00 |
| 07/24/13 | ON | Find and read abstracts of articles written by Lynn Simon; email to AUSA J. D. Thomas regarding relevance of the articles | 1.30 |
| 07/24/13 | CP | Review of Blue Book | 3.00 |
| 07/25/13 | AB | Research and retrieve articles written by Dr. Lynn Simon in medical journals for T. Buschner; send same to J. D. Thomas; compile documents for Dr. Poplin to review; conversation with Dr. Poplin re same | 3.00 |
| 07/25/13 | ON | Call with T. Buschner regarding Lynn Simon deposition | 0.50 |
| 07/25/13 | VB | Profiled Order [Redacted], alerted the team re same; updated Compulaw re same | 0.10 |
| 07/25/13 | TB | Conference with Dr. Poplin re memorandum; conference with J. D. Thomas; work with A. Bauer to get Lynn Simon articles to J. D. | |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| | | Thomas; conference call with O. Nwaeze re assignment from J. D. Thomas and progress | 1.00 |
| 07/26/13 | TB | Conference calls to assist Dr. Poplin with review of Blue Book and issues for memorandum; review Blue Book sections and CHS documents re same for Lynn Simon deposition preparation (for J. D. Thomas); conference calls with O. Nwaeze re same | 2.50 |
| 07/26/13 | AB | Research articles for T. Buschner; send same to J. D. Thomas at the DOJ; work with Dr. Poplin re research and send same | 2.00 |
| 07/27/13 | ON | Call with T. Buschner and Dr. Poplin regarding research for Lynn Simon deposition | 1.40 |
| 07/27/13 | TB | Review and revise Dr. Poplin's memorandum re 2009 Blue Book for Lynn Simon deposition; conference calls with Dr. Poplin and O. Nwaeze re same; finalize memorandum and email to J. D. Thomas re [Redacted] | 6.00 |
| 07/29/13 | TB | Call with J. D. Thomas, Caroline Poplin and O. Nwaeze [Redacted] | 1.50 |
| 07/29/13 | ON | Call regarding [Redacted] with T. Buschner, Dr. Poplin, and AUSA J. D. Thomas | 0.90 |
| 07/30/13 | TB | Email out to Tennessee Relator's counsel re [Redacted]; follow up with Caroline Poplin on "medical necessity issue" and recent settlement on 0-day stays | 0.50 |
| 07/31/13 | VB | Prepared calendar and emailed to T. Buschner for approval | 0.10 |
| 08/05/13 | TB | Review emails re HMA/CHS deal and news stories; conference with O. Nwaeze re items to complete for AUSA/DOJ, including memorandum on cases from CHS presentation | 1.00 |
| 08/07/13 | TB | Work on setting calls with clients; review materials on CHS merger; review memorandum to Melissa Handrigan from O. Nwaeze | 1.50 |
| 08/07/13 | ON | Complete draft of memorandum responding to CHS's May 22 presentation | 8.50 |
| 08/08/13 | TB | Call with DOJ and all Relator's Counsel re [Redacted] | 1.00 |
| 08/09/13 | ON | Document review | 4.00 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 08/14/13 | TB | Continue reviewing memoranda to DOJ from O. Nwaeze; set calls up with clients | 2.00 |
| 08/16/13 | TB | Call with clients on status of case | 1.50 |
| 08/16/13 | ON | Call with T. Buschner, D. Fischer and CHS team and relators | 0.30 |
| 08/16/13 | DF | Confer with clients re current status of the matter | 0.50 |
| 08/22/13 | ON | Call with DOJ and T. Buschner re: depositions; organize and email notes | 2.00 |
| 08/22/13 | CP | Conference call with DOJ | 1.00 |
| 08/22/13 | TB | Participate on call with DOJ and all relators' counsel re [Redacted]; call with David Garrison re same and amended complaint; conference with R. Guttman re same; emails to Caroline Poplin re declaration review | 2.00 |
| 08/26/13 | TB | Conference call with Barrett firm, Caroline Poplin and G&E team on potential settlement issues, [Redacted] | 1.00 |
| 08/26/13 | RG | Conference with T. Buschner; conference with T. Buschner, Caroline Poplin, David Garrison and George Barrett | 1.50 |
| 08/26/13 | ON | Edits to amended complaint; call with R. Guttman, T. Buschner and co-counsel | 6.30 |
| 08/26/13 | VB | Communication with O. Nwaeze re filing amended complaint and motion; read local rules, Judge procedures, pro hac vice information; court address and telephone number; read court procedures; read email from O. Nwaeze to T. Buschner re same; communicate with O. Nwaeze on research re same | 1.70 |
| 08/27/13 | VB | Reviewed Interwoven, communicated with O. Nwaeze re case and prepared monthly case status to send to C. Nevers | 0.20 |
| 08/27/13 | ON | Edits to amended complaint; call with T. Buschner; email to David Garrison re: filing amended complaint under seal; email to R. Guttman re: research for amended complaint | 3.50 |
| 08/27/13 | TB | Review amended complaint and edit; conference calls with O. Nwaeze re same; emails to R. Guttman with adding states and California Insurance claims at this time | 3.00 |

Community Health Systems, Inc.

Hours

| 08/28/13 | TB | Review amended complaint; conference calls with O. Nwaeze re same | 1.00 |
| 08/28/13 | ON | Complete and file amended complaint; draft certificate of service, redact amended complaint | 4.10 |
| 08/28/13 | VB | Read and responded to O. Nwaeze's email re pro hac vice motions and granted order; telephoned the Clerk of Court re same and emailed the granted order to O. Nwaeze and profiled document re same; read email from O. Nwaeze attaching the complaint to redact; redacted and reviewed the redacted complaint, profiled and emailed the redacted complaint to O. Nwaeze; communicated with O. Nwaeze re more redaction to complaint; made edits re same and emailed to O. Nwaeze | 4.80 |
| 08/29/13 | VB | Worked on redacted complaint per local counsel's redactions; reviewed redactions and created a new pdf; emailed updated redacted amended complaint to O. Nwaeze; reviewed documents in Interwoven | 1.00 |
| 08/29/13 | ON | Complete redaction of amended complaint; email redline comparing original and amended complaints to David Garrison | 0.80 |
| 08/29/13 | TB | Review and respond to emails from David Garrison re redacted amended complaint and comparison document (amended complaint v. original complaint); review and approve redactions for complaint to be transmitted to J. D. Thomas and defendants | 2.00 |
| 09/06/13 | ON | Document review | 1.40 |
| 09/09/13 | ON | Draft letter to David Dean re: CHS disclosure statement and accompanying documents; email to T. Buschner for review | 0.70 |
| 09/10/13 | TB | Review letter to Dean from O. Nwaeze on documents; review memoranda on CHS cases presented to DOJ from O. Nwaeze; email to Melissa Handrigan re [Redacted] | 1.50 |
| 09/11/13 | TB | Emails with Melissa Handrigan re [Redacted]; email to Caroline Poplin re review | 0.30 |
| 09/12/13 | TB | Meeting with J. Eisenhofer, R. Guttman, O. Nwaeze, D. Fischer and others on FCA team re [Redacted]; respond to emails from A. Bauer re organizing doctor declarations for review | 0.30 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 09/12/13 | AB | Download and organize declaration for Dr. Poplin to review and index same | 3.00 |
| 09/17/13 | ON | Document review | 1.40 |
| 09/23/13 | TB | Review and respond to emails from DOJ re [Redacted]; conference with R. Guttman re assignments; conference with David Garrison re assisting | 0.40 |
| 09/26/13 | TB | Review hot documents on Michael Miserocchi from O. Nwaeze | 2.00 |
| 09/26/13 | ON | Look for information about Michael Miserocchi; gather documents re: same to send to T. Buschner and co-counsel | 2.30 |
| 09/27/13 | ON | Draft outline of Michael Miserocchi deposition for U.S. DOJ | 1.70 |
| 10/01/13 | TB | Call with David Garrison re [Redacted]; review pleading; email to O. Nwaeze re deposition issues | 0.50 |
| 10/02/13 | ON | Draft deposition outline for Michael Miserocchi | 3.70 |
| 10/03/13 | ON | Draft deposition outline for Michael Miserocchi's deposition | 1.50 |
| 10/04/13 | ON | Draft outline for deposition of Michael Miserocchi | 8.40 |
| 10/06/13 | ON | Draft outline for deposition of Michael Miserocchi | 1.00 |
| 10/07/13 | ON | Review hot documents and draft deposition outline for Michael Miserocchi's deposition | 10.10 |
| 10/07/13 | AB | Organize and assemble documents for T. Buschner | 0.50 |
| 10/07/13 | TB | Review hot documents from Michael Miserocchi custodian set; email to O. Nwaeze re deposition outline status | 1.00 |
| 10/08/13 | ON | Review documents for Michael Miserocchi's deposition outline; draft deposition outline | 7.80 |
| 10/08/13 | VB | Read email and document re the Government's Motion for a Stay Because of Lapse of Appropriations; profiled document re same | 0.20 |
| 10/09/13 | ON | Complete draft of deposition outline for Michael Miserocchi's deposition; email to T. Buschner and David Garrison | 11.40 |

