# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. | : | |
| JAMES DOGHRAMJI, SHEREE COOK; | : | |
| and RACHEL BRYANT, | : | |
| Plaintiffs, | : | CASE NO. 3:11-00442 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, INC. | : | |
| *et al.*, | : | |
| Defendants. | : | |

**********************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | : | |
| STATE OF TEXAS, *ex rel.* | : | |
| AMY COOK-RESKA, | : | |
| Plaintiffs, | : | CASE NO. 3:14-02160 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, INC. | : | |
| *et al.*, | : | |
| Defendants. | : | |

**********************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| KATHLEEN A. BRYANT, | : | |
| Plaintiffs, | : | |
| v. | : | CASE NO. 3:14-02195 (Sharp, J.) |
| COMMUNITY HEALTH SYSTEMS, INC. | : | |
| *et al.*, | : | |
| Defendants. | : | |

**********************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| NANCY REUILLE, | : | |
| Plaintiffs, | : | |
| v. | : | CASE NO. 3:15-00110 (Sharp, J.) |
| COMMUNITY HEALTH SYSTEMS, | : | |
| PROFESSIONAL SERVICES CORP., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**********************************************************************

## RELATORS' JOINT MEMORANDUM IN SUPPORT OF MOTION TO AFFIRM THEIR ENTITLEMENT TO ATTORNEYS' FEES, COSTS, AND EXPENSES

Because the government proceeded with Relators' successful actions, Relators in the referenced consolidated cases are entitled to two statutory benefits as provided by the plain language of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"): (1) a share of the government's recovery (which Relators received through a separate settlement), and (2) attorneys' fees, costs, and expenses paid by the Defendants. FCA § 3730(d)(1). Despite the FCA's statutory mandate and a Settlement Agreement that obligates them to pay Relators' reasonable attorneys' fees, expenses, and costs ("attorneys' fees"), Defendants seek to evade their statutory responsibility to pay Relators' attorneys' fees by reneging on their prior commitments and rewriting the parties' negotiated Settlement Agreement. The Court should reject Defendants' eleventh hour efforts because:

1. The Court lacks jurisdiction to adjudicate Defendants' statutory challenges;

2. The FCA entitles Relators to recover reasonable attorneys' fees from the Defendants;

3. The parties' Settlement Agreement obligates Defendants to pay Relators' reasonable attorneys' fees; and

4. Principles of equity prevent Defendants from succeeding with a bait-and-switch that would allow them to retain the benefits of the parties' settlement while depriving Relators of material benefits of the settlement.

As a result, the only issues appropriate for this Court's determination are the reasonableness of the attorneys' fees incurred by the Relators in pursuing their *qui tam* claims and assisting the U.S. in investigating and prosecuting the cases and achieving the settlement, and the amounts to be paid by the Defendants.

This Joint Memorandum is submitted on behalf of all Relators in the four captioned consolidated *qui tam* cases in support of their Motion seeking an order affirming their statutory entitlement to attorneys' fees for the claims resolved by the Settlement Agreement [Dkt. 75-1].

1

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Having individually uncovered various aspects of Defendants' fraudulent conduct, Relators, beginning in 2009, filed *qui tam* cases against the Defendants. The cases spurred a multi-year effort by the government, Relators, and Relators' counsel to recover on behalf of the government the fraudulent proceeds purloined by Community Health Services, Inc. ("CHS"), and related entities, including 119 of its hospitals in 29 states, identified in Attachment A to the Settlement Agreement (collectively, "Defendants.")

During the course of the ensuing litigation, the government enlisted Relators and their counsel to, among other things, assist with strategic efforts, draft subpoenas, identify witnesses, review and analyze millions of pages of documents, prepare deposition outlines, and provide full support for the government's investigative and litigation efforts. The culmination of these efforts came in July and August 2014, when the Settlement Agreement was signed and the U.S. intervened in all seven *qui tam* cases pending against Defendants, including the four actions consolidated here.

The government's intervention followed months of painstaking negotiations among all parties regarding the terms of the Settlement Agreement. That Agreement ultimately resulted in the return of more than $97 million to the federal government, the execution of a Corporate Integrity Agreement foreclosing future misconduct by Defendants, and required the dismissal with prejudice of all the Relators' *qui tam* claims in each of the seven *qui tam* cases, including the four cases consolidated here. In the Settlement Agreement, Defendants' primary fraudulent conduct was characterized as Medically Unnecessary Emergency Department Admissions.[1] Lawyers for

---

[1] Two other types of violations were also settled, characterized in the Settlement Agreement as Medically Unnecessary Inpatient Procedures and Improper Financial Relationship, but these violations are part of Amy Cook-Reska's case only, and attorneys' fees claims for them were severed and remain pending in the

all parties spent hundreds of hours combing over every aspect of the Settlement Agreement, ensuring that every 'i' was properly dotted, every 't' properly crossed, and every term clear as to the benefits to and obligations of the parties. For their part, each Relator released and agreed to the dismissal with prejudice of all of his or her *qui tam* claims, including those not settled by the government and which they could have pursued separately, and, in exchange, received a statutory share of the proceeds of the government's recovery and statutory attorneys' fees. Buschner Decl., Dkt. 89 at 6, ¶15; 7, ¶18. All that remains of the consolidated cases is the Defendants' unfulfilled obligation to pay Relators their reasonable attorneys' fees.

