# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. : <br> JAMES DOGHRAMJI, SHEREE COOK; : <br> and RACHEL BRYANT, : <br>                  Plaintiffs, : <br>          v. : <br> COMMUNITY HEALTH SYSTEMS, INC. : <br> *et al.*, : <br>                Defendants. : | CASE NO. 3:11-00442 (Sharp, J.) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA and : <br> STATE OF TEXAS, *ex rel.* : <br> AMY COOK-RESKA, : <br>                  Plaintiffs, : <br>          v. : <br> COMMUNITY HEALTH SYSTEMS, INC. : <br> *et al.*, : <br>                Defendants. : | CASE NO. 3:14-02160 (Sharp, J.) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* : <br> KATHLEEN A. BRYANT, : <br>                  Plaintiffs, : <br>          v. : <br> COMMUNITY HEALTH SYSTEMS, INC. : <br> *et al.*, : <br>                Defendants. : | CASE NO. 3:14-02195 (Sharp, J.) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* : <br> NANCY REUILLE, : <br>                  Plaintiffs, : <br>          v. : <br> COMMUNITY HEALTH SYSTEMS, : <br> PROFESSIONAL SERVICES CORP., *et al.*, : <br> : <br>                Defendants. : | CASE NO. 3:15-00110 (Sharp, J.) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## RELATORS' JOINT MOTION TO AFFIRM THEIR ENTITLEMENT TO
## ATTORNEYS' FEES, COSTS, AND EXPENSES

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 5

    I.    Attorneys' Fees and First-to-File Bar .......................................................... 5

    II.   These Relators Were Not The First To File ................................................. 7

ARGUMENT ........................................................................................................... 8

    I.    Relators' Jurisdictional Arguments Are Wholly Misplaced ........................ 9

    II.   The FCA Does Not Entitle All Relators To Attorneys' Fees ..................... 10

    III.  The Settlement Agreement Does Not Entitle Relators To Attorneys' Fees ................ 12

    IV.  Relators Are Not "Equitably" Entitled To Attorneys' Fees ........................ 19

CONCLUSION ...................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
532 U.S. 598 (2001) ................................................................................................ 20

*Campbell v. Redding Med. Ctr.*,
421 F.3d 817 (9th Cir. 2005) .................................................................................. 11

*Federal Recovery Servs., Inc. v. United States*,
72 F.3d 447 (5th Cir. 1995) ...................................................................................... 6

*Grynberg v. Koch Gateway Pipeline Co.*,
390 F.3d 1276 (10th Cir. 2004) ................................................................................ 9

*In re Natural Gas Royalties Qui Tam Litigation*,
566 F.3d 956 (10th Cir. 2009) .................................................................................. 6

*LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
149 F.3d 227 (3rd Cir. 1998) .................................................................................. 22

*Menke v. Monchecourt*,
17 F.3d 1007 (7th Cir. 1994) .................................................................................. 20

*Miller v. Holzmann*,
575 F. Supp. 2d (D.D.C. 2008) ................................................................................. 6

*RE/MAX Intern., Inc. v. Realty One, Inc.*,
271 F.3d 633 (6th Cir. 2001) .................................................................................... 9

*Tiedel v. Nw. Michigan Coll.*,
865 F.2d 88 (6th Cir. 1988) .................................................................................... 20

*United States ex. rel. Beauchamp v. Academi Training Center, Inc.*,
933 F. Supp. 2d 825 (E.D. Va. 2013) .................................................................... 6, 9

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*,
560 F.3d 371 (5th Cir. 2009) .................................................................................... 9

*United States ex rel. Carter v. Halliburton Co.*,
710 F.3d 171 (4th Cir. 2013) ............................................................................ 1, 4, 9

*United States ex rel. Gadbois v. PharmMerica Corp.*,
C.A. No. 10-471-ML, Dkt. 53 (D.R.I. Oct. 3, 2014) ................................................. 4

*United States ex rel. Johnson v. Planned Parenthood of Houston*,
570 F. App'x 386 (5th Cir. 2014) ...................................................................... 6, 18

ii

*United States ex rel. Lam v. Tenet Healthcare Corp.*,
    481 F. Supp. 2d 689 (W.D. Tex. 2007) ................................................. 22

*United States ex. rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (11th Cir. 2001) ....................................................... 6, 9

*United States ex rel. Merena v. SmithKline Beecham Corp.*,
    205 F.3d 97 (3d Cir. 2000) ................................................................ 18

*United States ex rel. Poteet v. Medtronic, Inc.*,
    552 F.3d 503 (6th Cir. 2009) .......................................................... 5, 9

*United States ex rel. Ryan v. Endo Pharm., Inc.*,
    27 F. Supp. 3d 615 (E.D. Pa. 2014) ......................................... 1, 6, 17, 18

*United States ex rel. Saidiani v. NextCare, Inc.*,
    2013 WL 431828 (W.D.N.C. Feb. 4, 2013) ................................... 6, 12

*United States ex rel. Schweizer v. Océ N. Am.*,
    956 F. Supp. 2d 1 (D.D.C. 2013) ....................................................... 21

*United States ex rel. Smith v. Yale New Haven Hosp.*,
    2006 WL 387297 (D. Conn. Feb. 14, 2006) ........................................ 4

*United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*,
    41 F.3d 1032 (6th Cir. 1994) ............................................................. 18

*United States ex rel. Wilson v. Bristol-Myers Squibb, Inc.*,
    750 F.3d 111 (1st Cir. 2014) ............................................................. 11

*Walburn v. Lockheed Martin Corp.*,
    431 F.3d 966 (6th Cir. 2005) ............................................................. 11

*Wang v. FMC Corp.*,
    975 F.2d 1412 (9th Cir. 1992) ........................................................... 11

