# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAMES DOGHRAMJI, SHEREE COOK; and RACHEL BRYANT, | : : : : | |
| Plaintiffs, | : | CASE NO. 3:11-00442 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | : : | |
| Defendants. | : | |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, *ex rel.* AMY COOK-RESKA, | : : : : | |
| Plaintiffs, | : | CASE NO. 3:14-02160 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | : : | |
| Defendants. | : | |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* KATHLEEN A. BRYANT, | : : : | |
| Plaintiff, | : | CASE NO. 3:14-02195 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | : : | |
| Defendants. | : | |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* NANCY REUILLE, | : : : | |
| Plaintiff, | : | CASE NO. 3:15-00110 (Sharp, J.) |
| v. | : | |
| COMMUNITY HEALTH SYSTEMS, PROFESSIONAL SERVICES CORP., *et al.*, | : : : | |
| Defendants. | : | |

## RELATORS' JOINT REPLY IN SUPPORT OF MOTION TO AFFIRM THEIR ENTITLEMENT TO ATTORNEYS' FEES, COSTS, AND EXPENSES

In their Memorandum in Opposition to Relators' Joint Motion to Affirm Their Entitlement to Attorneys' Fees, Costs, and Expenses (Dkt. 163) ("*Def. Mem.*"), Defendants fling many arguments against the proverbial wall but substantively ignore Relators' primary contention that this Court lacks jurisdiction to hear Defendants' arguments that Relators are not entitled to recover attorneys' fees as a result of the False Claims Act's first-to-file, 31 U.S.C. § 3730(b)(5), and public disclosure provisions, 31 U.S.C. § 3730(e). In doing so, Defendants place their fate in one substantive basket, arguing that the narrow reference to § 3730(d) in the parties' Settlement Agreement broadly incorporates the first-to-file bar in § 3730(b)(5). Defendants are wrong, and this Court has no jurisdiction to entertain Defendants' first-to-file or public disclosure arguments.[1]

## I. THE COURT IS WITHOUT JURISDICTION TO ADJUDICATE DEFENDANTS' FIRST-TO-FILE CLAIMS

Defendants devote a short four paragraphs to opposing Relators' core contention that the Court's post-settlement, post-dismissal jurisdiction is narrowly limited by the terms of the Settlement Agreement and the various courts' orders. *See* Def. Mem. at 13-14.[2] Defendants do not even mention the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) or the Sixth Circuit's decisions in *Caudill v. North American Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) and *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491 (6th Cir. 2000), all of which are critical to the issues before the Court. *See Relators' Joint Memorandum* (Dkt. 151) ("*Rel. Mem.*") at 5-9. Instead, Defendants seek to redirect the discussion,

---

[1] Nowhere do Defendants assert that the Settlement Agreement's reference to § 3730(d) incorporates § 3730(e)(4)'s public disclosure provision or that the public disclosure provision is otherwise incorporated in the Settlement Agreement. As a result, the Court is clearly without jurisdiction to hear Defendants' arguments relating to that provision.

[2] References to page numbers in documents filed with the Court are to the numbers assigned by the ECF system at the time of filing.

arguing that it is the first-to-file bar that is the jurisdictional issue upon which the Court must focus, Def. Mem at 9, summarily disposing of Relator's arguments by declaring, "This . . . makes no sense," *id.* at 10.

Because the scope of the Court's jurisdiction is defined solely by the terms of the Settlement Agreement and the various courts' orders, it makes complete sense that the Court "lacks jurisdiction to apply the FCA's first-to-file bar but somehow possesses jurisdiction to order attorneys' fees." *Id.* at 10. The Settlement Agreement explicitly reserves Relators' rights to assert "claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)." *Settlement Agreement* ¶ 3 at 7. Absent an express reservation, the first-to-file provision becomes ineffective upon dismissal of an action. *See Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter,* 575 U.S. \_\_\_, 2015 WL 2456621, *8 (May 26, 2015) (under the first-to-file bar, "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed").[3] Because the Settlement Agreement does not reserve Defendants' claims that Relators' recovery of reasonable attorneys' fees, costs, and expenses (collectively, "attorneys' fees" or "fees") are barred by the first-to-file provision, the Court is without jurisdiction to address them. *See Rel. Mem.* at 6-9.

