# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JAMES DOGHRAMJI, SHEREE COOK; and RACHEL BRYANT, | |
| Plaintiffs, | CASE NO. 3:11-00442 (Sharp, J.) |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | |
| Defendants. | |

***

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, *ex rel.* AMY COOK-RESKA, | |
| Plaintiffs, | CASE NO. 3:14-02160 (Sharp, J.) |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | |
| Defendants. | |

***

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* KATHLEEN A. BRYANT, | |
| Plaintiffs, | |
| v. | CASE NO. 3:14-02195 (Sharp, J.) |
| COMMUNITY HEALTH SYSTEMS, INC. *et al.*, | |
| Defendants. | |

***

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* NANCY REUILLE, | |
| Plaintiffs, | |
| v. | CASE NO. 3:15-00110 (Sharp, J.) |
| COMMUNITY HEALTH SYSTEMS, PROFESSIONAL SERVICES CORP., *et al.*, | |
| Defendants. | |

***

## DEFENDANTS' SURREPLY IN OPPOSITION TO RELATORS' JOINT MOTION TO AFFIRM THEIR ENTITLEMENT TO ATTORNEYS' FEES, COSTS, AND EXPENSES

Defendants Community Health Systems, Inc. ("CHSI") and the CHSI-affiliated hospital companies named in the complaints[1] (collectively, "Defendants") respectfully submit this surreply in response to Relators' Joint Reply In Support Of Motion to Affirm Their Entitlement to Attorneys' Fees, Costs, and Expenses ("Joint Reply").[2] Dkt. 167.[3]

## INTRODUCTION

The broad reservation of rights in the Settlement Agreement is perfectly clear: "*nothing in this Paragraph or this Agreement shall be construed in any way to release, waive, or otherwise affect* the ability of CHS to *challenge or object to* Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. §3730(d)." Settlement Agreement ¶ 8 (emphasis added). That deliberately broad language unambiguously preserves every argument Defendants are making in this Court in challenging or objecting to Relators' fee claims. In the face of this clear language, however, Relators repeatedly argue that the Agreement should – indeed, must – be construed to "affect" Defendants' "ability … to challenge or object to" their fee claims in multiple ways, including by foreclosing Defendants' reliance on either the first-to-file doctrine or the public disclosure bar. Indeed, Relators go so far as to suggest that this crucial language in the Settlement Agreement actually means the exact opposite of what it says, arguing that it somehow means that "CHS agrees to pay Relators' reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. §3730(d)." *See, e.g.*, Joint Reply 9, 15. That argument, which both this Court and a federal district court in Texas have already rejected (see Defs. Mem. Opp. 2, 12-13), defies the most basic principles of interpretation. And it brazenly ignores the undisputed fact

---

[1] A full listing of the Defendants joining this surreply is set out at Exhibit A to Defendants' Memorandum in Opposition to Relators' Joint Motion to Affirm Their Entitlement to Attorneys' Fees, Costs, and Expenses ("Defs. Mem. Opp."). Dkt. 163.

[2] *See* Dkt. 157 (granting Defendants leave to file surreplies).

[3] Unless otherwise indicated, docket citations are to *United States ex rel. Doghramji, et al. v. Community Health Sys., Inc., et al.*, No. 3:11-cv-00442 ("*Doghramji*").

1

that Defendants, during settlement discussions that (contrary to Relators' suggestion) are directly relevant here and that this Court is perfectly free to consider (see pages 7-8 & note 10, *infra*), *specifically rejected* the exact language that Relators want this Court to read into the Settlement Agreement. Defs. Mem. Opp. 15-16.

Moreover, Relators' professed outrage at Defendants' refusal to pay the attorneys' fees, costs, and expenses sought by multiple relators for the same claim ignores reality. As Defendants previously demonstrated, Relators were well aware that Defendants were challenging their entitlement to recover attorneys' fees long before the Settlement Agreement was executed. Furthermore, recognizing their post-settlement obligations under the False Claims Act, Defendants have already paid a significant sum in attorneys' fees to the two relators who satisfy the Act's requirements for such an award (Plantz for that national ED claim; Cook-Reska for the Laredo claims).[4] It is Relators who are trying to create exceptions to the statutory prerequisites for an attorneys' fees award where none exist. But the first-to-file and public-disclosure bars apply to, and foreclose, Relators' claims for attorneys' fees, costs, and expenses under the False Claims Act, as do Relators' manifest failure to receive a relator's share from the Government – full stop. *United States ex rel. Gadbois v. PharmMerica Corp.,* C.A. No. 10-471-ML, Dkt. 53 at 17 (D.R.I. Oct. 3, 2014) ("The prohibition against later filed related actions is 'exception-free.'").

