# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* <br> JAMES DOGHRAMJI, SHEREE COOK; <br> and RACHEL BRYANT, <br>            Plaintiffs, <br>     v. <br> COMMUNITY HEALTH SYSTEMS, INC. <br> *et al.*, <br>            Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:11-00442 (Sharp, J.) |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and <br> STATE OF TEXAS, *ex rel.* <br> AMY COOK-RESKA, <br>            Plaintiffs, <br>     v. <br> COMMUNITY HEALTH SYSTEMS, INC. <br> *et al.*, <br>            Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:14-02160 (Sharp, J.) |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* <br> KATHLEEN A. BRYANT, <br>            Plaintiffs, <br>     v. <br> COMMUNITY HEALTH SYSTEMS, INC. <br> *et al.*, <br>            Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:14-02195 (Sharp, J.) |

*************************************************************************

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* <br> NANCY REUILLE, <br>            Plaintiffs, <br> v. <br> COMMUNITY HEALTH SYSTEMS, <br> PROFESSIONAL SERVICES CORP., *et al.*, <br>            Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. 3:15-00110 (Sharp, J.) |

*************************************************************************

### DEFENDANTS' SURREPLY IN OPPOSITION TO RELATORS' SUPPLEMENTAL MEMORANDA FOR ENTITLEMENT TO ATTORNEYS' FEES, COSTS, AND EXPENSES

Defendants Community Health Systems, Inc. ("CHSI") and the CHSI-affiliated hospital companies named in the complaints[1] (collectively, "Defendants") respectfully submit this surreply in response to the reply memoranda filed by each of the relators—Nancy Reuille, Amy Cook-Reska, Kathleen Bryant, and James Doghramji[2] (collectively, "Relators")—arguing why he or she is entitled to an award of attorneys' fees, costs, and expenses under 31 U.S.C. § 3730(d) of the False Claims Act ("FCA").[3] Dkts. 168, 172, 173, 174.[4]

## INTRODUCTION

Each Relator spends a significant portion of his or her supplemental reply brief simply repeating arguments made in Relators' joint briefs, most notably that Defendants cannot raise their first-to-file and public disclosure arguments in this post-settlement world, and that the global settlement of the national ED claim rendered all the Relators "prevailing" relators entitled to attorneys' fees under the FCA.[5] Defendants address the merits of those arguments in Defendants' Surreply in Opposition To Relators' Joint Motion, which is being filed simultaneously with this pleading. When each Relator finally gets around to trying to explain why his or her complaint really is the one that qualifies as the first-filed, none of them has anything persuasive to say.

---

[1] A full listing of the Defendants joining this surreply is set out at Exhibit A to Defendants' Memorandum in Opposition to Relators' Supplemental Memoranda For Entitlement to Attorneys' Fees, Costs, and Expenses ("Defs. Supp. Br."). Dkt. 165.

[2] Doghramji's *qui tam* lawsuit also has two other relators, Sheree Cook and Rachel Bryant. For ease of reference, we will refer to the three relators in this *qui tam* action as "Doghramji."

[3] *See* Dkt. 157 (granting Defendants leave to file surreplies).

[4] Unless otherwise indicated, docket citations are to *United States ex rel. Doghramji, et al. v. Community Health Sys., Inc., et al.*, No. 3:11-cv-00442 ("*Doghramji*").

[5] *See* Dkt. 168 ("Doghramji Reply") at 1-3; Dkt. 172 ("Cook-Reska Reply") at 8-10; Dkt. 173 ("Reuille Reply") at 4-6; Dkt 174 ("Bryant Reply") at 1-5.

At bottom, each of the Relators here seeks attorneys' fees for his or her counsel's work in furtherance of the same, single investigation – that led to a single recovery through the Settlement Agreement – into an alleged companywide scheme to increase revenues through medically unnecessary emergency department ("ED") admissions at hospitals across the country. Although Relators would have this Court hold otherwise, the Settlement Agreement did not resolve distinct claims that alleged improper admissions at specific hospitals, nor did the Government receive a recovery on any such claims. The Settlement Agreement resolved only the national ED claim and the Laredo claim, and the first-to-file rule permits only one relator to recover attorneys' fees for each. The sole relator entitled to attorneys' fees for the national ED claim is Dr. Scott Plantz—the first relator to file a *qui tam* action alleging that claim and the only one to receive a relator's share from the government on the national ED claim.[6] The FCA plainly prohibits each of Relators here from recovering attorneys' fees for the same national ED claim.

