# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JAMES DOGHRAMJI, SHERRE<br>COOK, and RACHEL BRYANT,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>COMMUNITY HEALTH SYSTEMS,<br>INC., *et al.*<br><br>      **Defendants.** | No. 3:11-00442<br>JUDGE SHARP |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>STATE OF TEXAS ex rel.<br>AMY COOK-RESKA,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>COMMUNITY HEALTH SYSTEMS,<br>INC., *et al.*<br><br>      **Defendants.** | No. 3:14-02160<br>JUDGE SHARP |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex. rel KATHLEEN A. BRYANT,<br><br>      **Plaintiff,**<br><br><br>      v.<br><br>COMMUNITY HEALTH SYSTEMS,<br>INC., *et al.*<br><br>      **Defendants.** | No. 3:14-02195<br>JUDGE SHARP |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| UNITED STATES OF AMERICA | ) |
| --- | --- |
| ex rel. NANCY REUILLE, | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| | ) No. 3:15-00110 |
| v. | ) Judge Sharp |
| | ) |
| COMMUNITY HEALTH SYSTEMS, | ) |
| PROFESSIONAL SERVICES, CORP., | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM

The above-captioned cases, consolidated for purposes of the potential award of attorney's fees and costs, are among seven cases that were part of a $97 million-plus global settlement with the United States relating to allegations that Community Health Systems, Inc. ("CHSI")-affiliated hospitals violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, in certain specified particulars. On August 20, 2015, the Court heard oral arguments on Plaintiffs' (the *qui tam* relators in the underlying actions[1]) requests for attorney's fees, including arguments on the threshold issue of whether their requests for fees are barred by either the "first to file" or the "public disclosure" provisions of the FCA. Having considered those arguments, as well as the extensive briefing on the issue, the Court concludes that Plaintiffs' request are not so barred. Accordingly, the Court will return these cases to the Magistrate Judge for consideration of each Plaintiffs' requests for attorney's fees and costs.

---

[1] The four actions consolidated in this Court are: (1) United States ex rel. Reuille v. Cmty. Health Sys. Prof'l Servs., Corp., filed in the Northern District of Indiana on Jan. 7, 2009 ("Reuille"); (2) United States ex rel. Cook-Reska v. Cmty. Health Sys., Inc., filed in the Southern District of Texas on May 22, 2009 ("Cook-Reska"); (3) United States ex rel. Bryant v. Cmty. Health Sys., Inc., filed in the Southern District of Texas on July 29, 2010 ("Bryant"); and United States ex rel. Serv. Emps. Int'l Union v. Cmty. Health Sys., Inc., filed in this Court on May 10, 2011 ("Doghramji").

2

**I.**

On July 29, 2014, following a lengthy investigation by the United States, Defendants entered into a Settlement Agreement in which CHSI and its affiliates denied wrongdoing but agreed to pay the United States $97,257,500. That agreement resolved two claims: (1) the Government's claim regarding "Medically Unnecessary Emergency Department Admissions" ("the national ED claim"); and (2) claims that the Laredo Medical Center in Texas had (a) improperly billed the government for inpatient procedures and (b) engaged in improper financial relationships with referring physicians in violation of the Stark Law ("the Laredo claims"). The Agreement earmarked $88,257,500 to the national ED claim, and $9 million to the Laredo claims.

Following settlement, the United States approved payment of a relator's share to one relator for each claim. Dr. Scott Plantz, who had filed suit in the Northern District of Illinois on February 11, 2010 (United States ex rel. Plantz v. Health Mgmt. Assocs., Inc.) ("Plantz"), received the relator's share of $16,427,740.96 (exclusive of interest) for the national ED claim. Amy Cook-Reska, one of the relators here, received $2,141,184.04 (exclusive of interest) for her claims against Laredo. Dr. Plantz's share represented approximately 19% of the recovery on the national ED claim,[2] while Ms. Cook-Reska's share represented approximately 20% of the recovery on the Laredo claims.