Community Health Systems, Inc.

|  |  |  | Hours |
|---|---|---|---|
| 10/09/13 | AB | Receipt and review Motion for a Stay because of lapse of Appropriations; profile same in Interwoven | 0.10 |
| 10/09/13 | TB | Review deposition outline from O. Nwaeze; continue to review hot documents of Michael Miserocchi | 2.00 |
| 10/10/13 | BS | Drafted changes of address | 0.40 |
| 10/11/13 | ON | Draft letter to states re: state FCA claims in the second amended complaint | 1.70 |
| 10/15/13 | CP | Memorandum to T. Buschner, O. Nwaeze re Dr. Paul deposition | 0.80 |
| 10/15/13 | ON | Compile folder of hot documents; review documents for deposition of Dr. Barbara Paul | 2.30 |
| 10/16/13 | ON | Draft deposition outline for Dr. Barbara Paul | 1.00 |
| 10/16/13 | VB | Follow-up with O. Nwaeze re seal date; reviewed emails | 0.60 |
| 10/17/13 | ON | Draft outline for deposition of Dr. Barbara Paul | 7.40 |
| 10/18/13 | ON | Draft outline for deposition of Dr. Barbara Paul | 5.10 |
| 10/20/13 | ON | Draft outline for deposition of Dr. Barbara Paul | 2.00 |
| 10/21/13 | ON | Draft outline for the deposition of Dr. Barbara Paul | 7.70 |
| 10/22/13 | ON | Draft outline for deposition of Dr. Barbara Paul | 6.70 |
| 10/23/13 | ON | Complete and proofread outline for deposition of Dr. Barbara Paul; email deposition and supporting documents to T. Buschner and David Garrison | 3.00 |
| 10/24/13 | VB | Reviewed Notice [Redacted]; updated calendar re same | 0.20 |
| 10/25/13 | TB | Breakfast meeting w/ D. Garrison re: Michael Miserocchi and status of case/potential settlement | 1.00 |
| 10/30/13 | TB | Discuss R. Guttman's call with David Garrison on potential settlement and other issues related to [Redacted] | 0.30 |
| 10/30/13 | VB | Prepared monthly calendar for attorney's review | 0.10 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 10/31/13 | VB | Reviewed email from T. Buschner [Redacted]; updated status report re same | 0.10 |
| 10/31/13 | TB | Follow up on bi-weekly conference call with DOJ with Melissa Handrigan; review and respond to emails from David Garrison and J. D. Thomas re[Redacted]; call with O. Nwaeze re: status of the potential settlement talks, and depositions | 0.30 |
| 11/06/13 | VB | Reviewed email from A. Bauer and the [Redacted]; updated calendar and profiled document re same | 0.20 |
| 11/07/13 | TB | Call with DOJ and other Relators re [Redacted]; relay same to R. Guttman | 1.00 |
| 11/08/13 | CP | Conference call with DOJ | 0.30 |
| 11/11/13 | CP | Review of MD declarations | 2.50 |
| 11/13/13 | TB | Review order on call with Magistrate; email to David Garrison re same | 0.20 |
| 11/13/13 | VB | Reviewed email from T. Buschner with Court Notice and Order [Redacted] and alerted the team re same; updated calendar re same; reviewed Compulaw alert re upcoming telephone conference | 0.50 |
| 11/18/13 | VB | Reviewed Compulaw alert re upcoming telephone conference | 0.10 |
| 11/19/13 | TC | Reviewing complaint and recent case documents; discussed assignment with O. Nwaeze | 2.40 |
| 11/20/13 | TC | Reviewed previous hot documents from current production as well as corresponding spreadsheet for senior counsel; began reviewing documents in database | 8.90 |
| 11/21/13 | TC | Analyzed and evaluated documents, flagged key materials and summarized for possible use during motion practice, deposition preparation and/or later trial | 8.80 |
| 11/21/13 | TB | Call with R. Guttman and David Garrison re recent developments on settlement and [Redacted] re research and fact gathering needed for meeting | 1.00 |
| 11/22/13 | TB | Review and chart from O. Nwaeze; email re tasks; conference with O. Nwaeze re same | 1.00 |

**Community Health Systems, Inc.**

|  |  |  | <u>Hours</u> |
|---|---|---|---|
| 11/22/13 | TC | Continued reviewing materials in iConnect; read latest correspondence with co-counsel and the DOJ, including teleconference meeting minutes; flagged key documents in system | 8.10 |
| 11/22/13 | ON | Meet with T. Buschner to discuss creating document summarizing CHS cases; send template | 0.20 |
| 11/23/13 | TC | Reviewed and categorized materials including internal e-mail, presentations and individual hospital review documents | 1.60 |
| 11/25/13 | TC | Evaluated and analyzed documents for relevance to key case issues; reviewed materials directly tying EBITDA to increased hospital admissions; flagged key documents | 7.80 |
| 11/25/13 | TB | Review chart and other items from O. Nwaeze; email to O. Nwaeze re same | 0.50 |
| 11/25/13 | VB | Communication with O. Nwaeze re research project of other false claims cases re CHS; researched the internet and Court Link re same and explained the cases that were found from the search results | 1.30 |
| 11/25/13 | ON | Review previous draft of summary of CHS cases; read related complaints and edit draft | 7.20 |
| 11/26/13 | ON | Read CHS complaint and edit summary | 4.70 |
| 11/26/13 | TC | Continued analysis of materials in database, reviewing for relevance to case issues | 1.30 |
| 11/27/13 | TC | Analyze documents in database, evaluate for relevance to key case issues; catalogue hot documents | 9.00 |
| 11/27/13 | ON | Read related CHS complaints; edit summary document; find additional related complaints and add to summary document | 8.10 |
| 11/30/13 | ON | First to file research | 2.00 |
| 12/01/13 | ON | First-to-file research | 3.60 |
| 12/02/13 | ON | Research the sixth circuit's interpretation of the FCA's first-to-file rule and its impact on our relators complaint | 2.90 |

Community Health Systems, Inc.