On February 25, 2015, the Court referred the consolidated action to Magistrate Judge Juliet Griffin for pretrial case management and related proceedings. [Dkt. 143]. Counsel appeared before Magistrate Judge Griffin on April 7, 2015, and an Order was entered on April 13, 2015 [Dkt. 147], setting a schedule and parameters for briefing and a July 20, 2015 date for oral argument.

In accordance with the April 13, 2015 Order, Relators hereby submit this Joint Memorandum addressing the issues common to all Relators. Relators in each case are filing supplemental memoranda addressing unique facts and issues relating to their separate cases.

## II.     INTRODUCTION

At this point, after the seven *qui tam* cases in which the U.S. intervened have been settled, resolved, and/or dismissed with prejudice, this Court has no power to turn back the clock and re-open settled – or closed – matters. Defendants seek to vest the Court with jurisdiction it lacks, and, in essence, ask for an advisory opinion on whether the consolidated cases *would have been* subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) had they not settled and had Defendants

---

Southern District of Texas. Decisions rendered by this Court are expected to resolve all remaining matters relating to cases filed by Relators Doghramji, Cook, and R. Bryant; K. Bryant; Cook-Reska; and Reuille.

3

challenged the Relators' rights to maintain their actions. There is simply no legal basis to do so; Article III Courts cannot adjudicate matters that are settled and moot, nor can they issue advisory opinions.[2]

Defendants misconstrue the rights and remedies available to them at this juncture. The *qui tam* claims have been settled, dismissed, or not transferred to this Court. The docket in the *Doghramji* action, in which these cases are consolidated, indicates that the case is closed. The court in the *Cook-Reska* matter in the Southern District of Texas severed and transferred to this Court only the claim for attorneys' fees related to the Medically Unnecessary Emergency Department Admissions claims; no other portion of Cook-Reska's case was transferred to this Court.[3] The *Bryant* action in the Southern District of Texas has been closed,[4] and Bryant's *qui tam* claims dismissed with prejudice.[5] The *Reuille* case is now closed, but prior to its closure, the *qui tam* claims were dismissed with prejudice,[6] and a motion to sever and transfer the FCA attorneys' fee claim was granted.[7] Despite the posture of the consolidated cases, Defendants wish to litigate

---

[2] "[I]t is well settled that federal courts may act only in the context of a justifiable case or controversy." *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972), *citing Benton v. Maryland*, 395 U.S. 784, 788 (1969). Taking Defendants' argument to a logical extension, the relief they seek is to re-open and seek dismissal of cases that have been settled and dismissed. The *qui tam* claims in these cases have been dismissed (or in the case of Cook-Reska, were not transferred to this Court); this Court has no jurisdiction to hear these issues.

[3] *Memorandum Opinion and Order*, Civ. Action No. 4:09-cv-01565 (S.D. Tex.) (Dkt. 106) ("Relator's claim for attorneys' fees, costs, and expenses related to allegations that CHSI-affiliated hospitals billed government programs for medically unnecessary Emergency Department admissions (the national ED claim) is **SEVERED** from this action and **TRANSFERRED** to the Middle District of Tennessee, Nashville Division, . . . .")

[4] *Order*, Civ. Action No. 4:10-cv-02695 (S.D. Tex.) (Jan. 29, 2015) (Dkt. 57) ("The Clerk is hereby ordered to close this case.")

[5] *Order*, Civ. Action No. 4:10-cv-02695 (S.D. Tex.) (Sept. 4, 2014) (Dkt. 41.)

[6] *Order*, Civ. Action No. 1:09-cv-00007 (N.D. Ind.) (Dkt. 60.)

[7] *Order*, *Id.*, (Oct. 9, 2014)(Dkt. 70) ("IT IS THEREFORE, ORDERED that Relator's claim for attorneys; fees and costs pursuant to 31 U.S.C. § 3730(d) is severed and transferred to the United States District Court for the Middle District of Tennessee, Nashville Division.")

issues that could have been adjudicated during the pendency of the *qui tam* claims, seek dismissal of claims that have already been dismissed, and/or obtain an advisory opinion from the Court regarding which relator(s) *would have been* barred by the public disclosure and first-to-file rules *if* the Settlement Agreement had not been finalized. The Court should reject Defendants' efforts to undo all that the settlement achieved.