**Statutes**

31 U.S.C. § 3730(b)(5) ............................................................... 1, 5, 11

31 U.S.C. § 3730(c)(2)(B) ................................................................. 21

31 U.S.C. § 3730(d)(1) ....................................................................... 5

31 U.S.C. § 3730(e)(4)(A) ................................................................. 11

Case 3:11-cv-00442   Document 163   Filed 05/19/15   Page 4 of 28 PageID #: 3704

Defendants Community Health Systems, Inc. ("CHSI") and the CHSI-affiliated hospital companies named in the complaints[1] (collectively, "Defendants") respectfully submit this memorandum of law in response to Relators' Joint Memorandum In Support Of Motion to Affirm Their Entitlement to Attorneys' Fees, Costs, and Expenses ("Joint Br."). Dkt. 151.[2] Defendants address in a separate memorandum, filed concurrently, each Relator's individual argument(s) as to why he or she is entitled to attorneys' fees. Dkts. 152-155.

## INTRODUCTION

The Civil False Claims Act ("FCA") provides that "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This rule has become known as the first-to-file bar. Under this rule, "whoever wins the race to the courthouse prevails and the other case must be dismissed." *United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 181 (4th Cir. 2013); *see also United States ex rel. Ryan v. Endo Pharm., Inc*., 27 F. Supp. 3d 615, 631 (E.D. Pa. 2014) ("The logical conclusion from the FCA's inclusion of the first-to-file rule is that Congress intended only one relator to prevail for each claim.").

Yet, in connection with Defendants' $97 million FCA settlement of the national Emergency Department ("ED") admission allegations in July 2014 ("Settlement Agreement"), the relators in *seven* different *qui tam* actions have each sought to obtain attorneys' fees. Dkt. 75-1. In particular, the four relators currently before this Court[3] now contend in their Joint Brief

---

[1] A full listing of the Defendants joining this memorandum in opposition is set out at Exhibit A.

[2] Unless otherwise indicated, docket citations are to *United States ex rel. Doghramji, et al. v. Community Health Sys., Inc., et al.*, No. 3:11-cv-00442 ("*Doghramji*").

[3] Defendants have settled the fee requests of two relators, Scott Plantz and Thomas Mason. The U.S. District Court for the Southern District of Illinois denied Defendants' motion to transfer relator Bryan Carnithan's fee claim to this district, noting that Carnithan had a retaliation claim against Defendants still

1

that *all* of them should receive their attorneys' fees. The assertion of relators Reuille, Cook-Reska, Bryant, and Doghramji ("Relators") that they are all allowed to recover fees, however, directly conflicts with the FCA's first-to-file bar. Under the first-to-file bar, at most one relator—and here, none of these Relators—satisfies this statutory requirement.

To avoid the fatal implications of the first-to-file bar, Relators grasp at the Settlement Agreement that the Defendants entered into resolving the substantive FCA allegations and argue that it somehow makes the first-to-file rule inapplicable. The Settlement Agreement does no such thing.

- The language of the Settlement Agreement is crystal clear that it does not affect the parties' dispute over attorneys' fees: "nothing in this Paragraph or this Agreement shall be construed in any way to release, waive, or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. §3730(d)." Settlement Agreement ¶ 8. Indeed, as this Court has already recognized, the Settlement Agreement "reserved the parties' argument relative to attorneys' fees and, more fundamentally, the threshold issue of which Relator was entitled to fees, if any." Dkt. 143. On two separate occasions, the federal district court in Texas has reached the same conclusion. *See United States et al. ex rel. Cook-Reska v. Cmty. Health Sys., Inc., et al.*, No. 4:09-cv-01565, Dkt. 121, at 5 (S.D. Tex. May 4, 2015) (noting that the Settlement Agreement "reserves the issue of which Relator (if any) is entitled to recover attorneys' fees under 31 U.S.C. §3730(d)"); see also *id.* Dkt. 106, at 5 (S.D. Tex. Oct. 20, 2014) (same).

---

pending in the Illinois court. *United States et al. ex rel. Carnithan v. Cmty. Health Sys., Inc., et al.*, No. 3:11-cv-00312, Dkt. 67 (S.D. Ill. May 4, 2015).

2

- Lest there be any doubt about the Settlement Agreement's plain meaning (and there is none), the history of the negotiations over the Agreement could not be clearer that Defendants were *not* waiving their right to challenge Relators' entitlement to attorneys' fees. In fact, the relators sent proposed language whereby Defendants would have agreed to pay their attorneys' fees and to dispute only the reasonableness of the amount. *That proposed language was rejected and removed,* and Defendants replaced it with the provision quoted above spelling out that the Agreement did *not* "affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees."

- Contrary to their professions of surprise in this Court over Defendants having challenged their entitlement to recover any fee award, Relators were fully aware when they entered into the Settlement Agreement that Defendants would be raising this challenge based on first-to-file grounds. In addition to the express language of the Agreement and the negotiation history, Defendants repeatedly told the DOJ lawyers with whom they principally negotiated the Agreement that Defendants intended to raise first-to-file challenges to any fee petitions. Moreover, Defendants told several of the relators' counsel directly that Defendants would be raising first-to-file challenges. As if that were not enough, the time records of Relators' counsel confirm that some of the counsel who now profess surprise had been anticipating first-to-file problems since at least 2011.

- Relators' position that the Settlement Agreement should act as some sort of waiver also makes no practical or legal sense. Relators argue that Defendants waived their right to challenge the *bona fides* of Relators' claim to attorneys' fees, but

3

Defendants were never served with Relators' complaints and the cases were dismissed with prejudice before there was any need for Defendants to even file a responsive pleading. Relators also argue for a regime that would make it virtually impossible for a *qui tam* defendant to enter into a settlement with the United States in any case with multiple relators. According to the Relators, the United States and Defendants would have to wait months or even years to consummate a settlement while the first-to-file issues involving the various relators were first litigated.