## II. THE SETTLEMENT AGREEMENT DOES NOT RESERVE ANY CHALLENGE ON THE BASIS OF FIRST-TO-FILE

Defendants do not point to any portion of the Settlement Agreement in which they seek to reserve their right to raise jurisdictional challenges under the first-to-file bar. And they cannot,

---

[3] Defendants liberally cited *U.S. ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 183 (4th Cir. 2013), *Def. Mem.* at 5, 8, 13 n.6, but neglected to note that the Supreme Court granted certiorari in the case. 134 S. Ct. 2899 (2014). The Court issued its opinion in the case yesterday.

because no such reference exists. Instead, Defendants claim that their first-to-file arguments are preserved within paragraph 8 of the Settlement Agreement, which reads:

> All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d).

Defendants go so far as to claim that "[a] clearer reservation of Defendants' right to object to Relators' fee petition on any and all grounds is difficult to imagine." *Def. Mem.* at 18. Defendants' hyperbolic assertion ignores that a clearer reservation is contained within the very same document, inserted by the United States. When the Government wished to reserve specific statutory claims, it referenced those claims in the Agreement. For instance, paragraph 7 of the Settlement Agreement clearly states that the Agreement does not "waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relators from sharing in the proceeds of this Agreement." *Settlement Agreement,* ¶ 7 at 9-10. The specific references to §§ 3730(d)(3) and 3730(e) are in stark contrast to the limited reservation regarding Relators' recovery of attorneys' fees, which mentions only § 3730(d) and says nothing about §§ 3730(b)(5) or 3730(e).

When Defendants wished to assert their disagreement and affirmative views in the Settlement Agreement, they knew how to do it. After the United States described how Defendants defrauded the government, *see Settlement Agreement* Recitals C and D, Defendants clearly stated, in Recital F, "CHS expressly denies the allegations of the United States and Relators and denies that it engaged in any wrongful conduct in connection with the Covered Conduct." In contrast, Defendants are silent in response to Recital G, "Relators and their counsel claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs." There is no assertion by Defendants denying

Relators' claims of *entitlement to* attorneys' fees, no mention of jurisdictional defects, no citation to the first-to-file (31 U.S.C. § 3730(b)(5)) or public disclosure (31 U.S.C. § 3730 (e)(4)) provisions, and no other indication that Defendants are contending that Relators are not entitled to attorneys' fees. Reserving the right to challenge or object to the *reasonableness* of attorneys' fees is not the same as reserving the right to challenge or object to the *entitlement to* attorneys' fees. If Defendants intended to challenge or object to Relator's claims of entitlement to fees, they easily could have used the words "entitlement to" in their reservation, just as those words were used in Recital G.

### III. SECTION 3730(d) OF THE FALSE CLAIMS ACT DOES NOT INCORPORATE THE FIRST-TO-FILE BAR

Unless the Settlement Agreement's multiple references to Section 3730(d) double as a reference to the first-to-file bar in § 3730(b)(5), the first-to-file bar cannot — jurisdictionally or textually — defeat Relator's claims to attorneys' fees. Defendants cannot succeed on their argument that the first-to-file bar is engrafted into the Settlement Agreement's references to § 3730(d). In relevant part, the False Claims Act provides:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. . . . Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1). Defendants' argument is simply that even though the Settlement Agreement only mentions § 3730(d), the fact that § 3730(d) references "a person under subsection (b)" is enough to preserve Defendants' right to raise the first-to-file bar under § 3729(b)(5). *See Def. Mem.* at 9. A textual analysis of the Act shows why this argument is misguided.

Section 3730(b) is the provision of the False Claims Act that empowers a private citizen to "bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). The "person" being referenced is the relator, in contrast to the preceding section, 31 U.S.C. § 3730(a), which empowers the "the Attorney General" to "bring a civil action" against violators of the Act. When § 3730(d)(1) states, "If the Government proceeds with an action brought by a person under subsection (b)," it means an action brought by a relator and not the Attorney General.