---

[4] Relators' professed outrage is especially dubious in light of the fact that they have already benefitted enormously from their agreement to share the more than $16 million relator's share that Plantz received from the Government, yet they are seeking to further milk Defendants for millions of additional dollars based on thousands of attorney hours of questionable utility.

2

Case 3:11-cv-00442   Document 176   Filed 06/03/15   Page 3 of 15 PageID #: 4511

**ARGUMENT**

**I.      Relators' Jurisdictional Arguments Are Wholly Misplaced[5]**

Relators rely on the Supreme Court's recent decision in *Kellogg, Brown & Root Servs., Inc. v. United States ex. rel. Carter*, 575 U.S. __, 2015 WL 2456621 (May 26, 2015), to argue that the first-to-file bar is inoperative now that Relators' *qui tam* claims have been dismissed pursuant to a Settlement Agreement. Joint Reply 3. That is not what the Supreme Court held. In *Carter*, the Supreme Court addressed when an unresolved – but still pending – *qui tam* complaint is barred by an earlier-filed complaint that either was dismissed prior to the filing of the second complaint, or that is dismissed while the second complaint remains unresolved. The Court held that, once dismissed, the first-filed action ceases to bar the subsequently filed unresolved action. *Id.* at *8-9. The Court did not address how the first-to-file rule relates to unresolved claims for relator's share awards or attorneys' fees when multiple, pending *qui tam* claims are resolved simultaneously through a settlement. Here, Relators' cases were all treated in tandem. They were all pending during the Government's investigation. They were settled in unison. They were all dismissed pursuant to that same settlement. This is not a case where an

---

[5] Defendants did not address the cases cited by Relators regarding post-settlement jurisdiction because, contrary to Relators' assertion, they are anything but "critical" (Joint Reply 2) to the issues before this Court. No one is trying to invoke the Court's jurisdiction to enforce the Settlement Agreement, which is the issue addressed in those cases. *See, e.g. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (addressing scope of ancillary jurisdiction to enforce a settlement agreement). Rather, as explained in Defendants' opposition brief, the issue before the Court is whether Relators can prevail on claims that were *expressly carved out* of the Settlement Agreement (and made *expressly subject to* Defendants' unambiguously broad preservation of their rights to object to or challenge those claims "in any way"), and whether this Court has jurisdiction under the False Claims Act (invoked here by Relators) to award the attorneys' fees they are requesting. Defs. Mem. Opp. 9-10. If the Court lacks jurisdiction to adjudicate Relators' claims for fees (whether because of the first-to-file doctrine, the public-disclosure bar, or as Relators suggest *Kokkonnen*), then Defendants must prevail.

3

earlier-filed action that might have otherwise barred one or more of the Relators' claims was dismissed while those claims were still being investigated or litigated.[6]

## II. The FCA Does Not Entitle All Relators To Attorneys' Fees

Relators have absolutely no response to Defendants' primary argument: that the False Claims Act – by its plain text, history, and underlying purpose – permits only a single Relator (the first to file) to recover a relator's share and attorneys' fees in connection with a single claim. *See* Defs. Mem. Opp. 5-7. Instead, Relators continue to insist that the Settlement Agreement trumps this rule. Joint Reply 6-7. For the reasons previously identified by Defendants, Relators are wrong. *See generally* Defs. Mem. Opp. 12-19.