## ARGUMENT

### I. These Relators Were Not The First To File

Dr. Plantz was the first relator to file a *qui tam* lawsuit that alleged a nationwide scheme of improper ED admissions at CHSI-affiliated hospitals with sufficient particularity to put the Government on notice of such a claim and thus to preclude subsequent actions. *See United States ex rel. Poteet v. Medtronic, Inc.,* 552 F.3d 503, 516–17 (6th Cir. 2009). Relators Reuille, Cook-Reska, and Bryant each argue that, even if Plantz was the first relator to sufficiently allege a claim of improper ED admissions at CHSI-affiliated hospitals *nationwide*, they are entitled to attorneys' fees because they were each first to file claims against *a specific hospital defendant.*

---

[6] For those reasons, Defendants have already resolved Dr. Plantz's attorneys' fee claim.

2

And Doghramji argues that his complaint added some new factual details and a novel statistical analysis of admissions procedures at CHSI-affiliated hospitals that were not alleged in any preceding complaint. But these points are irrelevant to the first-to-file analysis. The question is whether the allegations in the complaints are "based in a significant measure on the [same] *core facts or general conduct*" without regard to variation in details, geographical locations, time periods, or named defendants. *Id.* at 516–17 (emphasis added). If, like here, multiple complaints are based on the same core allegations of fraud, and lead to a single recovery for the Government, then only *one* relator is entitled to a recovery. Defs. Supp. Br. 9. As previously explained in detail (Defs. Supp. Br. 11-12), Dr. Plantz's complaint preempts all other relators from recovering fees for the national ED claim.

A. **Reuille Was Not The First To File**

Reuille concedes that she did not allege a national ED claim. Reuille Reply 7. She insists instead that the Court should christen a separate "ED claim at Lutheran Hospital" and deem Reuille the first-to-file *that* claim. Under that logic, in a case such as this involving allegations relating to more than a hundred hospitals, there could more than a hundred *qui tam* complaints that would qualify as the first to be filed, so long as they each focused on a single hospital. But even if the first-to-file rule would permit such an absurd result (it does not), Reuille admitted in her opening brief that the Government recovered *nothing* on a claim against Lutheran Hospital (a point Reuille attempts to backpedal away from on reply). *See* Dkt. 154 at 6; *accord* Dkt. 156-1 at ¶ 5. The Settlement Agreement does not mention Lutheran Hospital, let alone resolve a claim of improper ED admissions "at Lutheran Hospital." The Agreement did not identify any specific recovery on ED admissions at Lutheran Hospital, and no relator's share was awarded for such a claim. Thus, given the admitted lack of any damages or recovery at

3

Lutheran, there can be no attorneys' fees award either. *See* Defs. Supp. Br. 12–13 (explaining that relator may not recover fees under 31 U.S.C. § 3730(d) unless the government recovers from the defendant on that claim).[7]

Reuille tries to suggest that Defendants have based their arguments entirely on the Government's relator's share allocation. Reuille Reply 1. That is not correct. To be sure, the Government's failure to award Reuille a share of the proceeds that it recovered on the national ED claim is *one* of the reasons Reuille cannot recover her attorneys' fees under the FCA. Defs. Supp. Br. 23-29. But separate and apart from the failure to receive a relator's share, Reuille cannot recover attorneys' fees for the national ED claim because she did not allege that claim, let alone with sufficient particularity to withstand Federal Rule of Civil Procedure 9(b). *See Poteet*, 552 F.3d at 516–17. For that reason, she did not alert the government to the alleged problem of corporate-wide improper ED admissions—evidenced by the fact that the United States declined to intervene after reviewing her complaint. *Reuille*, No. 1:09-cv-00007-RL-RBC (N.D. Ind.), Dkt. 17.[8] None of Reuille's points about her claims against Lutheran Hospital changes that fact.