In accordance with the Settlement Agreement, the government moved to unseal, intervene in, and dismiss all seven *qui tam* actions. Thereafter, relators in all of the *qui tam* actions informed Defendants that they intended to file fee petitions seeking attorneys' fees and costs for work

---

[2] According to the parties, the relators in all seven actions executed private agreements to share any recovered proceeds from the national ED claim.

performed in furtherance of the national ED claim.

Defendants paid Dr, Plantz his reasonable attorney's fees. They also agreed to pay the reasonable attorney's fees of relator Thomas Mason who had filed suit in the Western District of North Carolina on April 18, 2011 (United States ex rel. Mason v. Cmty. Health Sys., Inc.) ("Mason"). Defendants now object to paying any fees and expenses for work on the national ED claim by the other relators, arguing that they are barred by the "first-to-file" or "public disclosure" provisions of the FCA.

## II.

Because a court must address "questions pertaining to its jurisdiction before proceeding to the merits." Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005), the Court necessarily begins with a jurisdictional argument raised by Plaintiffs. After all, when a court is without jurisdiction it has no power to hear or decide the merits of the case. Himmelreich v. Fed. Bur. of Prisons, 766 F.3d 576, 579 (6th Cir. 2014).

Plaintiffs argue that "this Court has no power to turn back the clock and open settled – or closed – matters," and that "Defendants seek to vest the Court with jurisdiction it lacks and, in essence ask for an advisory opinion[.]" (Docket No. 151 at 3). Leaving aside the apparent incongruity in Plaintiffs' invocation of this Court's jurisdiction to secure the award of attorney's fees while at the same time asserting the Court lacks jurisdiction to consider Defendants' arguments against such an award,[3] Plaintiffs' arguments are unpersuasive.

---

[3] In their consolidated reply brief, Plaintiffs argue that "because the scope of the Court's jurisdiction is defined solely by the terms of the Settlement Agreement and the various court's orders, it makes complete sense that the Court 'lacks jurisdiction to apply the FCA's first-to-file bar but . . . possesses jurisdiction to order attorneys' fees.'" (Docket No. 167 at 3, citation omitted). This is so, the argument continues, because "[t]he Settlement Agreement explicitly reserves Relators' rights to 'assert claims Relators may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d),'" but "the Settlement

4

In arguing against jurisdiction, Plaintiffs' relies primarily upon the Supreme Court's decision in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and the Sixth Circuit's application of that decision in Caudill v. No. Am. Media Corp., 200 F.3d 914 (6th Cir. 2000) and McAlpin v. Lexington 76 Auto Truck Stop, 229 F.3d 491 (6th Cir. 2000), asserting those cases are "critical to the issues before the Court." (Docket No. 167 at 2). All three cases, however, present factual scenarios entirely inapposite to those presented here.

Kokkonen involved a settlement agreement between an insurer and its former agent that was arrived at during the course of trial. Subsequently, the parties executed a Stipulation and Order under Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, which the district judge signed. However, "[t]he Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed it did not so much as refer to the settlement agreement." Kokkonen, 511 U.S. at 377. Nevertheless, when the agent allegedly breached the agreement by failing to return certain files, the "District Court entered an enforcement order, asserting an 'inherent power to do so,'" id., a conclusion that was affirmed on appeal.

The Supreme Court reversed, observing that enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378. Regarding the assertion that the trial court had ancillary jurisdiction to enforce the settlement agreement, the Supreme Court recognized that its precedent recognized such jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition by a

---

Agreement does not reserve Defendants' claims that Relators' recovery [of those items] are barred by the first-to-file provision[.]" (Id.). As it turns out, Plaintiffs' position is correct, but not for the reasons they assert. Rather, to determine whether Plaintiffs are entitled to fees necessarily requires that the Court interpret the Settlement Agreement and Orders in the consolidated cases, something which it could not do in the absence of jurisdiction.

5

single court of claims that are, in varying respects and degrees, factually interdependent . . . , and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]" Id. at 379-80 (internal citations omitted).