| | | | Hours |
|---|---|---|---|
| 12/02/13 | TC | Reviewed various custodial documents in database, analyzed for relevance and flagged key documents for senior counsel review and possible use | 6.20 |
| 12/02/13 | VB | Prepared case status for C. Nevers' review | 0.10 |
| 12/03/13 | TC | Completed review of materials in non-custodian specific batch in LawWeb and added hot documents to index | 4.60 |
| 12/03/13 | ON | Draft memorandum; research [Redacted] | 5.00 |
| 12/04/13 | ON | Draft memorandum re [Redacted] | 3.00 |
| 12/05/13 | VB | Reviewed letter from the Government enclosing CD of related qui tam complaints | 0.10 |
| 12/06/13 | ON | Redraft chart summarizing CHS complaints; email to T. Buschner | 5.40 |
| 12/06/13 | CP | Presentation by Alliance for Health Reform on admission vs. observation | 2.00 |
| 12/18/13 | VB | Reviewed files and prepared case status for C. Nevers' review | 0.20 |
| 01/09/14 | RG | Conference with T. Buschner | 0.50 |
| 01/11/14 | CP | Research | 0.30 |
| 01/13/14 | TB | Review summary information from O. Nwaeze on Relators' cases | 0.50 |
| 01/16/14 | VB | Reviewed email from O. Nwaeze to see whether the U.S. Attorney's office partially unsealed the complaint; reviewed files and provided documents re same | 0.40 |
| 01/24/14 | TB | Review and respond to emails re call with other counsel on Tennessee case; review story on CHS's competitor and FCA case | 0.50 |
| 01/25/14 | TB | Respond to emails re meeting with Tennessee counsel; review and send chart for meeting | 0.30 |
| 01/27/14 | TB | Meeting with Tennessee counsel re status of case; prepare for meeting (review chart from O. Nwaeze) | 1.50 |
| 01/27/14 | RG | Conference with David Garrison, T. Buschner and J. Williams; conference with T. Buschner | 1.00 |

Community Health Systems, Inc.

|            |    |                                                                                                                                                                                       | Hours |
|------------|----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
| 01/27/14   | ON | Call with R. Guttman, T. Buschner and liaising counsel regarding relato's share splits                                                                                                 | 0.70  |
| 01/29/14   | VB | Reviewed email from T. Buschner to the Government [Redacted]; updated calendar re same; checked docket to see whether or not docket remained under seal                                 | 0.40  |
| 01/31/14   | VB | Reviewed Order [Redacted]; profiled document, alerted the team and updated calendar re same                                                                                            | 0.30  |
| 02/04/14   | VB | Reviewed emails from A. Bauer and T. Buschner to draft letter to the Government re DC office new address; drafted letter re same                                                        | 0.30  |
| 02/05/14   | VB | Emailed to T. Buschner a draft letter to the Government re G&B's DC office new address; responded to email re same; prepared letter in final and coordinated with the copy center to send regular mail; profiled document re same | 0.20  |
| 02/10/14   | RG | Conference with T. Buschner; conference with David Garrison                                                                                                                            | 1.00  |
| 02/11/14   | TB | Call with David Garrison and R. Guttman re [Redacted]                                                                                                                                  | 0.40  |
| 02/12/14   | TB | Call with David Garrison and R. Guttman and all Tennessee re: [Redacted]                                                                                                               | 0.50  |
| 02/12/14   | ON | Call with R. Guttman, T. Buschner and other counsel re: Relators' shares                                                                                                               | 0.30  |
| 02/19/14   | TB | Calls with emails with David Garrison and R. Guttman re setting up meeting with Matt Organ and other issues related to possible settlement                                             | 0.50  |
| 02/28/14   | VB | Prepared case status and monthly calendar                                                                                                                                              | 0.10  |
| 03/03/14   | ON | Create binder for R. Guttman of related complaints; send to Chicago                                                                                                                    | 0.70  |
| 03/04/14   | RG | Travel to Chicago                                                                                                                                                                      | 3.50  |
| 03/04/14   | RG | Meeting with David Garrison                                                                                                                                                            | 1.00  |
| 03/05/14   | RG | Meet with Matt Organ and David Garrison; meeting with David Garrison; return travel to DC                                                                                              | 10.00 |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 03/10/14 | TB | Call with David Garrison re DOJ settlement | 0.30 |
| 03/11/14 | TB | Review and respond to email from DOJ re [Redacted]; conference with David Garrison and R. Guttman re same; email re setting call with our clients | 0.30 |
| 03/12/14 | TB | Call with clients on [Redacted]; call with David Garrison and George Barrett re conversations with Matt Organ | 1.50 |
| 03/13/14 | TB | Conference call with DOJ and Relator's counsel re settlement; call with David Garrison post-call re strategy | 1.50 |
| 03/13/14 | ON | Call with T. Buschner and DOJ prosecutors to discuss settlement; follow-call with T. Buschner and our liaising counsel | 0.90 |
| 03/17/14 | RG | Emails to David Garrison re other relators | 0.20 |
| 03/18/14 | TB | Review submissions from Matt Organ and other lawyers re [Redacted]; emails to TN counsel re same | 0.40 |
| 03/20/14 | TB | Call with DOJ and all counsel re: [Redacted]; call with David Garrison, R. Guttman and others re: same | 1.00 |
| 03/25/14 | TB | Call with DOJ [Redacted]; post call with David Garrison and others re: same; draft email to all re: same | 1.50 |
| 03/25/14 | RG | Conference call with co-counsel | 0.50 |
| 03/25/14 | ON | Call with DOJ, T. Buschner and liasing counsel to address [Redacted]; type notes and email to T. Buschner | 0.80 |
| 03/26/14 | TB | Review documents and emails from DOJ re: [Redacted] work on setting up calls with our counsel on same; conference with R. Guttman re: DOJ conference call on previous day; discuss settlement with Caroline Poplin | 1.50 |
| 03/28/14 | TB | Prepare for call with clients; call with counsel on [Redacted]; post-call with David Garrison, George Barrett, O. Nwaeze and David Young re: next steps, re-setting meeting with Relators | 1.50 |
| 03/28/14 | RG | Conference call with co-counsel | 0.50 |
| 03/28/14 | ON | Call with R. Guttman, T. Buschner and co-counsel re: [Redacted] | 0.60 |

**Community Health Systems, Inc.**

|            |     |                                                                                                                             | Hours |
|------------|-----|-----------------------------------------------------------------------------------------------------------------------------|-------|
| 03/31/14   | TB  | Conference call with O. Nwaeze re: [Redacted]                                                                                | 0.40  |
| 04/01/14   | TB  | Call with clients re [Redacted]; pre-call with David Garrison et al. re same; work on letter to DOJ                          | 3.50  |
| 04/01/14   | ON  | Call with T. Buschner, R. Guttman, liasing counsel and relators                                                             | 0.40  |
| 04/03/14   | ON  | Call with relator Sheree Cook to schedule conference call with T. Buschner; begin draft of relators' share letter          | 7.00  |
| 04/04/14   | ON  | Complete draft of relators' share letter to DOJ; email to T. Buschner                                                       | 4.90  |
| 04/04/14   | VB  | Reviewed interwoven documents for updates; prepared status report for C. Nevers' review                                    | 0.20  |
| 04/07/14   | TB  | Initial review of memorandum to DOJ [Redacted]                                                                              | 0.50  |
| 04/09/14   | TB  | Work on letter to DOJ from O. Nwaeze on [Redacted]                                                                          | 2.00  |
| 04/14/14   | VB  | Reviewed alert re letter from Melissa Handrigan, U.S. DOJ re [Redacted]                                                     | 0.10  |
| 04/17/14   | TB  | Begin editing DOJ letter                                                                                                    | 2.00  |
| 04/18/14   | TB  | Continue editing DOJ letter; [Redacted]; review and respond to emails re: same                                             | 1.60  |
| 04/18/14   | ON  | Review DOJ's brief from Endo Pharm case and exhibits for useful arguments for relator's share letter                       | 3.80  |
| 04/19/14   | TB  | Revise DOJ letter drafted by O. Nwaeze                                                                                      | 7.00  |
| 04/20/14   | TB  | Conference with R. Guttman and O. Nwaeze re: changes and other information needed for DOJ letter; include edits from R. Guttman | 1.00  |
| 04/20/14   | ON  | Research for and edits to [Redacted]                                                                                        | 1.00  |
| 04/21/14   | ON  | Draft [Redacted] letter to Department of Justice                                                                           | 3.70  |
| 04/21/14   | VB  | Reviewed email from O. Nwaeze and attachment of letter to the Department of Justice to cite check; proofread, paralegalized and sent suggested edits re same to O. Nwaeze | 2.80  |
| 04/22/14   | VB  | Organized documents in my office to go to central filing                                                                    | 0.70  |

**Community Health Systems, Inc.**

| | | | Hours |
|---|---|---|---|
| 04/22/14 | ON | Edit [Redacted] letter to Department of Justice; input comments from co-counsel | 2.40 |
| 04/24/14 | ON | Call with T. Buschner, co-counsel and Relators Doghramji and Rachel Bryant regarding [Redacted] | 0.70 |
| 05/02/14 | VB | Reviewed email from T. Buschner and Order [Redacted]; named and profiled document re same; updated Compulaw re same | 0.20 |

Total Hours      3,701.90

For Current Services Rendered      $1,546,798.50

Community Health Systems, Inc.