## III.    ARGUMENT

### A.    The Court Lacks Jurisdiction to Reject Relators' Claims for Attorneys' Fees

While the original courts in which these four cases were filed possessed complete jurisdiction to address all aspects of Relators' *qui tam* claims *prior to settlement, dismissal, and/or severance and transfer* of the cases, this Court's ability to exercise post-dismissal jurisdiction is narrowly limited by the terms of the Settlement Agreement and the various courts' dismissal, severance, and transfer orders. Defendants negotiated and executed the Settlement Agreement without reserving any claim that Relators' entitlement to attorneys' fees were subject to dismissal under Fed. R. Civ. P. 12(b)(1) or barred from recovery under 31 U.S.C. § 3730(b)(5) (first-to-file) or 31 U.S.C. § 3730(e)(4) (public disclosure.)[8] Viewed another way, Defendants settled any claim they had regarding Relators' *entitlement* to attorneys' fees when they negotiated the Settlement Agreement, reserving only the right to contest the reasonableness of those fees. Consequently, the Court lacks the power to adjudicate any of Defendants' claims or defenses relating to these provisions, as these provisions are not mentioned in the Settlement Agreement or the courts' dismissal, severance, or transfer orders.

---

[8] Defendants' argument that the public disclosure rule precludes their liability for fees and costs only applies to the *Doghramji* case.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As a result, "[t]he first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Caudill v. North American Media Corp.,* 200 F.3d 914, 916 (6th Cir. 2000), *quoting Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 607 (6th Cir. 1998). "The party seeking to invoke the subject matter jurisdiction of the district court bears the burden of showing that the matter is properly before that court." *RE/MAX Intern., Inc. v. Realty One, Inc.,* 271 F.3d 633, 641 (6th Cir. 2001) (internal citations omitted.)

As a general matter, "if a federal court dismisses a case pursuant to a settlement, the court lacks subject matter jurisdiction to have continuing involvement in the matter, such as to enforce the settlement." E. Chemerinsky, *Federal Jurisdiction* at 282 (6th ed. 2012); *Kokkonen*, 511 U.S. at 382 ("enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.") In *Kokkonen,* the parties arrived at a settlement agreement and, pursuant to Federal Rule of Civil Procedure 41(a)(1), executed a stipulation and order of dismissal with prejudice, which the district judge signed. *Kokkonen*, 511 U.S. at 376-77. Later, a dispute arose as to Kokkonen's obligations under the settlement agreement. *Id.* In reversing the lower court's exercise of subject matter jurisdiction over the disputed terms of the settlement agreement, the Supreme Court made clear that a court's power to hear the parties' dispute is very different *after* a case has been dismissed. Neither Rule 41 "nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation" of dismissal. *Id.* at 378.

The Supreme Court identified two ways in which a court can exercise limited jurisdiction over a settlement agreement:

The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by [1] separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or [2] by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id.* at 381 (bracketed numbers added.) The Sixth Circuit applied the Supreme Court's jurisprudence to make clear that a court's exercise of jurisdiction over a settlement agreement is narrowly limited. *See, e.g., Caudill v. North American Media Corp.,* 200 F.3d 914, 916 (6th Cir. 2000); *McAlpin v. Lexington 76 Auto Truck Stop, Inc.,* 229 F.3d 491 (6th Cir. 2000).

In *Caudill,* the Sixth Circuit held that a dismissal order's mere reference to a settlement agreement is insufficient to provide a basis for a court to exercise jurisdiction over the agreement. "The phrase 'pursuant to the terms of the Settlement' fails to incorporate the terms of the Settlement agreement into the order because '[a] dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order.'" *Caudill,* 200 F.3d at 917, *citing In re Phar–Mor, Inc. Securities Litigation*, 172 F.3d 270, 274 (3d Cir. 1999) (quoting *Miener v. Missouri Dep't of Mental Health*, 62 F.3d 1126, 1128 (8th Cir. 1995)). "This court elects to adopt the Third and Eighth Circuits' interpretation of *Kokkonen*." *Id.; see Kokkonen*, 511 U.S. at 381 ("[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order").

In *McAlpin v. Lexington 76 Auto Truck Stop, Inc.,* 229 F.3d 491 (6th Cir. 2000), the Sixth Circuit considered the scope of a court's jurisdiction when its dismissal order incorporated only one part of the settlement agreement. The Court held, "Only one small part of the settlement agreement was incorporated into the court's order dismissing the suit. Thus, the court had no jurisdiction with regard to most of the order appealed from." *Id.* at 493. The Court explained that

"*Kokkonen* precludes the district court from enforcing any provisions of the Settlement Agreement that were not expressly incorporated into an order entered while the case was still pending on the court's docket." *Id.* at 501; *see id.* at 505 ("[t]he Supreme Court's opinion in *Kokkonen* precludes the district court from enforcing portions of the Settlement Agreement that were not expressly incorporated in either its dismissal order or in its prior orders against the parties.")