Relators seek to generate an exception to the first-to-file bar where none exists. Rather, the courts have been clear that the first-to-file bar is "an absolute, unambiguous exception-free rule." *Halliburton Co.,* 710 F.3d at 181; *United States ex rel. Gadbois v. PharmMerica Corp.,* C.A. No. 10-471-ML, Dkt. 53 at 17 (D.R.I. Oct. 3, 2014) ("The prohibition against later filed related actions is 'exception-free.'") (citations omitted); *United States ex rel. Smith v. Yale New Haven Hosp.,* 2006 WL 387297, at *2 (D. Conn. Feb. 14, 2006) (same). Accordingly, this Court should reject Relators' suggestion that the first-to-file bar does not apply to them. The first-to-file bar should be applied in this case and, as set forth in more detail in the accompanying Defendants' Memorandum in Opposition to Relators' Supplemental Memoranda For Entitlement to Attorneys' Fees, Costs and Expenses ("Defts. Supp. Br."), none of these relators was the first-to-file. For that reason and others, Relators fail to satisfy the statutory prerequisites for an award of attorneys' fees.

# BACKGROUND

## I. Attorneys' Fees and First-to-File Bar

Relators have moved for an award of fees, costs, and expenses under 31 U.S.C. § 3730(d), the provision of the FCA that authorizes such awards under specified circumstances. Section 3730(d) provides in relevant part:

> If the Government proceeds with an action brought *by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim* . . . . Any payment to a person under . . . this paragraph shall be made from the proceeds. *Any such person shall also receive* an amount for reasonable expenses which the court finds to have been necessarily incurred, plus *reasonable* attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1) (emphasis added). Although completely ignored by Relators, section 3730(d)'s reference to "a person under subsection (b)" is significant because subsection (b)(5) includes the first-to-file bar, which limits recovery to a single relator (the first relator to bring suit), bars successive qui tam suits arising from the same essential facts or material elements, and forbids subsequent relators from sharing in the government's recovery or being awarded their attorneys' fees.

Section 3730(b)(5) provides: "When a person brings an action under this subsection, *no person* other than the Government *may* intervene or *bring a related action based on the facts underlying the pending action*." 31 U.S.C. § 3730(b)(5) (emphasis added). "The purpose of the FCA's first-to-file provision is to prevent the filing of more *qui tam* suits once the government already has been made aware of the potential fraud perpetrated against it." *United States ex rel. Poteet v. Medtronic, Inc.,* 552 F.3d 503, 517 (6th Cir. 2009). Once the government has been alerted to the fraud, any additional FCA action alleging the same material elements provides no benefits and serves only to dilute the recovery of the government and the original relator. *Id.* at 516 (first-to-file bar "furthers the policies animating the FCA by ensuring that the government

5

has notice of the essential facts of an allegedly fraudulent scheme while, at the same time, preventing opportunistic plaintiffs from bringing parasitic lawsuits") (internal quotations omitted); *see also In re Natural Gas Royalties Qui Tam Litigation,* 566 F.3d 956, 961 (10th Cir. 2009) (first-to-file bar "functions both to eliminate parasitic plaintiffs . . . and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim").

Critically, a relator whose claims are barred on first-to-file grounds may *not* recover a relator's share or attorneys' fees for those claims under 31 U.S.C. § 3730(d). *See United States ex rel. Saidani v. NextCare, Inc*., 2013 WL 431828, at *2–3 (W.D.N.C. Feb. 4, 2013) ("The plain language of the FCA demonstrates that a relator is only entitled to attorneys' fees if that relator also obtained a relator's share following a court award or settlement."); *United States ex rel. Ryan v. Endo Pharm., Inc*., 27 F. Supp. 3d 615, 631-32 (E.D. Pa. 2014) ("The logical conclusion from the FCA's inclusion of the first-to-file rule is that Congress intended only one relator to prevail for each claim. Here, Ryan filed first . . . and Ryan is the sole Relator eligible to receive the award."); *see also United States ex rel. Johnson v. Planned Parenthood of Houston*, 570 F. App'x 386, 389-90 (5th Cir. 2014); *United States ex. rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188–89 (11th Cir. 2001); *United States ex. rel. Beauchamp v. Academi Training Center, Inc.*, 933 F. Supp. 2d 825, 835 (E.D. Va. 2013). Put differently, a "person under subsection (b)" cannot include any relator who is barred under section 3730(b)(5) by virtue of the first-to-file doctrine.[4]

---

[4] Not surprisingly, courts have also held that a relator may not recover attorneys' fees under section 3730(d)(1) without meeting the requirements delineated in other subsections of section 3730, including another jurisdictional bar – the so-called "public disclosure rule" of section 3730(e)(4). *See, e.g.*, *Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) (relators' attorneys "are not statutorily entitled to attorneys' fees and expenses" because relators' lawsuit is blocked by the public disclosure bar); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 7 (D.D.C. 2008) ("Logically, having erected a jurisdictional bar to these relators' claims, Congress could not have intended them to receive attorneys' fees.").

6

This conclusion finds support not only in the statutory text and numerous authorities cited above but also in common sense. There is no reason—none—why Congress would have required dismissal of a relator's claim that founders on the first-to-file barrier while at the same time requiring those same courts to award attorneys' fees, costs, and expenses to such relators. A relator whose claim is barred by the first-to-file rule *cannot* be a proper relator entitled to an award of attorneys' fees. Relators' contention to the contrary is nothing less than an end-run around the first-to-file and public-disclosure bars that Congress included in the statute and should not be countenanced by this Court.