Defendants want the Court to read the provision as a "person" who meets the Act's statutory bars. *See Def. Mem* at 5-7. But such a reading makes no sense because other provisions of the Act not contained in subsection (b) also can bar a relator's recovery, such as the public disclosure bar (§ 3730(e)(4)), the armed forces exclusion (§ 3730(e)(1)), government official exception (§ 3730(e)(2)), the pending government action provision (§ 3730(e)(3)), and the "planner and initiator" provision (§ 3730(d)(3)).

Subsection (b) references none of these impediments for a relator to obtain a recovery because subsection (d) refers only to successful relators, those for whom "the Government proceeds with an action." If § 3730(d) was intending to refer to a "person" other than a successful relator, it would have specifically identified all the provisions of the Act described above. By referring only to subsection (b), § 3730(d) is merely describing a successful relator, the private individual empowered to file suit on behalf of the United States. As a result, it is clear that the Settlement Agreement's multiple references to § 3730(d) do not incorporate any reference to the first-to-file provision or any other provision that might preclude a relator's recovery.

Relators here are "prevailing parties" as that term is commonly understood. Defendants cite *Miller v. Holtzman*, 575 F. Supp. 2d 2 (D.D.C. 2008) for the proposition that only successful

parties may recover attorneys' fees pursuant to a fee-shifting statute. Although *Miller* was vacated on other grounds, *see Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871 (D.C. Cir. 2010), Relators agree that there is value in the analysis performed by the district court. As Judge Royce Lamberth pointed out, "[t]he FCA does not expressly limit fee recovery to 'prevailing' relators, but its description of which relators may recoup their fees is not exactly a model of clarity." *Miller,* 575 F. Supp. 2d at 6. Interpreting the language of 3730(d), Judge Lamberth observed:

> Happily, here, Congress left an additional, unambiguous clue to its intent in drafting the FCA attorneys' fees provision. In its report accompanying the 1986 amendments, the Senate Judiciary Committee characterized the FCA's fee-shifting scheme as applying to "prevailing qui tam relators." S.Rep. No. 99-345, at 29 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5294 (emphasis added). As explained above, the qualifier "prevailing" appears in numerous other federal fee-shifting provisions, and its meaning is well-established.

*Id*. at 7. The *Miller* court explained that to qualify as a prevailing party, a plaintiff "[should] receive at least some relief on the merits of his claim." *Id*. at 8, *citing Hewitt v. Helms*, 482 U.S. 755, 760 (1987), overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). The Supreme Court's definition of relief in *Helms* includes "relief without benefit of a formal judgment – for example, thorough a consent decree or settlement." 482 U.S at 760; *see also Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("[t]he fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees"). Having obtained a recovery for the United States and themselves through settlement, Relators "prevailed" in their *qui tam* cases, are "person[s] under subsection (b)," and entitled to recover their statutory attorneys' fees pursuant to § 3730(d) and the terms of the Settlement Agreement.

## IV. THE PARTIES' SETTLEMENT DISCUSSIONS ARE PRIVILEGED BUT SUBSTANTIVELY SUPPORT RELATORS' POSITION

Despite maintaining that the language of the Settlement Agreement is clear and unambiguous,[4] Defendants violate the parol evidence rule and settlement privilege to argue that the parties' settlement discussions support their interpretation of the Settlement Agreement. Nothing could be further from the truth.

As an initial matter, the Court should refuse to consider extraneous materials relating to the parties' settlement discussions. It is "well settled in Tennessee that where the terms of an agreement are unambiguous, the parol evidence rule bars extraneous evidence used 'to alter, vary, or qualify the plain meaning of an unambiguous written contract.'" *Shoney's N. Am., LLC v. Smith & Thaxton, Inc.*, 2014 WL 7369987, *9 (M.D. Tenn. Dec. 29, 2014) (Sharp, J.), quoting *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.,* 160 S.W.3d 521, 525 (Tenn. 2005); *see also Lewis v. Labor Ready Mid-Atl., Inc.*, 2009 WL 497692, *5 (M.D. Tenn. 2009) (Campbell, J.) ("Since courts should not look beyond a written contract when its terms are clear, the parol evidence rule provides that contracting parties cannot use extraneous evidence to alter, vary, or qualify the meaning of an unambiguous written contract."), quoting *First Tenn. Ban Nat'l Ass'n v. Bad Toys, Inc.*, 159 S.W.3d 557, 563 (Tenn. Ct. App. 2004).