Unable to argue against the plain meaning of the False Claims Act, Relators latch onto the "prevailing party" standard used to assess when civil rights plaintiffs are entitled to fees under various fee-shifting statutes. Joint Reply 6-7 (citing *Miller v. Holtzman*, 575 F. Supp. 2d 2, 9 (D.D.C. 2008), *reversed on other grounds* 608 F.3d 871 (D.C. Cir. 2010)). There is no doubt that, to recover attorneys' fees under the FCA, a relator must achieve success on his or her claims. But neither *Miller* nor any other case cited by Relators establishes that being a "prevailing party" by virtue of a settlement *suffices* to entitle a relator to attorneys' fees under the FCA. To the contrary, the FCA has unique statutory requirements that must be satisfied before an attorneys' fees award is due, namely that a relator must be the first-to-file the claim, must receive a relator's share from the government, and must not run afoul of the public disclosure bar. *See* Defs. Mem. Opp. 5-7, 10-11; Defs. Supp. Br (Dkt. 165). 8-11, 23-24, 29-30. Even if

---

[6] Even if this Court were to find that *Carter* applies, it does not support Relators' claims that they are *all* entitled to recover their attorneys' fees, costs, and expenses. Under *Carter*, Relators' claims for statutory attorneys' fees arguably are all still "pending" before this Court. Thus, under any circumstances, the first-to-file bar would still need to be applied to at least these four pending actions, and would necessarily preclude the claims of all but one Relator here.

4

Relators could be deemed "prevailing parties" by virtue of the settlement,[7] they fail to meet these other statutory requirements.

### III. The Settlement Agreement Does Not Entitle Relators To Attorneys' Fees

1. Relators wholly ignore that this Court (like the district court in Texas) has *already rejected* Relator's baseless reading of the Settlement Agreement, recognizing that the Settlement Agreement reserved the parties' arguments related to attorneys' fees claims. Defs. Mem. Opp. 2, 12-13. The Settlement Agreement, on its face, preserves Defendants' ability to object on *any and all grounds* to Relators' fee claims brought under 31 U.S.C. § 3730(d). Settlement Agreement ¶ 8. It does not cabin Defendants' arguments to those based only on a specific subsection of the statute. Moreover, the Settlement Agreement refers to § 3730(d) for no other reason than because *that is the provision under which Relators' assert their claims for fees*. Defs. Mem. Opp. 14 (explaining that phrase "under § 3730(d)" modifies "claims" in immediately preceding phrase). Relators refuse to acknowledge this most natural reading of the Settlement Agreement, but instead double down and insist that their contrary interpretation must prevail.

Relators argue that Defendants were obligated to insert into the Settlement Agreement an exhaustive list of the various grounds on which they intended to challenge Relators' claim to attorneys' fees. They base this argument on a separate provision of the Settlement Agreement inserted by the Government that provides that the agreement does not "waive or otherwise affect the ability of the United States to contend that the provisions of the False Claims Act, *including §§ 3730(d)(3) and 3730(e)*, bar Relators from sharing in the proceeds of this Agreement." Joint

---

[7] Even if being a "prevailing party" was the only requirement for an attorneys' fees award under the FCA (which it is not), Relators would not meet that standard solely by virtue of the Settlement Agreement because they did not receive a relator's share of the settlement award. See Defs. Supp. Br. 23-24 (explaining that, rather than authorizing fees for any "prevailing party," Congress more narrowly defined a relators' success by reference to receipt of a qualifying relator's share).

5

Reply 4 (emphasis added). According to Relators, Defendants were required to include "specific references" to §§ 3730(b)(5) and 3730(e), as the Government did, in order to preserve their first-to-file and public disclosure arguments. That argument (like all of the text-based arguments advanced by Relators) ignores a fundamental canon of interpretation: The word "including" delineates general examples, not an exhaustive list. *West v. Gibson*, 527 U.S. 212, 217 (1999) (holding that word "including" in statutory phrase "appropriate remedies, including . . ." "makes clear that the authorization is not limited to the specified remedies there mentioned"). Just as the Government would not have been precluded by this clause from arguing that *other* provisions of the False Claims Act operated to bar Relators from sharing in the proceeds of the Agreement, Defendants cannot be so barred by their decision not to list examples of arguments they might choose to advance to challenge Relators' claims for attorneys' fees.[8]

2. Even if the Settlement Agreement could reasonably be read as preserving Defendants' ability to raise challenges only under section 3730(d) itself (which it cannot), that still would not support Relators' position. As Defendants pointed out in their opening brief, section 3730(d) on its face incorporates section 3730(b), where the first-to-file bar is located. Defs. Mem. Opp. 14. Relators cannot dispute this, so instead they argue (again, ignoring the plain text of the statute) that the reference in section 3730(d) to "subsection (b)" really means to "subsection (b)(1)." Joint Reply 6. But they offer absolutely no support for the assertion that a reference to "subsection (b)" includes only a certain *portion* of subsection (b). They say only that it would make no sense to read this as incorporating the first-to-file rule found in "subsection (b)(5)"