### B.  Cook-Reska Was Not The First To File

Unsatisfied with the more than $720,000 in attorneys' fees and more than $2 million relator's share award she received for the Laredo claims (not to mention whatever portion of Plantz's $16.4 million relator's share award she received by virtue of a private sharing

---

[7] Doghramji agrees with Defendants that Reuille did not assert a national ED claim, noting that Reuille's complaint did not constitute a public disclosure of the allegations underlying Doghramji's complaint because "Reuille blames 'Lutheran' hospital in Indiana . . . for improper admissions, not CHS." Doghramji Reply 13.

[8] Reuille tries to downplay the Government's lack of interest in her complaint by citing the government's subsequent intervention. Reuille Reply 9-10. But she glosses over the fact that the Government explicitly attributed its change of course to its investigation into "allegations of improper billing for impatient care at hospitals associated with CHSI . . . . asserted in other *qui tam* complaints in other jurisdictions." *Reuille*, No. 1:09-cv-00007 (N.D. Ind.), Dkt. 30 at ¶ 3.

4

agreement), Cook-Reska wants more.[9] But like Reuille, Cook-Reska is not entitled to attorneys' fees on the national ED claim because she never alleged it. Plantz did.[10]

Unable to point to allegations in her Complaint that support her claim that she made allegations about ED admissions, Cook-Reska directs the Court to a host of outside documents in a strained effort to prove that she put the Government on notice of admission fraud through the ED. Cook-Reska Reply 7. But the first-to-file analysis is limited to the pleadings themselves, not to documents relating to claims not alleged that turn up years later during discovery. *See In re Natural Gas Royalties Qui Tam Litig. (CO2 Appeals)*, 566 F.3d 956, 964 (10th Cir. 2009) ("The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints."); *United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 72 (D.D.C. 2011) ("[T]he only evidence needed to determine if a complaint is barred . . . is the complaints themselves. . . . [T]his Court must compare the complaints at a sufficiently high level of generality, because permitting infinitely fine distinctions among complaints has the practical effect of dividing the bounty among more and more relators, thereby reducing the incentive to come forward with information on wrongdoing.") (quotations and

---

[9] Cook-Reska contends that "Defendants should also pay the attorneys' fees of O'Connell & Soifer (and affiliated firms) for their work on the ED Claims on behalf of Reuille, Cook-Reska, and the government." Cook-Reska Reply 3 n.6. O'Connell & Soifer appear to have forgotten that "[a] recovery of statutory attorneys' fees belongs to the client, not the lawyer." *Accudyne*, 97 F.3d at 941.

[10] Cook-Reska concedes "that the Sixth Circuit has held that a complaint must satisfy Rule 9(b) in order to be given preemptive effect under the first-to-file rule," but—recognizing the hurdle this standard poses for her—dubiously suggests that this Court should ignore the Sixth Circuit standard. Cook-Reska Reply 8. It should not. Moreover, Cook-Reska and Reuille claim that Sixth Circuit precedent would afford them the opportunity to amend their complaints prior to dismissal with prejudice for failure to satisfy Rule 9(b). Cook-Reska Reply 9; Reuille Reply 9. Of course, Reuille and Cook-Reska could *now* allege facts about the national ED claim sufficient to clear the Rule 9(b) hurdle. But the first-to-file analysis looks to the allegations in the original complaint. *See U.S. ex rel. Moore v. Pennrose Properties, LLC*, No. 3:11-CV-121, 2015 WL 1358034, at *13 (S.D. Ohio Mar. 24, 2015) ("[J]urisdiction created by amendment would allow a relator without 'direct and independent knowledge' of fraud to 'secure a place in the jurisdictional queue with merely skeletal allegations, only to then file an amended complaint after actually becoming an original source, and thereby trump any meritorious, related actions that were filed in the meantime.").

5

citations omitted). And even if the Court could consider these other documents, they are largely innocuous and do not indicate a national ED scheme. *See*, *e.g.*, Cook-Reska Reply 7 (quoting and bolding portions of CHSI's 10-K, which described a subpoena for documents related to "admission criteria, patient medical records, coding, billing" (not the emergency room) at Laredo).