The first "head" of ancillary jurisdiction was not present in Kokkonen because the breach of the agency agreement and the breach of the settlement agreement had "nothing to do with each other; it would neither be necessary nor even particularly efficient that they adjudicated together." Id. at 380. The second "head" was also not present because "the only order [t]here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." Id. With regard to the last observation, the Supreme Court went on to note:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

Id. at 382.

"Kokkonen thus establishes the straightforward principle that in order for a federal court to retain ancillary jurisdiction to enforce a settlement agreement, the retention of that jurisdiction must serve or connect to a prior legitimate exercise of the court's authority." Herrick Co. Ins. v. SCS Comm'n, Inc., 251 F.3d 315, 327 (2nd Cir. 2001). In the absence of that connection or any indication that a court intends to retain jurisdiction over a dispute that is dismissed pursuant to a settlement agreement, "[t]he settlement is just another contract to be enforced in the usual way, that is, by a fresh suit." Jessup v. Luther 277 F.3d 926, 929 (7th Cir. 2002).

Caudill, one of the Sixth Circuit cases relied on by Plaintiffs, involved a suit by former

shareholders alleging the wrongful cancellation of stock in violation of an agreement that had settled an earlier derivative action. The trial court believed that ancillary jurisdiction existed because, unlike the dismissal order in Kokkonen that did "'not so much as refer to the settlement agreement,'" the dismissal order then before the court "specifically stated that '[p]ursuant to the terms of the parties' Oct. 1, 1991 settlement agreement, the Court hereby dismisses this case.'" Caudill, 200 F.3d at 917. This conclusion, however, was inconsistent with decisions from both the Third and Eighth Circuit (In re Phar–Mor, Inc. Sec. Litig., 172 F.3d 270, 274 (3rd Cir. 1999) and Miener v. Mo. Dep't of Mental Health, 62 F.3d 1126, 1128 (8th Cir. 1995)) that had concluded that the phrase "'pursuant to the terms of the Settlement' fails to incorporate the terms of the Settlement agreement into the order'" for purposes of ancillary jurisdiction. Caudill 200 F.3d at 917 (citation omitted). "[E]lect[ing] to adopt the Third and Eighth Circuits' interpretation of Kokkonen," the Sixth Circuit vacated the trial court's decision for lack of jurisdiction. Id.

McAlpin, the other Sixth Circuit case relied on by Plaintiffs, involved a finding of contempt based upon the alleged violation of a settlement agreement after the case had been dismissed and "stricken" from the docket. Under the Agreed Order of Dismissal With Prejudice, however, "the district court did not expressly retain jurisdiction over the Settlement Agreement, nor order [the alleged contemnor] to take any action[.]" 229 F.3d at 491. After reviewing Kokkonen and its prior decision in Caudill, the Sixth Circuit held that "[b]ecause this court has joined other circuits in strictly applying Kokkonen's relatively narrow interpretation of a district court's ancillary jurisdiction to enforce settlement agreements terminating litigation, the district court's incorporation in its dismissal order of only a single term of the parties' 20–page settlement agreement [wa]s insufficient to support the court's exercise of ancillary jurisdiction over the entire agreement," nor

7

over the actions of the alleged contemnor since the reserved "term d[i]d not, on its face, apply directly to" her. Id. at 502.

The language in the Settlement Agreement settling the *qui tam* actions in these case is entirely different than it was in Kokkenen, McAlpin, or Caudill because it specifically contemplated that this Court, if necessary, could construe and apply its provisions, by providing that "[t]he exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee, Nashville Division[.]" (Docket No. 75-1 at 16). While that choice-of-forum clause specifically excepted "any disputes between CHS and any particular relator arising from that relator's request for attorneys' fees pursuant to 31 U.S.C. § 3730(d) or any claims Relators have under 31 U.S .C. § 3730(h)," id. that apparently was because all but one of these actions was then pending in another federal district court. Regardless, this Court's Order and those of the transferor courts all contemplated that the issue surrounding attorney's fees would, in fact, be addressed by a court.