## Recapitulation

| Timekeeper | Total Hours to Date | Rate | Total |
|---|---|---|---|
| Reuben Guttman | 218.90 | 850.00 | $186,065.00 |
| Traci Buschner | 274.40 | 660.00 | $181,104.00 |
| David Fischer | 1.00 | 640.00 | $640.00 |
| Talyana Bromberg | 62.50 | 450.00 | $28,125.00 |
| James Sugarman | 272.20 | 375.00 | $102,075.00 |
| Shehzad Roopani | 67.20 | 275.00 | $18,480.00 |
| David Haendler | 0.80 | 250.00 | $200.00 |
| Oderah Nwaeze | 1,111.30 | 360.00 | $400,068.00 |
| Jennifer Williams | 0.80 | 250.00 | $200.00 |
| Ronald Wittman | 2.80 | 200.00 | $560.00 |
| Valisity Beal | 39.40 | 200.00 | $7,880.00 |
| Beatrice Smith | 0.40 | 200.00 | $80.00 |
| Paige Alderson | 0.50 | 140.00 | $70.00 |
| Sara Haggerty | 9.40 | 190.00 | $1,786.00 |
| Adrienne Bauer | 25.40 | 200.00 | $5,080.00 |
| George Stemerman | 40.00 | 250.00 | $10,000.00 |
| Caroline Poplin | 135.10 | 850.00 | $114,835.00 |
| Greg Stone | 14.00 | 350.00 | $4,900.00 |
| Tracy Campbell | 1,421.70 | 340.00 | $483,378.00 |
| Carolynn Nevers | 0.60 | 225.00 | $135.00 |
| Edward Lilly | 3.50 | 325.00 | $1,137.50 |
| | 3,701.90 | | $1,546,798.50 |

## Disbursements

| | |
|---|---|
| Filing Fee | $222.82 |
| Fax | $56.00 |
| Travel | $13,427.68 |
| Case Related Publication | $4.38 |
| Duplication Services | $6,849.43 |
| Postage & Delivery | $1,050.52 |
| Telephone | $1.25 |
| Transcription Services | $152.35 |
| Case-Related Research | $603.55 |
| | $22,367.98 |

| | |
|---|---|
| **TOTAL** | $1,569,166.48 |

# EXHIBIT D



Copyright 2014 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

# THE NATIONAL
# LAW JOURNAL

The National Law Journal

January 13, 2014 Monday

**SECTION:** NLJ'S BILLING SURVEY; Pg. 1 Vol. 36 No. 20

**LENGTH:** 1860 words

**HEADLINE:** $1,000 Per Hour Isn't Rare Anymore;
Nominal billing levels rise, but discounts ease blow.

**BYLINE:** KAREN SLOAN

**BODY:**

As recently as five years ago, law partners charging $1,000 an hour were outliers. Today, four-figure hourly rates for indemand partners at the most prestigious firms don't raise eyebrows-and a few top earners are closing in on $2,000 an hour.

These rate increases come despite hand-wringing over price pressures from clients amid a tough economy. But everrising standard billing rates also obscure the growing practice of discounts, falling collection rates, and slow march toward alternative fee arrangements.

Nearly 20 percent of the firms included in The National Law Journal's annual survey of large law firm billing rates this year had at least one partner charging more than $1,000 an hour. Gibson, Dunn & Crutcher partner Theodore Olson had the highest rate recorded in our survey, billing $1,800 per hour while representing mobile satellite service provider LightSquared Inc. in Chapter 11 proceedings.

Of course, few law firm partners claim Olson's star power. His rate in that case is nearly the twice the $980 per hour average charged by Gibson Dunn partners and three times the average $604 hourly rate among partners at NLJ 350 firms. Gibson Dunn chairman and managing partner Ken Doran said Olson's rate is "substantially" above that of other partners at the firm, and that the firm's standard rates are in line with its peers.

"While the majority of Ted Olson's work is done under alternative billing arrangements, his hourly rate reflects his stature in the legal community, the high demand for his services and the unique value that he offers to clients given his extraordinary experience as a former solicitor general of the United States who has argued more than 60 cases before the U.S. Supreme Court and has counseled several presidents," Doran said.

In reviewing billing data this year, we took a new approach, asking each firm on the NLJ 350-our survey of the nation's 350 largest firms by attorney headcount-to provide their highest, lowest and average billing rates for associates and

partners. We supplemented those data through public records. All together, this year's survey includes information for 159 of the country's largest law firms and reflects billing rates as of October.

The figures show that, even in a down economy, hiring a large law firm remains a pricey prospect. The median among the highest partner billing rates reported at each firm is $775 an hour, while the median low partner rate is $405. For associates, the median high stands at $510 and the low at $235. The average associate rate is $370.

Multiple industry studies show that law firm billing rates continued to climb during 2013 despite efforts by corporate counsel to rein them in. TyMetrix's 2013 Real Rate Report Snapshot found that the average law firm billing rate increased by 4.8 percent compared with 2012. Similarly, the Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor found that law firms increased their rates by an average 3.5 percent during 2013.

Of course, rates charged by firms on paper don't necessarily reflect what clients actually pay. Billing realization rates-which reflect the percentage of work billed at firms' standard rates- have fallen from 89 percent in 2010 to nearly 87 percent in 2013 on average, according to the Georgetown study. When accounting for billed hours actually collected by firms, the realization rate falls to 83.5 percent.

"What this means, of course, is that- on average-law firms are collecting only 83.5 cents for every $1.00 of standard time they record," the Georgetown report reads. "To understand the full impact, one need only consider that at the end of 2007, the collected realization rate was at the 92 percent level."

In other words, law firms set rates with the understanding that they aren't likely to collect the full amount, said Mark Medice, who oversees the Peer Monitor Index. That index gauges the strength of the legal market according to economic indicators including demand for legal services, productivity, rates and expenses. "Firms start out with the idea of, 'I want to achieve a certain rate, but it's likely that my client will ask for discounts whether or not I increase my rate,'" Medice said.

Indeed, firms bill nearly all hourly work at discounts ranging from 5 percent to 20 percent off standard rates, said Peter Zeughauser, a consultant with the Zeughauser Group. Discounts can run as high as 50 percent for matters billed under a hybrid system, wherein a law firm can earn a premium for keeping costs under a set level or for obtaining a certain outcome, he added. "Most firms have gone to a two-tier system, with what is essentially an aspirational rate that they occasionally get and a lower rate that they actually budget for," he said.

Most of the discounting happens at the front end, when firms and clients negotiate rates, Medice said. But additional discounting happens at the billing and collections stages. Handling alternative fee arrangements and discounts has become so complex that more than half of the law firms on the Am Law 100-NLJ affiliate The American Lawyer's ranking of firms by gross revenue-have created new positions for pricing directors, Zeughauser said.


THE ROLE OF GEOGRAPHY

Unsurprisingly, rates vary by location. Firms with their largest office in New York had the highest average partner and associate billing rates, at $882 and $520, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per hour or more for contracts and commercial work.