Because these cases have been resolved, the FCA and the Relators' *qui tam* causes of action no longer define the Court's jurisdiction. As *Kokkonen* and its progeny make clear, after settlement or dismissal, a court's further involvement in a case is limited by its own orders and the four-corners of the litigants' settlement agreement. In the present case, the Court's jurisdiction is limited strictly to the Settlement Agreement by the various dismissal and transfer orders; the Court does not possess jurisdiction to adjudicate disputes that *might have* arisen in the pre-dismissal, pre-transfer cases. This is a critical point because the arguments raised by the Defendants are outside the scope of jurisdiction of the Court.

In these cases, neither the Settlement Agreement nor the dismissal or transfer orders permit the Court to hear disputes that arise outside of the Settlement Agreement. None of these documents mentions the False Claims Act's first-to-file provision, 31 U.S.C. § 3730(b)(5), or the public disclosure provision, 31 U.S.C. § 3730(e). As *Kokkonen* and the Sixth Circuit's decisions in *Caudill* and *McAlpin* make clear, the Court's jurisdiction is limited by the terms of the parties' settlement. The resolution of the underlying *qui tam* cases divested the Court of jurisdiction over issues that may have been relevant to the underlying allegations but are no longer relevant to enforcement of the parties' Settlement Agreement.

The facts underlying claims relating to the Settlement Agreement and those underlying the dismissed claims "have nothing to do with each other." *Kokkonen*, 511 U.S. at 380. The Settlement

Agreement "has as part of its consideration the dismissal of a case before a federal court." *Id*. The facts to be determined with regard to a settlement agreement are quite separate from the facts to be determined in the principal suit. *Id*. at 381. The inescapable conclusion, therefore, is that the Court lacks jurisdiction to hear Defendants' claims pertaining to the False Claims Act's first-to-file provision, 31 U.S.C. § 3730(b)(5), or the public disclosure provision, 31 U.S.C. § 3730(e). Those provisions, which could have been raised as part of case proceedings prior to settlement and/or dismissal were not reserved for adjudication in the Settlement Agreement, are not referenced in the Court's dismissal or transfer orders, and simply do not fall within the jurisdiction of the Court's post-settlement enforcement powers. As such, these issues are not properly before the Court, and the Court is without jurisdiction to address them.

**B.**    **The FCA Requires Defendants to Pay Relators' Attorneys' Fees**

Even if the Court finds that it has jurisdiction to hear Defendants' claims, the text of the False Claims Act and negotiated provisions of the Settlement Agreement nevertheless require that Defendants pay Relators' reasonable attorneys' fees. The heart of the FCA is a *qui tam* provision encouraging "whistleblowers" to pursue claims on behalf of the government for fraud against the government. 31 U.S.C. § 3730. The *qui tam* provisions seek to encourage "whistleblowers to act as private attorneys-general" in bringing suits for the common good. *See U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1041-42 (6th Cir. 1994). A *qui tam* plaintiff or relator may bring a private civil action on behalf of himself and on behalf of the U.S. government against a defendant who, in violation of 31 U.S.C. § 3729, has submitted false claims for payment with government funds. *Id*. § 3730(b)(1); *see U.S. ex rel. Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2006). If the government chooses to intervene in the action, it assumes the

9

role of lead prosecutor. *Id*. § 3730(b)(4)(A), (c)(1). In the alternative, it may decline to join the action, leaving the *qui tam* plaintiff as the sole prosecutor. *Id*. § 3730(b)(4)(B).

Section 3730(d)(1) of the FCA provides:

> ***[i]f the Government proceeds with an action brought by a person under subsection (b)***, such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. . . . ***Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.***

31 U.S.C. § 3730(d)(1) (emphasis added). Relators are entitled to attorneys' fees and costs under this provision. The government *did* "proceed" with all seven cases. It thoroughly investigated the *qui tam* cases with the substantial assistance of all Relators, intervened in the cases, and settled the *qui tam* claims in all seven cases. Further, the government and Relators entered into a settlement that resulted in the Relators being paid 19% of the proceeds from the Medically Unnecessary Emergency Department Admissions claims in recognition of their "substantial[] contribut[ions]" to the case. Accordingly, by a straightforward reading of the statute, Relators here are entitled to recover attorneys' fees. The district court in *U.S. ex rel. Miller v. Holzmann*, construing the FCA's provision as a matter of "first impression," interpreted the "FCA's fee-shifting scheme as applying [only] to '*prevailing qui tam* relators.'" 575 F. Supp. 2d 2, 5-7 (D.D.C. 2008) (emphasis in original) (quoting S. Rep. No. 99–345, at 29 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5294).

The Relators here are prevailing parties. Relators attained three significant benefits through their actions: the government recouped over $97 million, CHS entered a Corporate Integrity Agreement requiring it to cease its wrongful conduct, and each of the Relators received a portion of the relator's share paid by the government. Buschner Decl., Dkt. 89 at 6-7, ¶ 15. "The law is settled that a party need not obtain favorable outcomes on every claim or argument to be considered

a 'prevailing party' for these purposes; instead, ***a prevailing party need only 'succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit.'*** *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc*., 786 F. Supp. 2d 110, 116 (D.D.C. 2011) (quoting *Raton Gas Transmission Co. v. FERC*, 891 F.2d 323, 327 (D.C. Cir. 1989)) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added)).