## II.     These Relators Were Not The First To File

The first-to-file bar operates in this case to preclude these Relators, as a matter of law, from receiving any award of attorneys' fees with respect to the national ED settlement. Here, the relator in *United States ex rel. Plantz v. Health Mgmt. Assocs., Inc., et al*., No. 1:10-cv-00959 (N.D. Ill. Feb. 11, 2010) ("*Plantz*") was the first to allege "intentional overbilling of the Medicare and Medicaid health insurance programs" by Community Health Services, Inc. and its subsidiaries, *see Plantz* Cplt. ¶ 1, named nearly 120 CHSI-affiliated entities as defendants, *id.* ¶¶ 74–190, and specifically charged a scheme to overbill the government through improper ED admissions across facilities, *see, e.g.*, *id.* ¶¶ 246-56, 262-66. Dr. Plantz also alleged that CHSI officials carefully monitored ED admissions rates and pressured hospital administrators and physicians to increase those rates and that CHSI established benchmarks or quotas for ED admission rates that were about the national averages. *Id.* ¶¶ 248-252, 256, 262-65. By contrast, the Relators before this Court either never mentioned any possible improper ED admissions at other hospitals besides their own (*Reuille*), or never mentioned the ED or a corporate-wide

7

scheme anywhere in their complaint (*Cook-Reska*), or filed their complaints after *Plantz* while making closely similar allegations (*Bryant*; *Doghramji*). *See* Defts. Supp. Br. 13-24.

Not surprisingly, then, the government had no difficulty recognizing that it was relator Plantz (and not Relators here) who was entitled to the relator's share payment. Consequently, when the United States made its determination regarding which relators should be awarded the relator's share of the government's recovery for the national ED claim, Dr. Plantz received a relator's share of $16,427,740.96 (exclusive of interest). *See* Dkt. 115-15, Settlement Agreement between the United States and Scott Plantz. The United States did not award the relator's share on the national ED claim to any of the Relators before this Court.[5] In granting Dr. Plantz the relator's share, the United States acknowledged it was his complaint that alerted the government to the national ED admissions issue and therefore led to the settlement with Defendants.

## ARGUMENT

Relators are well aware that the first-to-file rule will bar all (or, maybe, all but one) of them from receiving an attorneys' fees award. As a consequence, they desperately throw out a host of arguments as to why the first-to-file rule should not apply here. But none of these arguments survives even minimal scrutiny given the "absolute, unambiguous and exception-free" nature of the first-to-file rule.

---

[5] Relator Cook-Reska received a relator's share of $2,141,184.04 (exclusive of interest) for unrelated claims involving billing and referral practices at Laredo Medical Center ("Laredo") and for ED admissions at Laredo. *See* Dkt. 115-16, Settlement Agreement between the United States and Amy Cook-Reska. Defendants have not contested that Ms. Cook-Reska was the first-to-file on these Laredo-specific claims and thus entitled to reasonable attorneys' fees. As a result, on May 4, 2015, Ms. Cook-Reska was awarded more than $729,000 in fees and expenses for her counsel's work on these Laredo claims. *United States ex rel. Cook-Reska v. Cmty. Health Sys., Inc., et al.*, No. 4:09-cv-01565, Dkts. 121, 126 (S.D. Tex. May 4, 2015).

# I. Relators' Jurisdictional Arguments Are Wholly Misplaced

Relators' first argument is that the Court has no jurisdiction to consider Defendants' statutory objections to their claims for attorneys' fees. Joint Br. 5. But Relators have the jurisdictional question entirely backwards. It is Relators—not Defendants—who are seeking "to invoke the subject matter jurisdiction of the district court." *Id.* 6 (quoting *RE/MAX Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001)). It is Relators, after all, who are moving for an award of attorneys' fees by this Court. And it is the False Claims Act's first-to-file bar that prevents the Court from having jurisdiction to make such an award.

It is well-established that the first-to-file rule is jurisdictional, stripping courts of the power to adjudicate a *qui tam* action that is preempted by an earlier-filed suit. *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 835 (E.D. Va. 2013) ("The FCA's first-to-file bar deprives courts of subject matter jurisdiction over later-filed FCA actions while an earlier-filed action based on the same material elements of fraud remains pending."); *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 515-16 (6th Cir. 2009); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009).[6] Thus, before the Court can consider granting any motion or making any fee award to Relators, it must apply the first-to-file rule in order to determine whether there is jurisdiction to hear the case. Once the first-to-file bar is applied, then all (or, maybe, all but one) of these Relators must be dismissed.

Relators argue that courts generally lack jurisdiction following the entry of settlement and dismissal of a lawsuit. Joint Br. 6-8. But if that is so, then there is no jurisdictional basis for this

---

[6] *Accord United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1183 (9th Cir. 2001).

9

Court to award attorneys' fees. Relators also appear to maintain that the Court lacks jurisdiction to apply the FCA's first-to-file bar but somehow possesses jurisdiction to order attorneys' fees under the FCA. This, of course, makes no sense. If the FCA provides jurisdiction to award attorneys' fees, then the Act needs to be applied in its entirety, including its first-to-file bar.[7]

Defendants do not dispute Relators' assertion that "Federal courts are courts of limited jurisdiction." Nor do we contest the proposition (argued at great length by relators) that "if a federal court dismisses a case pursuant to a settlement, the court lacks subject matter jurisdiction to have continuing involvement in the matter." We agree. Consistent with those fundamental principles, Relators have the burden of demonstrating jurisdiction and cannot do so. They want the Court to exercise jurisdiction over their claims for attorneys' fees under the FCA, but the FCA contains the first-to-file bar which is a jurisdictional requirement that Relators are unable to satisfy.

## II.     The FCA Does Not Entitle All Relators To Attorneys' Fees

Relators next argue that the FCA itself creates their entitlement to attorneys' fees. Joint Br. 9-13. They point to the "text and history of the FCA," *id.* at 12-13, quoting from the Act's attorneys' fees provision as well as snippets from the legislative history supporting the concept of a private whistleblower. Their discussion of the statute, however, is highly selective: *nowhere do they ever mention the first-to-file provision, 31 U.S.C. § 3730(b)(5).* When one also applies the first-to-file bar, some or all of these Relators must be dismissed.