Moreover, the Sixth Circuit has adopted a broad "settlement privilege" that prevents the admission of settlement communications into evidence. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 981 (6th Cir. 2003) ("The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made

---

[4] Defendants repeatedly assert that the language of the Settlement Agreement is clear. *E.g.*, *Def. Mem.* at 6 ("[t]he language of the Settlement Agreement is crystal clear"); *id.* at 6 ("Lest there be any doubt about the Settlement Agreement's plain meaning (and there is none) . . . ."); *id.* at 19 (paragraph 8 of the Settlement agreement contains "clear language").

therein, leads us to conclude that a settlement privilege should exist, and that the district court did not abuse its discretion in refusing to allow discovery"). The Court should apply the parol evidence rule and settlement privilege and disregard all references to the parties' settlement negotiations.

Should the Court, however, wish to consider the parol evidence presented by the Defendants, it will find that the facts do not support Defendants' contentions. Defendants make much of the fact that they changed certain language proposed by Relators from this:

> In exchange for . . . Relators' [] obligations contained in this Agreement, CHS agrees to pay to Relators their reasonable expenses, attorneys' fees and costs. Any disputes between CHS and any Relator regarding the reasonableness of that Relator's request for expenses, attorneys' fees and costs shall be brought in the United States District Court in which that Relator's action is pending.

to this:

> All Parties agree that nothing in this Paragraph or this Agreement shall be construed in any way to release, waive or otherwise affect the ability of CHS to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d).

*Def. Mem.* at 19-20. Defendants' alternate language simply inserted the relevant statutory reference relating to the reasonableness of relators' attorneys' fees. Because the reference was substantively identical to the original language presented, Relators had no reason to oppose it.[5] Although Defendants claim they "emphatically rejected" the initial proposal, there was nothing emphatic about their effort or indicative of their current view that they added their first-to-file objections to the Agreement.

---

[5] The only substantive change in the two provisions is the removal of language that requires "[a]ny disputes between CHS and any Relator regarding the reasonableness of that Relator's" fees to be "in the United States District Court in which that Relator's action is pending." That concept, however, is captured in paragraph 18 of the final Settlement Agreement ("The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee, Nashville Division, except that this choice-of-forum clause shall not govern any disputes between CHS and any particular relator arising from that relator's request for attorneys' fees pursuant to 31 U.S.C. § 3730(d)").

In addition, the timing of the settlement discussions highlighted by Defendants undermines Defendants' claims. The changes occurred in drafts exchanged on June 4 and June 9, 2014. *Def. Mem.* at 19. The fact that weeks later (on June 25, 2014, *id.* at 20) Defendants wrote to some Relators' counsel indicating that a first-to-file challenge was possible is of no moment. Defendants chose not to revise the Settlement Agreement to incorporate their first-to-file claims.[6]

The language of the Settlement Agreement is clear and unambiguous and does not incorporate the first-to-file provision. Evidence of the parties' settlement negotiations is not only consistent with this fact, but its use constitutes impermissible parol evidence that violates the settlement privilege.[7]

## V. DEFENDANTS MUST BEAR THE CONSEQUENCES OF THEIR STRATEGIC CHOICES AND THEIR ARGUMENTS REGARDING POLICIES UNDERLYING THE ACT AND PRACTICAL CONSIDERATIONS ARE SPECIOUS

Throughout their response brief, Defendants act as if no settlement occurred. As with most of the cases they cite, their arguments aptly describe what *could* occur during the litigation of a False Claims Act case, but ignore the fact that the parties' settlement altered that landscape and

---

[6] In hindsight, it is clear that Defendants' highly-paid, well-educated attorneys were being intentionally circumspect about Defendants' intentions in the Settlement Agreement because they feared that Relators would refuse to participate if their now-identified intentions had been fully revealed. The Court should reject Defendants' efforts to obtain all the benefits of the Settlement Agreement without providing any consideration in return.