---

[8] Moreover, Relators ignore the fact that the reservation of rights by Defendants in Paragraph 8 of the Settlement Agreement is in several respects cast *more broadly* than the Government's reservation of rights in Paragraph 7. Paragraph 8 includes the broader phrase "release, waive or otherwise affect," as well as the broadening qualifying phrase "in any way," which is missing from Paragraph 7. Paragraph 8 also preserves the Defendants' "ability" to "in any way . . . challenge or object" to Relators' fee claims.

6

because *other* provisions in the Act that could bar a recovery are not expressly mentioned. Joint Reply 6. But Relators ignore that numerous federal courts have held that those provisions too—including the public disclosure bar—are incorporated into section 3730(d) as prerequisites to a relator's ability to recover. *See Federal Recovery Servs., Inc. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995) (relators' attorneys "are not statutorily entitled to attorneys' fees and expenses" because relators' lawsuit is blocked by the public disclosure bar); *Miller*, 575 F. Supp. 2d at 7 (D.D.C. 2008) ("Logically, having erected a jurisdictional bar to these relators' claims, Congress could not have intended them to receive attorneys' fees."); *Cf. United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 107 (3d Cir. 2000) (reversing award of relator's share to relator whose claims were blocked by public disclosure bar).

    3. This Court need not consider the parties' settlement communications to conclude that the Settlement Agreement unambiguously reserves Defendants' rights to raise first-to-file and public disclosure challenges to Relators' claims for attorneys' fees, costs, and expenses.[9] Defendants included the parties' settlement communications, however, because *if* the Court determines that there is any lingering ambiguity as to the meaning of the Settlement Agreement, those communications (which are consistent with the plain meaning of the Agreement) eliminate any such doubt, as they make clear that Defendants expressly refused to include language that could be read as waiving their right to challenge Relators' entitlement to fees. Defs. Mem. Opp. 15-16; Waldman Decl. ¶¶ 5-6. *See e.g.*, *Lemley v. Ford Motor Co.*, 36 F.3d 1097 (Table), *4 (6th Cir. 1994) (remanding for submission of "parol evidence relating to the intent of the parties"

---

[9] Relators assert that Defendants' decision to settle the attorneys' fees claims of Plantz and Mason somehow indicates that Defendants believe Relators are entitled to recover their fees. Joint Reply 10 n 7. That inference is legally and factually incorrect. Defendants settled with Goldberg Kohn and Relator Plantz because Plantz was the first relator to file a complaint alleging the national ED claim and was awarded the relator's share by the United States. Defendants settled with Relator Mason for a modest cost-of-litigation amount because it was economically rational to do so.

7

so that factfinder could "interpret the ambiguous settlement agreement in the light of relevant and admissible parol evidence"); *Carson Optical, Inc. v. Hawk Importers, Inc.*, 2013 WL 5740452, at *8 (E.D.N.Y. Oct. 10, 2013) ("Even in the face of a written settlement agreement that proves ambiguous, 'parol evidence is admissible to help explain the ambiguity.'") (quoting *Hanley v. Lark Deli Corp.*, 2 F. Supp. 2d 534, 537 (S.D.N.Y. 1998) a*ff'd sub nom. Hanley v. Deluxe Caterers of Shelter Rock, Inc.*, 175 F.3d 1007 (2d Cir. 1999)). Relators' efforts to explain away this powerful evidence are wholly unconvincing.[10]

In any event, regardless of whether these communications bear on the meaning of the Settlement Agreement itself, they show the utter insincerity of Relators' professed surprise over this fee dispute and Defendants' arguments. Relators assert that Defendants were "intentionally circumspect" about their intentions during settlement negotiations, Joint Reply 10 n 6, but Relators make this accusation without attempting to address – let alone explain what was "circumspect" about – the June 24, 2014 email to counsel for Reuille, Cook-Reska, and Plantz in which counsel for Defendants *expressly* stated Defendants' intention to raise first-to-file arguments. *See* Defs. Mem. Opp. 16; Waldman Decl. Ex. 3. Relators' failure to acknowledge what truly transpired during settlement negotiations is disappointing, if predictable.[11]