### C. <u>Bryant Was Not The First To File</u>

Relator Bryant filed a complaint alleging the same general fraudulent scheme as Dr. Plantz—but more than a year after Plantz filed his complaint. In her reply brief, Bryant merely echoes the strained argument she asserted in her opening brief. She, like Reuille, insists that she can evade the first-to-file bar because she—not Plantz—was the first to file an ED claim against Heritage Medical Center. But she does not even acknowledge—let alone refute—Defendants' point that the first-to-file rule is defined by claim, not by defendant. *See Poteet*, 552 F.3d at 517 (it is irrelevant that a "later action names different or additional defendants . . . so long as the two complaints identify the same general fraudulent scheme"). Defs. Supp. Br.19–20.[11]

Bryant also argues, citing *Walburn v. Lockheed Martin Corp.,* 431 F.3d 966 (6th Cir. 2005), that Plantz was not the first-to-file because his allegations were "overly broad and vague," Bryant Reply 6. In *Walburn,* the Sixth Circuit held that a prior action did not bar the appellant's *qui tam* suit because the prior action essentially alleged nothing more than that "'documents' and 'records' relating to the management and operation of the plant were falsified, without specifying the nature of the alleged falsifications." *Id.* at 972. In short, the Court held that the later suit

---

[11] Bryant, like Cook-Reska, attempts to point to other documents and events beyond the face of her Complaint to support her claims that she was first-to-file because her Complaint led the Government to uncover fraud at Heritage Medical Center. But as explained above, this Court need only consider the complaints themselves to see that Plantz and Bryant allege the same core conduct. *Natural Gas Royalties*, 566 F.3d at 964; *Synnex Corp.*, 798 F. Supp. 2d at 72.

could not have been "based on the facts underlying" the prior suit, because the prior suit failed to set forth the facts underlying the alleged fraud. *Id.* at 973. That is simply not the case here. Dr. Plantz explained in detail—and Bryant merely echoed—how CHSI-affiliated hospitals company wide allegedly increased ED admissions to increase their revenues. *See* Defs. Supp. Br. 11-12 (summarizing Plantz's factual allegations regarding the national ED claim).

### D. <u>Doghramji Was Not The First To File</u>

Doghramji—the last of the seven relators to file suit—argues with a straight face that he filed "the first complaint to allege a company-wide scheme affected CHS hospitals across the country" merely because he included a statistical analysis that the government supposedly found helpful in its investigation. Doghramji Reply 4 & n.2. But the first-to-file rule is about who alerted the Government to the underlying *facts* of the claim, not who analyzed it best. *See* 31 U.S.C. § 3730(b)(5) ("[N]o person other than the Government may intervene or bring a related action based on the facts underlying the pending action."). The best statistical analysis in the world could not have divested Dr. Plantz of his first-to-file status for the national ED claim. Surely if Congress intended to create a "useful statistics" or other government assistance exception to the first-to-file rule, it would have done so explicitly.

And Doghramji fares no better by ticking through the list of details alleged in his Complaint, which in the end serves only to highlight the striking similarities between the core factual allegations of the Plantz and Doghramji complaints. *Compare* Doghramji Reply 5 (emphasizing, among other things, his allegations about the hospitals' use of ProMed, threat of termination, and financial incentives) *with Plantz*, No. 1:10-cv-00959 (N.D. Ill.), Dkt. 1, at ¶ 195 ("One of the most effective elements of the Defendants' scheme uses a computer software called ProMed to order unnecessary medical tests."); ¶ 206 (alleging that hospitals enforced scheme by

7

threatening termination); ¶ 271 (alleging that hospitals used financial incentives); *compare also* Doghramji Reply 6 ("None of the complaints filed prior to *Doghramji* adequately alleged that CHS orchestrated a nationwide scheme to increase revenues by manufacturing admissions.") *with* Plantz Cplt. ¶¶ 246-256 (describing hospitals' alleged implementation of procedures designed to increase revenues through unnecessary admissions). Even if some of the "material facts" alleged by Doghramji were not alleged by Plantz (most of them were), it is well-established that a relator cannot evade the first-to-file rule simply by alleging new facts about the same underlying fraud. *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232-33 (3d Cir. 1998) ("A later case need not rest on precisely the same facts as a previous claim to run afoul of this statutory bar. Rather, if a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details.").