This Court's Revised Order of Dismissal in Doghramji specifically stated that "[t]he Court will retain jurisdiction over the United States, all defendants, and Relator to the extent necessary to enforce the terms and conditions of the Settlement Agreement, and to adjudicate Relator's claims for statutory attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)." (Docket No. 104). In Bryant, Judge Werlein of the Southern District of Texas entered an Order of dismissal pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure, but in doing so specifically stated that "[t]he Court will retain jurisdiction . . . to adjudicate Relator's claims . . . for statutory attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)," and later entered an Order of Partial Transfer that transferred relator's request for attorney's fees to this court. (Case No. 14-07219, Docket No. 41

8

at 2 & Docket No. 49 at 3).  Similarly in Cook-Reska, Judge Lake, also of the Southern District of Texas, entered a Final Judgment approving the Settlement Agreement but, in doing so, specifically stated that "[t]he court will retain jurisdiction over [all parties] to the extent necessary to enforce the terms and conditions of the Settlement Agreement, " (Docket No. 172-3 at 2) before transferring the request for attorney's fees relating to the improper billing of ED admissions to this Court. Finally, in Reuille,  Judge Lozano of the Northern District of Indiana entered an Order that approved the settlement and dismissed the action with prejudice, but "retain[ed] jurisdiction to . . . the extent necessary to enforce the terms and conditions of the Settlement Agreement, and to adjudicate Relator's claims for statutory and attorney's fees and costs pursuant to 31 U.S.C. § 3730(d)," before the case was transferred to this Court.

Unlike Kokkenan which did not reference the underlying settlement agreement, Caudill which merely dismissed the action pursuant to the parties' agreement, or even McAlpin which incorporated one irrelevant term from the settlement agreement, the orders and judgments accepting the Settlement Agreement in each of these underlying cases specifically mentioned the retention of jurisdiction over Plaintiffs' request for attorney's fees.  Accordingly, the Court finds that it has jurisdiction over the attorney's fees question and turns to the substantive issue of whether Plaintiffs' requests are barred by the first-to-file or public disclosure provisions of the FCA.

### III.

Defendants argue that the Settlement "Agreement makes clear that the parties agreed to disagree as to Relators' claims to attorneys' fees, with both sides reserving their rights." (Docket No. 163 at 13).  "The parties exchanged mutual releases, but agreed that the Agreement did not 'release any claims Relators may have for reasonable attorneys' fees, expenses and costs pursuant

9

to 31 U.S.C. § 3730(d).'" (Docket No. 163 at 13, quoting SA ¶ 15.c.(1)). A noted previously, to determine whether that clause means what Plaintiffs or Defendants say, the Court must necessarily interpret the Settlement Agreement.

### A.

"A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement." Waddle v. Elrod, 367 S.W.3d 217, 222 (Tenn. 2012) (collecting cases). Likewise, "settlement agreements . . . in contemplation of litigation are enforceable contracts." Allison v. Hagan, 211 S.W.3d 255, 260 (Tenn. Ct. App. 2006).

Under both state and federal law,[4] "[a] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611-12 (Tenn. 2006); accord, In re AmTrust Fin. Corp., 694 F.3d 741, 749-750 (6th Cir. 2012). "In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." Id. (quoting, Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 889-90 (Tenn. 2002)). "Where a contract's meaning is clear on its face, that meaning controls." In re AmTrust, 694 F.3d at 750. If "a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision," Watson, 195 S.W.3d at 611, "though the goal is still to discern the parties' intentions," In re Amtrust, 694 F.3d at 749.

### B.

---

[4] The Settlement Agreement provides that it shall be governed by the laws of the United States. This requires that the Court "apply federal common law rules of contract, taking direction from both state law and general contract principles." Barron v. Blue Cross Blue Shield of Mich., 534 Fed. App'x 344, 347 (6th Cir. 2013).

10

Defendants argue that under the Settlement Agreement "the parties agreed that the settlement of the substantive ED admissions allegations would have no impact on whether Relators were entitled to attorney's fees." (Docket No. 163 at 13). They write:

> The Agreement states, without qualification, 'that *nothing* in this Paragraph or this Agreement shall be construed *in any way to release, waive or otherwise affect* the ability of CHS *to challenge or object* to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d).' Settlement Agreement ¶ 8.