Washington was the next priciest city on our survey, with partners charging an average $748 and associates $429. Partners charge an average $691 in Chicago and associates $427. In Los Angeles, partners charge an average $665 while the average associate rate is $401.

Pricing also depends heavily on practice area, Zeughauser and Medice said. Bet-the-company patent litigation and white-collar litigation largely remain at premium prices, while practices including labor and employment have come under huge pressure to reduce prices.

"If there was a way for law firms to hold rates, they would do it. They recognize how sensitive clients are to price increases," Zeughauser said. But declining profit margins-due in part to higher technology costs and the expensive lateral hiring market-mean that firms simply lack the option to keep rates flat, he said.

BILLING SURVEY METHODOLOGY

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

The NLJ asked respondents to its annual survey of the nation's largest law firms (the NLJ 350) to provide a range of hourly billing rates for partners and associates as of October 2013.

For firms that did not supply data to us, in many cases we were able to supplement billing-rate data derived from public records.

In total, we have rates for 159 of the nation's 350 largest firms.

Rates data include averages, highs and low rates for partners and associates. Information also includes the average full-time equivalent (FTE) attorneys at the firm and the city of the firm's principal or largest office.

We used these data to calculate averages for the nation as a whole and for selected cities.

Billing Rates at the Country's Priciest Law Firms

Here are the 50 firms that charge the highest average hourly rates for partners.

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | ASSOCIATE HOURLY RATES | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |

* Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. For complete numbers, please see NLJ.com.
** Firm did not exist in this form for the entire year.

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FTE ATTORNEYS* | PARTNER AVERAGE | HIGH | LOW | ASSOCIATE AVERAGE | HIGH | LOW |
|---|---|---|---|---|---|---|---|---|
| Debevoise & Plimpton | New York | 615 | $1,055 | $1,075 | $955 | $490 | $760 | $120 |
| Paul, Weiss, Rifkind, Wharton & Garrison | New York | 803 | $1,040 | $1,120 | $760 | $600 | $760 | $250 |
| Skadden, Arps, Slate, Meagher & Flom | New York | 1,735 | $1,035 | $1,150 | $845 | $620 | $845 | $340 |
| Fried, Frank, Harris, Shriver & Jacobson | New York | 476 | $1,000 | $1,100 | $930 | $595 | $760 | $375 |
| Latham & Watkins | New York | 2,033 | $990 | $1,110 | $895 | $605 | $725 | $465 |

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW | |
| Gibson, Dunn & Crutcher | New York | 1,086 | $980 | $1,800 | $765 | $590 | $930 | $175 |
| Davis Polk & Wardwell | New York | 787 | $975 | $985 | $850 | $615 | $975 | $130 |
| Willkie Farr & Gallagher | New York | 540 | $950 | $1,090 | iers.$ | $580 | $790 | $350 |
| Cadwalader, Wickersham & Taft | New York | 435 | $930 | $1,050 | $800 | $605 | $750 | $395 |
| Weil, Gotshal & Manges | New York | 1,201 | $930 | $1,075 | $625 | $600 | $790 | $300 |
| Quinn Emanuel Urquhart & Sullivan | New York | 697 | $915 | $1,075 | $810 | $410 | $675 | $320 |
| Wilmer Cutler Pickering Hale & Dorr | Washington | 961 | $905 | $1,250 | $735 | $290 | $695 | $75 |
| Dechert | New York | 803 | $900 | $1,095 | $670 | $530 | $735 | $395 |
| Andrews Kurth | Houston | 348 | $890 | $1,090 | $745 | $528 | $785 | $265 |
| Hughes Hubbard & Reed | New York | 344 | $890 | $995 | $725 | $555 | $675 | $365 |
| Irell & Manella | Los Angeles | 164 | $890 | $975 | $800 | $535 | $750 | $395 |
| Proskauer Rose | New York | 746 | $880 | $950 | $725 | $465 | $675 | $295 |
| White & Case | New York | 1,900 | $875 | $1,050 | $700 | $525 | $1,050 | $220 |
| Morrison & Foerster | San Francisco | 1,010 | $865 | $1,195 | $595 | $525 | $725 | $230 |
| Pillsbury Winthrop Shaw Pittman | Washington | 609 | $865 | $1,070 | $615 | $520 | $860 | $375 |
| Kaye Scholer | New York | 414 | $860 | $1,080 | $715 | $510 | $680 | $320 |
| Kramer Levin Naftalis & Frankel | New York | 320 | $845 | $1,025 | $740 | $590 | $750 | $400 |

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
| Hogan Lovells | Washington | 2,280 | $835 | $1,000 | $705 | - | - | - |
| Kasowitz, Benson, Torres & Friedman | New York | 365 | $835 | $1,195 | $600 | $340 | $625 | $200 |
| Kirkland & Ellis | Chicago | 1,517 | $825 | $995 | $590 | $540 | $715 | $235 |
| Cooley | Palo Alto | 632 | $820 | $990 | $660 | $525 | $630 | $160 |
| Arnold & Porter | Washington | 748 | $815 | $950 | $670 | $500 | $610 | $345 |
| Paul Hastings | New York | 899 | $815 | $900 | $750 | $540 | $755 | $335 |
| Curtis, Mallet-Prevost, Colt & Mosle | New York | 322 | $800 | $860 | $730 | $480 | $785 | $345 |
| Winston & Strawn | Chicago | 842 | $800 | $995 | $650 | $520 | $590 | $425 |
| Bingham McCutchen | Boston | 900 | $795 | $1,080 | $220 | $450 | $605 | $185 |
| Akin Gump Strauss Hauer & Feld | Washington | 806 | $785 | $1,220 | $615 | $525 | $660 | $365 |
| Covington & Burling | Washington | 738 | $780 | $890 | $605 | $415 | $565 | $320 |
| King & Spalding | Atlanta | 838 | $775 | $995 | $545 | $460 | $735 | $125 |
| Norton Rose Fulbright | N/A** | N/A** | $775 | $900 | $525 | $400 | $515 | $300 |
| DLA Piper | New York | 4,036 | $765 | $1,025 | $450 | $510 | $750 | $250 |
| Bracewell & Giuliani | Houston | 432 | $760 | $1,125 | $575 | $440 | $700 | $275 |
| Baker & McKenzie | Chicago | 4,004 | $755 | $1,130 | $260 | $395 | $925 | $100 |
| Dickstein Shapiro | Washington | 308 | $750 | $1,250 | $590 | $475 | $585 | $310 |
| Jenner & Block | Chicago | 432 | $745 | $925 | $565 | $465 | $550 | $380 |

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |
|---|---|---|---|---|---|---|---|---|
| Jones Day | New York | 2,363 | $745 | $975 | $445 | $435 | $775 | $205 |
| Manatt, Phelps & Phillips | Los Angeles | 325 | $740 | $795 | $640 | - | - | - |
| Seward & Kissel | New York | 152 | $735 | $850 | $625 | $400 | $600 | $290 |
| O'Melveny & Myers | Los Angeles | 738 | $715 | $950 | $615 | - | - | - |
| McDermott Will & Emery | Chicago | 1,024 | $710 | $835 | $525 | - | - | - |
| Reed Smith | Pittsburgh | 1,468 | $710 | $945 | $545 | $420 | $530 | $295 |
| Dentons | N/A** | N/A** | $700 | $1,050 | $345 | $425 | $685 | $210 |
| Jeffer Mangels Butler & Mitchell | Los Angeles | 126 | $690 | $875 | $560 | - | - | - |
| Sheppard, Mullin, Richter & Hampton | Los Angeles | 521 | $685 | $875 | $490 | $415 | $535 | $275 |
| Alston & Bird | Atlanta | 805 | $675 | $875 | $495 | $425 | $575 | $280 |

THE FOUR-FIGURE CLUB

These 10 firms posted the highest partner billing rates.