Further, as required by the Settlement Agreement, the Relators settled, released, and filed motions to dismiss with prejudice all of their *qui tam* claims against Defendants. "A . . . settlement . . . is sufficient to consider plaintiff a 'prevailing plaintiff.'" John. T. Boese, *Civil False Claims and Qui Tam Actions*, § 4.09[A], at 4-313 (4th ed. 2011); *see also United States ex rel. ATC Distrib. Group, Inc. v. Ready-Built Transmissions, Inc*., No. 03 Civ. 2150, 2007 WL 2522638, at *1, *9, 2007 U.S. Dist. LEXIS 65963, at *1, *25 (S.D.N.Y. Sept. 7, 2007) (awarding attorney's fees to relator who was a party to the settlement between defendants and U.S.). Thus, the Relators are entitled to statutory fees as prevailing parties.

This result is consistent with the policies underpinning the *qui tam* provisions of the FCA, strengthened substantially by Congress in 1986 to provide incentives to whistleblowers and their lawyers to ferret out and prosecute fraud against the government. During Congressional hearings held before the passage of the 1986 amendments, Representative Howard Berman maintained that the purpose of the amendments was to "encourage a working partnership between both the government and the *qui tam* plaintiff" so that the "public will be well served by having more legal resources brought to bear against those who defraud the government." Statement of Rep. Berman, 132 Cong. Rec. H9388, daily ed. (October 7, 1986) (re False Claims Amendments Act of 1986). Rep. Berman went on to point out that the amendments sought to increase resources available to the Department of Justice without appropriating more taxpayer dollars:

> [E]ven the United States Government is not without financial limitations. It is not uncommon for Government attorneys to be overworked and underpaid given the demanding tasks and frequently overwhelming caseloads they maintain… *If the government can pass a law that will increase the resources available to confront fraud against the government without paying for it with taxpayers' money*, we are all better off. This is precisely what [the False Claims Act] is intended to do: *deputize ready and able people who have knowledge of fraud against the government to play an active and constructive role through their counsel* to bring to just those contractors who overcharge the government.

*Id.* at H 16 (emphasis added).

In this case, the contributions of Relators and Relators' counsel have been substantial, and most of the work they performed was done in coordination with and at the direction of the United States Department of Justice. *See* Doc. No. 89, Buschner Decl. at ¶¶ 7-12, and Doc. No. 88, Garrison Decl. at ¶ 5. This work included participating in routine conference calls and meetings coordinated by the Department of Justice, reviewing over two million pages of documents, drafting factual and legal memoranda, preparing highly detailed deposition outlines to assist government attorneys in conducting depositions, and assisting the government in designing and conducting a national audit. Frank W. Hunger, the Assistant Attorney General over the Civil Division of the U.S. Department of Justice in the Clinton Administration, explained in his declaration that this type of work is "exactly the type of collaborative work that is integral to the Department of Justice's successful pursuit of healthcare fraud." Doc. 94, Hunger Decl. at ¶¶ 8, 9. While Mr. Hunger is currently engaged in private practice, he supervised the False Claims Act section of the Department of Justice from 1993 to 1999. *Id.* at ¶ 2.

While Defendants may not be pleased that the government enlisted the services of multiple counsel to perform the litigation tasks necessary to achieve a $97 million settlement, the FCA was designed by Congress to encourage such cooperation and collaborative effort. The text and history

of the FCA fully support Relators' claims for payment of their attorneys' fees pursuant to the parties' Settlement Agreement.

### C. The Settlement Agreement Demonstrates That Relators Are Entitled to Their Reasonable Attorneys' Fees

The terms of the parties' Settlement Agreement demonstrate that Defendants agreed to pay Relators' attorneys' fees, reserving for determination only the reasonableness of such fees. The settlement of Relators' *qui tam* actions did not occur in haste. It was the result of a number of months of negotiations, at least four months of which involved the drafting and redrafting of the proposed Settlement Agreement. Buschner Decl., Dkt. 89 at 6-7, ¶¶ 14-18. Given that the negotiated Settlement Agreement was the focus of intense scrutiny and vigorous negotiation by many lawyers, it is inconceivable that its failure to reference the FCA's first-to-file provision, 31 U.S.C. § 3730(b)(5), or its public disclosure provision, 31 U.S.C. § 3730(e)(4) is mere coincidence or oversight. Yet neither of those statutory provisions is mentioned in the sixteen-page Settlement Agreement.