---

[7] It makes equally little sense for Relators to suggest that the relevant question here is whether Defendants' arguments "fall within the jurisdiction of the Court's post-settlement enforcement powers." Joint Br. 9. Defendants are not asking this Court to enforce any provisions of the Settlement Agreement, Joint Br. 8, because, with respect to attorneys' fees, the Settlement Agreement does no more than reserve Relators' right to bring the instant claims for attorneys' fees (and Defendants' right to object to those claims on any and all grounds). *See* Settlement Agreement ¶ 15(c)(1). In other words, there is nothing in the Settlement Agreement to enforce regarding attorneys' fees.

While the FCA was certainly designed to incentivize insiders to pursue claims of fraud, the Act also includes provisions that require dismissal of relators who were not the first to file or whose allegations were based on publicly disclosed information. 31 U.S.C. § 3730(b)(5) & § 3730(e)(4)(A). Congress required that "a 'relator must be a true whistleblower' in order to bring suit," *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005); a later-filed complaint that merely echoes the essential facts of an earlier action "'does nothing to help reduce fraud of which the government is already aware.'" *United States ex rel. Wilson v. Bristol-Myers Squibb, Inc*., 750 F.3d 111, 118 (1st Cir. 2014); *see also Campbell v. Redding Med. Ctr.,* 421 F.3d 817, 821 (9th Cir. 2005) (first-to-file rule "encourages prompt disclosure of fraud by creating a race to the courthouse among those with knowledge of fraud"); *Wang v. FMC Corp.,* 975 F.2d 1412, 1419 (9th Cir. 1992) (noting that "*[q]ui tam* suits are meant to encourage insiders privy to a fraud on the government to blow the whistle on the crime. In such a scheme, there is little point in rewarding a second toot"); *United States et al. ex rel. Cook-Reska v. Cmty. Health Sys., Inc., et al.*, No. 4:09-cv-01565, Dkt. 106, at 9 (S.D. Tex. Oct. 20, 2014) ("[T]he FCA includes provisions that are intended both to encourage whistle-blowing insiders with valuable information to step forward and to discourage opportunistic plaintiffs. One such provision is the FCA's first-to-file rule . . . ."). As a result, section 3730(d) allows for attorneys' fees only to "a person under subsection (b)," which directly incorporates the first-to-file bar found in subsection (b)(5). Once again, Relators' attempt to apply only part of the Act—the provision authorizing an award of attorneys' fees but not the first-to-file bar—is untenable and insupportable.

Relators also put much emphasis on their extensive efforts purportedly assisting the United States' investigation. Yet, it should be noted that they undertook this work only *after*

they had guaranteed themselves millions by reaching a private agreement to share the relator's share payday.[8]   Moreover, there is no "assisted the government" exception to the first-to-file bar anywhere in the Act.  The drafters of the FCA could have provided financial incentives for all relators, witnesses, good samaritans, and law firms who helped the government investigate fraud, regardless of whether they were the first-to-file relator or there already had been a public disclosure.  But the drafters did not.  Instead, the statute rewards only those who *first* set the government onto the trail of fraud with non-public information.  To the extent that Relators have concerns about the unfairness of the FCA's statutory bars, these arguments are properly directed to Congress.

## III.   The Settlement Agreement Does Not Entitle Relators To Attorneys' Fees

Relators' principal argument is that "Defendants agreed [in the Settlement Agreement] to pay Relators' attorneys' fees, reserving for determination only the reasonableness of such fees." Joint Br. 13.  The short answer is that this Court (like the district court in Texas) has *already*

---

[8] Relators imply that all of them were awarded the relator's share by the United States.  In fact, the United States awarded only Dr. Plantz the relator's share of more than $16 million.  *See* Dkt. 115-15, Settlement Agreement between the United States and Scott Plantz.  While Relators may have had an agreement amongst themselves to allocate the relator's share, this private agreement does not impact the first-to-file analysis. Relators cannot invoke their private agreement to trump the FCA's first-to-file or public-disclosure bars, or to create jurisdiction over their claims where none exists.  The relator in *United States ex rel. Saidiani v. NextCare, Inc.*, for example, argued as Relators do here that because he and another relator "had entered into a separate private agreement between themselves to share any proceeds that resulted from the litigation . . . he should be considered a successful Relator who has 'received' a Relator's share."  2013 WL 431828, at *2–3 (W.D.N.C. Feb. 4, 2013). The Court squarely rejected this argument, holding that relator's "separate private agreement" did not change the fact that he did not secure a relator's share, and thus was not entitled to fees.  *Id*.

 Although relators' separate private agreement did not change the fact that they did not receive a relator's share from the United States and thus are not entitled to attorneys' fees, it does raise some interesting questions given the Relators' professed belief that the first-to-file bar is inapplicable.  For example, if Relators actually thought they would all be entitled to a relator's share under the statute, then why did they need to enter into a private sharing agreement?  Why didn't the government, instead, award each of the Relators' their own share of the proceeds under the FCA?  The government could not, because the FCA contemplates that the government will award only one relator—the first-to-file—a share of the proceeds on each FCA claim. And that is precisely what the government did in awarding the relator's share on the national ED claim to Dr. Plantz.

*rejected* this utterly insupportable reading of the Settlement Agreement. *See* Dkt. 143, at 3 (recognized that Agreement "reserved the parties' argument relative to attorneys' fees and, more fundamentally, the threshold issue of which Relator was entitled to fees, if any."); *see also* p. 3, *supra*. And with good reason: to advance this argument, Relators must (and do) ignore the plain terms of the Settlement Agreement; misrepresent the parties' settlement negotiations; elide the case law; and advocate for an approach that makes no practical sense.