[7] There is good reason to exclude evidence of the parties' settlement discussions. For instance, Defendants have repeatedly asserted that only one relator can recover attorneys' fees. *E.g., Def. Mem.* at 6 ("Under the first-to-file bar, at most one relator — and here, none of these Relators — satisfies this statutory requirement"). But Defendants' contention is belied by their behavior, having previously offered $3,000,000 to settle all attorneys' fees claims in all seven *qui tam* cases, and having paid money to Thomas Mason, the sixth-filed relator, to settle his claims for attorneys' fees, as well as the attorneys' fees for Plantz's lawyers, Goldberg Kohn, in working for Reuille as well as Plantz. If settlement discussions are relevant, then Defendants' behavior in offering to pay fees for all Relators and then paying Relator Mason's fees and Goldberg Kohn's portion of Relator Reuille's fees clearly undermines their positions before this Court.

the jurisdiction possessed by this Court.[8] While pre-settlement relators would be entitled to litigate issues relating to the "fairness, adequacy and reasonableness" of a proposed settlement, post-settlement relators may not raise those issues. Likewise, prior to settlement defendants or the government can argue that a relator's complaint does not satisfy Rule 9(b). After settlement neither defendants nor the government may do so:

> If a defendant challenges the sufficiency of a complaint's allegations at the outset of a case, a plaintiff still has the opportunity to cure the deficiency. In contrast, section 3730(d) only comes into play at the conclusion of a case, after the case has already proceeded to a judgment or settlement. If the government is allowed to contend at the conclusion of a case that a relator's initial allegations were insufficient, even though the government implicitly acknowledged the legal sufficiency of the pleadings by choosing to intervene, the relator no longer has the opportunity to cure the deficiency. We find nothing in the FCA's statutory text to support this type of *post hoc* use of Rule 9(b) to deny a relator a share of the settlement proceeds in an action in which the government intervenes.

*U.S. ex rel. Roberts v. Accenture LLP*, 707 F.3d 1011, 1017-18 (8th Cir. 2013). While *Roberts* referred to the government's use of 9(b) after settlement, the same reasoning holds where, as here, Defendants accept the benefit of releases and dismissals with prejudice, then seek to avoid paying attorneys' fees by raising 9(b).

So it is with the first-to-file bar. Yesterday, in *Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter,* 575 U.S. ___, 2015 WL 2456621, *9 (May 26, 2015), the Supreme Court held "that a *qui tam* suit under the FCA ceases to be 'pending' once it is dismissed," rendering the first-to-

---

[8] For instance, Defendants cite to a factually-inapposite case where lawyers for a jurisdictionally-dismissed party sought to recover their attorneys' fees and the court reminded them that "a lawyer must represent his client's interest, not his own." *Def. Mem*. at 10 n.4 (citing *Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 449, 453 (5th Cir. 1995)). They also rely, without disclosure, on a case that wasvacated on appeal. *Miller v. Holzmann*, 575 F. Supp. 2d 2 (D.D.C. 2008), *vacated on other grounds, United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871 (D.C. Cir. 2010).

file bar inoperative.[9] Because the Settlement Agreement and the Court's orders reserved only the reasonableness of Relators' attorneys' fees under § 3730(d) (which does not incorporate subsection (b)(5)), Defendants may not raise the first-to-file bar as a defense to Relators' fees and the Court is without jurisdiction to entertain such a claim.

Defendants do not cite a single case to the contrary. For instance, Defendants' reliance on the unreported case *U.S. ex rel. Saidiani v. Nextcare, Inc.*, 2013 WL 431828 (W.D.N.C. Feb. 4, 2013) is tenuous and unpersuasive.[10] There is a reason that this case is unpublished. Although the district court expressly notes that the relator "is not arguing that he should recover any fees under the federal FCA," *id.* at *3 n.3, the court nevertheless proceeds to espouse its views about the federal FCA, rendering virtually the entire opinion as dicta. Moreover, the opinion does not reveal the court's jurisdictional basis for its actions. In *Nextcare*, second-filed Relator Saidiani sought to recover attorneys' fees only under various state statutes, *id.* at *3, but the court's opinion does not address a single state statute, making it impossible to understand the court's reasoning. As a result, this case is neither binding nor persuasive.