---

[10] Relators' reliance on the "settlement privilege" established by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 981 (6th Cir. 2003) also is misplaced. That case addressed the *discoverability* of settlement communications by third-parties, and whether a plaintiff in another action pending against the defendant could admit communications the defendant made during settlement negotiations to show liability at trial. It did not speak to when a court can consider communications between the parties to a settlement agreement when interpreting the meaning of that very agreement. *Collier v. Cobra Power Corp.*, No. 3:14-1759, 2015 WL 1600774, at *3 (M.D. Tenn. Apr. 8, 2015) (deeming issue of admissibility of settlement negotiations to prove terms of settlement agreement "completely different" than the discoverability issue addressed in *Goodyear*).

[11] Relators also refuse to acknowledge in their reply brief that their counsel had been researching the first-to-file doctrine for years, well aware of the serious obstacle it posed to their claims for attorneys' fees. Defs. Mem. Opp. 17 & Ex. B.

8

4. Relators continue to contend that Defendants have waited too long to raise their arguments, maintaining that Defendants are "disingenuous" to point out that there was no prior opportunity to litigate the first-to-file and public disclosures issues. Joint Reply 13. Contrary to Relators' suggestions, however, the service-of-process provisions of the federal rules are not mere formalities: they trigger the start of the judicial process. This case never moved beyond the posture of a Government investigation, until it settled. The cases were never unsealed and the complaints never served on Defendants. There is simply no merit to Relators' suggestion that Defendants should have filed an answer and a motion to dismiss with respect to a complaint that was never served upon them. Relators' submission that Defendants' obligation to raise these defenses was somehow trigged by their informal receipt of copies (and redacted versions) of some of Relators' complaint has no basis in law. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004) ("Actual knowledge of a lawsuit does not substitute for proper service under Fed. R. Civ. P. 4.").

## IV. Relators' Analysis Of The Case Law Ignores The Plain Terms Of The Settlement Agreement

Relators quote extensively—both in their Joint Reply and again in many of their supplemental reply briefs—the Seventh Circuit's decision in *United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996). Their attempts to analogize the instant case to *Accudyne* are wholly misplaced. In *Accudyne*, six relators filed a single *qui tam* action that asserted two FCA claims. *Id.* at 938. The Government intervened on one claim but not the other, but Accudyne settled both claims together. *Id.* The settlement agreement contained the very language that Relators desperately wish they had here (but was rejected by Defendants during the settlement negotiations): Accudyne "agree[d] to pay Relators' reasonable expenses, attorneys' fees and costs in an amount and manner to be determined by the Court in accord with

9

the provisions of 31 U.S.C. § 3730(d)(1), (2)." *Id.*; *see also* Defs. Mem. Opp. 15-16. Accudyne tried to work around that provision by arguing that, because Relators *would have lost* on their second claim, the only "reasonable" attorneys' fees would be nominal. The Court rightly held that Accudyne could not "offer[] its view of the merits as a reason to avoid paying the attorneys' fees it has agreed to pay." 97 F.3d at 939.

Defendants do not dispute that where – *unlike here* – a defendant "affirmatively promises" in a settlement agreement to pay relators' reasonable attorneys' fees, the defendant cannot then go back on that promise by invoking merits-based arguments to argue that the "reasonable" fees are effectively nothing. *Id.* at 930. But no matter how many times Relators insist that Defendants have promised to pay their attorneys' fees, wishing it doesn't make it so when the Settlement Agreement expressly provides otherwise. Here, Defendants made no such promises; indeed, by contrast, Defendants made clear in the Settlement Agreement that Relators' attorneys' fees claims (and any and all objections thereto) were *not* being resolved. This case is the opposite of *Accudyne*.

Relators' attempts to distinguish the cases relied on by Defendants likewise fail. For example, Relators argue that this Court should not consider the decision in *United States ex rel. Saidiani v. Nextcare, Inc.*, 2013 WL 431828 (W.D.N.C. Feb. 4, 2013) because the court there relied on state FCA statutes, not the federal FCA. *See* Joint R. 12. That argument is thin, to say the least. The basis of the district court's reasoning in *Nextcare* was: "*Like the federal FCA*, the state FCA statutes at issue also tie the entitlement to fees and costs to the 'person' receiving the Relator's Share." *Id.* at *2 (emphasis added). The second-to-file relator in *Nextcare* received no relator's share from the Government, but argued – just as all the Relators persist in arguing here – that he was entitled to fees because he received a portion of the relator's share award indirectly

10

through a private sharing agreement with the proper first-to-file relator. The Court flatly rejected that argument. So should this Court.