## II. These Relators Were Not Awarded A Relator's Share

Each Relator is precluded from recovering attorneys' fees on the national ED claim for the independent reason that he or she failed to receive the 15-25% relator's share of the settlement proceeds. Defs. Supp. Br. 23-29. Although only Plantz received a relator's share from the Government for the national ED claim, Relators Reuille, Bryant, and Doghramji persist in arguing that their private agreement to share that award means that they too received a relator's share. But Relators cannot change the FCA by repeating this argument time and again. Franklin D. Roosevelt, Radio Address, Oct. 6, 1939 ("Repetition does not transform a lie into a truth."). Contrary to Relators' mantra, a private agreement to divvy up a relator's share after it is awarded by the Government is irrelevant to whether a relator is entitled to receive attorneys' fees

8

under 31 U.S.C. § 3730(d). *See United States ex rel. Saidiani v. NextCare, Inc.*, 2013 WL 431828, *2–3 (W.D.N.C. Feb. 4, 2013). Defs. Supp. Br. 28-29.

Cook-Reska entirely misconstrues Defendants' position by claiming "Defendants agree that Cook-Reska is eligible to recover her attorneys' fees for work on the ED Claims at Laredo Medical Center." Cook-Reska Reply 2. Just as the Settlement Agreement did not resolve a distinct claim of wrongful ED admissions at Lutheran Hospital or Heritage Medical Center, it did not a resolve a distinct claim of ED admissions at Laredo. It resolved the national ED claim, and it resolved claims of improper inpatient procedures and physician relationships at Laredo for which the Government recovered $9,000,000 under the Agreement. Defendants only agree that Cook-Reska is eligible to recover her reasonable attorneys' fees for work on the Laredo claims – and, in fact, *she has* recovered those attorneys' fees from the U.S. District Court for the Southern District of Texas. As explained in Defendants' Supplemental Opposition Brief (Dkt. 165), because Cook-Reska did not receive a 15-25% relator's share from the government for the national ED claim, she is not entitled to attorneys' fees on that claim. Defs. Supp. Br. 25-27.

### III. Doghramji's Complaint Was Based Upon Publically Disclosed Allegations

Finally, Doghramji's claim for attorneys' fees is also foreclosed by the public disclosure bar, *see* 31 U.S.C. § 3730(e)(4)(A) (2006), because he filed his complaint only *after* the same allegations had been publicly disclosed by numerous sources.[12] Defs. Supp. Br. 29-33. As expected, Doghramji argues that the public disclosures did not rely on all the same facts or the same statistical analysis as his complaint. Doghramji Reply 13-14. But in that regard,

---

[12] This Court should follow the weight of authority on this topic holding that the pre-2010 version of the FCA applies to claims like Doghramji's that are based on alleged misconduct predating the amendment. *See, e.g.*, *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 915 (4th Cir. 2013); *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 958 F. Supp. 2d 846, 856 (E.D. Tenn. 2013); *United States. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1271 n.2 (N.D. Ga. 2012) (same). But even if the Court were to apply the amended version of the statute, Doghramji's complaint would still be barred.

9

Doghramji's public disclosure arguments conflict with his first-to-file arguments. For example, he emphasizes on one hand that his complaint—unlike Plantz's complaint—was uniquely based on CHSI-affiliated hospitals' use of the so-called Blue Book admissions criteria. Doghramji Reply 5. But he then turns around and argues that the *Tenet* lawsuit does not bar his complaint because Tenet "argues almost exclusively that CHS's Blue Book was the source of over admissions." Doghramji Reply 15. Doghramji cannot have it both ways.