(Docket No. 163 at 13, italics by Defendants). They go on to contend that "[a] clearer reservation of Defendants' right to object to Relators' fee petition on any and all grounds is difficult to imagine." (Id.).

Defendants' use of highlighting is creative but understandable because it detracts from what the Settlement Agreement provided. It specifically preserved Defendants' ability to challenge or object to Plaintiffs request for attorney's fees only "pursuant to 31 U.S.C. § 3730(d)." That provision, so far as relevant, provides:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. . . . Any payment to a person under [foregoing] shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1).

The public disclosure bar is not referenced in Section 3730(d), but rather is found in Section 3730(e)(4). The first-to-file rule is reference obliquely at best in that "subsection (b)" relating to actions by private persons (as opposed to those brought by the Attorney General under subsection (a)) contains sub-part (5) which provides that "[w]hen a person brings an action under this

11

subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

Defendants insist that

> the Settlement Agreement references Section 3730(d) because that is the section of the FCA giving Relators the right to seek attorneys' fees – the "under § 3730(d)" modifies the phrase immediately preceding it: "Relators' claims for attorneys' fees, expenses and claims." It has nothing to do with how or on what grounds Defendants might challenge or object to those attorneys' fee claims.

(Docket No. 163 at 14). This is true enough: Section 3730(d) has nothing to do with the grounds on which Defendants now seek to challenge fees; Section 3730(b)(5) and Section 3730(e)(4) do.

Defendants' contention that the reservation of rights contained in the Settlement Agreement could not be any clearer is simply wrong. Defendants could easily have specified that they intended to raise a challenge to Plaintiffs' entitlement to fees under the first-to-file or public disclosure provisions, or, at a minimum, simply cited Section 3730(b)(5) and (e)(4), much like the Government reserved specific statutory rights and negotiated a carve-out for those provisions.[5] Defendants' silence in response to "Recital G" which provided that "Relators and their counsel claim entitlement under 31 U.S.C. § 3730(d) . . . to [their] reasonable expenses, attorneys' fees and costs," (Settlement Agreement Recital G at 5), speaks volumes.

Given the stakes, it is difficult to believe that failure to mention the FCA's first-to-file provision, 31 U.S.C. § 3730(b)(5), or its public disclosure provision, 31 U.S.C. § 3730(e)(4) anywhere in the 16-page Settlement Agreement was unintentional. Plaintiffs argue that Defendant

---

[5] For example, in the paragraph immediately proceeding the one now in dispute, Relators agreed that the Settlement Agreement was "fair, adequate, and reasonable under all the circumstance, pursuant to 31 U.S.C. 3730(c)(2)(B)," and that the Government was not waiving its ability "to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relators from sharing in the proceeds of this Agreement." (Docket No. 75-1, Settlement Agreement p. 9-10 at ¶ 7)

were being "intentionally circumspect about [their] intentions" for fear that the settlement would not be accomplished had Defendants true intentions been known. (Docket No. 167 at 10 n.6). Maybe Defendants were too clever by a half for the fact remains that the government did proceed with all seven of the underlying cases (including the four in this consolidated action), it intervened in all, and settled each case. Under a straight forward reading of the statute and the Settlement Agreement which specifically incorporates Section 3730(d) – in fact makes mention of that provision at least six times, but makes no mention of either the first-to-file rule or the public disclosure bar – all relators in this case are entitled to attorney's fees.