**THE FOUR-FIGURE CLUB**

| | |
|---|---|
| Gibson, Dunn & Crutcher | $1,800 |
| Dickstein Shapiro | $1,250 |
| Wilmer Cutler Pickering Hale and Dorr | $1,250 |
| Akin Gump Strauss Hauer & Feld | $1,220 |
| Kasowitz, Benson, Torres & Friedman | $1,195 |
| Morrison & Foerster | $1,195 |
| Skadden, Arps, Slate, Meagher & Flom | $1,150 |
| Baker & McKenzie | $1,130 |
| Bracewell & Giuliani | $1,125 |
| Paul, Weiss, Rifkind, Wharton & Garrison | $1,120 |

Contact Karen Sloan at ksloan@alm.com

**LOAD-DATE:** January 13, 2014

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| JAMES DOGHRAMJI; SHEREE COOK; | ) | |
| and RACHEL BRYANT, | ) | |
| | ) | CIVIL NO. 3:11-cv-0442 |
| Plaintiffs, | ) | JUDGE SHARP |
| | ) | MAGISTRATE JUDGE GRIFFIN |
| v. | ) | |
| | ) | **FILED UNDER SEAL** |
| COMMUNITY HEALTH SYSTEMS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' NOTICE OF ELECTION TO
## INTERVENE IN PART AND DECLINE IN PART

Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(2) and (4), the United States hereby notifies the Court of its election to intervene in part for the purpose of settling certain allegations against Defendants. Those allegations are set forth in Exhibit A attached to this Notice. The United States declines to intervene as to all other allegations. The parties anticipate signing a Settlement Agreement within the next week that will provide for payments within ten days, and the dismissal of the United States claims against Defendants, thereafter, pursuant to the terms and conditions of the contemplated agreement.

Although the United States declines to intervene in a portion of this action, it respectfully refers the Court to 31 U.S.C. § 3730(b)(1), which allows a relator to maintain the declined portion of the action in the name of the United States; providing, however, that the "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." *Id*. Therefore, the United States requests that, should either a relator or any defendant propose that the part of the action in which the United States has not

intervened be dismissed, settled, or otherwise discontinued, this Court solicit the written consent of the United States before ruling or granting its approval.

Furthermore, pursuant to 31 U.S.C. § 3730(c)(3), the United States requests that all pleadings filed in this action, including as to the non-intervened part of this action, be served upon the United States and that all orders issued by the Court be sent to the undersigned counsel. The United States reserves its right to attend any deposition, order any deposition transcripts and copies of any discovery exchanged, and to intervene in the portion of this action in which it is declining to intervene today, for good cause, at a later date. The United States also requests that it be served with all notices of appeal.

The United States reserves the right to seek the dismissal of the relator's action or claim(s) on any appropriate grounds, including under 31 U.S.C. §§ 3730(b)(5) and (e)(4).

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

DAVID RIVERA
United States Attorney
Middle District of Tennessee

By:    s/ John-David H. Thomas
       JOHN-DAVID H. THOMAS, BPR #027582
       Assistant U.S. Attorney
       110 Ninth Avenue South, Suite A-961
       Nashville, Tennessee 37203
       Telephone: (615) 736-5151
       Facsimile: (615) 401-6626

MICHAEL D. GRANSTON
DANIEL R. ANDERSON
ROBERT MCAULIFFE
Commercial Litigation Branch
U.S. Department of Justice, Civil Division
P.O. Box 261, Ben Franklin Station
Washington, DC 20044

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via First Class U.S. Mail, postage prepaid, on July 24, 2014, to the following:

George E. Barrett
David W. Garrison
Scott Tift
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201

Kit Pierson
David Young
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Rueben Guttman
Traci L. Bushner
GRANT & EISENHOFER, P.A.
1920 L. Street, NW
Suite 400
Washington, DC 20036

s/ John-David H. Thomas
JOHN-DAVID H. THOMAS

3

# EXHIBIT A

From January 1, 2005 through December 31, 2010, Defendants knowingly submitted or caused to be submitted claims for payment to the Government Healthcare Programs for certain inpatient admissions of Government Healthcare Program beneficiaries that were medically unnecessary and should have been billed as outpatient or observation services. This conduct is specifically limited to claims submitted by certain Specified Facilities related to the inpatient admission and treatment of Government Healthcare Program beneficiaries that meet all of the following criteria:

    (a)    For beneficiaries who originally presented to the Emergency Department(s) ("ED") of the Specified Facilities;

    (b)    For beneficiaries whose length of stay after inpatient admission was two (2) days or less;

    (c)    For beneficiaries who were 65 years or older at the time they originally presented to the ED of a Specified Facility;

    (d)    For beneficiaries who were not transferred or discharged to another acute care facility, did not leave the Specified Facility to which they originally presented against medical advice, and did not die while in a Specified Facility;

    (e)    That were billed to the Government Healthcare programs under one of the following Diagnostic Related Groups ("DRGs") or Medical Severity DRGs ("MS-DRGs"):

        i.    From January 1, 2005 through September 30, 2007, DRG 524 (transient ischemia); DRG 088 (chronic obstructive pulmonary

disease); DRG 127 (heart failure & shock); DRG 139 (cardiac arrhythmia & conduction disorder); DRG 141 (syncope & collapse); DRG 143 (chest pain); DRG 183 (esophagitis, gastroenterology & misc digestive disorders); DRG 297 (nutritional and miscellaneous metabolic disorders); DRG 321 (kidney and urinary tract infections);

ii.    From October 1, 2007 through December 31, 2010, MS-DRG 069 (transient ischemia); 192 (chronic obstructive pulmonary disease without CC/MCC); 293 (heart failure & shock without CC/MCC); 310 (cardiac arrhythmia & conduction disorder without CC/MCC); 312 (syncope & collapse); 313 (chest pain); 392 (esophagitis, gastroenterology & misc digestive disorders without MCC); 641 (nutritional and miscellaneous metabolic disorders without MCC); 690 (kidney and urinary tract infections without MC);[1]

iii.    For Specified Facilities acquired by CHS during the covered period of January 1, 2005 through December 31, 2010, claims for services rendered 365 days after the facility was acquired by CHS through December 31, 2010. The relevant time period for each Specified Facility is listed on Attachment A; and

_____

[1] On October 1, 2007, CMS changed from a system that assigned DRGs to Inpatient Prospective Payment System (IPPS) claims to a system that assigned Medical Severity DRGs (MS-DRGs) to IPPS claims. The MS-DRG codes listed in this section map to the DRG codes listed above for the period from January 1, 2005 through September 30, 2007.

2

(f)     For Medicare claims only, inpatient admissions billed and paid under fee for service Medicare Part A, where Medicare was the primary payor of the claim and the claim resulted in payment by Medicare.

# EXHIBIT F

JUSTICE NEWS

### Department of Justice

Office of Public Affairs

FOR IMMEDIATE RELEASE                                      Monday, August 4, 2014

### Community Health Systems Inc. to Pay $98.15 Million to Resolve False Claims Act Allegations

The Justice Department announced today that Community Health Systems Inc. (CHS), the nation's largest operator of acute care hospitals, has agreed to pay $98.15 million to resolve multiple lawsuits alleging that the company knowingly billed government health care programs for inpatient services that should have been billed as outpatient or observation services. The settlement also resolves allegations that one of the company's affiliated hospitals, Laredo Medical Center (LMC), improperly billed the Medicare program for certain inpatient procedures and for services rendered to patients referred in violation of the Physician Self-Referral Law, commonly known as the Stark Law. CHS is based in Franklin, Tennessee, and has 206 affiliated hospitals in 29 states.

"Charging the government for higher cost inpatient services that patients do not need wastes the country's health care resources," said Assistant Attorney General Stuart F. Delery for the Justice Department's Civil Division. "In addition, providing physicians with financial incentives to refer patients compromises medical judgment and risks depriving patients of the most appropriate health care available. This department will continue its work to stop this type of abuse of the nation's health care resources and to ensure patients receive the most appropriate care."