However, when specifically referencing Relators' claims for attorneys' fees, the parties' Settlement Agreement, mentions § 3730(d) of the False Claims Act SIX TIMES. That statutory provision entitles Relators to receive from the Defendants "an amount for reasonable expenses . . . attorneys' fees and costs." The Settlement Agreement references § 3730(d) in the following provisions:

- Relators and their counsel claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs. *Settlement Agreement, Recital G.* at 5;

- All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release: …any claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d). *Id.*, ¶ 3 at 7;

- All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d). *Id.,* ¶ 8 at 10;

- . . . the following claims shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States is obtained, and the Courts are so informed: (1) Any claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d). *Id.,* ¶ 15(c) at 14-15;

- Except for Relators' rights pursuant to 31 U.S.C. § 3730(d), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement. *Id.,* ¶ 16 at 15.

- This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee, Nashville Division, except that this choice-of-forum clause shall not govern any disputes between CHS and any particular relator arising from that relator's request for attorneys' fees pursuant to 31 U.S.C. § 3730(d) or any claims Relators have under 31 U.S.C. § 3730(h). *Id.,* ¶ 18 at 15-16.

There is no mention in the Settlement Agreement of "first-to-file," "public disclosure," or any assertion that Relators' claims for attorneys' fees will be addressed by any provision other than § 3730(d). As noted above, the language "carving out" the determination of Relators' attorneys' fees states, "All parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses and costs *pursuant to 31 U.S.C. § 3730(d).*" *Id.*, ¶ 8 (emphasis added). The phrase "pursuant to 31 U.S.C. § 3730(d)" is a clear indication of the only provision of the FCA that Defendants may use "to challenge or object to Relators' claims for attorneys' fees."

As the Settlement Agreement also demonstrates, when the parties wanted to address claims or provisions specifically, they knew how to do it. For instance, in Recitals C and D to the Settlement Agreement, the U.S. set forth its contentions about how the Defendants defrauded the

government. In Recital F, Defendants stated, "CHS expressly denies the allegations of the United States and Relators and denies that it engaged in any wrongful conduct in connection with the Covered Conduct." But in response to the statement in Recital G that "Relators and their counsel claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs," Defendants did not deny Relators' claims that they are entitled to attorneys' fees, and they did not raise jurisdictional issues, first-to-file (31 U.S.C. § 3730(b)(5)), or public disclosure (31 U.S.C. § 3730 (e)(4)), or otherwise indicate that they intended to rely upon any provisions of the FCA to deny Relators' entitlement to attorneys' fees.

Moreover, when the government wanted to reserve specific statutory claims, it negotiated a carve-out for those provisions. The Relators agreed that the Settlement Agreement did not "waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relators from sharing in the proceeds of this Agreement." *Id.,* ¶ 7 at 9-10. The only reservation referenced in the Settlement Agreement regarding Relators' recovery of attorneys' fees is § 3730(d). Defendants did not reserve or carve out first-to-file or public disclosure provisions.

### D. Relators Are Equitably Entitled to Payment of Their Attorneys' Fees

While the provisions of the False Claims Act and terms of the negotiated Settlement Agreement demonstrate Relators' entitlement to their reasonable attorneys' fees, the equities of the situation overwhelmingly favor the relief sought by Relators. Based on the undisputed facts and equitable principles of law, Defendants are not permitted to "renegotiate" the terms of the Settlement Agreement through this proceeding after failing to obtain such terms before the Settlement Agreement was finalized and the cases resolved.

As previously explained, the Settlement Agreement was the result of months of negotiations among the parties. The clear intention of the Settlement Agreement was "[t]to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation…." *Settlement Agreement*, Dkt. 75-1 at 6. One exception to the global settlement of Relators' claims was the reasonableness of attorneys' fees under 31 U.S.C. § 3730(d). *Id.*, ¶ 8 at 10.

Pursuant to Tennessee and Sixth Circuit law, a release is a contract and is to be construed under the general principles of contractual interpretation. *Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Cary*, 897 S.W.2d 262, 267 (Tenn. Ct. App. 1994). An integral element of a valid and enforceable contract is consideration. Consideration is the bargained-for give and take of the parties to a contract or settlement. In this case, if Defendants are permitted to pursue and prevail on their argument that Relators are not entitled to recover their attorneys' fees, then there is a failure of consideration. Defendants' promise to pay Relators' reasonable attorneys' fees induced Relators' forbearance with respect to key rights that they possessed.

Relators surrendered their rights to valuable claims in the execution of the Settlement Agreement. When the U.S. and Defendants reached an agreement in principle in early 2014 to settle the *qui tam* claims in all seven cases, the agreement was subject to obtaining releases from the Relators for all *qui tam* claims in all seven cases, even those claims that fell outside the "Covered Conduct" described in Recital D of the Settlement Agreement. Under the FCA, Relators have the right to pursue such claims directly if "the government elects not to proceed" with them. 31 U.S.C. § 3730(c)(3). Relators waived this statutory right, releasing "any claim that the Relators asserted or could have asserted in their Civil Actions." *Id.*, ¶ 3 at 7.