       1.      Relators cannot cite to a provision of the Settlement Agreement where Defendants agreed to Relators' entitlement to attorneys' fees. Nor can Relators cite to any provision where Defendants agreed to limit their objections to the reasonableness of Relators' attorneys' fees. The reason for this is simple – no such provisions exist.

       On the contrary, the Agreement makes clear that the parties agreed to disagree as to Relators' claims to attorneys' fees, with both sides reserving their rights. The parties exchanged mutual releases, but agreed that the Agreement did not "release . . . any claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)." Settlement Agreement ¶ 3. The parties also agreed that the government would intervene and dismiss the q*ui tam* complaints, but the dismissal would not affect "any claims Relators may have for reasonable attorneys' fees." *Id.* ¶ 15.c.(1). And the Agreement even anticipates this fight over attorneys' fees and specifically addressed it in connection with the forum selection clause. *Id.* ¶ 18.

       Most importantly, the parties agreed that the settlement of the substantive ED admissions allegations would have no impact on whether Relators were entitled to attorneys' fees. The Agreement states, without qualification, "that *nothing* in this Paragraph or this Agreement shall be construed *in any way to release, waive or otherwise affect* the ability of CHS to *challenge or*

13

*object* to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)." Settlement Agreement ¶ 8 (emphasis added). A clearer reservation of Defendants' right to object to Relators' fee petition on any and all grounds is difficult to imagine.

In the face of this plain language, Relators argue that the Settlement Agreement does not mean what it says because it refers only to § 3730(d), and not specifically mention the first-to-file and public disclosure sections of the FCA. This argument is flawed at every turn. First, the Settlement Agreement references Section 3730(d) because that is the section of the FCA giving Relators the right to seek attorneys' fees – the "under § 3730(d)" modifies the phrase immediately preceding it: "Relators' claims for attorneys' fees, expenses and claims." It has nothing to do with how or on what grounds Defendants might challenge or object to those attorneys' fee claims. Second, even if the Agreement were referencing its intention to challenge entitlement to fees under the first-to-file bar, it would be correct to cite to § 3730(d). As discussed above, *supra* pp. 6-7, section 3730(d) expressly provides for an award of attorneys' fees to only "a person under subsection (b)," and the first-to-file bar resides in subsection (b)(5); consequently, the reference to section 3730(d) directly incorporates the first-to-file bar. Finally, Relators puts forward no reason why Defendants were obligated to exhaustively list in the Agreement the various grounds on which they intended to challenge Relators' claim to attorneys' fees. For example, Relator Cook-Reska should not recover attorneys' fees for the national ED claim because her Complaint was focused on physician relationships and procedures at Laredo Medical Center and never even mentioned the Emergency Department or a company-wide issue of improper ED admissions. Under Relators' theory, why and how did this have to be described in the Settlement Agreement? Rather than identify or list possible objections in advance, the Settlement Agreement broadly preserved Defendants' ability to "challenge and object to

14

Relators' claims for attorneys' fees" without any qualification or limitation. Relators agreed to this broad reservation of rights by Defendants.

2.      Indeed, the drafting history of the Settlement Agreement plainly demonstrates that Defendants were not agreeing to Relators' entitlement to legal fees. Relators blatantly misrepresent the facts when they assert that they were somehow misled into believing that Defendants would only be challenging the reasonableness of their fee request (and not their entitlement to fees).

During settlement negotiations, it eventually became evident that the parties would not be able to settle Relators' attorneys' fees demands as part of the overall Settlement Agreement. Waldman Decl. ¶ 5. Relators then proposed adding a paragraph to the draft Agreement that would have enshrined their entitlement to attorneys' fees. On June 4, 2014, Relators sent to Defendants, via the DOJ, a draft version of the Settlement Agreement that included the following provision on attorneys' fees:

> In exchange for . . . Relators' [] obligations contained in this Agreement, CHS agrees to pay to Relators their reasonable expenses, attorneys' fees and costs. Any disputes between CHS and any Relator regarding the reasonableness of that Relator's request for expenses, attorneys' fees and costs shall be brought in the United States District Court in which that Relator's action is pending.

*See* Waldman Decl. ¶ 5, Ex. 1. Had the Defendants agreed to this proposed language, the Settlement Agreement would be exactly what Relators now assert, granting entitlement to attorneys' fees and limiting Defendants to objecting to the reasonableness of the amount.

***But Defendants flatly and emphatically rejected this proposed language.*** Defendants would ***not*** agree to waive their ability to challenge each Relators' entitlement to attorneys' fees under the FCA. Instead, Defendants insisted on removing the fee provision proposed by Relators and replacing it with clear language that preserved Defendants' ability to challenge Relators' fee

15

petitions on any and all grounds, including their entitlement to any attorneys' fees award.  On June 9, 2014, Defendants sent the DOJ a revised version of the Settlement Agreement, striking Relators' proposed provision and adding the broad language that:   "All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)."  As we have noted, it was this broad language preserving Defendants' right to challenge or object on any ground to Relators' fee claim that is found in the final Settlement Agreement.  *See* Waldman Decl. ¶ 6, Ex. 2.