Other cases cited by Defendants are no more on point. In *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 509-10 (6th Cir. 2009), the government entered into a settlement agreement with the defendants and one relator that conditioned settlement on the dismissal of a second relator's *qui tam* complaint. The government then filed a motion to dismiss the second relator's complaint, arguing that it was barred by the first-to-file and the public disclosure provisions. *Id.* Contrary to the situation presented here, the government was able to challenge the second relator's

---

[9] The first-to-file bar provides, "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. 3730(b)(5).

[10] Defendants cite *Nextcare* in their Joint Response, *Def. Mem.* at 10, 16 n.8, but rely on it repeatedly throughout their Supplemental Response (Dkt. 165).

complaint because the second case was still pending and defendants had not sought the benefit of a dismissal with prejudice of the second relator's complaint.

Defendants' reliance on *U.S. ex rel. Ryan v. Endo Pharm., Inc.*, 27 F. Supp. 3d 615 (E.D. Pa. 2014) is similarly flawed. In that case, the government, defendant and three relators settled pending *qui tam* cases. *Id*. at 618-21. Unlike the facts in this case, the Court in *Ryan* possessed jurisdiction to address first-to-file considerations because "[s]pecifically reserved at the time of the settlement was the issue of the Relators' entitlement to a share of the federal proceeds of the FCA settlement." *Id.* at 621.

*Poteet* and *Ryan* are perfect examples of the avenues available to Defendants when considering how or whether to settle the *qui tam* claims pending against them. Defendants are disingenuous in their assertions that they never had a chance to assert their first-to-file argument (*Def. Mem.* at 22), that Relators "would make it virtually impossible for the United States to settle a multi-relator FCA case" (*id.* at 23), or that Relators would have somehow prevented the United States from recovering $97 million from Defendants (*id.* at 25). Defendants had choices. They could have litigated with Relators and the United States. They could have agreed to settle only one suit with one Relator and continued to litigate the others, asserting their first-to-file arguments at that time. They could have included a provision in the Settlement Agreement that specified they would only pay attorneys' fees for one relator or they could have negotiated a carve-out in the Settlement Agreement that specifically referenced the first-to-file bar, § 3730(b)(5), just as the government did with respect to §§ 3730(d)(3) and 3730(e). *See Settlement Agreement*, ¶ 7 at 9-10.

Defendants did none of these things. They did none of these things because they wanted to reap the settlement benefits of dismissing with prejudice all *qui tam* claims in all seven of Relators' cases — even those claims not included as Covered Conduct in the parties' Settlement Agreement.

They admit "[t]here was no need for Defendants to move to dismiss and raise first-to-file challenges to Relators since each of the cases was already being dismissed with prejudice," voluntarily by the Relators and the government. *Id* at 22. Defendants required and received dismissal with prejudice of all *qui tam* claims in all seven of Relators' cases, not just those covered by the Settlement Agreement. *See U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996) (through the relators, the United States prevailed on non-intervened claim that relators dismissed as part of settlement).[11] There is no such thing as a free lunch and there is no such thing as a valid Settlement Agreement that fails to provide consideration to the settling parties. In this instance, the payment of reasonable attorneys' fees can be viewed as consideration for all of the claims the Relators agreed to give up in the Settlement Agreement.

The Court should reject Defendants' tactics and follow the example Judge Easterbrook set in *Accudyne*, 97 F.3d at 938, where defendant attempted post-settlement to attack the attorneys' fees sought by relators. In that case, six relators asserted *qui tam* claims against the defendant. The United States intervened in one claim but left the relators to pursue a second claim on their own. A global settlement ensued and the resulting agreement included a provision in which defendant Accudyne "agree[d] to pay Relators' reasonable expenses, attorneys' fees and costs in an amount

---

[11] *See also U.S. ex rel. Rille v. Pricewaterhousecoopers, LLP,* 748 F.3d 818, 824, *reh'g en banc granted, opinion vacated,* 2014 WL 5835459 (8th Cir. 2014) ("In a case such as this, where the government elects to intervene in a relator's action and receives settlement proceeds conditioned upon the dismissal of the relator's action with prejudice, we conclude as a matter of law that the settlement funds constitute "proceeds of the action" under § 3730(d)(1). We find no support in the law for the government's suggestion it did not settle the claims or the action brought by the relators, when the government's receipt of the settlement funds required the relator's claims and the action itself to be dismissed with prejudice"); *U.S. ex rel. Bledsoe v. Comm. Health Sys., Inc.,* 342 F.3d 634, 650 (6th Cir. 2003) ("[T]he government may not settle a relator's claims and seek to avoid paying a relator his or her statutory share to the settlement proceeds by excluding the relator's claims from the terms of the settlement agreement.").