Equally unavailing is Relators' attempt to distinguish *United States ex rel. Ryan v. Endo Pharm., Inc.*, 27 F. Supp. 3d 615 (E.D. Pa. 2014). *See* Joint Reply 13. In that case, a settlement agreement resolved *qui tam* complaints brought by three relators. The agreement reserved the issue of the relators' entitlement to a relator's share of the settlement, *id.* at 621 – just as the Settlement Agreement here reserves the issue of Relators' claims for attorneys' fees. The *Ryan* court conducted a first-to-file and public disclosure analysis and rejected some of the very arguments raised by Relators here – including that the court should not consider arguments based on provisions of the FCA other than § 3730(d). *Id.* at 629-31. The court disagreed, noting that that argument "posit[s] that § 3730(d)(1) exists in a vacuum severed from the body of the FCA. However, it is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* at 629. The court held that a relator's right to a reward – just like a relator's right to recover attorneys' fees – is "contingent on the 'whistleblower' qualifying as the first-to-file under § 3730(b)(5) and not being proscribed by the public disclosure bar." *Id.* at 629. So, too, here.[12]

Relators argue that both *Ryan* and *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 509-510 (6th Cir. 2009) do no more than offer examples of other choices Defendants could have made to resolve Relators' claims. But *other* avenues of relief that the parties *could have* taken are of no import to the instant dispute. Defendants, the Government, and Relators all

---

[12] By contrast, *United States ex rel. Roberts v. Accenture LLP*, 707 F.3d 1101 (8th Cir. 2013), cited by Relators (Joint Reply 11), is inapposite. That case involved the Government's intervention in and settlement of claims brought by only a single relator. The Court of Appeals for the Eighth Circuit held that the Government could not decline to award a share of the settlement to that relator on the grounds that the sufficiency of the relator's complaint did not satisfy Rule 9(b). That case did not involve competing relators or application of the first-to-file rule.

11

chose to settle the national ED claims. They did so after extensive negotiations, with the full knowledge and acceptance that the final Settlement Agreement left unresolved Relators' claims for attorneys' fees, which might necessitate subsequent litigation. Just as Relators did not waive their right to seek attorneys' fees, Defendants did not waive their right to challenge or object to those claims on any and all grounds.

## CONCLUSION

For the reasons stated above and in Defendants' other submissions, this Court should reject Relators' argument that they are entitled to attorneys' fees. The FCA's first-to-file bar is applicable to this case, and none of these Relators qualifies as the first-to-file, 31 U.S.C. § 3730(b)(5). Accordingly, Defendants respectfully ask that the Court dismiss Relators' claims for attorneys' fees, costs, and expenses with prejudice.

Dated: June 3, 2015

Respectfully submitted,

/s/ William M. Outhier
John Jacobson, BPR #14365
William Outhier, BPR #15609
RILEY WARNOCK & JACOBSON, PLC
1906 West End Ave.
Nashville, TN 37203
Tel: (615) 320-3700
wouthier@rwjplc.com

and


*Of counsel*
Michael L. Waldman
Lee Turner Friedman
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Tel: (202) 775-4500
mwaldman@robbinsrussell.com


*Counsel for Defendants*

13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following via the Court's ECF filing system:

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

Reuben A. Guttman
Traci L. Buschner
Grant & Eisenhofer, P.A.
1747 Pennsylvania Avenue, N.W., Suite 875
Washington, D.C. 20006

Mark H. Wildasin
Assistant United States Attorney
110 Ninth Avenue, South, Suite A-961
Nashville, TN 37203

Kit Pierson
David Young
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

David Rivera
Assistant U.S. Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203

Michael D. Granston
Daniel R. Anderson
Robert McAuliffe
Commercial Litigation Branch
U.S. Department of Justice, Civil Division
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044

on this the 3rd day of June, 2015.

/s/ William M. Outhier