Nor can he evade the public disclosure bar by arguing that the *Tenet* lawsuit did not reference *all* of the same core facts as his complaint. "[A] relator's entire complaint will be jurisdictionally barred if it is based *even partly* upon public disclosures." *Poteet*, 552 F.3d at 515 n. 7; *Walburn*, 431 F.3d at 975 (merely alleging "additional details [is] insufficient to avoid [the Sixth Circuit's] broad construction of the public disclosure bar").[13] As Defendants have previously demonstrated, Doghramji's allegations plainly are "based upon" the information disclosed by the *Tenet* lawsuit and other sources. Defs. Supp. Br. 32-33.

Doghramji also argues that the public disclosure bar does not apply here because he disclosed his information to the Government before the *Tenet* complaint made it public, making him an "original source" of the information underlying the national ED claim. Doghramji Reply 17. But to constitute an "original source," a relator must have "independent" knowledge of the information on which the allegations are based. Doghramji emphasizes the sheer amount of time and energy that SEIU expended interviewing doctors and nurses from various CHSI-affiliated facilities in order to perform the statistical analysis referenced in his papers. Doghramji

---

[13] It is of no import that the *Tenet* lawsuit alleged that CHSI made false and misleading statements to investors rather than false claims to the United States because, as Doghramji acknowledges, "Tenet alleges that CHS violated the FCA." Doghramji Reply 14. The *Tenet* lawsuit also alleged the necessary facts to put the Government on notice of a possible FCA violation based on medically unnecessary ED admissions. Defs. Supp. Br. 30-31.

Reply 18. But Doghramji ignores numerous cases holding that relators are not "original sources" if their allegations are based on interviews of those with personal knowledge, collateral research, and analysis of public information. Defs. Supp. Br. 27-29 (collecting cases).[14] Doghramji added no new substantive facts to the previously disclosed allegations of fraud and, thus, is not an "original source."

## CONCLUSION

For the reasons stated above and in Defendants' other submissions, none of the Relators before this Court is entitled to recover attorneys' fees, costs, or expenses. Defendants respectfully ask that the Court dismiss Relators' claims for attorneys' fees, costs, and expenses with prejudice.

---

[14] The cases cited by *Doghramji* on this point do not establish otherwise. For example, the relator in *Cooper v. Blue Cross & Blue Shield of Florida, Inc.,* 19 F.3d 562 (11th Cir. 1994) (Doghramji Reply 19) alleged the BCBSF committed fraud against the government by submitting claims to Medicare that BCBSF knew it was required to pay as primary insurer. *Id.* at 564. The relator was deemed an "original source" because he himself had had his claims processed in this allegedly fraudulent manner for years, leading him to research the law governing the payments of his claims. *Id.* at 564 & 568. SEIU's compilation of interviews and analysis of public information did not stem from any comparable personal knowledge. And in both *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamonte*, *P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1161 (3d Cir. 1991) and *U.S. ex rel. Rosner v. WB/Stellar IP Owner, L.L.C.*, 739 F. Supp.2d 396 (S.D.N.Y. 2010), the courts concluded that the relators were not "original sources" under the FCA.

Dated: June 3, 2015

Respectfully submitted,

/s/ William M. Outhier
John Jacobson, BPR #14365
William Outhier, BPR #15609
RILEY WARNOCK & JACOBSON, PLC
1906 West End Ave.
Nashville, TN 37203
Tel: (615) 320-3700
wouthier@rwjplc.com

and

*Of counsel*
Michael L. Waldman
Lee Turner Friedman
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Tel: (202) 775-4500
mwaldman@robbinsrussell.com


*Counsel for Defendants*

12

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following via the Court's ECF filing system:

David W. Garrison
Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219

Reuben A. Guttman
Traci L. Buschner
Grant & Eisenhofer, P.A.
1747 Pennsylvania Avenue, N.W., Suite 875
Washington, D.C. 20006

Mark H. Wildasin
Assistant United States Attorney
110 Ninth Avenue, South, Suite A-961
Nashville, TN 37203

Kit Pierson
David Young
Cohen Milstein Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005

David Rivera
Assistant U.S. Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203

Michael D. Granston
Daniel R. Anderson
Robert McAuliffe
Commercial Litigation Branch
U.S. Department of Justice, Civil Division
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044

on this the 3rd day of June, 2015.

/s/ William M. Outhier