Defendants' reliance on cases like United States *ex rel.* Carter v. Haliburton Co., F.3d 171, 181 (4th Cir. 2013) for the proposition that "the first-to-file bar is 'an absolute, unambiguous exception-free rule,'"[6] (Docket No. 163 at 4), and on cases like United States ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 515-16 (6th Cir. 2009) for the proposition that "the first-to-file rule is jurisdictional, stripping court of the power to adjudicate a qui tam action"[7] is misplaced. While "[t]he point of the first-to-file bar is not to allow isolated misconduct to inoculate large companies against comprehensive fraud liability" but "instead, is to prevent copycat litigation, which tells the government nothing it does not already know," Heath, 2015 WL 3852180, at *8, the Court is not called upon to consider "the policies animating the FCA," Poteet, 552 F.3d at 516, rather to give

---

[6] This language may be an overstatement because the Supreme Court subsequently held that "a qui tam suit under the FCA ceases to be 'pending' once it is dismissed" for purposes of the first-to-file rule, Kellogg Brown & Root Serv., Inc. v. United States *ex rel.* Carter, 135 S. Ct. 1970, 1979 (2015), suggesting the existence of one such exception.

[7] Even though Poteet is controlling authority, the notion that the first-to-file rule is jurisdictional has been called into question in light of the fact that 'the Supreme Court has 'endeavored in recent years to 'bring some discipline' to the use of the term 'jurisdictional.'" United States *ex rel.* Heath v. AT&T, Inc., 2015 WL 3852180, at *6 (D.C. Cir. June 23, 2015) (quoting Gonzalez v. Thaler, 132 S.Ct. 641, 648 (2012)).

effect to the intention of the parties as expressed in the Settlement Agreement. Besides, the supposedly exception-free rule seems to have gone by the wayside by virtue of Defendants' agreement to pay Mason's fees in addition to those of Plantz.

In settling the actions, Plaintiffs agreed to release all of their *qui tam* clams, even those claim that fell outside the "Covered Conduct" described in Recital D of the Settlement Agreement, even though they had the right to pursue the claims directly in accordance with 31 U.S.C. § 3730(c)(3) if "the government elects not to proceed" with them. In doing so, Plaintiffs specifically claimed entitlement to attorney fees and costs, and Defendants did not challenge that entitlement (as opposed to reasonableness) in the Settlement Agreement.

Defendants contend that they "never had a chance to file a motion challenging" Relators request for attorney's fees under the first-to-file rule "because the case was under seal," and that "the approach advocated by Relators here would make it virtually impossible for the United States to settle a multi-relator FCA case." (Docket No. 163 at 18-19). The Court disagrees.

Defendant had several choices. They could have litigated with Relators and the United States; could have agreed to settle only one suit with one Relator and continued to litigate the others; they could have included a provision in the Settlement Agreement that specified they would only pay attorneys' fees for one relator; or they could have negotiated a carve-out in the Settlement Agreement that specifically referenced the first-to-file bar and public disclosure provision. They did none of those things. Instead they opted to omit the uncertainty entailed by litigating up to seven cases and entered into a Settlement Agreement that did not reserve the right to challenge entitlement to fees under either the first to file or public disclosure provisions of the FCA.

Simply put, the Settlement Agreement reserved Plaintiff's entitlement to fees and did not

preserve any challenge based upon either the first-to-file rule or the public disclosure bar. As such, the Court does not reach other arguments raised by Defendant, including its claim that the negotiations leading up to the settlement suggest otherwise. Likewise, the Court does not reach Plaintiffs' assertion that, were the Court to rule otherwise, the Settlement Agreement would fail for lack of consideration.[8]

## IV.

Based upon the foregoing, the Court finds that Plaintiffs' requests for attorney's fees in this action are not barred by the False Claims Act's "first to file" or "public disclosure" provisions. In so finding, the Court expresses no opinion on the propriety of the amount requested by each Plaintiff, or whether requested fees should be based solely upon the unique and helpful information that each Plaintiff provided the Government in relation to the National ED claim. The amount of reasonable fees is an issue that the Court leaves to the Magistrate Judge in the first instance.

An appropriate Order will enter.

*Kevin H. Sharp*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[8] As an aside, however, the Court notes Defendants's argument that because Plaintiffs received a share of the proceeds by virtue of their private agreement, they did not receive a "relator's share" as envisioned by 31 U.S.C. § 3730(d), but at the same time argue that Plaintiffs' consideration for settling was their getting a share of the relator's share. This is reminiscent of *Catch-22* and Maj. Major Major Major's conversation with First Sgt. Towser about the Major seeing people in his office only when he was not there.