The United States alleged that from 2005 through 2010, CHS engaged in a deliberate corporate-driven scheme to increase inpatient admissions of Medicare, Medicaid and the Department of Defense's (DOD) TRICARE program beneficiaries over the age of 65 who originally presented to the emergency departments at 119 CHS hospitals. The government further alleged that the inpatient admission of these beneficiaries was not medically necessary, and that the care needed by, and provided to, these beneficiaries should have been provided in a less costly outpatient or observation setting. CHS agreed to pay $89.15 million to resolve these allegations. The settlement does not include hospitals that CHS acquired from Health Management Associates (HMA) in January 2014.

In addition, the government alleged that from 2005 through 2010, one of CHS's affiliated hospitals, LMC in Laredo, Texas, presented false claims to the Medicare program for certain cardiac and hemodialysis procedures performed on a higher cost inpatient basis that should have been performed on a lower cost outpatient basis. The government also alleged that from 2007 through 2012, LMC improperly billed Medicare for services referred to LMC by a physician who was offered a medical directorship at LMC, in violation of the Stark Law. The Stark Law prohibits a hospital from submitting claims for patient referrals made by a physician with whom the hospital has an improper financial relationship, and is intended to ensure that a physician's medical judgment is not compromised by improper financial incentives, and is

instead based on the best interests of the patient. CHS agreed to pay $9 million to resolve the allegations involving LMC.

"This is the largest False Claims Act settlement in this district and it reaffirms this office's commitment to investigate and pursue health care fraud that compromises the integrity of our health care system," said U.S. Attorney David Rivera for the Middle District of Tennessee. "This office is committed to ensuring that all companies billing government healthcare programs are responsible corporate citizens and that hospital providers do not engage in schemes to increase medically unnecessary in-patient admissions of government healthcare program beneficiaries in order to increase profits."

"This settlement demonstrates our commitment to working with our law enforcement partners and with the Department of Justice to protect the integrity of our nation's health care system," said U.S. Attorney Kenneth Magidson of the Southern District of Texas. "Put simply, these types of fraudulent practices will not be tolerated and the investigation and resolution of such claims will continue to be a high priority of this office."

"Health care providers should make treatment decisions based on patients' medical needs, not profit margins," said U.S. Attorney Anne M. Tompkins for the Western District of North Carolina. "We will not allow this type of misconduct to compromise the integrity of our health care system."

As part of today's agreement, CHS entered into a Corporate Integrity Agreement with the U.S. Department of Health and Human Services - Office of Inspector General (HHS-OIG), requiring the company to engage in significant compliance efforts over the next five years. Under the agreement, CHS is required to retain independent review organizations to review the accuracy of the company's claims for inpatient services furnished to federal health care program beneficiaries.

"In an effort to ensure the company's fraudulent past is not its future, CHS agreed to a rigorous multi-year Corporate Integrity Agreement requiring that the company commit to compliance with the law," said Inspector General Daniel R. Levinson, of the U.S. Department of Health and Human Services. "The dedicated work of OIG's investigators, auditors, and attorneys, in concert with our law enforcement partners, has again resulted in the recovery of taxpayer dollars and better protection against fraud in the future."

The settlement resolves lawsuits filed by several whistleblowers under the *qui tam* provisions of the False Claims Act, which permit private parties to file suit on behalf of the government and obtain a portion of the government's recovery. Those relators are Kathleen Bryant, former Director of Health Information Management at CHS's Heritage Medical Center in Shelbyville, Tennessee; Rachel Bryant, former nurse at CHS's Dyersburg Hospital in Dyersburg, Tennessee; Bryan Carnithan, former Emergency Medical Services Coordinator at CHS' Heartland Hospital in Marion, Illinois; Amy Cook-Reska, former coder for CHS' LMC in Laredo; Sheree Cook, former nurse at CHS's Heritage Medical Center in Shelbyville; James Doghramji, former internal medicine and emergency room physician at CHS's Chestnut Hill Hospital in Philadelphia;

Thomas Mason, former emergency room physician at Lake Norman Regional Medical Center in Mooresville, North Carolina; Scott Plantz, former emergency room physician at CHS's Longview Regional Medical Center in Longview, Texas; and Nancy Reuille, former nurse and Supervisor of Case Management at CHS's Lutheran Hospital in Fort Wayne, Indiana. The relators' share of the settlement has not yet been determined.

This settlement illustrates the government's emphasis on combating health care fraud and marks another achievement for the Health Care Fraud Prevention and Enforcement Action Team (HEAT) initiative, which was announced in May 2009 by Attorney General Eric Holder and the Secretary of Health and Human Services. The partnership between the two departments has focused efforts to reduce and prevent Medicare and Medicaid financial fraud through enhanced cooperation. One of the most powerful tools in this effort is the False Claims Act. Since January 2009, the Justice Department has recovered a total of more than $20.2 billion through False Claims Act cases, with more than $14 billion of that amount recovered in cases involving fraud against federal health care programs.

This settlement was the result of a coordinated effort by the U.S. Attorney's Offices for the Middle District of Tennessee, Southern District of Texas, Northern and Southern Districts of Illinois, Northern District of Indiana and Western District of North Carolina; the Civil Division's Commercial Litigation Branch; HHS-OIG; DOD's Defense Health Agency - Program Integrity Office and the FBI.

The lawsuits are captioned *United States ex rel. Bryant v. Community Health Systems, Inc., et al.*, Case No. 10-2695 (S.D. Tex.); *United States ex rel. Carnithan v. Community Health Systems, Inc., et al.*, Case No. 11-cv-312 (S.D. Ill.); *United States ex rel. Cook-Reska v. Community Health Systems, Inc., et al.*, Case No. 4:09-cv01565 (S.D. Tex.); *United States ex rel. James Doghramji; Sheree Cook; and Rachel Bryant v. Community Health Systems Inc., et al.*, Case No. 3-11-cv-00442 (M.D. Tenn.); *United States ex rel. Mason v. Community Health Systems, Inc., et al.*, Case No. 3:12-cv-817 (W.D.N.C.); *United States ex rel. Plantz v. Community Health Systems, Inc., et al.*, Case No. 10C-0959 (N.D. Ill.); *United States ex rel. Reuille v. Community Health Systems Professional Services Corporation, et al.*, Case No. 1:09-cv-007RL (N.D. Ind.). The claims resolved by this agreement are allegations only and there has been no determination of liability.

14-822                                                                                                                  <u>Civil Division</u>

# EXHIBIT G





THE UNITED STATES ATTORNEYS OFFICE



MIDDLE DISTRICT *of* TENNESSEE

SEARCH THE SITE

HOME    ABOUT    NEWS    DIVISIONS    PROGRAMS    CONTACT US

Home » News » Press Release

**NEWS**

UNITED STATES ATTORNEYS' OFFICES
**HOMEPAGE**

UNITED STATES ATTORNEYS' OFFICES
**BRIEFING ROOM**

UNITED STATES ATTORNEYS' OFFICES
**MULTI-VICTIM CASES**

## Franklin, Tennessee-Based Community Health Systems, Inc. To Pay $98.15 Million To Resolve False Claims Act Allegations

FOR IMMEDIATE RELEASE                        August 5, 2014

*Alleged Medically Unnecessary In-Patient Admissions & Violations of the Stark Law Results in Largest Ever FCA Settlement in Middle Tennessee*

*NASHVILLE, Tenn., July 30, 2014* ? Community Health Systems, Inc. (CHS), the nation's largest operator of acute care hospitals, has agreed to pay $98.15 million to resolve allegations that the company knowingly billed government health care programs for inpatient services that should have been billed as outpatient or observation services, announced David Rivera, U.S. Attorney for the Middle District of Tennessee and Stuart F. Delery, Assistant Attorney General for the Department of Justice?s Civil Division. The settlement also resolves allegations that one of the company's affiliated hospitals improperly billed the Medicare program for certain inpatient procedures and for services rendered to patients referred in violation of the Physician Self-Referral Law (commonly known as the Stark Law). CHS is based in Franklin, Tennessee, and has 206 affiliated hospitals in 29 states.