Moreover, as further consideration for the settlement, Relators waived their right to a court hearing to contest whether "the proposed settlement is fair, adequate, and reasonable under all

circumstances," a right afforded by the FCA, § 3730(c)(2)(B). *See Id., ¶* 7 at 9. Had Defendants' current contentions been incorporated into the Settlement Agreement, Relators could have, and likely would have, sought the Court's intervention to address the "fairness, adequacy and reasonableness" of the proposed settlement.

If Relators had no standing to maintain their *qui tam* claims by operation of the first-to-file or public disclosure bars, and thus, were not "prevailing plaintiffs," then it logically follows that Relators did not, nor were they entitled to, receive any portion of the settlement proceeds or release their claims. Aside from being factually false, the issue then arises as to nature of the consideration that was given by Defendants in exchange for Relators' release of significant and valuable claims. According to Defendants, Relators should have received nothing even though they forfeited significant rights in the Settlement Agreement and even though Defendants obtained significant benefits from the rights Relators forfeited and the obligations Relators assumed in the Agreement.

Generally, courts will not look into the value of the consideration when examining the validity of a release. *Lloyd v. Turner,* 602 S.W.2d 503, 509 (Tenn. Ct. App. 1980). However, courts uniformly do require that there be *some* consideration given in exchange for a release, regardless of the nature or amount. *Id.* A release is subject to invalidation where there is a complete failure of consideration. *Id.*

If Defendants succeed on their argument that none of the Relators are entitled to payment of attorneys' fees because they are barred by the FCA's first-to-file or public disclosure provisions, then the entire basis for release and settlement of these claims must be called into question because there would be no bargained-for benefit to the Relators under the Settlement Agreement. Under such a scenario, Defendants will have achieved the benefit of having the claims released without any commensurate detriment or payment. Should the Court reach such a result, Relators request

that the Court rescind the Settlement Agreement as it relates to Relators' claims and reinstate their claims in their separate *qui tam* actions. Relators then could prosecute their claims as if the settlement had never occurred. Of course, this is not a remedy that any of the parties would desire, especially in light of the resulting expense, inconvenience, and delay that would ensue if such a result were enforced. However, such a consequence is required if the basis for Relators' consideration of the settlement is ruled to have been illusory.

Furthermore, Relators detrimentally relied on the representations made by Defendants as reflected in the plain language of the Settlement Agreement; namely, that the only issue relating to Defendants' payment of Relators' attorneys' fees was their reasonableness, as encompassed within 31 U.S.C § 3730(d). Subsection (d) is not a statutory provision to contest or challenge eligibility or status of a relator. The time for making those challenges has long passed; Defendants settled and released those claims and defenses through the Settlement Agreement. The only issue remaining for resolution is the reasonable amount of Relators' attorneys' fees, expenses, and costs.

Detrimental reliance is available to require enforcement of an agreement where a promise was made and the promisee reasonably relied on the promise to his detriment. *Engenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12, 19–20 (Tenn. Ct. App. 1997). Here, the record is replete with evidence of Relators' detrimental reliance on Defendants' representations and their reasonable reliance on the plain language of the Settlement Agreement.

Relators reasonably relied on these representations in agreeing to release their claims except for reasonable attorneys' fees. "A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits." *Calabro v. Calabro,* 15 S.W.3d 873, 878-879 (Tenn. Ct. App. 1999). In determining the

18

justness of the detrimental reliance, the court evaluates the following factors: "(1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made." *Id.*

The plain language of the Settlement Agreement supports Relators' reasonable reliance and expectation that Defendants intended to leave unresolved only the issue of the reasonableness of the attorneys' fees and not the entitlement to those fees. As previously discussed, the only statutory reference in the Settlement Agreement governing the Relators' claims for attorneys' fees is 31 U.S.C. § 3730(d). And this reference is enumerated in six different sections of the Settlement Agreement, clearly indicating an agreement by Defendants to limit any challenge to the reasonableness of Relators' attorneys' fees. If Defendants had intended to contest Relators' entitlement to fees, then Defendants, represented here by counsel experienced in the ways of the False Claims Act, could have included references to §§ 3730(b) and (e). Indeed, the *government* did this very thing when it retained its right to contest the right of Relators to share in the proceeds of the action on the basis of §§ 3730(d)(3) (where a Relator may be a "planner or initiator" of the fraudulent conduct) and (e) ("Certain actions barred"). Defendants chose not to include those sections as a basis for challenging Relators' claims for fees and expenses because they were not agreed-upon terms of the settlement with Relators.

Defendants engaged in a course of conduct on which Relators relied, and that is inconsistent with their present assertions. Prior to execution of the Settlement Agreement, the government told Relators that Defendants had requested each Relator's claims for attorneys' fees, and Relators submitted their invoices to Defendants. Buschner Decl., Dkt. 89 at 7, ¶ 16. *See also*

Soifer Decl., Cook-Reska Dkt. 73-3 ¶ 12. Such requests are clearly contrary to reasonable conduct by a party that believes no attorneys' fees are owed.