3.  Relators' assertion that they had no idea that Defendants would challenge their fee claim on first-to-file grounds is simply disingenuous.  Along with the exchanges of draft agreements, on  June 25, 2014, more than a month before the Settlement Agreement was entered into, Defendants' counsel exchanged emails with Matt Organ of Goldberg Kohn LLP and Pat O'Connell and Jan Soifer of O'Connell & Soifer LLP, who represented Relators Reuille, Cook-Reska and Plantz,[9]  in which Defendants highlighted their intention to pursue first-to-file challenges.  *See* Waldman Decl. ¶ 7, Ex. 3.  Counsel for Defendants specifically explained that the "ability to work out an agreement on attorneys' fees . . . is hampered by your refusal to break out your fee request between Ms. Reuille and Mr. Plantz or to identify which of your clients you believe is the first to file.  By your repeated reference to the Northern District of Illinois local rules, it appears that you believe Mr. Plantz may be the first to file.  If that is the case, of course, then O'Connell [&] Soifer would not be entitled to recover their attorneys' fees for work on the ED matter." *Id.*  Defendants represented that if Relators' counsel provided additional information

---

[9] In this correspondence, Defendants asked counsel representing these relators to break out their fees by relator.  As Defendants' explained, each relator needs to separately overcome the applicable statutory hurdles in order to be entitled to attorneys' fees under the statute.

regarding their attorneys' fees claims, including their position on which relator they understood to be the first-to-file, Defendants anticipated being in a position to make an offer to settle the attorneys' fees claims. *Id.* Relators declined to provide the additional information. But there could not be any confusion from this or their other dealings with Relators' counsel and the DOJ that Defendants intended to challenge entitlement on first-to-file grounds if an acceptable consensual resolution on the fee demands could not be reached.

Moreover, Relators' purported "surprise" over a first-to-file challenge is especially dubious given that their counsel apparently had been concerned about the issue from early on. As early as 2011, the time records of the attorneys for Reuille, Cook-Reska, and Doghramji show them separately holding internal conferences and conducting legal research on the first-to-file bar. *See, e.g.,* Dkt. 89, p. 78: 6/24/11 entry by TB: "Conference with George Barrett, R. Guttman and D. Garrison re: first to file issues"; *Cook-Reska*, Dkt. 73-1, p. 30: 11/14/2011 entry by PJO: "Communications with Amy Cook-Reska and consultants re: first to file and public disclosure issues." Tellingly, Ms. Cook-Reska's and Ms. Reuille's attorneys at O'Connell & Soifer have fifteen separate entries of research and communications involving the first-to-file bar in the months and years before the Settlement Agreement (including a time record for "research re: first to file and public disclosure" only a few months before the Agreement). See Exhibit B.[10]

4. The case law also does not support Relators' contention that the Settlement Agreement precludes application of the first-to-file bar. In *United States ex rel. Ryan v. Endo Pharm., Inc.*, for example, the district court rejected the argument that a settlement agreement entitled the signing relators to any specific recovery and held that the relator share issue would

---

[10] Relators professed "shock" that Defendants are now challenging their fees claim on first-to-file grounds is reminiscent of the scene in *Casablanca* where Captain Renault was shocked to find gambling taking place at Rick's (as he was receiving his nightly winnings).

have to be resolved as to each individual relator in post-settlement litigation. 27 F. Supp. 3d at 630. The court held that "[t]he logical conclusion from the FCA's inclusion of the first-to-file rule is that Congress intended only one relator to prevail for each claim" and that the relators' "unfounded perception of the Settlement Agreement contradict[ed] the express provisions and purpose of the FCA." *Id.*; *see also United States ex. rel. Johnson v. Planned Parenthood of Houston*, 570 F. App'x 386, 390 (5th Cir. 2014) ("[A] settlement is irrelevant to the first-to-file analysis because the first-to-file analysis requires comparison of the two original complaints."); *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 107 (3d Cir. 2000) (rejecting argument that government waived its right to contest relators' share issue where, like here, the agreement reserved the issue). In fact, the government and Defendants alike frequently argue, post-settlement, that certain relators are not entitled to a relator's share or attorneys' fees for various reasons, including the jurisdictional limitations at issue here. *See, e.g.*, *Merena*, 205 F.3d at 102; *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1045 (6th Cir. 1994).

     5.     Finally, Relators' position also fails from a practical standpoint. One problem is that it posits that by entering into the Settlement Agreement, Defendants waived their right to challenge whether Relators' entitlement to fees were proper under the statute. But Defendants never had a chance to file a motion challenging Relators on this basis because the case was under seal and Defendants were never served with the Relators' Complaint (and still have not been served to this day). At the time that the case was unsealed, the United States intervened and had the *qui tam* cases dismissed with prejudice. There was no need for Defendants to move to dismiss and raise first-to-file challenges to Relators since each of the cases was already being dismissed with prejudice. There can be no waiver when these fee proceedings are Defendants'

18

first opportunity to question whether Relators can satisfy the first-to-file and public disclosure rules.

In addition, the approach advocated for by Relators here would make it virtually impossible for the United States to settle a multi-relator FCA case. According to Relators' theory, before any settlement can take place the Defendants should litigate the first-to-file issues with the various relators in order to determine who is entitled to the attorneys' fees. In a large investigation like this one where numerous relators come out of the woodwork seeking a possible payday, the first-to-file issues could take months or even years to resolve in the courts. Relators would have the United States and defendants place their settlements on hold while the first-to-file issues are worked out in the courts. But this is having the tail wag the dog. The purpose of the FCA is for the United States to receive recompense for fraud against the government. The resolution and recovery of the United States should not be delayed for months or even years while subsidiary issues such as fees are worked out. A much more logical approach is the one taken by the parties in the Settlement Agreement before this Court: the United States and Defendants settled the substantive FCA claims relating to national ED admissions and Laredo Medical Center activities with a payment of $97 million, while reserving all challenges and objections to Relators' attorneys' fees motions until afterwards.

IV.    **Relators Are Not "Equitably" Entitled To Attorneys' Fees**

As a last ditch effort, Relators spend a full five pages (tellingly, the longest section of their brief) urging that they should be awarded attorneys' fees because of the "equities of the situation." Joint Br. 15. This claim is entirely without merit.