and manner to be determined by the Court in accord with the provisions of 31 U.S.C. § 3730(d)(1), (2)." *Id.*

Accudyne then sought to attack the "reasonableness" of relators' fees, using "the merits as a reason to avoid paying the attorneys' fees it had agreed to pay." *Id.* at 939. The Seventh Circuit soundly rejected Accudyne's arguments:

> This case was settled; Accudyne did not appeal from the judgment on the settlement, and therefore has no business invoking the defenses it could have raised had the case been litigated to judgment. Accudyne could have bargained for a settlement limited to Count I. . . . Accudyne could have paid $12 million to settle Count I while reserving its right to litigate (and avoid attorneys' fees on) Count II. This strategy would have entailed taking the risk that the relators would win and recover something on top of the $12 million (plus attorneys' fees beyond those incurred to the date of settlement). But Accudyne didn't take the risk of loss and therefore could not hope for the thrill of victory. It settled both counts for a flat payment, which was not allocated between claims. What is more, Accudyne promised as part of the settlement to pay the relators' reasonable fees and costs. The relators could have released their claim to fees, *Evans v. Jeff D.,* 475 U.S. 717, 106 S. Ct. 1531, 89 L.Ed.2d 747 (1986); the settlement could have been silent on fees, leaving relators to look to their statutory entitlement; instead Accudyne affirmatively promised to pay reasonable costs and fees. This poses the question whether the bill is reasonable, but not the question whether the United States (through the relators) "prevailed" on Count II. Plainly it did, to the tune of some unknowable portion of $12 million. Accudyne cannot demand the benefits of a favorable outcome in litigation without taking the risk of loss. It would not only undermine parties' incentives to settle but also squander judicial resources to permit a litigant to weasel out of a bargain as Accudyne is trying to do.

*Id.* at 939-40 (footnote omitted).

The *Accudyne* decision is instructive here. Defendants wanted complete peace, including full releases from each Relator and dismissal *with prejudice* of all *qui tam* claims, including unsettled claims, in all seven cases. Relators each released and dismissed other, viable claims and waived their rights to fairness hearings,[12] the government agreed to intervene in each *qui tam*

---

[12] Defendants' statement that the "question before the court in such a hearing is whether the proposed settlement is "fair, adequate and reasonable" *for the United States, Def. Mem.* at 25 (emphasis in original), ignores the plain language of the statute which reads, "fair, adequate, and reasonable *under all the circumstances*." 31 U.S.C. § 3730(c)(2)(B)(emphasis added). "Under all

action, and the Settlement Agreement permitted all Relators to recover reasonable attorneys' fees pursuant to § 3730(d). Absent the recovery of attorneys' fees, Relators had no reason to participate in the Settlement Agreement because they would have been giving releases and dismissing all of the *qui tam* claims in their cases with prejudice but without consideration.[13]

## VI. CONCLUSION

The Court's post-settlement, post-dismissal jurisdiction is narrowly limited by the terms of the Settlement Agreement and the various courts' orders and prevents it from adjudicating Defendants' claims under the first-to-file or public disclosure bars. The FCA requires payment of reasonable attorneys' fees under the circumstances at bar, as does the parties' negotiated Settlement Agreement. Relators respectfully request that the Court grant their Motion and affirm

---

circumstances" is certainly broad enough to encompass the Relators' participation in the settlement. The Sixth Circuit disapproves of *qui tam* settlements that seek to prejudice relators' rights. *See Bledsoe,* 342 F.3d at 634, 650; and *Rille,* 748 F.3d at 824, cited *supra* in footnote 10.

[13] The Relators' sharing agreement permitted each relator to receive a designated share of the case proceeds regardless of whether or not their case was dismissed or settled. And, contrary to Defendants' spurious assertion that Relators "undertook this work [assisting the government] only after they had guaranteed themselves millions by reaching a private agreement to share the relator's share payday," *Def. Mem.* at 15-16, the result of the litigation was unknown when the initial four Relators entered into a sharing agreement in 2011, years before a settlement was even a possibility. When in their interest to do so, Defendants recognize this fact, noting "the significant litigation risk faced by the government" even when the Settlement Agreement was being finalized. *Def. Mem.* at 25 n.12.