"This is the largest False Claims Act settlement in this district and it reaffirms this office's commitment to investigate and pursue health care fraud that compromises the integrity of our health care system," said David Rivera, the United States Attorney for the Middle District of Tennessee. "This office is committed to ensuring that all companies billing government healthcare programs are responsible corporate citizens and that hospital providers do not engage in schemes to increase medically unnecessary in-patient admissions of government healthcare program beneficiaries in order to increase profits."

Charging the government for higher cost inpatient services when patients need only lower cost outpatient services wastes the country's health care resources," said Stuart F. Delery, Assistant Attorney General for the Department of Justice?s Civil Division. In addition, providing physicians with improper financial incentives to refer patients compromises medical judgment and risks depriving patients of the most appropriate health care available. This Department will continue to enforce the laws to prevent this type of abuse of the nation's health care resources and to ensure patients receive the most appropriate care."

The United States alleged that from 2005 through 2010, CHS engaged in a deliberate corporate-driven scheme to increase inpatient admissions of Medicare, Medicaid, and the Department of Defense's TRICARE program beneficiaries, over the age of 65, who originally presented to the emergency departments at 119 CHS hospitals. The United States further alleged that the inpatient admission of these beneficiaries was not medically necessary, and that the care needed by, and provided to, these beneficiaries should have been provided in a less costly outpatient or observation setting. CHS agreed to pay $89.15 million to resolve these allegations. The settlement does not include hospitals that CHS acquired from Health Management Associates (HMA) in January 2014.

In addition, the United States alleged that from 2005 through 2010, one of CHS's affiliated hospitals, Laredo Medical Center, Laredo, Texas (LMC), presented false claims to the Medicare program for certain cardiac and hemodialysis procedures performed on a higher cost inpatient basis that should have been performed on a lower cost outpatient basis. The United States also alleged that from 2007 through 2012, LMC improperly billed Medicare for services referred to LMC by a physician who was offered a medical directorship at LMC, in violation of the Stark Law. That law prohibits a hospital from submitting claims for patient referrals made by a physician with whom the hospital has an improper financial relationship, and is intended to ensure that a physician's medical judgment is not compromised by improper financial incentives and is instead based on the best interests of the patient. CHS agreed to pay $9 million to resolve the allegations involving LMC.

As part of today's agreement, CHS entered into a Corporate Integrity Agreement (CIA) with the United States Department of Health and Human Services, Office of Inspector General, requiring the company to engage in significant compliance efforts over the next five years. Included in the CIA is the requirement that CHS retain independent review organizations to review the accuracy of the company's claims for inpatient services furnished to federal health care program beneficiaries.



**Stop Medicare Fraud**

The U.S. Department of Health and Human Services (HHS) and U.S. Department of Justice (DOJ) are working together to help eliminate fraud and investigate fraudulent Medicare and Medicaid operators who are cheating the system.



What Makes a **School Safer?**

Using science to discover what works.

Federal funding available.

**VISIT NIJ.GOV**
KEYWORDS: COMPREHENSIVE
SCHOOL SAFETY INITIATIVE

project safe childhood

Help us combat the proliferation of sexual exploitation crimes against children.

PROJECT **SAFE** ★★★★

Our nation-wide commitment to reducing gun crime in America.



The settlement resolves lawsuits filed by several whistleblowers under the *qui tam* provisions of the False Claims Act, which permit private parties to file suit on behalf of the government and obtain a portion of the government's recovery. Those relators include Kathleen Bryant, former Director of Health Information Management at CHS's Heritage Medical Center in Shelbyville, Tennessee; Bryan Carnithan, former Emergency Medical Services Coordinator at CHS' Heartland Hospital in Marion, Illinois; Amy Cook-Reska, former coder for CHS' Laredo Medical Center in Laredo, Texas; Sheree Cook, former nurse at CHS's Heritage Medical Center in Shelbyville, Tennessee; James Doghramji, former internal medicine and emergency room physician at CHS's Chestnut Hill Hospital in Philadelphia, Pennsylvania; Thomas Mason, former emergency room physician at Lake Norman Regional Medical Center in Mooresville, North Carolina; Scott Plantz, former emergency room physician at CHS's Longview Regional Medical Center in Longview, Texas; and Nancy Reuille, former nurse and Supervisor of Case Management at CHS's Lutheran Hospital in Fort Wayne, Indiana. The relators' share of the settlement has not yet been determined.

This settlement illustrates the government's emphasis on combating health care fraud and marks another achievement for the Health Care Fraud Prevention and Enforcement Action Team (HEAT) initiative, which was announced in May 2009 by the Attorney General and the Secretary of Health and Human Services. The partnership between the two departments has focused efforts to reduce and prevent Medicare and Medicaid financial fraud through enhanced cooperation. One of the most powerful tools in this effort is the False Claims Act. Since January 2009, the Justice Department has recovered a total of more than $20.2 billion through False Claims Act cases, with more than $14 billion of that amount recovered in cases involving fraud against federal health care programs.

This settlement was the result of a coordinated investigation led by the United States Attorney's Office for the Middle District of Tennessee, the Department of Justice, Civil Division, Commercial Litigation Branch and the United States Attorney's Office for the Southern District of Texas and also involved the efforts of the United States Attorney's offices of the Northern and Southern Districts of Illinois, Northern District of Indiana, and Western District of North Carolina as well as the Department of Health and Human Services, Office of Inspector General; the Department of Health and Human Services, Office of Audit Services; the Department of Defense, Defense Health Agency, Program Integrity Office; and the Federal Bureau of Investigation. Locally, Assistant United States Attorney John-David H. Thomas of the Middle District of Tennessee represents the government.

The lawsuits are captioned *United States ex rel. Bryant v. Community Health Systems, Inc., et al.*, Case No. 10-2695 (S.D. Tex.); *United States ex rel. Carnithan v. Community Health Systems, Inc., et al.*, Case No. 11-cv-312 (S.D. Ill.); *United States ex rel. Cook-Reska v. Community Health Systems, Inc., et al.*, Case No. 4:09-cv01565 (S.D. Tex.); *United States ex rel. James Doghramji; Sheree Cook; and Rachel Bryant v. Community Health Systems Inc., et al.*, Case No. 3-11-cv-00442 (M.D. Tenn.); *United States ex rel. Mason v. Community Health Systems, Inc., et al.*, Case No. 3:12-cv-817 (W.D.N.C.); *United States ex rel. Plantz v. Community Health Systems, Inc., et al.*, Case No. 10C-0959 (N.D. Ill.); and *United States ex rel. Reuille v. Community Health Systems Professional Services Corporation, et al.*, Case No. 1:09-cv-007RL (N.D. Ind.). The claims resolved by this agreement are allegations only, and there has been no determination of liability.

Return to Top

**MIDDLE DISTRICT *of* TENNESSEE**
110 Ninth Avenue, South, Suite A961 - Nashville, TN 37203

| HOME | ABOUT | NEWS | MEET THE US ATTORNEY | DIVISIONS | PROGRAMS | CONTACT US |
|------|-------|------|----------------------|-----------|----------|------------|
| | The District | Press Releases | | Civil Division | LECC | Information |
| | The Office | News Archive | | Criminal Division | VWA | Employment |
| | | | | Admin Division | Identity Theft | Internships |
| | | | | | Anti-Terrorism | |

**JUSTICE.GOV/USAO**

Accessibility — Justice.gov
FOIA — USA.gov
Privacy Policy
Legal Policies & Disclaimers

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, a copy of the foregoing *Declaration of Traci L. Buschner* was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the counsel of record listed below.

John R. Jacobson
William M. Outhier
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN 37203

John-David H. Thomas
Assistant United States Attorney
Office of the United States Attorney
Middle District of Tennessee
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203

/s/ David W. Garrison
**DAVID W. GARRISON
BARRETT JOHNSTON
    MARTIN & GARRISON, LLC**