In the present case, (1) the detriment suffered by Relators is substantial in that they have foregone valuable claims alleged in their civil actions against Defendants; (2) Defendants knew the likely consequence of their disingenuous settlement negotiations in hiding their intent to contest Relators' entitlement to attorneys' fees would be to induce Relators into executing the requested releases of liability (and as a corollary to this, they knew that Relators would not agree to such a release if the issue of entitlement to fees was being left unresolved); and (3) Relators' reliance on all of these representations was reasonable under all of the circumstances. For these reasons, Defendants should be estopped from claiming rights that were clearly settled and relinquished by the Settlement Agreement.

## IV.   CONCLUSION

The Court lacks jurisdiction to reject Relators' claims for entitlement to attorneys' fees. Moreover, the FCA requires the payment of reasonable attorneys' fees under these circumstances, as does the parties' negotiated Settlement Agreement. Relators also are equitably entitled to the recovery of their attorneys' fees from Defendants. Accordingly, Relators respectfully request that the Court grant their Motion.

Respectfully submitted,

/s/_Jan Soifer_____
Jan Soifer (Admitted Pro Hac Vice)
jsoifer@oconnellsoifer.com
Texas Bar No. 18824530
Patrick J. O'Connell (Admitted Pro Hac Vice)
poconnell@oconnellsoifer.com
Texas Bar No. 15179900
O'CONNELL & SOIFER LLP
98 San Jacinto Blvd., Suite 540
Austin, Texas 78701
Telephone: (512) 583-0451

Matthew K. Organ (Admitted Pro Hac Vice)
matthew.organ@goldbergkohn.com
Illinois Bar No. 06278172
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

Michael Hamilton
mhamilton@provostumphrey.com
Tennessee Bar No. 010720
PROVOST UMPHREY LAW FIRM, LLP
4205 Hillsboro Road, Suite 303
Nashville, Tennessee 37215
Telephone: (615) 297-1932
Fax: (615) 297-1986

**ATTORNEYS FOR RELATOR NANCY REUILLE**

/s/_Jan Soifer_____
Jan Soifer (Admitted Pro Hac Vice)
jsoifer@oconnellsoifer.com
Texas Bar No. 18824530
Patrick J. O'Connell (Admitted Pro Hac Vice)
poconnell@oconnellsoifer.com
Texas Bar No. 15179900
O'CONNELL & SOIFER LLP
98 San Jacinto Blvd., Suite 540
Austin, Texas 78701
Telephone: (512) 583-0451

21

J. Hoke Peacock III (Admitted Pro Hac Vice)
tpeacock@susmangodfrey.com
Texas Bar No. 15673980
Katherine Kunz (Admitted Pro Hac Vice)
kkunz@susmangodfrey.com
Texas Bar No. 24083337
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

Michael Hamilton
mhamilton@provostumphrey.com
Tennessee Bar No. 010720
PROVOST UMPHREY LAW FIRM, LLP
4205 Hillsboro Road, Suite 303
Nashville, Tennessee 37215
Telephone: (615) 297-1932
Fax: (615) 297-1986

**ATTORNEYS FOR RELATOR AMY COOK-RESKA**


/s/ Mitchell R. Kreindler_____
Mitchell R. Kreindler (Admitted Pro Hac Vice)
mkreindler@blowthewhistle.com
Sharon M. Gurak (Admitted Pro Hac Vice)
sgurak@blowthewhistle.com
KREINDLER & ASSOCIATES
9219 Katy Freeway, Suite 206
Houston, TX 77024-1415
(713) 647-8888
Fax: (713) 647-8889

Stephen G. Young
syoung@rrylaw.com
ROBINSON, REAGAN & YOUNG, P.C.
446 James Robertson Parkway, Suite 200
Nashville, TN 37219
(615) 726-0900
Fax: (615) 256-3634

**ATTORNEYS FOR RELATOR KATHLEEN A BRYANT**

/s/ David W. Garrison
DAVID W. GARRISON (No. 24968)
SCOTT P. TIFT (No. 27592)
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

Kit A. Pierson
David A. Young
COHEN MILSTEIN SELLERS &TOLL, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kpierson@cohenmilstein.com
dyoung@cohenmilstein.com

Mary Thomas, Esq. (DE Bar No. 5072)*
Jennifer Williams, Esq. (DE Bar. No. 5966)*
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE  19801
Tel:  302.622.7148
Fax: 302.622.7100
mthomas@gelaw.com
jwilliams@gelaw.com

*Motion for admission pro hac vice forthcoming*

ATTORNEYS FOR RELATORS JAMES DOGHRAMJI,
SHEREE COOK, AND RACHEL BRYANT

## CERTIFICATE OF SERVICE

I certify that on April 28, 2015, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the Procedures for Electronic Filing of the U.S. District Courts of the Middle District of Tennessee.

/s/ Patrick J. O'Connell
Patrick J. O'Connell