First and foremost, attorneys' fees are not something that courts have the power to grant on equitable grounds. It is a fundamental principle of litigation in the U.S. courts—the

19

"American Rule," says the Supreme Court—that a party shall not pay his opponent's attorneys' fees "*absent explicit statutory authority*." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (internal quotations omitted) (emphasis added); *see, e.g.*, *Tiedel v. Nw. Michigan Coll.*, 865 F.2d 88, 92 (6th Cir. 1988) ("For more than a century, the general rule in federal courts has been the 'American rule' that, 'absent express statutory language or an enforceable contract, litigants pay their own attorneys' fees.') (citation omitted); *Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994) ("Absent statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorneys' fees."). Relators cannot recover attorneys' fees if the FCA does not authorize it. Here, because of the first-to-file rule, the FCA does not. Absent such statutory authority, the American Rule prohibits an award of attorneys' fees based on the equities.

Moreover, even if this Court could award attorneys' fees in the absence of statutory authority—and hundreds of years of American jurisprudence tells us that it cannot—Relators argument would fail. Their plaintive cries of unfairness simply do not withstand scrutiny. They say that they were "induced" into signing the Settlement Agreement by Defendants' representations that they would pay their reasonable attorneys' fees, Joint Br. 16, and that they "detrimentally relied," on those supposed promises, Joint Br. 18. But as already discussed in detail above, Relators' feigned surprise at Defendants' refusal to pay their attorneys' fees is betrayed by the plain terms of the Settlement Agreement, *supra* pp. 13-14, flatly contradicted by the negotiating history, *supra* pp. 15-16, and shown to be false by the correspondence between the parties and their own billing records, *supra* p. 16-17.[11]

---

[11] Indeed, concerns about first-to-file and public disclosure disputes are *precisely* what motivated Relators to enter into an agreement to share amongst themselves whatever relator's share award the first-to-file

20

Furthermore, Relators complain about the supposed unfairness that, in exchange for attorneys' fees, they "waived their right" to contest the settlement at a fairness hearing. Joint Br. 16-17. To be sure, the Relators could have objected to the government's proposed settlement on the grounds that it was not "fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). But the question before the court in such a hearing is whether the proposed settlement is "fair, adequate and reasonable" *for the United States*. It is the settlement of the substantive allegations of fraud against the United States about which the FCA is concerned. Relators apparently would have attempted to prevent the United States from recovering the $97 million from Defendants out of pique at not having obtained an attorneys' fees award. Or, to put it another way, Relators appear to be saying that their position on whether a $97 million payment to the United States was a fair resolution of the government's allegations in the national ED claim and Laredo claim actually did not depend on the government's recovery but really depended on whether the Relators personally benefited through an attorneys' fees award. This tells us much about the motivations and priorities of these Relators.[12]

Finally, had Relators objected and sought a fairness hearing, they would have ended up exactly where they are today: with the Court examining whether they satisfy the FCA's first-to-file rule. Only a *proper* relator whose claims are not barred by the first-to-file or public disclosure rule has a right to contest a settlement. *See LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 231 (3rd Cir. 1998) ("As a threshold matter, [relators objecting to

---

relator ultimately received from the government under the FCA. (*See Reuille* Br. (Dkt. 154) at 5-6; *Cook-Reska* Br. (Dkt. 155) at 7-8).

[12]   In addition, as Relators well know, this threat to have contested the settlement at a fairness hearing is a hollow one. The standard of review of a settlement proposed by the United States is highly deferential, with the government needing only to "provide some reasoning behind its decision to settle the case." *United States ex rel. Schweizer v. Océ N. Am.*, 956 F. Supp. 2d 1, 11 (D.D.C. 2013). Relators had no basis to argue that there was not "some reasoning behind" this $97 million settlement given the significant litigation risk faced by the government if these cases had gone forward.

settlement] needed to demonstrate . . . that [their] claims were not barred by 31 U.S.C. § 3730(b)(5)'s prohibition against subsequent actions based on the same facts underlying a pre-existing False Claims Act lawsuit."); *United States ex rel. Lam v. Tenet Healthcare Corp.,* 481 F. Supp. 2d 689, 700 (W.D. Tex. 2007) (noting that relators' right to a hearing "turns on whether or not they are proper Relators who pass the jurisdictional [public disclosure] bar discussed in this Court's earlier order"). Relators Reuille, Cook-Reska, Bryant, and Doghramji thus had no right —and waived no right—to object to the settlement of the national ED claim.

## CONCLUSION

For the reasons stated above, as well as in the accompanying memorandum, this Court should reject Relators' argument that they are entitled to attorneys' fees. The FCA's first-to-file bar is applicable to this case, and none of these Relators qualifies as the first-to-file, 31 U.S.C. § 3730(b)(5). Accordingly, Defendants respectfully ask that the Court dismiss Relators' claims for attorneys' fees, costs, and expenses with prejudice.

Dated:  May 19, 2015

Respectfully submitted,

/s/ William M. Outhier
John Jacobson, BPR #14365
William Outhier, BPR #15609
RILEY WARNOCK & JACOBSON, PLC
1906 West End Ave.
Nashville, TN 37203
Tel: (615) 320-3700
wouthier@rwjplc.com

and


*Of counsel*
Michael L. Waldman
Lee Turner Friedman
Hannah W. Riedel
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Tel: (202) 775-4500
rsauber@robbinsrussell.com
mwaldman@robbinsrussell.com


*Counsel for Defendants*
*(See Exhibit A)*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following via the Court's ECF filing system:

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

Kit Pierson
David Young
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

Reuben A. Guttman
Traci L. Buschner
Grant & Eisenhofer, P.A.
1747 Pennsylvania Avenue, N.W., Suite 875
Washington, D.C. 20006

David Rivera
Assistant U.S. Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203

Mark H. Wildasin
Assistant United States Attorney
110 Ninth Avenue, South, Suite A-961
Nashville, TN 37203

Michael D. Granston
Daniel R. Anderson
Robert McAuliffe
Commercial Litigation Branch
U.S. Department of Justice, Civil Division
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044

on this the 19th day of May, 2015.

/s/ William M. Outhier

24