Relators' claims for entitlement to attorneys' fees.

Respectfully submitted,

/s/ Mitchell R. Kreindler
Mitchell R. Kreindler (Admitted Pro Hac Vice)
mkreindler@blowthewhistle.com
Sharon M. Gurak (Admitted Pro Hac Vice)
sgurak@blowthewhistle.com
KREINDLER & ASSOCIATES
9219 Katy Freeway, Suite 206
Houston, TX 77024-1415
(713) 647-8888

Stephen G. Young
syoung@rrylaw.com
ROBINSON, REAGAN & YOUNG, P.C.
446 James Robertson Parkway, Suite 200
Nashville, TN 37219
(615) 726-0900

**ATTORNEYS FOR RELATOR KATHLEEN A BRYANT**

/s/ Jan Soifer
Jan Soifer (Admitted Pro Hac Vice)
jsoifer@oconnellsoifer.com
Texas Bar No. 18824530
Patrick J. O'Connell (Admitted Pro Hac Vice)
poconnell@oconnellsoifer.com
Texas Bar No. 15179900
O'CONNELL & SOIFER LLP
98 San Jacinto Blvd., Suite 540
Austin, Texas 78701
Telephone: (512) 583-0451

Matthew K. Organ (Admitted Pro Hac Vice)
matthew.organ@goldbergkohn.com
Illinois Bar No. 06278172
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

Michael Hamilton
mhamilton@provostumphrey.com
Tennessee Bar No. 010720
PROVOST UMPHREY LAW FIRM, LLP
4205 Hillsboro Road, Suite 303
Nashville, Tennessee 37215
Telephone: (615) 297-1932

**ATTORNEYS FOR RELATOR NANCY REUILLE**

/s/ Jan Soifer
Jan Soifer (Admitted Pro Hac Vice)
jsoifer@oconnellsoifer.com
Texas Bar No. 18824530
Patrick J. O'Connell (Admitted Pro Hac Vice)
poconnell@oconnellsoifer.com
Texas Bar No. 15179900
O'CONNELL & SOIFER LLP
98 San Jacinto Blvd., Suite 540
Austin, Texas 78701
Telephone: (512) 583-0451

J. Hoke Peacock III (Admitted Pro Hac Vice)
tpeacock@susmangodfrey.com
Texas Bar No. 15673980
Katherine Kunz (Admitted Pro Hac Vice)
kkunz@susmangodfrey.com
Texas Bar No. 24083337
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366

Michael Hamilton
mhamilton@provostumphrey.com
Tennessee Bar No. 010720
PROVOST UMPHREY LAW FIRM, LLP
4205 Hillsboro Road, Suite 303
Nashville, Tennessee 37215
Telephone: (615) 297-1932

**ATTORNEYS FOR RELATOR AMY COOK-RESKA**

        /s/ David W. Garrison
        DAVID W. GARRISON (No. 24968)
        SCOTT P. TIFT (No. 27592)
        BARRETT JOHNSTON MARTIN & GARRISON, LLC
        Bank of America Plaza
        414 Union Street, Suite 900
        Nashville, TN 37219
        Telephone: (615) 244-2202
        dgarrison@barrettjohnston.com
        stift@barrettjohnston.com

        Kit A. Pierson
        David A. Young
        COHEN MILSTEIN SELLERS &TOLL, PLLC
        1100 New York Avenue, NW
        Suite 500 West
        Washington, DC 20005
        Telephone: (202) 408-4600
        kpierson@cohenmilstein.com
        dyoung@cohenmilstein.com

        **ATTORNEYS FOR RELATORS JAMES DOGHRAMJI, SHEREE COOK, AND RACHEL BRYANT**

## CERTIFICATE OF SERVICE

    I certify that on May 27, 2015, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the Procedures for Electronic Filing of the U.S. District Courts of the Middle District of Tennessee.

        /s/ Mitch Kreindler
        Mitchell R. Kreindler